ERIK A. CHRISTIANSEN, USB# 7372
JEFFREY C. COREY, USB# 9938
PARSONS BEHLE & LATIMER PC
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

DOUGLAS W. HENKIN
DENTONS LLP
1221 Avenue of the Americas
New York, New York  10020-1089
Tel: (212) 768-6832
*douglas.henkin@dentons.com*
*(pro hac vice application pending)*

*Attorneys for Defendants First American Title Insurance Company and Kirsten Parkin*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER C. FUCCI, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>WILLIAM BOWSER, et al.,<br><br>        Defendants. | **MOTION TO DISMISS BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN**<br><br>The Honorable Dustin B. Pead<br><br>Case No. 2:20-cv-00004-DBP<br><br>ORAL ARGUMENT REQUESTED |

4813-0907-2310v2

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTS ............................................................................................................... 3

ARGUMENT ...................................................................................................... 6

I.    PLAINTIFFS' CLAIM AGAINST FIRST AMERICAN FOR BREACH OF FIDUCIARY DUTY FAILS AS A MATTER OF LAW .................................... 7

    A.    Plaintiffs Fail to Allege First American Owed Them a Fiduciary Duty ................ 7

    B.    Plaintiffs Have Not Alleged That First American Breached A Fiduciary Duty .................................................................................... 9

    C.    The Complaint Does Not Allege that First American's Alleged Breaches Directly and Proximately Caused Plaintiffs' Injuries ............................................. 12

II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FIRST AMERICAN FOR "AIDING AND ABETTING TORTIOUS CONDUCT" ................. 12

    A.    The Sixth Claim for Relief Fails to Allege Aiding and Abetting Fraud and Negligent Misrepresentation ............................................... 14

    B.    The Sixth Claim for Relief Fails to Allege Aiding and Abetting Breach of Fiduciary Duty ............................................................. 15

    C.    The Complaint Fails to Allege Aiding and Abetting Conversion ........................ 16

III.    THE SEVENTH CLAIM FOR RELIEF FAILS TO STATE A CLAIM AGAINST FIRST AMERICAN FOR CIVIL CONSPIRACY ........................................ 17

IV.    THE THIRTEENTH CLAIM FOR RELIEF FAILS TO STATE A CLAIM AGAINST THE FA DEFENDANTS FOR "AIDING AND ABETTING" STATE SECURITIES FRAUD ............................................................ 18

V.    THE FOURTEENTH CLAIM FOR RELIEF FAILS TO STATE A CLAIM AGAINST THE FA DEFENDANTS FOR UNJUST ENRICHMENT ......................... 21

VI.    THE FIFTEENTH CLAIM FOR RELIEF FAILS TO STATE A CLAIM AGAINST THE FA DEFENDANTS FOR "ABUSE OF VULNERABLE ADULTS" ................................................................................................... 22

VII.    THE COMPLAINT FAILS TO ALLEGE FACTS TO SUPPORT ANY CLAIM AGAINT MS. PARKIN IN HER INDIVIDUAL CAPACITY ................................ 23

CONCLUSION ................................................................................................. 24

4813-0907-2310v2

# TABLE OF AUTHORITIES

**Cases**

*Albright v. Attorney's Title Ins. Fund*,
2008 WL 2952260 (D. Utah Jul. 26, 2008) ................................................................. 16, 17

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*,
158 Cal.App.4th 226 (2007) ................................................................. 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 6, 7, 13, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 6, 17

*Boomershine v. Lifetime Capital, Inc.*,
2008 WL 54803 (Ct. App. Ohio Jan. 4, 2008) ................................................................. 20

*Boyd v. Kingdom Trust Company*,
113 N.E.3d 470 (Ohio 2018) ................................................................. 20

*Burnett v. Mortgage Electronic Registration Systems., Inc.*,
766 F.3d 1231 (10th Cir. 2013) ................................................................. 6, 14

*Cattani v. Drake*,
424 P.3d 1131 (Ut. Ct. App. 2018) ................................................................. 15, 16

*Ceiltig, LLC v. Patey*,
347 F. Supp. 3d 976 (D. Utah 2018) ................................................................. 18

*Coroles v. Sabey*,
79 P.3d 974 (Ut. Ct. App. 2003) ................................................................. 14, 15, 18

*Curry v. TD Ameritrade, Inc.*,
662 Fed. Appx. 769 (11th Cir. 2016) ................................................................. 20

*Daniels v. Gamma West Brachytherapy, LLC*,
221 P.3d 256 (Utah 2009) ................................................................. 22

*DBLKM Inc. v. Resolution Trust Corp.*,
969 F.2d 905 (10th Cir. 1992) ................................................................. 13

*Estrada v. Mendoza*,
275 P.3d 1024 (Ut. Ct. App. 2012) ................................................................. 17

4813-0907-2310v2

*Fidelity Nat. Title Ins. Co. v. Worthington*,
    344 P.3d 156 (Ut. Ct. App. 2015) ........................................................................ 14

*Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*,
    417 P.3d 95 (Utah 2016) ........................................................................................ 7

*Harvey v. Ute Indian Tribe of Uintah and Ouray,*
    *Reserv.*, 416 P.3d 401 (Utah 2017) .................................................................... 18

*Hussein v. UBS Bank USA*,
    446 P.3d 96 (Ut. Ct. App. 2019) ........................................................................ 13

*In re Enron Corp. Securities Litigation*,
    540 F. Supp. 2d 759 (S.D. Tex. 2007) ................................................................ 20

*Johnsen and Allphin Properties, LLC v. First American Title Insurance Co.*,
    2016 WL 6459579 (D. Utah Oct. 31, 2016) ...................................................... 2, 7

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ............................................................................ 2

*Mower v. Simpson*,
    278 P.3d 1076 (Ut. Ct. App. 2012) ................................................................ 13, 15

*N.E.L. v.* Gildner,
    780 Fed. Appx. 567 (10th Cir. 2019) .................................................................... 5

*Orlando Millenia, LC v. United Title Services of Utah, Inc.*,
    355 P.3d 965 (Utah 2015) ............................................................................ 2, 7, 9

*Posner v. Equity Title Ins. Agency, Inc.*,
    222 P.3d 775 (Ut. Ct. App. 2009) ...................................................................... 11

*Pyper v. Reil*,
    437 P.3d 493 (Ut. Ct. App. 2018) ........................................................ 9, 10, 11, 12

*Rabo Agrifinance, Inc. v. Bliss*,
    227 F. Supp. 3d 1249 (D. Utah 2017) ................................................................ 14

*Real Estate School of Nevada v. Kapp*,
    2015 WL 4729132 (D. Utah Aug. 10, 2015) ...................................................... 15

*Salt Lake City Corp. v. ERM-West, Inc.*,
    984 F. Supp. 2d 1156 (D. Utah 2013) .............................................................. 6, 13

4813-0907-2310v2

*Schoepe v. Zions First Nat'l Bank,*
   750 F. Supp. 1084 (D. Utah 1990) ....................................................................... 10, 12

*Simpkins v. Wright,*
   2019 WL 4745901 (D. Utah Sep. 30, 2019) ............................................................... 9

*Tavenner v. Talon Group,*
   2012 WL 6022836 (W.D. Wash. Dec. 4, 2012) ....................................................... 12

*Thompson v. Washington Nat'l Ins. Co.,*
   No. 2:14-CV-00660-DN, 2015 WL 8346166 (D. Utah Dec. 8, 2015) ...................... 5

*U.S. Fidelity v. U.S. Sports Specialty*,
   270 P.3d 464 (Utah 2012) ................................................................................... 21, 22

*Willis v. Marshall,*
   401 S.W.3d 689 (Tex. Ct. App. 2013) ..................................................................... 19

**Statutes**

Section 1031 of the Internal Revenue Code ...................................................................... 8

Utah Code Ann. § 62A-3-314 ........................................................................................... 22

**Rules**

Federal Rules of Civil Procedure 9(b) and 12(b)(6) .............................................. passim

iv

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and Local Rule 7-1, Defendants First American Title Insurance Company ("First American") and Kirsten Parkin ("Parkin," and together with First American, the "FA Defendants") move the Court to dismiss all the claims asserted against the FA Defendants in the Complaint with prejudice. In support of their Motion, the FA Defendants state the following:

## INTRODUCTION

The Complaint is a transparent attempt to shake down a title and escrow company (First American) and its employee (Ms. Parkin) for a fraud scheme allegedly committed by others. Plaintiffs' strategy appears to be to sue anyone they believe was connected to certain real estate transactions, regardless of whether Plaintiffs' own allegations support such claims (they do not).

Plaintiffs purchased tenant-in-common ("TIC") interests in real estate from Rockwell Debt Free Properties, Inc. or one of its affiliated companies (collectively "Rockwell"). The Complaint generally alleges that various upstream parties (the "Upstream Parties") steered Plaintiffs toward Rockwell, which then sold Plaintiffs fractional interests in real estate developments that were or would be occupied by Noah Corporation ("Noah"). Noah operated event venues across the country before filing for bankruptcy in 2019.[1] Plaintiffs allege that Rockwell paid a portion of each TIC purchase price as a kickback to Upstream Parties. Plaintiffs contend that the TIC interests were securities and that the sales of the TIC interests amounted to securities fraud.

Despite containing 479 paragraphs, the Complaint fails to link First American and Ms. Parkin to this alleged scheme. The Complaint merely alleges that First American provided

---

[1] *See In Re Noah Corporation*, 19-23840, (Bankr. Utah 2019). By Order dated February 25, 2020, Noah's chapter 11 case was converted to a chapter 7 case.

ordinary title insurance services with respect to the real estate transactions at issue and escrow services.  Plaintiffs' claims against First American are premised on the theory that First American owed them a special duty as a title insurer or escrow agent.  *See, e.g.*, Compl. ¶ 386.  But as a matter of law, a title insurer owes no fiduciary duty to its insureds.  *See Johnsen and Allphin Properties, LLC v. First American Title Insurance Co.*, 2016 WL 6459579 at *1–2 (D. Utah Oct. 31, 2016) (unpublished).  For an escrow agent, a fiduciary relationship is established only when an agreement expressly creates fiduciary duties to some or all parties.  *See Orlando Millenia, LC v. United Title Services of Utah, Inc.*, 355 P.3d 965, 971 (Utah 2015).  Plaintiffs fail to plead the existence of any such agreement between them and First American.  Indeed, the only written agreement Plaintiffs plead concerning escrow was between Plaintiffs and Rockwell.  *See* Compl. ¶ 385.  These flaws are fatal to Plaintiffs' attempt to construct a special duty claim here.

With respect to Ms. Parkin, the Complaint alleges nothing at all.  None of the fifteen (15) Claims for Relief set forth in the Complaint assert any specific act by Ms. Parkin as a basis; all the Complaint does is reference Ms. Parkin twice in its background factual allegations.  *See* Compl. ¶¶ 294, 300.  But her name never appears in any claim for relief.  *See* Compl. ¶¶ 361-478.  The Complaint's failure to identify any conduct by Ms. Parkin as a basis for any claim is, by itself, grounds for dismissing the Complaint against her.  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (mere "labels and conclusions" are insufficient to withstand a Rule 12(b)(6) motion to dismiss); *see also infra* Section VII.   Moreover, Plaintiffs' background factual allegations fail to allege any facts that could give rise to a claim against Ms. Parkin even if Plaintiffs had attempted to articulate one.  Plaintiffs merely allege that two plaintiffs contacted Ms. Parkin about their transactions *after they had already signed contracts with Rockwell*.  *See Compl.*

2

¶¶ 294, 300.  These allegations confirm that Ms. Parkin's alleged contacts with those plaintiffs were not connected with their investments and, in particular, did not cause them to purchase TIC interests from Rockwell.  Plaintiffs could not identify any specific claim against Ms. Parkin because, based on their own allegations, she had nothing to do with their purchases of TIC interests.

The FA Defendants have no place in this dispute.  Plaintiffs' claims invite this Court to go against well-established Utah law and find that title companies and escrow agents have special obligations that have never been recognized by a Utah court.  As a matter of law, the Complaint does not satisfy basic pleading requirements, including the elevated requirements of Rule 9(b).  Accordingly, the Court should dismiss the claims against the FA Defendants with prejudice.

## FACTS

The Complaint purports to allege a securities scheme involving three groups of defendants:

- The "Rockwell Parties"—the Rockwell entities and individuals that work for them.

- The "Upstream Parties"—individuals and entities who referred investors to Rockwell.

- The "Noah Affiliate Parties"—individuals and entities affiliated with Noah, which operated event venues but is not a defendant because of its bankruptcy proceedings.

Over the course of several years, the Rockwell Parties and the Upstream Parties allegedly solicited and sold TIC interests in Rockwell-owned developments that would be leased to Noah for use as event venues.  Plaintiffs contend Rockwell remitted some of the purchase price of each TIC interest to Noah and Upstream Parties in exchange for the referrals.  After the alleged investments were solicited and Plaintiffs had entered contracts with Rockwell to purchase the TIC

interests, Rockwell purchased title insurance from First American and closed escrow through First American, with Ms. Parkin acting as the escrow officer.

With respect to First American and Ms. Parkin, the Complaint is more notable for what it does not say than for what it does.  It contains *no allegations* that any FA Defendant did anything more than provide routine title and escrow services related to the purchase and sale of real estate. Although the Complaint is brought on behalf of sixty-nine (69) Plaintiffs, only two are alleged to have directly spoken or interacted with Ms. Parkin.  *See* Compl. ¶¶ 294, 300.  Although the FA Defendants purportedly assisted in the title and escrow services for all Plaintiffs, the Complaint is silent as to the timing of these services, how they were arranged, how the FA Defendants were compensated, and what the FA Defendants were allegedly obligated to do for each Plaintiff.  And although the Complaint alleges a scheme to sell TIC interests undertaken by twenty-six (26) other defendants, it contains *no allegations* connecting the FA Defendants to any defendant except Rockwell, which merely purchased title and escrow services from First American.  The Complaint contains *no allegation* that the FA Defendants were aware of or participants in the alleged securities scheme.

No Plaintiff alleges a direct relationship with First American.  Indeed, the only allegations even attempting to connect First American to the Rockwell TIC sale transactions is that some of the transactions allegedly involved purchase agreements between Rockwell and one or more Plaintiffs (the "Rockwell Purchase Agreements"), Compl. ¶¶ 344, 385, and that those Rockwell Purchase Agreements imposed obligations on First American (which was not a party to them) with respect to its handling of their funds in escrow, Compl. ¶ 385.

4

But Plaintiffs' selective quotation of a single provision in a single Rockwell Purchase Agreement is misleading. There are numerous Rockwell Purchase Agreements that have differing or unexplained terms that distinguish some Plaintiffs from others—a distinction not disclosed on the face of the Complaint. True and correct copies of the Rockwell Purchase Agreements First American has are attached to this Motion as Exhibits 1–45 and are incorporated herein by reference.[2] As these contracts make clear, there are at least two sets of plaintiffs: some who made TIC purchases through unnamed "Accommodators," and some who did not. Exs. 1–45 ¶¶ 3–3.5.[3] Some Plaintiffs thus had funds transferred to First American only *after* their transactions closed. Exs. 3, 9, 14, 19–21, 27–28, 31–32, 41 ¶ 2.2. For other Plaintiffs, the Complaint alleges nothing about any relationship with First American, if one existed at all.

The Plaintiffs who allegedly transferred money to First American in escrow are the "1031 plaintiffs" who sought to purchase a TIC interest through the use of a tax-deferred "1031 exchange" of like-property. Exs. 1–2, 10–13, 15–18, 22–26, 29–30, 33–40, 42–45 ¶ 3. 1031 exchanges merely required Plaintiffs to transfer their funds and close on the purchase of their interests within a certain period of time *Id.* ¶¶ 3.4, 6. In *479* paragraphs, Plaintiffs nowhere allege

---

[2] Despite relying extensively on the Rockwell Purchase Agreements in the Complaint, Plaintiffs attached none of them to the Complaint. Although First American does not have all Plaintiffs' Rockwell Purchase Agreements, it is attaching those it does have to this Motion. As Judge Nuffer has explained, that is "accepted practice" for motion to dismiss in this Court. *See Thompson v. Washington Nat'l Ins. Co.,* No. 2:14-CV-00660-DN, 2015 WL 8346166, at *3 (D. Utah Dec. 8, 2015); *see also N.E.L. v. Gildner,* 780 Fed. Appx. 567, 571 (10th Cir. 2019) (similar).

[3] Although the properties, parties, amounts, and use (or not) of a 1031 exchange differ in the attached Exhibits, all the Exhibits otherwise contain the same basic contractual language. First American is attaching all 45 Exhibits to prevent Plaintiffs from accusing it of cherry-picking which to include.

that the FA Defendants failed to comply with any 1031 exchange requirement or describe any such alleged failure in detail.

On the basis of these meager allegations, Plaintiffs purport to assert six claims against First American (Breach of Fiduciary Duty, Aiding and Abetting Tortious Conduct, Conspiracy to Engage in Tortious Conduct, Materially Aiding State-Law Securities Fraud, Unjust Enrichment, and Abuse of Vulnerable Adults). Plaintiffs also assert three claims against "all" defendants, presumably including Ms. Parkin. Those claims, which do not mention Ms. Parkin by name and include her (if at all) only by incorporating Plaintiffs' general allegations, are Materially Aiding State-Law Securities Fraud, Unjust Enrichment, and Abuse of Vulnerable Adults.

## ARGUMENT

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Salt Lake City Corp. v. ERM-West, Inc*., 984 F. Supp. 2d 1156, 1159 (D. Utah 2013). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Federal Rules "[d]emand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Parties must thus do more than simply recite the elements of a cause of action. *Burnett v. Mortgage Electronic Registration Systems., Inc.*, 766 F.3d 1231, 1235 (10th Cir. 2013). Legal conclusions masquerading as factual allegations are impermissible. *Iqbal*, 556 U.S. at 679. In determining the viability of a claim, the Court should review the pleading and "draw on its

judicial experience and common sense." *Id.*  Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Id.* at 678.  As demonstrated below, Plaintiffs have failed to allege sufficient facts to support their claims against the FA Defendants.

## I.  PLAINTIFFS' CLAIM AGAINST FIRST AMERICAN FOR BREACH OF FIDUCIARY DUTY FAILS AS A MATTER OF LAW

A claim for breach of fiduciary duty requires a plaintiff to plead the existence of a fiduciary duty, breach of that duty, loss causation (both actual and proximate), and damages. *See Gables at Sterling Village Homeowners Ass'n, Inc. v. Castlewood-Sterling Village I, LLC*, 417 P.3d 95, 109 (Utah 2016).  Here, Plaintiffs assert a breach of fiduciary duty claim against First American but fail to allege the basis for any alleged fiduciary duty, how that duty arose, when and how a breach occurred, or that Plaintiffs suffered damages as a result of the alleged breach. *See* Compl. ¶¶ 383–386, 389, 391–393.  In fact, the Complaint's allegations and strategic omissions demonstrate that no fiduciary duty existed and no breach occurred.

### A.  Plaintiffs Fail to Allege First American Owed Them a Fiduciary Duty

Plaintiffs fail to allege any viable basis for First American owing them a fiduciary duty. As a matter of law, a title insurer owes no fiduciary duty to insureds. *See Johnsen and Allphin Properties, LLC*, 2016 WL 6459579 at *1–2.  For an escrow agent, a fiduciary duty arises only when a written agreement specifically creates fiduciary duties to some or all parties. *See Orlando Millenia, LC*, 355 P.3d at 971.  Plaintiffs fail to plead the existence of any such agreement between any Plaintiffs and First American, which is fatal to this claim.

Plaintiffs allege that whatever the relationship was between them and First American, *it did not include escrow instructions*:  Plaintiffs *affirmatively plead* that "First American did not

provide or require an escrow agreement." Compl. ¶ 344. Plaintiffs nevertheless assert that "First American owed a fiduciary duty to Plaintiffs with respect to the handling of Plaintiff's invested funds, including the duty to ensure that the invested funds were protected for the benefit of the parties and were disbursed according to the agreements between the parties." *Id*. ¶ 386. The *only* basis for this allegation is a single provision in *certain* Rockwell Purchase Agreements relating to the transfers and uses of 1031 funds as between Accommodators, First American, and Rockwell. *Id*. ¶¶ 344, 385.[4] This provision contains no indication that First American contracted to perform escrow services for Plaintiffs, that funds would be held in escrow, or that First American was provided any "instructions" conditioning its disbursal of the funds.

As a matter of law, these Rockwell Purchase Agreements do not create fiduciary duties from First American to any Plaintiffs. As an initial matter, First American is not a party to any Rockwell Purchase Agreements, which should end the matter on its own. A fiduciary duty can only be created by agreement between the entity owing the duty and the entity owed it, not by an agreement to which the entity supposedly owing the duty is not even a party. Indeed, Plaintiffs concede that the supposed fiduciary "relationship" they try to plead is between Rockwell and "Plaintiffs carrying out a tax-deferred exchange of property under Section 1031 of the Internal Revenue Code," Compl. ¶ 385, not between any Plaintiffs and First American.

Moreover, a Rockwell Purchase Agreement only creates an agreement that an un-named third party "Accommodator" will transfer money at varying intervals and that Rockwell may apply that money to a TIC interest *or* construction costs. The Complaint's conclusory allegation that a

---

[4] Although this provision also refers to periodic statements to be made by Rockwell to First American, Plaintiffs make no allegations regarding such statements anywhere in the Complaint.

fiduciary relationship *with First American* arose from Rockwell Purchase Agreements to which First American was not a party (*id.* ¶¶ 118, 127, 225, 300, 343) thus fails as a matter of law.

The Complaint also lacks any allegations connecting First American to Plaintiffs who invested in Rockwell properties without using a 1031 exchange. *See id.* ¶¶ 128-339.  Accordingly, the Complaint does not even purport to plead a basis for any fiduciary relationship with respect to these non-1031 plaintiffs, which independently requires dismissal of this claim.  *See Simpkins v. Wright*, 2019 WL 4745901 at * 3–4 (D. Utah Sep. 30, 2019) (allegations of the existence of a fiduciary duty without identifying to whom it was owed failed to state claim for breach).

### B.   <u>Plaintiffs Have Not Alleged That First American Breached A Fiduciary Duty</u>

Even if the Court were to conclude that Plaintiffs alleged that First American had a fiduciary duty to them (it should not), that duty would be constrained by the escrow function First American performed for all parties in the transactions, which included Rockwell.  *See Orlando Millenia, LC.*, 355 P.3d at 971.  The core of an escrow agent's duty is to follow its escrow instructions.  *See Pyper v. Reil*, 437 P.3d 493, 499 (Ut. App. 2018).  Here, the Complaint does not allege that First American failed to follow escrow instructions in any way.

The alleged "breaches" at issue in the Complaint stem from Plaintiffs' notion that First American mishandled investor funds by transferring them to Rockwell, despite the fact such transfers were specifically authorized (and required) by the Rockwell Purchase Agreements *Plaintiffs cite*.  Compl. ¶ 389.  The Complaint's conclusory allegations that First American breached its duty by failing to "ensur[e] that the funds would be applied to the intended purpose or TIC property," "follow the express requirements of the Purchase and Sale Agreement between Rockwell and the TIC Owners," or "provide or require an escrow agreement protecting the

9

interests of the Plaintiffs in the money," are not just unsupported by any fact alleged against First American in the Complaint, they are affirmatively contradicted by the contracts cited in the Complaint. *Id.*; Exs. 1–45 ¶¶ 2.2, 3.2, 3.4, 6.

Nothing can fix this for Plaintiffs. Escrow agents possess no duty to "detect and halt a potentially fraudulent transaction." *Pyper*, 437 P.3d at 500. Because the theory that they do lies at the heart of Plaintiffs' allegations that First American breached supposed fiduciary obligations, *Pyper* and related case law requires dismissal of this claim against First American. By asserting claims that incorrectly assume First American had a duty to detect and stop fraudulent transactions, Plaintiffs are inviting this Court to ignore well-established Utah law. *See Pyper.* 437 P.3d at 500; *see also Schoepe v. Zions First Nat'l Bank*, 750 F. Supp. 1084, 1086–89 (D. Utah 1990) (recognizing that Utah courts have applied only a limited agency relationship between an escrow agent and the parties to a transaction based on the instructions given to the agent).

Under well-settled Utah law, "an escrow agent owes a fiduciary duty to *both* parties of a transaction" and the scope of that duty is defined by the escrow instructions. *Pyper*, 437 P.3d at 499 (emphasis added). Plaintiffs concede that the Rockwell Purchase Agreements set forth how First American was required to treat 1031-investor funds. Compl. ¶ 385. That agreement allowed Rockwell to request funds from First American if Rockwell sought to apply them toward a TIC interest *or* construction costs. *Id*.

The use of "or" in the Rockwell Purchase Agreements confirms that First American acted in accordance with the escrow instructions by transmitting 1031 investor money for the purchase of a TIC interest and thus could not be deemed to have violated any fiduciary duty by effecting such transfers. Plaintiffs even allege that First American followed precisely these instructions. *Id*.

¶ 118.  "It would be illogical" for First American to be subject to a breach of fiduciary duty claim based on following instructions Plaintiffs concede it was obligated to follow.  *See Posner v. Equity Title Ins. Agency, Inc.*, 222 P.3d 775, 781–82 (Ut. Ct. App. 2009), *abrogated on other grounds, Coroles v. State*, 349 P.3d 739 (Utah 2015).  Indeed, the Rockwell Purchase Agreements *required* First American to transfer all funds regardless of whether they were to be used for construction in order to guarantee closing by the date specified in the contract.  Exs. 1–45 ¶¶ 3.4, 6.

Moreover, the Complaint also fails to allege how First American was to handle funds provided by non-1031 plaintiffs.  The Rockwell Purchase Agreements only contain instructions on handling funds received from an "Accommodator," despite the fact that many of the agreements *identify no Accommodator at all*.  The Complaint makes it clear that "Accommodator" is a defined term, but a closer inspection of the Rockwell Purchase Agreements demonstrates that no Accommodator was used for numerous transactions.  Compl. ¶ 385.  In at least 11 of the Rockwell Purchase Agreements First American has copies of, the Plaintiffs listed "[N/A]" where an Accommodator was to be identified.  *See* Exs. 3, 9, 14, 19–21, 27–28, 31–32, 41 ¶ 3.1 (identifying no "Accommodator").  Hence, for those Plaintiffs whose investments were not exchanged in this manner, Plaintiffs allege nothing about how First American was supposedly to handle their funds.  Without alleging any agreement between First American and these non-1031 Plaintiffs regarding how such funds were to be handled, there can be no basis for any claimed breach of fiduciary duty.  *See Pyper*, 437 P.3d at 499.

Plaintiffs fail to allege that First American was obligated to do anything other than what it did.  And as a matter of law, Plaintiffs cannot allege that First American owed Plaintiffs a fiduciary

duty to ensure that funds were not diverted by Rockwell for some other purpose. *Pyper*, 437 P.3d at 500. Plaintiffs have thus not alleged a breach of any fiduciary duty.

### C. The Complaint Does Not Allege that First American's Alleged Breaches Directly and Proximately Caused Plaintiffs' Injuries

The Complaint also fails to allege facts demonstrating that any alleged breach of fiduciary duty by First American directly and proximately caused Plaintiffs any injury. Instead, Plaintiffs make a single conclusory allegation that First American, the Rockwell Parties, and Bowser collectively injured Plaintiffs. Compl. ¶ 392. That is insufficient to plead a breach of fiduciary duty claim.

Rather, Plaintiffs must plead that First American's alleged breach of fiduciary duty directly and proximately caused Plaintiffs injury. *See Schoepe*, 750 F. Supp. at 1086; *see also Tavenner v. Talon Group*, 2012 WL 6022836 at *4 (W.D. Wash. Dec. 4, 2012) (unpublished) (same). Here, the Complaint nowhere alleges that First American deviated from the instructions it received or exceeded any contractual authority. As a result, the complaint fails to allege that First American damaged Plaintiffs in any way, whether considered "directly" or "proximately." Accordingly, plaintiffs' fiduciary duty claim fails for this additional reason.

## II. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FIRST AMERICAN FOR "AIDING AND ABETTING TORTIOUS CONDUCT"

Plaintiff's Sixth Claim alleges that First American aided and abetted allegedly tortious conduct by more than twenty (20) other defendants across four categories of alleged torts—fraud/negligent misrepresentation (Claim 1), breach of fiduciary duty (Claims 2 and 4), constructive fraud (Claim 3), and conversion/fraudulent misappropriation (Claim 5). *See* Compl.

¶ 401.  This is a remarkable allegation given that the Complaint only alleges that First American dealt with *one* defendant (Rockwell).  *Id*. ¶ 404.

This claim fails as a matter of law for several reasons.  First, aiding and abetting any tort requires "knowing participation" in that tort.  *Hussein v. UBS Bank USA*, 446 P.3d 96, 108 (Ut. Ct. App. 2019) (knowing participation required to allege aiding and abetting breach of fiduciary duty).  But the Complaint fails to allege that First American did anything that could be called "knowing participation" in Rockwell's allegedly tortious conduct, much less the allegedly tortious conduct of the other defendants, as required to state an aiding and abetting claim.  *See Mower v. Simpson*, 278 P.3d 1076, 1086–88 (Ut. Ct. App. 2012) (dismissing allegation of aiding and abetting breach of fiduciary duty where complaint failed to allege defendant knew of the underlying conduct that gave rise to the breach).

All the Complaint even attempts to allege is that First American was generally familiar with the operations of Rockwell—allegations that are limited to a single paragraph of the *479 paragraph* Complaint.  Compl. ¶ 404.  Plaintiffs' vague allegation that First American was familiar with Rockwell's operations falls well short of the standard necessary to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678; *see also Salt Lake City Corp.*, 984 F. Supp. 2d at 1159.  Not only does paragraph 404 fail to plead that First American knew Rockwell was engaging in any tortious conduct, it fails to allege what, if anything, First American knew about any other defendants' alleged conduct.

Plaintiffs also allege no conduct by First American that could be deemed "substantial assistance" in the tortious acts of other defendants.  "Substantial assistance" is a required element of an aiding and abetting claim.  *See DBLKM Inc. v. Resolution Trust Corp.*, 969 F.2d 905, 909

13

(10th Cir. 1992). Here, nothing about First American's alleged conduct could be considered "substantial assistance," especially given that First American was not engaged to deal with the Plaintiffs until *after* Rockwell Purchase Agreements were executed. *See Fidelity Nat. Title Ins. Co. v. Worthington*, 344 P.3d 156, 161–162 (Ut. Ct. App. 2015) (rejecting aiding and abetting claim where complaint only alleged defendant "actively participated" in tort).

In sum, Plaintiffs fail to allege First American did anything related to any allegedly tortious activity by other defendants. *See Burnett*, 706 F.3d at 1240 (upholding dismissal where appellate court could not tell "which defendant is alleged to have done what," and the allegations included "a litany of diverse and vague alleged acts."). In the absence of such allegations, Plaintiffs' claim for Aiding and Abetting Tortious Conduct must be dismissed as to First American. In addition, as explained further below, the claim fails as to each of the specific torts to which it purports to apply.

A.    **The Sixth Claim for Relief Fails to Allege Aiding and Abetting Fraud and Negligent Misrepresentation**

"Utah courts have not yet recognized a claim for aiding and abetting fraud." *Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1252 n.1 (D. Utah 2017). Plaintiffs' claim fails as a matter of law for that reason alone. In addition, the Complaint's factual allegations do not satisfy Rule 9(b)'s pleading requirements for fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Ci*v*. P. 9(b). Where an allegation of fraud or misrepresentation is a predicate to an aiding and abetting claim, Rule 9(b) also applies. *See Coroles v. Sabey*, 79 P.3d 974, 983 (Ut. Ct. App. 2003) (dismissal of aiding and abetting fraud and negligent misrepresentation was justified where complaint failed to satisfy Rule 9(b) pleading requirements).

Here, Plaintiffs' allegations are anything but particular, and fail to plead that First American aided or abetted any alleged fraud or negligent misrepresentation. For example, the aiding and abetting claim simply incorporates all the preceding paragraphs, and the paragraphs it incorporates simply list the elements of the torts First American supposedly aided and abetted. That violates Utah law: The court in *Coroles* determined that this exact style of pleading aiding and abetting fraud was "unacceptable" precisely because such a broadside of allegations "does not identify the relevant surrounding facts … with sufficient particularity to show what facts are claimed to constitute the charges." *Coroles*, 79 P.3d at 985. Plaintiffs' aiding and abetting fraud and negligent misrepresentation claim thus fails for the same reasons set forth in *Coroles*.

**B.   The Sixth Claim for Relief Fails to Allege Aiding and Abetting Breach of Fiduciary Duty**

To allege aiding and abetting a breach of fiduciary duty, Plaintiffs must allege that First American knowingly participated in a fiduciary's breach of its duty to Plaintiffs and that damages resulted. *See Mower*, 278 P.3d at 1087–88. Plaintiffs must allege not "only knowledge of a relationship and interactions, but also *actual* knowledge of actions related to the underlying breach of the duty." *Real Estate School of Nevada v. Kapp*, 2015 WL 4729132 at * 4 (D. Utah Aug. 10, 2015) (emphasis added) (dismissing claim for failure to allege knowing participation). Plaintiffs must also allege substantial assistance or active collusion by First American. *See Cattani v. Drake*, 424 P.3d 1131 (Ut. Ct. App. 2018) (providing legal advice to trustee did not constitute substantial assistance). Plaintiffs fail to allege that First American knew of any other defendant's alleged duty, knew that it was supposedly assisting in any breach, or substantially assisted in any breach. Plaintiffs thus fail to allege aiding and abetting any breach of any fiduciary duty.

15

All Plaintiffs allege is that First American was familiar with the business of Rockwell; they allege nothing else about First American's knowledge regarding Rockwell's operations or obligations. *See* Compl. ¶¶ 294, 404. Plaintiffs also allege nothing about what knowledge, if any, First American supposedly had regarding the relationships between and among the other defendants and Plaintiffs. These skeletal allegations cannot support a claim that First American knew it was assisting any defendant in breaching a fiduciary duty.

Similarly, First American's conduct of escrow closings, issuance of title insurance, receipt and disbursal of funds, and carrying out alleged instructions from Rockwell are ordinary course matters for a title insurance or escrow company and thus cannot have constituted substantial assistance or active collusion. The Utah Court of Appeals' decision in *Cattani* made this clear in holding that "the plaintiff must show that the [] defendant rendered 'substantial assistance' *in the breach of duty itself*, and not merely assistance to the person committing the breach through other conduct." 424 P.3d at 1145 n.13 (emphasis added). In other words, ordinary course business support does not constitute substantial assistance for purposes of aiding and abetting claims. Because that is all Plaintiffs allege with respect to First American, Plaintiffs have failed to allege that First American aided and abetted any breach of fiduciary duty.

### C.     The Complaint Fails to Allege Aiding and Abetting Conversion

Utah has not recognized a claim for aiding and abetting conversion, and thus Plaintiffs' claim fails for that reason alone. *See Albright v. Attorney's Title Ins. Fund*, 2008 WL 2952260 at *12 (D. Utah Jul. 26, 2008). Even if such a claim were cognizable, the Complaint fails to allege facts demonstrating First American aided and abetted such a tort. There is not a single allegation that alleges First American knew of, much less participated in (substantially or otherwise), a

scheme to convert Plaintiffs' funds.  Because Plaintiffs fail to allege that First American adopted,

joined, or conspired in the allegedly fraudulent schemes in which plaintiffs claim they lost money,

the claim for aiding and abetting conversion must be dismissed.  *See id*.

## III.   THE SEVENTH CLAIM FOR RELIEF FAILS TO STATE A CLAIM AGAINST FIRST AMERICAN FOR CIVIL CONSPIRACY

The Complaint's Seventh Claim for Relief alleges that First American (but not Ms. Parkin)

engaged in a civil conspiracy to commit tortious conduct.  *See* Compl. ¶¶ 408-413.  "To establish

a claim of civil conspiracy, five elements must be shown: (1) a combination of two or more

persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of

action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."

*Estrada v. Mendoza* 275 P.3d 1024, 1029 (Ut. Ct. App. 2012).

Plaintiffs come nowhere near meeting this standard, offering nothing more than this bare

legal conclusion asserting that a conspiracy existed:

> With respect to the tortious conduct alleged in the First through Fifth
> Claims for Relief above, Defendants entered into a combination of
> two or more persons who reached a meeting of the minds to
> accomplish the object of the tortious behavior, namely acquiring and
> using funds from Plaintiffs' investment in the Noah TIC Program.

Compl. ¶ 409.  Plaintiffs cannot plead a civil conspiracy claim by simply asserting that the

defendants collectively agreed to "accomplish the object of the tortious behavior."  *See Twombly*,

550 U.S. 544, 556–57 (2007).

Moreover, because Plaintiffs have not alleged that First American breached any fiduciary

duty, the claim for conspiracy to breach fiduciary duty fails as well.  Plaintiffs' failure to allege

any specific, overt act that First American supposedly took in furtherance of the alleged conspiracy

dooms this claim.  *See Estrada*, 275 P.3d at 1029 ("Where plaintiffs have 'not adequately pleaded

any of the basic torts they allege ... dismissal of their civil conspiracy claim' is appropriate."); *see also Coroles*, 79 P.3d at 984 (dismissing conspiracy claim to the extent plaintiff failed to plead the underlying tort).  The torts underlying the conspiracy claim are the "First through Fifth Claims for Relief."  Compl. ¶ 410.  Of those five, the only tort asserted against First American is the breach of fiduciary duty claim (Claim Four).  *Id.* ¶¶ 361–399.  Because that claim fails as to First American, the conspiracy claim based on it must fail, as well.

The Complaint also fails to plead a "meeting of the minds."  Although the Complaint alleges that there were communications and/or actions that expressly or implicitly indicate agreement (Compl. ¶ 410), that is not enough to plead a meeting of the minds.  *See, e.g.*, *Ceiltig, LLC v. Patey*, 347 F. Supp. 3d 976, 985–86 (D. Utah 2018) (communications with other defendants and parallel actions with other defendants are not evidence of an agreement); *Harvey v. Ute Indian Tribe of Uintah and Ouray Reserv.*, 416 P.3d 401, 425 (Utah 2017) (dismissing claim where plaintiff failed to "plead some kind of meeting of the minds between [defendant] and the tribal officials to harm [plaintiff] in an unlawful manner" and merely following a direction does not establish agreement).  Accordingly, Plaintiffs' Seventh Claim fails for this additional reason.

## IV.   THE THIRTEENTH CLAIM FOR RELIEF FAILS TO STATE A CLAIM AGAINST THE FA DEFENDANTS FOR "AIDING AND ABETTING" STATE SECURITIES FRAUD

In their Thirteenth claim for relief, Plaintiffs allege that all Defendants collectively acted to aid and abet state law securities fraud violations in "at least" 16 different states.  *See* Compl. ¶ 463. This claim fails for several reasons.

*First*, the Complaint contains no allegations of conduct by First American or Ms. Parkin that could possibly be considered "aiding and abetting" securities fraud.  Indeed, the Thirteenth

18

Claim contains no mention of any FA Defendant by name or even by implication.  Instead, the

claim just lists the Rockwell Parties and the Upstream Parties as the "Liable Persons" for purposes

of the securities fraud claims.  Compl. ¶ 460.  The Complaint continues, alleging that:

> … the Defendants identified in this Thirteenth Claim for Relief
> materially aided the Liable Persons in violating the applicable state
> securities laws by conduct including but not limited to the following
> … Defendants were officers, directors, or other control people of
> entities that are Liable Persons.

Compl. ¶ 461(a).  The FA Defendants are not alleged to be officers, directors, or "control persons"

of any Rockwell Parties or Upstream Parties.

None of the other generalized and conclusory allegations in this claim otherwise purport to

relate to any FA Defendant.  Instead, they generally assert that unspecified "Defendants" "provided

information, services, labor or funds that significantly advanced the Liable Persons' unlawful

conduct or purposes with respect to Plaintiffs" or "otherwise engaged in conduct materially aiding

the Liable Persons in accomplishing the unlawful sale of securities to the Plaintiffs."  *Id.* ¶ 461(b)–

(c).  Plaintiffs similarly assert the legal conclusion, without any factual support, that "Defendants

did not act in good faith, and Defendants knew or acted in reckless disregard of the facts in carrying

out their conduct relating to the sale of securities to the Defendants."  *Id.* ¶ 462.  Such generic and

conclusory allegations do not satisfy *Twombly*.  This is especially so given that the only specific

conduct alleged about any FA Defendant occurred after the TIC sales at issue.  *E.g.,* Compl. ¶¶

294, 300.

Plaintiffs also fail to allege core elements required in each of the 16 jurisdictions mentioned

in the Complaint to support a claim for aiding and abetting securities fraud.  For example, Plaintiffs

fail to allege that the FA Defendants were aware of any underlying securities violation, a required

element under Texas law.  *See Willis v. Marshall*, 401 S.W.3d 689, 704 (Tex. Ct. App. 2013) (no

aiding and abetting Texas securities violation where plaintiff failed to show defendant was aware

of underlying securities violation).  Plaintiffs also fail to allege that the FA Defendants' services

"materially aided or participated" in the sale of a security, which also dooms this claim.  *See Curry

v. TD Ameritrade, Inc.*, 662 Fed. Appx. 769 (11th Cir. 2016) (affirming dismissal of aiding and

abetting claim under Georgia law where defendant did not "materially aid or participate" in the

sale of securities and only acted according to its contractual obligations as a broker-dealer

custodian, i.e., in the ordinary course of its business).

  In addition, Plaintiffs fail to allege how the FA Defendants acted as more than "mere

participa[nts]" in the underlying transaction, which is required to state a claim of aiding and

abetting under Ohio law.  *See Boyd v. Kingdom Trust Company*, 113 N.E.3d 470, 473 (Ohio 2018)

(bank acting as depository intermediary was a mere participant in the transaction and did not aid

in the sale of securities); *see also Boomershine v. Lifetime Capital, Inc.*, 2008 WL 54803, at *2

(Ct. App. Ohio Jan. 4, 2008) (bank acting as escrow agent did not aid in sale of securities).

Plaintiffs also assert aiding and abetting securities liability in states where no such liability exists

as a matter of law.  *See e.g., Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158

Cal.App.4th 226, 249 (2007) (noting that § 25403 (the section of California's Corporate Securities

Law cited by Plaintiffs) does not extend to enforcement in civil actions).

  Plaintiffs also do not plead an underlying securities fraud claim with the particularity

required by each state.  Fed. R. Ci*v*. P. 9(b).  Plaintiffs cannot be permitted to state a claim that

First American aided and abetted state law securities fraud in 16 different jurisdictions without

identifying a single location where anyone knowingly engaged in state law securities fraud.  On

20

this basis alone, Plaintiffs' claims must be dismissed.  *See, e.g.*, *In re Enron Corp. Securities Litigation*, 540 F. Supp. 2d 759, 797 (S.D. Tex. 2007) (plaintiffs failed to state a claim for state securities fraud in Texas where they did not allege "which statements, identity of speaker(s), when and where the statements were made, why the statements are fraudulent, what material facts were omitted and where, and why these omissions made the representations misleading.").

## V.  THE FOURTEENTH CLAIM FOR RELIEF FAILS TO STATE A CLAIM AGAINST THE FA DEFENDANTS FOR UNJUST ENRICHMENT

The Fourteenth Claim for Relief alleges that all defendants were unjustly enriched as a result of their alleged conduct.  Compl. ¶¶ 465–472.  To establish a claim for unjust enrichment, Plaintiffs must show (1) a benefit conferred, (2) an appreciation or knowledge by the conferee of the benefit, and (3) the acceptance or retention of the benefit by the conferee under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.  *See U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012).

Plaintiffs fail to allege any benefit conferred on the FA Defendants, how the FA Defendants appreciated any such benefit, and how the FA Defendants supposedly "inequitably" retained any such benefit.  Indeed, this claim does not even mention First American or Ms. Parkin by name. Compl. ¶¶ 465–472.  Although Plaintiffs' allegations concerning First American generally refer to the title and escrow services it provided, they *never once* allege that any FA Defendant received or retained any benefit *from any Plaintiff*.  In fact, the Complaint contains no allegation that an FA Defendant was compensated at all.  There cannot be a viable unjust enrichment claim in such circumstances.

Even if the Court were to indulge the inference that the FA Defendants received some benefit, the Complaint's sole allegation regarding its "inequity" is the conclusory assertion that

21

retaining said benefit would be unjust "under the circumstances."  Compl. ¶ 470.  That is insufficient to state a claim for unjust enrichment as a matter of law.  *See U.S. Fidelity*, 270 P.3d at 468.  For these reasons, Plaintiffs' Fourteenth Claim for relief should be dismissed as to the FA Defendants.

## VI.   THE FIFTEENTH CLAIM FOR RELIEF FAILS TO STATE A CLAIM AGAINST THE FA DEFENDANTS FOR "ABUSE OF VULNERABLE ADULTS"

Plaintiffs' Fifteenth Claim attempts to allege a claim for abuse of vulnerable adults. Compl. ¶ 474.  Although Plaintiffs seek to rely on "*prima facie* tort or negligence *per se*," (Compl. ¶ 477), these common law theories are displaced by an existing Utah statute, Utah State Code Section 62A-3-314.  Where a statute comprehensively addresses the subject matter of a claim, underlying common law claims are preempted.  *See Daniels v. Gamma West Brachytherapy, LLC*, 221 P.3d 256, 270 (Utah 2009).  Section 62A-3-314 incorporates and thereby addresses the entirety of the claim Plaintiffs seek to bring.  That statute requires Plaintiffs to allege the elements specified by the related Utah criminal statute to state a claim, which Plaintiffs have not done.  This claim is thus preempted and should be dismissed.

Assuming, *arguendo*, that Plaintiffs could proceed with this claim in any form, the Complaint fails to state a claim against the FA Defendants.  Plaintiffs nowhere reference First American or Ms. Parkin at all in connection with this claim.  Instead, Plaintiffs generally allege that *all* Defendants "abused [their] position of trust and confidence" and were "motivated by purposes other than the well-being of the Plaintiffs."  Compl. ¶¶ 475–476.  The FA Defendants would deny these allegations in an answer, but even taken as true for the purposes of a motion to dismiss, the allegations are insufficient to state a claim.  *See* Utah Code Ann. § 62A-3-314 (listing required allegations as including, *inter alia*, knowledge of the offense and intent to deprive

defendant of property or assets).  Because Plaintiffs fail even to try to plead facts meeting the requisite statutory criteria, this claim must be dismissed for this reason as well.

## VII.   THE COMPLAINT FAILS TO ALLEGE FACTS TO SUPPORT ANY CLAIM AGAINST MS. PARKIN IN HER INDIVIDUAL CAPACITY.

For the reasons stated above, the Court should dismiss all claims against First American and Ms. Parkin.  But even if the Court were to determine that any claim against First American could proceed, it should still dismiss all claims against Ms. Parkin.  Notably, Plaintiffs do not allege the same claims against First American and Ms. Parkin.  Although Plaintiffs specifically identify First American as a defendant in three claims, *none* of those claims are asserted against Ms. Parkin.  This underscores Plaintiffs' inability to plead any viable claims against Ms. Parkin.[5] Rather than including Ms. Parkin as a named defendant in the same claims it asserts against First American, Plaintiffs engage in dragnet-style pleading by including Ms. Parkin in three claims asserted against all defendants.  Those three claims are aiding and abetting securities fraud (Compl. ¶¶ 459-464), unjust enrichment (Compl. ¶¶ 465-472), and abuse of vulnerable adults (Compl. ¶¶ 473-478).

Plaintiffs' attempt to shoehorn Ms. Parkin into three claims levied against all defendants is based entirely on two paragraphs in the Complaint's background factual allegations.  Although those allegations consist of 266 numbered paragraphs, Ms. Parkin's name appears just two paragraphs (¶ 294 and ¶ 300).  These two paragraphs allege that Ms. Parkin made representations to only two Plaintiffs, including alleged representations that "everyone was happy with their Noah

---

[5] The Complaint specifically identifies First American as a defendant in Plaintiffs' claims for (1) Breach of Fiduciary Duty re Escrowed Funds (Compl. ¶¶ 383-393), (2) Aiding and Abetting Tortious Conduct (Compl. ¶¶ 400-407), and (3) Conspiracy to Engage in Tortious Conduct (Compl. ¶¶ 408-413).  None of those claims identify Ms. Parkin as a defendant.

TIC investments" (¶ 294) and that money would be paid out when construction was completed (¶ 300).

Even if those allegations are true, they fall far short of the pleading standards necessary to justify letting any claims proceed against Ms. Parkin in her individual capacity.  The same arguments set forth above that justify dismissing the claims for aiding and abetting securities fraud, unjust enrichment, and abuse of vulnerable adults against both First American and Ms. Parkin likewise justify dismissing them as to Ms. Parkin.  For example, with respect to the unjust enrichment claim, Plaintiffs fail to allege that *Ms. Parkin* received or retained *any* benefit from *any* Plaintiff.  Indeed, the three claims asserted against Ms. Parkin fail to specify how Ms. Parkin's conduct gave rise to or was related in any way to any of those claims.  Her name is completely absent from those claims and only "appears" by virtue of Plaintiffs' boilerplate incorporation of all of the Complaint's preceding paragraphs.

That incorporation—without any effort by Plaintiffs to explain how Ms. Parkin's alleged conduct justifies any claim against her in her individual capacity—is precisely the kind of vague "unadorned, the-defendant-unlawfully-harmed-me accusation" that requires dismissal.  *Iqbal*, 556 U.S. at 678.  Accordingly, all claims against Ms. Parkin should be dismissed with prejudice even if the Court determines that any claim could proceed against First American.

## CONCLUSION

For all the foregoing reasons, the FA Defendants respectfully ask this Court to dismiss, with prejudice, all claims asserted against First American and Ms. Parkin, and for such other and further relief as this Court may deem just and proper.

Respectfully submitted this 3rd day of March, 2020.

/s Erik A. Christiansen
ERIK A. CHRISTIANSEN, USB # 7372
JEFFREY C. COREY, USB # 09938
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

DOUGLAS W. HENKIN
DENTONS LLP
1221 Avenue of the Americas
New York, New York  10020-1089
Tel: (212) 768-6832
douglas.henkin@dentons.com
(pro hac vice application pending)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March, 2020, a true and correct copy of MOTION TO DISMISS BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KRISTEN PARKIN was served on all counsel of record by electronically filing it through the Court's electronic filing system.

*/s/ Jeffrey C. Corey*

4813-0907-2310v2