Scott D. Sweeney, (Utah Bar #15070)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
1225 17th Street, Suite 2750
Denver, CO 80202
Tel: 303.572.5300/Fax: 303.572.5301
Scott.Sweeney@wilsonelser.com
*Attorneys for Defendants Edmund & Wheeler,*
*John D. Hamrick, Chris Brown, TM 1031 Exchange,*
*and Tim Marshall*

## IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| Christopher C. Fucci, an individual; *et al.*,<br><br>    *Plaintiffs*<br><br>vs.<br><br>William Bowser, an individual; *et al.*,<br><br>    *Defendants* | **DEFENDANTS EDMUND & WHEELER, INC., JOHN D. HAMRICK, CHRIS BROWN TM 1031 EXCHANGE AND TIM MARSHALL'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) & 12(b)(6)**<br><br>Case No. 2:20-CV-00004-DBB<br><br>District Judge David Barlow<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS EDMUND & WHEELER, INC. ("E&W"), JOHN D. HAMRICK, and CHRIS BROWN (collectively, the "EWI Defendants"), and DEFENDANTS TM 1031 EXCHANGE and TIM MARSHALL (collectively, the "TM Defendants") by and through their attorneys, respectfully submit this Motion to Dismiss Plaintiff's Complaint (ECF 2, hereafter "Complaint") pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ("Motion").

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................1

**FACTUAL BACKGROUND** ...........................................................................2

**ARGUMENT** .................................................................................................5

I.    **THE COURT LACKS PERSONAL JURISDICTION OVER THE EWI DEFENDANTS AND THE TM DEFENDANTS** ...........................................6

II.    **MANY PLAINTIFFS FAIL TO ALLEGE ANY INTERACTION WITH THE EWI DEFENDANTS OR THE TM DEFENDANTS, AND THUS THEIR CLAIMS AGAINST THESE DEFENDANTS MUST BE DISMISSED.** ..............................................................................10

III.    **PLAINTIFFS FAILED TO STATE A CLAIM FOR SECURITIES FRAUD (NINTH CLAIM FOR RELIEF) OR COMMON LAW FRAUD (FIRST AND THIRD CLAIMS FOR RELIEF) UNDER F.R.C.P. 9 AND THE PSLRA** ...............................................................12

      **A. Standard of Review** ..........................................................................12

      **B. Argument** .........................................................................................15

IV.    **PLAINTIFFS FAILED TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY (SECOND CLAIM FOR RELIEF)** .............................20

V.    **PLAINTIFFS FAILED TO STATE A CLAIM FOR AIDING AND ABETTING TORTIOUS CONDUCT (SIXTH CLAIM FOR RELIEF)** ...........................................................................................21

VI.    **PLAINTIFFS FAILED TO STATE A CLAIM FOR CONSPIRACY (SEVENTH CLAIM FOR RELIEF)** ................................................21

VII.    **PLAINTIFFS FAILED TO STATE A CLAIM FOR SALE OF UNREGISTERED SECURITIES (EIGHTH CLAIM FOR RELIEF)** ........23

VIII.    **PLAINTIFFS FAILED TO STATE A CLAIM FOR CONTROL PERSON LIABILITY (TENTH CLAIM FOR RELIEF)** .............................24

IX.    **PLAINTIFFS FAILED TO STATE A CLAIM FOR STATE LAW SECURITIES VIOLATION AND/OR FRAUD (ELEVENTH, TWELFTH, AND THIRTEENTH CLAIMS FOR RELIEF)** ......................26

**X.      PLAINTIFFS FAILED TO STATE A CLAIM FOR ABUSE OF VULNERABLE ADULTS (FIFTEENTH CLAIM FOR RELIEF)**.............27

**CONCLUSION** ...............................................................................................28

## PRELIMINARY STATEMENT

Plaintiffs, 51 individuals or family entities, assert claims against 26 named Defendants, alleging violations of federal securities laws and a host of state law claims, based on Plaintiffs' purchase of Tenant-in-Common interests (hereafter "TIC interests") in real property located in Florida or Ohio. They allege a wide-ranging Ponzi scheme perpetrated primarily by Noah Corporation ("Noah")[1], Noah's founder and CEO, William Bowser, Rockwell Debt Free Properties, Inc., and other Rockwell-related entities and employees. Plaintiffs maintain that Defendants conspired to sell them TIC interests in event venues to be leased by Noah based upon false promises that Noah was a reputable company and that the TIC interests represented a sound investment, when in fact, they were allegedly diverting investor funds for other purposes.

Caught in the middle of this financial nightmare are the EWI Defendants and TM Defendants. The EWI Defendants reside and operate in New Hampshire and Vermont, and had narrow and limited involvement in a subset of the transactions at issue in this action, which themselves represent only a small fraction of the TIC transactions sold by Rockwell over many years. The TM Defendants reside and operate in California and had even less interaction and involvement in any of the allegations asserted in the Complaint.

The EWI Defendants and the TM Defendants had no knowledge of, and did not participate in, any conspiracy to defraud TIC investors. Regrettably, however, they have been placed on a co-equal footing with the other Defendants in this action. Their alleged culpability is neither supported by the allegations contained in the Complaint nor by reality. The law does not permit

---

[1] Plaintiffs presumably have not named Noah as a Defendant due to Noah's pending bankruptcy, filed May 28, 2019.

peripheral actors like the EWI Defendants and the TM Defendants to be held liable based solely on conclusory allegations, speculation, and guilt by association.

As stated more fully herein, this Court lacks jurisdiction over the EWI Defendants and the TM Defendants, and Plaintiffs have failed to plead that these Defendants may be held liable for violating securities laws or for engaging in common law torts.  For the reasons that follow, the EWI Defendants and the TM Defendants should be dismissed from this action. Further, most of the Plaintiffs allege no interaction with the EWI Defendants or TM Defendants whatsoever, and thus at minimum, to the extent those Plaintiffs maintain claims against these Defendants, those claims must similarly be dismissed.

## FACTUAL BACKGROUND

For purposes of this Motion only, the EWI Defendants and TM Defendants assume the following factual allegations in the Complaint to be true.

1. Plaintiffs are individuals or family entities/trusts located throughout the United States who purchased tenant-in-common ("TIC") interests in real estate in Ohio or Florida from Rockwell Debt Free Properties, Inc. (or a Rockwell "affiliated company"), which was leased to Noah Corporation ("Noah"). [Complaint, ¶¶ 1, 4, 5, 12.]

2. Rockwell provided a $6 million loan to Noah in early 2017. [Id. at ¶ 8.]

3. Edmund & Wheeler, Inc. ("EWI") is a New Hampshire corporation with its principal place of business in New Hampshire. [Id. at ¶ 79.]

4. Defendant John D. Hamrick ("Hamrick") is a resident of New Hampshire. [Id. at ¶ 80.]

5.      Defendant Chris Brown ("Brown") is a resident of New Hampshire.[2] [Id. at ¶ 81.]

6.      Defendant TM 1031 Exchange Inc. ("TM 1031") is a California corporation with its principal place of business in California. [Id. at ¶ 85.]

7.      Defendant Tim Marshall ("Marshall") is a California resident. [Id. at ¶ 86.]

8.      Plaintiffs who allege any contact with Mr. Hamrick include: Chris Fucci (a Vermont resident), Ambleside Park, Inc. (a New Hampshire resident), Nina Johannessen (a New Hampshire resident), W. Mark McKoy (a Florida resident), Linda and Martin Tierney (Vermont residents), Lawrence and Russell Talbot (California residents), Thomas Funk (Vermont resident), and Harvey Paul (Maine resident). Complaint ¶¶ 13, 14, 16, 27, 32, 41, 56, 60.

9.      Plaintiffs who allege any contact with Mr. Brown include: Anson and Genevieve Smith (New Hampshire residents), Gary Neil (Vermont resident), Linda and Martin Tierney (Vermont residents), Thomas Funk (Vermont resident), and Theodore and Dena Keith (Vermont residents). Complaint ¶¶ 163 – 165, 177 – 180, 205 – 207, 279 – 281, 327 – 328.

10.     Plaintiffs who allege any contact with Mr. Marshall include: Eugene and Susan Spiritus (California residents), E&H Jackson, LLC (a Florida LLC with a principal place of business in New York)[3], Liem Quang Le (Missouri resident), Bernie Bromberg (California resident), The Real Mint, LLC (a Virginia LLC with a principal place of business in Virginia), Norman and Armenay Merritt (New York residents), and Craig Cousins (California resident). Complaint ¶¶ 143 – 144, 156 – 157, 166, 172 – 174, 210, 259 – 260.

---

[2] Defendants note that this allegation is untrue, as Brown is actually a resident of Vermont, but all factual allegations in the Complaint shall be taken as true, and his residency in Vermont versus New Hampshire has no significant impact on this Motion.

[3] Defendants acknowledge the domicile of a limited liability company is not based on the state of its formation or its principal place of business, but is based on the domicile of its members. However, the Complaint contains no allegations regarding the domicile of any LLC plaintiff's members.

11. Rockwell was the exclusive seller of the TIC interests at issue in Plaintiffs' Complaint. [Id. at ¶ 113.]

12. Rockwell provided written marketing materials to all of the Plaintiffs, including a brochure and property-specific summaries, which provided a table of average returns, and which stated that the TIC interests were not securities. [Id. at ¶ 121 – 123.]

13. Defendants Hamrick, Brown, and Marshall made the following representations to certain Plaintiffs:

    a. An investment in a Noah TIC would be a "safe," "good," or "suitable" investment; [Id. at ¶¶ 113, 129 – 132, 139 – 141, 143, 144, 146, 156 – 157, 165, 172, 177, 183, 206, 259, 327, 329.]

    b. Noah had never missed a rent payment; [Id. at ¶¶ 113, 129 – 132, 139 – 141, 143, 144, 146, 178, 183, 328.]

    c. Noah provided a corporate guaranty of at least 7% return on investment; [Id. at ¶¶ 129 – 132, 143, 144, 146, 174.]

    d. Noah's business was healthy and growing; [Id. at ¶¶ 129 – 132, 135 – 136, 143, 144, 146, 165, 178, 209, 249, 282, 328, 331.]

    e. Rockwell was a good company; [Id. at ¶ 113, 139 – 141, 183.]

    f. Regarding Plaintiff Ambleside Park's investment, Hamrick would receive a flat fee of $2,000 plus Hamrick and Rockwell would split a commission of 1 – 2% [Id. at ¶¶ 135 – 136]; Regarding the Tierney Plaintiffs' investment, Brown would receive a $2,000 commission, paid out of closing [Id. at ¶ 207]; Regarding Plaintiff Harvey A. Paul's investment, Hamrick would be compensated $2,000 for the 1031 exchange [Id. at ¶ 332];

g.  Ashby and Hamrick had confidence in the investment; [Id. at ¶¶ 135 – 136.]

h.  Ashby and Hamrick had both invested with Noah. [Id. at ¶¶ 135 – 136.]

i.  Hamrick had seen Noah's financial statements and they were fantastic; [Id. at ¶¶ 139 – 141.]

j.  Noah had plenty of cash and no debt. [Id. at ¶¶ 139 – 141.]

14.  Plaintiffs received rent payments consistent with their agreements from the time of their investment until March or April of 2019. [Id. at ¶ 356.]

15.  Noah failed to pay rent to Plaintiffs (and all other TIC owners on other Noah properties) in March or April of 2019, and then Noah filed for bankruptcy on May 28, 2019. [Id. at ¶ 359.]

## ARGUMENT

At the motion-to-dismiss stage, the Court accepts as true Plaintiffs' well-pleaded factual allegations in the Complaint, but this "tenet" is "inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Except where subject to heightened pleading standards, the Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In critical respects, the Complaint fails to satisfy these pleading standards as to the EWI Defendants and TM Defendants, who are impermissibly grouped in with other Defendants without a legal or factual basis. With regard to the most serious allegations of fraud under federal and state law, Plaintiffs fail to meet the heightened standards required to survive a motion to dismiss.

# I. THE COURT LACKS PERSONAL JURISDICTION OVER THE EWI DEFENDANTS AND THE TM DEFENDANTS

"[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment 'protects individual litigants against the burdens of litigation in an unduly inconvenient forum.'" Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1212 (10th Cir. 2000) (quoting Mathews v. Eldridge, 424 U.S. 319, 331-32 (1976)). The Tenth Circuit provided the following factors to consider in evaluating the constitutional inconvenience of the forum:

> (1) the extent of the defendant's contacts with the place where the action was filed;

> (1) The inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought;

> (2) Judicial economy;

> (3) The probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and

> (4) The nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

Peay, 205 F.3d at 1212 (citing Oxford First Corp. v. PNC Liquidating Corp., 372 F. Supp, 191, 203 (E.D. Pa. 1974)).

Regarding factor (1) The EWI Defendants are New Hampshire residents[4]. The TM Defendants are California residents. None of the eighteen Plaintiffs who allege any interaction with either the EWI Defendants or the TM Defendants reside in Utah (or anywhere close to Utah).

---

[4] Actually, Defendant Brown is a Vermont resident, but taking Plaintiff's factual allegations as true, Plaintiff alleged he was a New Hampshire resident. Although Mr. Brown's home in Vermont is approximately 70 miles closer to the Court in Utah, it makes no difference for this analysis.

None of the real property at issue is located in Utah. Plaintiffs' only allegations addressing the EWI Defendants or the TM Defendants contact with Utah are that they "conducted substantial business in Utah and the claims alleged herein arose from Defendants' acts directed toward Utah," [Complaint, ¶¶ 79, 85], "maintained substantial business ties and associates in Utah, including substantial on-going communication and business with principals of Rockwell and Noah," [Complaint, ¶¶ 80-81, 86]. These are the only "contacts" Plaintiffs allege that these Defendants had with Utah, and Defendants assert they are insufficient to satisfy the requirements of due process. There are no specific allegations regarding what "substantial business ties" these Defendants allegedly had in Utah, what "associates" were in Utah, or what "communication and business" these Defendants had with anyone in Utah.

Regarding factor (2), the EWI Defendants are approximately 2,400 miles from the courthouse. The TM Defendants are approximately 700 miles from the courthouse. With the current novel coronavirus pandemic and travel bans in effect, and with certain individuals within the EWI Defendants and TM Defendants being part of the "vulnerable populations," it will likely not be possible for these Defendants to safely travel to this Court or to meet in person with their counsel. Regarding the interstate character of Defendants' businesses, the majority of their clients are local (the majority of EWI's clients are in the Northeast and along the East Coast, and the majority of TM 1031's clients are in California). As noted above, the Complaint is devoid of any connection of these Defendants' businesses with Utah, other than their alleged ongoing business relationship with co-defendants who reside in Utah.

Regarding factor (3), Defendants acknowledge that for the sake of judicial economy, one case would be more economical than multiple cases against different defendants in different states. However, by including the EWI Defendants and TM Defendants in this case, the issues become

increasingly more complex, and would likely result in different laws being applied to different Defendants – as Plaintiffs themselves seem to acknowledge by citing to sixteen different state's laws in their Complaint.

Regarding factor (4), the probable site of all or most discovery will likely occur in Utah, as all counsel reside in Utah, and the primary Defendants (and a small number of Plaintiffs that had no contact with the EWI Defendants or the TM Defendants) reside in Utah. Due to the EWI Defendants' and the TM Defendants' distance from Utah and the safety risk of traveling that will likely be in place at least through the rest of 2020, if not longer, the EWI Defendants and TM Defendants will likely not have the opportunity to attend other parties' depositions or participate in other proceedings in person.

Regarding factor (5), although the EWI Defendants and the TM Defendants' activities do, at times, extend outside the borders of their states, it is not to the extent that they should be subject to suit nationwide. In contrast, other cases that have analyzed this factor of the <u>Peay</u> test and found in favor of jurisdiction include <u>Peay</u>, 205 F.3d at 1213 (defendants operated and administered a multi-state insurance plan), and <u>Pryor v. Metro. Life Ins. Co.</u>, 2014 U.S. Dist. LEXIS 198993, 2014 WL 12593994, at *4 (defendant Whole Foods Market, Inc.'s subsidiaries operated in nearly 40 states, Canada, and Great Britain).

Traditional notions of fair play and substantial justice likewise fail to support the exercise of personal jurisdiction over the EWI Defendants or the TM Defendants in Utah. In making this determination, the Court considers the following five factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental

social policies.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985) (internal quotation marks omitted).

The burden on these Defendants of litigating in Utah is significant, as noted above. Utah's interest in resolving the dispute is slight, given that the real property at issue is located in Ohio and Florida and the majority of Plaintiffs are non-residents who allegedly suffered damages outside Utah.  However convenient it may be for Plaintiffs to bring one action in Utah, "the convenience of Plaintiff carries no weight in an analysis of personal jurisdiction."  Private Cap. Grp., Inc. v. Dareus, No. 2:13-cv-18, 2014 WL 3394662, at *4 (D. Utah July 10, 2014) (unpublished). While Utah shares an interest in ferreting out alleged fraud by its residents, this interest is shared by other states, like New Hampshire, in which personal jurisdiction would lie as to the EWI Defendants, and California, which would have personal jurisdiction over the TM Defendants.  Utah has little or no interest in ferreting out alleged wrongdoing committed by and against non-residents.

At a minimum, Hamrick, Brown, and Marshall should be dismissed from the action because any contacts they indirectly may have had with Utah related to the claims asserted occurred in their representative capacity on behalf of EWI or TM 1031. As a result, any alleged contacts they had with Utah were solely on behalf of their employers and the "corporate shield" doctrine precludes assertions of personal jurisdiction over them in their individual capacities.  Cf. Rusakiewicz v. Lowe, 556 F.3d 1095, 1102 (10th Cir. 2009) (holding that "[j]urisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself" but concluding that individual contacts were present); see, e.g., Patrick v. N&G Cap. LLC, No. 2:14-cv-194, 2014 WL 3547831, at *3 (D. Utah July 17, 2014) (unpublished) (dismissing individual officer for lack of individual contacts with forum); Kendall v. Turn-Key Specialists, Inc., 911 F. Supp. 2d 1185, 1196 (N.D. Okla. 2012) ("The court concludes that Lewellen did not,

on his own behalf, purposefully avail himself of the privilege of conducting activities or consummating a transaction in the forum state. Instead, his activities were taken on behalf of his employer, TSI. Thus, the court finds that the corporate shield doctrine precludes assertion of personal jurisdiction over Lewellen.").

## II. MANY PLAINTIFFS FAIL TO ALLEGE ANY INTERACTION WITH THE EWI DEFENDANTS OR THE TM DEFENDANTS, AND THUS THEIR CLAIMS AGAINST THESE DEFENDANTS MUST BE DISMISSED.

Due to group pleading, it is unknown which plaintiffs are asserting claims against the EWI Defendants and the TM Defendants. Of the 51 plaintiffs (counting multiple members of the same family as a single plaintiff), the Complaint alleges that only 11 of those plaintiffs had any contact with the EWI Defendants, and only 7 had any contact with the TM Defendants. Other than one Plaintiff, Oak Hill Management, Inc., who the Complaint clarifies is <u>not</u> asserting any claims against the EWI Defendants, the Complaint provides no other such clarifications.

To the extent any of the following Plaintiffs are intending to assert claims against the EWI Defendants, such claims should be dismissed because the Complaint is devoid of any alleged connection between these Plaintiffs and the EWI Defendants. Absent such connection, there can be no duty owed by the EWI Defendants to these Plaintiffs, and no damage to these Plaintiffs caused by the EWI Defendants.[5] Similarly, to the extent any of the following Plaintiffs are

---

[5] Richard and Susan Harder, trustees of the Richard and Susan Harder Living Trust; Eugene and Susan Spiritus, trustees of The Spiritus Revocable Trust; Josie and Barney Addamo, trustees of The Addamo 12/9/04 Family Trust; Ross R. and Linda M. Greco; E & H Jackson, LLC; G. Scott Coleman, trustee of the G. Scott Coleman Trust (12/1/04); Liem Quang Le; Bernie Bromberg, trustee of The Bromberg Trust; Amfil Realty, LLC; BP412, LLC; Thomas B. Tarbet; Paul and Louis Zambito, trustees of The Joseph and Grace Zambito Family Trust (6/26/15); Prudence and Timothy D. Maxon; Maxon-Multiline, LLC; The Real Mint, LLC; Gertraude Winkler; Ryan and Alena C. Andreasen; Norman and Armenay Merritt; Jean Bonetti; Henry Noahs Dublin, LLC; Voynovich Ventures Ltd; Jean Pierre and Jennifer Samson; Carl A. and Donna M. Lillmars Jr.; Craig Cousins, trustee of The Craig A. Cousins Trust, UTD 5/29/2014; Henryk Sarat; Michael and Linda Digiacomo, trustees of The Michael Digiacomo and Linda Digiacomo Revocable Trust (3/20/2001); Rock Noah OH, LLC; Tracy L. Adame; John Michael Lalli, III; William G. and Susan M. Wright; EC9 Holdings, LLC; Peter Boli, trustee of the Boli Family Trust Dated 5/13/1987; Ivy S. Fasko; R & J Steck Investments, LLC; Alan and Alma Seshiki, trustees of the 2016 Seshiki Family Trust; Merle L. Steinman, Jr.; Judy Hendrix, trustee of The Hendrix Living Trust; Donald P. and Rosemary B. Smith; and Luann Properties, LLC.

intending to assert claims against the TM Defendants, these claims should be dismissed for a lack of any alleged connection between the Plaintiffs and the TM Defendants.[6]

Further, as to the seven plaintiffs that alleged any type of contact with the TM Defendants, three of those plaintiffs: Liem Quang Le, The Real Mint, LLC, and Norman and Armenay Merritt, simply claimed that they were contacted by Rutherford/Rockwell via a referral from Marshall/TM 1031. [Complaint ¶¶ 166, 210, 221.] Wherefore, as to Plaintiffs Le, The Real Mint, LLC and Merritt, their claims against the TM Defendants cannot stand, as there are not sufficient allegations to support any of the claims asserted. Importantly, as to these Plaintiffs, there are no allegations whatsoever as to any alleged representations made or contractual relationship between them and the TM Defendants (or the EWI Defendants).

"[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her [the Plaintiff]; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated. After all, these are, very basically put, the elements that enable the legal system to get weaving – permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits." Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007); see also Robbins v. Okla. Ex. Rel. Dep's of Human Servs., 519 F.3d 1242, 1250 (10th Cir.

---

[6] Christopher C. Fucci; Ambleside Park, Inc.; Richard and Susan Harder, trustees of the Richard and Susan Harder Living Trust; Nina D. Johannessen, trustee of the Nina D. Johannessen Living Trust; Josie and Barney Addamo, trustees of The Addamo 12/9/04 Family Trust; Ross R. and Linda M. Greco; G. Scott Coleman, trustee of the G. Scott Coleman Trust (12/1/04); Anson and Genevieve Smith; Gary Neil; Amfil Realty, LLC; W. Mark McKoy, trustee of The W. Mark McKoy Irrevocable Trust of 2012; BP412, LLC; Thomas B. Tarbet; Paul and Louis Zambito, trustees of The Joseph and Grace Zambito Family Trust (6/26/15); Prudence and Timothy D. Maxon; Maxon-Multiline, LLC; Linda and Martin Tierney, trustees of The Teirney Revocable Living Trust u/t/d 8/20/18; Gertraude Winkler; Ryan and Alena C. Andreasen; Jean Bonetti; Henry Noahs Dublin, LLC; Voynovich Ventures Ltd; Jean Pierre and Jennifer Samson; Lawrence H. Talbot and Russell M. Talbot; Carl A. and Donna M. Lillmars Jr.; Henryk Sarat; Michael and Linda Digiacomo, trustees of The Michael Digiacomo and Linda Digiacomo Revocable Trust (3/20/2001); Rock Noah OH, LLC; Tracy L. Adame; John Michael Lalli, III; William G. and Susan M. Wright; EC9 Holdings, LLC; Peter Boli, trustee of the Boli Family Trust Dated 5/13/1987; Ivy S. Fasko; R & J Steck Investments, LLC; Alan and Alma Seshiki, trustees of the 2016 Seshiki Family Trust; Merle L. Steinman, Jr.; Thomas E. Funk, trustee of the Stephen W. Funk t/u/a Dated 3/18/2005 TBO Thomas E. Funk; Judy Hendrix, trustee of The Hendrix Living Trust; Oak Hill Management, Inc.; Theodore E. and Dena A. Keith; Harvey A. Paul; Donald P. and Rosemary B. Smith; and Luann Properties, LLC.

2008) ("the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants. Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

In this instance, the Complaint's simple, yet collective and non-specific reference to "the Defendants" fails to satisfy either the requirements of Rule 8 or the above cited governing law. As such, their claims against the EWI Defendants and the TM Defendants (to the extent that are asserting any) must be dismissed.

### III. PLAINTIFFS FAILED TO STATE A CLAIM FOR SECURITIES FRAUD (NINTH CLAIM FOR RELIEF) OR COMMON LAW FRAUD (FIRST AND THIRD CLAIMS FOR RELIEF) UNDER F.R.C.P. 9(b) AND THE PSLRA

Plaintiffs' Ninth Claim for Relief alleges Defendants violated Section 10(b) and Rules 10b-5 of the Securities Exchange Act. Notwithstanding 96 pages and 479 paragraphs of allegations, Plaintiffs have failed to allege particular facts that Hamrick, Brown, or Marshall — and by extension, EWI or TM, made material misrepresentations to TIC investors with the high degree of scienter required by the federal securities laws, Rule 9(b) of the Federal Rules of Civil Procedure, or the Private Securities Litigation Reform Act ("PSLRA"). Plaintiffs instead group the EWI Defendants and TM Defendants with other parties and urge the assumption that they, too, must have acted with scienter. Because federal law requires that Plaintiffs allege more than guilt by association, Plaintiffs' fraud claims should be dismissed.

#### A. Standard of Review

Plaintiffs seek to hold Defendants liable for alleged violations of Section 10(b) of the Exchange Act and Rule10b-5 promulgated thereunder. [Complaint ¶¶ 421–428.] Section 10(b)

makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C., § 78j(b).  Rule 10b-5 makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. . . ."  17 C.F.R. § 240.10b-5.

As the Tenth Circuit has held, a plaintiff suing under Section 10(b) "bears a heavy burden at the pleading stage."  In re Level 3 Commc'ns, Inc. Sec. Litig., 667 F.3d 1331, 1333 (10th Cir. 2012).  To "properly" state a claim for federal securities fraud, Plaintiffs must allege facts supporting the following:

> (5) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

In re Gold Resource Corp. Sec. Litig., 776 F.3d 1103, 1108 (10th Cir. 2015) (quoting Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1095 (10th Cir. 2003)).  Furthermore, as to the first and third of these elements, Plaintiffs must satisfy the heightened pleading standard enacted by Congress with the passage of the PSLRA, Pub. L. No. 104-67, 109 Stat. 737.  In pertinent part, the PSLRA requires, with respect to the first element of a securities fraud claim, that:

> [i]n any private action arising under this chapter in which the plaintiff alleges that the defendant—
>
> (A) made an untrue statement of material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u–4(b)(1).

Regarding the scienter element—"a mental state embracing intent to deceive, manipulate, or defraud," Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976)—the PSLRA imposes a "more stringent rule" than that provided by Fed. R. Civ. P. 9(b):

[I]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2); Adams, 340 F.3d at 1096 (characterizing the PSLRA's "more stringent rule" as "supersed[ing]" the part of Rule 9(b) which provides that "[m]alice, intent, knowledge, and other conditions of mind may be averred generally"); Hyer v. Malouf, No. 2:07-cv-249, 208 WL 4427941, at *4 (D. Utah Sept. 25, 2008) (Campbell, *J.*) (unpublished) (the PSLRA "stiffened" the false statement element and the scienter element). Alleged conduct is "considered reckless only if the defendants (1) acted in an extreme departure from the standards of ordinary care and (2) presented a danger of misleading buyers that was:"

- known to the defendants or
- so obvious that the defendants must have been aware of the danger.

Anderson v. Spirit Aerosystems Holdings, Inc., 827 F.3d 1229, 1237 (10th Cir. 2016) (internal citations and quotation marks omitted). As Chief Judge Tymkovich has written, recklessness in the securities context "is a particularly high standard, something closer to a state of mind approximating actual intent." In re Zagg, Inc. Sec. Litig., 797 F.3d 1194, 1206 (10th Cir. 2015) (internal citations and quotation marks omitted).

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Jorgensen v. Wright Med. Grp., Inc., 2018 U.S. Dist. LEXIS 189834, 2018 WL 5792325, Case No. 2:18-CV-366-TS-EJF (D. Utah, Nov. 5, 2018) (citing United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006)).

In adjudicating a motion to dismiss, the Court "accept[s] all well-pleaded factual allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." In re Level 3 Commc'ns, Inc. Sec. Litig., 667 F.3d 1331, 1339 (10th Cir. 2012). At the same time, the Court's inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322–23 (2007). The inference that a defendant acted with scienter "need not be irrefutable," but it "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." Id. at 324. Accordingly, "[a] complaint will survive [a Rule 12(b)(6) motion] . . . *only if* a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. (emphasis supplied).

## B.     Argument

Regarding the core misrepresentations alleged in the Complaint, Plaintiffs rely on group pleading to hold the EWI Defendants and the TM Defendants liable, which is flatly impermissible

under the PSLRA. In the rare instances in which Plaintiffs attribute misrepresentations to these individual defendants, their allegations fall well short of containing particular facts which establish a "strong inference" that such statements were made with an intent to defraud or with a degree of recklessness approximating actual intent. See supra, pp. 7 – 8, ¶ 13.

The Complaint contains no specific, particular facts regarding Hamrick's, Brown's, or Marshall's knowledge (or recklessness) with respect to the central allegations of fraud set forth in the Complaint. The only allegations related to Defendants' alleged knowledge are made collectively to all Defendants, and do not contain any particular allegations specific to each Defendant, as follows:

- The representations and omissions were made by the ***Defendants*** knowingly, or were made recklessly, with knowledge that there was insufficient information upon which to base such representations. In particular Plaintiffs allege as follows:

  - (a) ***Defendants*** had a close business relationship with Noah lasting for several years, during which ***Defendants*** became aware of Noah's financial condition.

  - (b) ***Defendants*** were aware of Noah's failure to perform certain obligations under the TIC leases, including the payment of property taxes.

  - (c) Bowser told ***Defendants*** or ***Defendants*** were otherwise informed that Noah was diverting TIC funds intended for construction to other purposes.

  - (d) ***Defendants*** were aware that Rockwell had loaned Noah $6.0 million in February of 2017 for the express purpose of completing construction that should have been completed with the original TIC investment money.

  - (e) ***Defendants*** maintained a close relationship with Noah that included frequent communication and a substantial flow of information regarding Noah's business.

  - (f) ***Defendants*** received or enjoyed substantial benefits from their participation in the Noah TIC program, including the receipt of compensation in amounts or at rates substantially greater than customary practice in similar transactions. [Complaint, ¶ 365.]

- Consistent with the allegations of paragraph 362[7], above, ***Defendants*** made the misrepresentations and omissions to Plaintiffs knowing that they were false and misleading or in the alternative, were reckless in not knowing that the misrepresentations and omissions were false and misleading. [Complaint, ¶ 424.]

- The Upstream Parties knowingly aided and abetted the underlying tortious conduct, as follows: […] (b) ***Defendants*** engaged in such conduct with knowledge of the underlying tortious conduct in that they were familiar with Noah, its operations, its financial weakness, and its failures to meet obligations by virtue of a long-term relationship with Noah that included direct collaboration, access to financial information, and observation of Noah's failures. [Complaint, ¶ 402(b).]

(Emphasis supplied.)

As an initial matter, the allegations in the Complaint, "taken collectively," <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322-23 (2007), fail to give rise to a strong inference that the EWI Defendants or the TM Defendants knew or were reckless in not knowing that the information they received from other Defendants was false or that investor funds were being diverted (by others) to other projects. Without providing any facts, Plaintiffs merely allege scienter as to Defendants as a whole. Stated differently, Plaintiffs maintain that Defendants Hamrick, Brown, and Marshall must have known the falsity of these representations because they had a professional relationship with other Defendants who knew that the representations were false.

Such classic group pleading is impermissible under the PSLRA, which requires that a plaintiff state with particularity facts giving rise to a strong inference that the particular "defendant" (singular) acted with the required state of mind. <u>See</u>, <u>e.g.</u>, <u>TDC Lending LLC v. Private Capital Grp., Inc.</u>, 340 F. Supp. 3d 1218, 1227 (D. Utah 2018) (noting that the "singular 'defendant'" in the PSLRA "seemingly requires a plaintiff to make individualized allegations" and

---

[7] Paragraph 362 states: "In connection with the Plaintiffs' investment in the Noah TIC Properties, Defendants made misrepresentations of presently existing material facts to Plaintiffs as outlined in paragraphs 118 through 337, above." None of the over 200 paragraphs referenced contain any factual allegations related to Hamrick, Brown, or Marshall's knowledge or recklessness in not knowing the truth of the alleged misrepresentations.

concluding that "group pleading is no longer sufficient to allege scienter for securities fraud.").[8] The Complaint's non-particularized allegations regarding the EWI Defendants and the TM Defendants fail to carry Plaintiffs' "heavy burden" of pleading scienter.

Moreover, much of the alleged misrepresentations made by these Defendants are simply corporate optimism or puffery. "[S]tatements classified as 'corporate optimism' or 'mere puffing' are typically forward-looking statements, or are generalized statements of optimism that are not capable of objective verification. Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions." Grossman v. Novell, Inc., 120 F.3d 1112, 1119 (10th Cir. 1997). Section 10(b) proscribes material misrepresentations, made with scienter. Plaintiffs cannot satisfy their pleading burden by providing a laundry list of alleged statements which may not have been false or material and, at worst, constitute non-actionable puffery.

The far more plausible explanation is that the "Upstream Parties" including the EWI Defendants and the TM Defendant, did not know, and could not have predicted, that Noah and/or Rockwell were diverting money from projects for their own self-gain or that the properties purchased by Plaintiffs would never be built. See Anderson, 827 F.3d at 1248 (regarding "the defendants' 'innocent inference' as more cogent and compelling than the plaintiffs' 'scienter inference'"); In re FX Energy, Inc. Sec. Litig., No. 2:07-cv-874, 2009 WL 1812828, at *9 (D. Utah June 25, 2009) (unpublished) ("[T]he court finds that there is a plausible opposing explanation for Defendants' statements, *i.e.*, that the Defendants actually believed that they were true.").

---

[8] See also Winer Family Trust v. Queen, 503 F.3d 319, 337 (3d Cir. 2007) ("[T]he group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA."); Southland Sec. Corp. v. INSpire Ins. Sols., Inc., 365 F.3d 353, 365 (5th Cir. 2004) ("The 'group pleading' doctrine conflicts with the scienter requirement of the PSLRA ..."); In re Enron Corp. Sec., Deriv. & ERISA Litig., No. MDL-1446, 2005 WL 3704688, at *8 (S.D. Tex. Dec. 5, 2005) (unpublished) (recognizing that "under the PSLRA, guilt by association and group pleading no longer suffice to state a claim under § 10(b) and Rule 10b-5").

Plaintiffs' Complaint shows that some Plaintiffs were so satisfied with their initial investments in Noah TIC interests that they made additional investments with Noah, and that all Plaintiffs received regular monthly rent payments until March or April of 2019. [Complaint, ¶¶ 142, 260, 284, 314, 356.] Thus, based on Plaintiffs' own allegations, by outside appearance, the Noah TIC properties were performing exactly as promised. Plaintiffs asserted no factual allegations to support that the EWI Defendants or the TM Defendants had any knowledge that the bottom was about to fall out, and thus the more plausible explanation is that the EWI Defendants and the TM Defendants were duped by Noah and Rockwell just as Plaintiffs were and did not gain knowledge of Rockwell's and Noah's misrepresentations until the same time that Plaintiffs did.

Based on the foregoing, because the Complaint fails to allege particular facts that support a strong inference of scienter by Hamrick, Brown and Marshall, Plaintiffs have failed to state a claim against them (or their respective employers EWI and TM) for violating Section 10(b) or Rule 10b-5 of the Exchange Act.

For the same reasons that Plaintiffs' federal securities fraud claim is insufficiently pled, their state law fraud-based claims fail as well. "As discussed above, Plaintiffs' allegations lack particularity throughout their complaint, are generally conclusory, and fail to establish that Defendants acted with scienter." Precision Vascular Sys., Inc. v. Sarcos, L.C., 199 F. Supp. 2d 1181, 1190-91 (D. Utah 2002) (Campbell, *J.*) (dismissing state law-based fraud claims for "same reasons" that federal securities fraud claims should be dismissed). The elements of Plaintiffs' state law fraud claims are nearly identical to those of the federal securities fraud claims and the factual allegations undergirding these claims are also nearly identical. [See Complaint ¶¶ 421 – 428 (federal securities claim referencing earlier paragraphs contained in Plaintiffs' fraud claim)]; see Shaffer Smith, 2424, LLC v. Foster, 168 F. Supp. 3d 654, 660 n.1 (S.D.N.Y. 2016) (dismissing

"doppelganger" common law fraud claim where "[t]he elements of plaintiff's common law fraud claim are essentially the same as those of plaintiff's securities fraud claim and the factual allegations undergirding both claims are identical"). Plaintiffs' duplicative state law-based fraud claims should similarly be dismissed.

Moreover, Plaintiffs' claim for Constructive Fraud (Third Claim for Relief) fails as Plaintiffs only assert conclusory allegations and do not provide any specific facts against the EWI Defendants or the TM Defendants. In paragraph 378, Plaintiffs reference paragraph 370 to assert "there was a confidential relationship between the Defendants and the Plaintiffs," but paragraph 370 only generally discusses "Plaintiffs reliance on Defendants' misrepresentations and omissions" and Plaintiff's alleged injuries and damages. [Complaint, ¶ 370.] It does not mention Hamrick, Brown, Marshall, or their respective companies. In paragraph 380, Plaintiffs allege "Defendants failed to disclose material facts to Plaintiffs concerning the transactions which are the subject of this Complaint, including those facts set forth in paragraph 338, above." [Complaint, ¶ 380.] However, referenced paragraph 338 discusses a representation allegedly made by Defendant Ashby to Plaintiffs Jeremy and Manda Hess, but provides no allegations related to Hamrick, Brown, Marshall, or their respective companies. It is unclear whether these were typographical errors, but regardless, Plaintiffs Third Claim for Relief for Constructive Fraud does not contain sufficient factual allegations against the EWI Defendants or the TM Defendants, and should be dismissed under F.R.C.P. 9(b) and F.R.C.P. 8.

## IV. PLAINTIFFS FAILED TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY (SECOND CLAIM FOR RELIEF)

While breach of fiduciary duty does not automatically sound in fraud, such a claim "must be pled with particularity where the alleged breach itself is a scheme to defraud." Precision Vascular Sys., 199 F. Supp. 2d at 1191. In this case, Defendants' alleged breach of fiduciary duty

is clearly predicated on a scheme to defraud.  See Complaint ¶ 374(a) ("Defendants breached their fiduciary duties to Plaintiffs by […] Making the misrepresentations and omissions that are the subject of the First Claim for Relief [Fraud/Negligent Misrepresentation].").  As demonstrated above, however, there is no basis to infer that Hamrick, Brown, or Marshall knew about or participated in the alleged scheme, whereby they somehow placed their own or their respective company's interests above those of the investors.  Because Plaintiffs merely assume, without supporting facts, that these Defendants perpetuated this alleged scheme, this cause of action should likewise be dismissed.

## V.  PLAINTIFFS FAILED TO STATE A CLAIM FOR AIDING AND ABETTING TORTIOUS CONDUCT (SIXTH CLAIM FOR RELIEF)

First, it is important to note that the "tortious conduct" that Plaintiffs allege Defendants "aided and abetted" is fraud. [See Complaint, ¶ 401 (referring to the First through Fifth Claims, which, as for the EWI and TM Defendants, include claims for fraud, breach of fiduciary duty (based on fraud), and constructive fraud (Claims Four and Five are not asserted against these Defendants)).] "Utah courts have not yet recognized a claim for aiding and abetting fraud." Rabo Agrifinance, Inc. v. Bliss, 227 F. Supp. 3d 1249, 1252, n.1 (D. Utah 2017). As such, this claim should be dismissed as against the EWI Defendants and the TM Defendants.

## VI.  PLAINTIFFS FAILED TO STATE A CLAIM FOR CONSPIRACY (SEVENTH CLAIM FOR RELIEF)

To allege civil conspiracy under Utah law, Plaintiffs must allege the following: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."  Orient Mineral Co. v. Bank of China, 506 F. 3d 980, 1004 (10th Cir. 2007) (citing Utah law).  As a general rule, "civil conspiracy is not one of the listed causes of

action which must meet the requirements of Rule 9(b). However, where the unlawful act underlying the civil conspiracy is a fraud-based tort, both the underlying tort and the conspiracy claim must be pleaded with particularity." <u>Unified Container, LLC v. Mazuma Capital Corp.</u>, 280 F.R.D. 632, 636 (D. Utah 2012).

In this case, the civil conspiracy alleged by Plaintiffs is predicated upon a wide-ranging alleged fraud. Because Plaintiffs' fraud-based claims should be dismissed for failure to satisfy Rule 9(b), their civil conspiracy claim should be dismissed as well. <u>See</u>, <u>e.g.</u>, <u>GeometWatch Corp. v. Hall</u>, No. 114-cv-60, 2017 WL 1136946, at *17 (D. Utah Mar. 27, 2017) (unpublished) (to the extent civil conspiracy claim based on fraud, dismissing claim because fraud-based claims failed to meet Rule 9(b)'s requirements).

Even assuming that Plaintiffs need not satisfy Rule 9(b), they have nevertheless failed to allege facts that plausibly support the existence of a conspiracy in which the EWI Defendants or the TM participated. They do not allege a single meeting or communication between the EWI Defendants or the TM Defendants and other alleged co-conspirators regarding this alleged scheme. Plaintiffs allege no "meeting of the minds" or agreement that steps in furtherance of the alleged conspiracy would be taken. Such conclusory allegations of a conspiracy in which these Defendants knowingly participated are insufficient to state a claim. <u>Yanke v. Ludlow</u>, No. 2:11-cv-962, 2012 WL 2914557, at *8 (D. Utah May 30, 2012) (unpublished) (dismissing civil conspiracy claim where plaintiff's allegations failed to "explain any meeting of the minds between the parties allegedly involved in the conspiracy," among other defects). The civil conspiracy claim should therefore be dismissed as to the EWI Defendants and the TM Defendants.

## VII. PLAINTIFFS FAILED TO STATE A CLAIM FOR SALE OF UNREGISTERED SECURITIES (EIGHTH CLAIM FOR RELIEF)

Plaintiffs allege that the EWI Defendants and the TM Defendants violated Section 12(a)(1) of the Securities Act. Section 12(a)(1), 15 U.S.C. § 77l of the Securities Act governs civil liability for using interstate commerce related to unregistered securities. Because the Complaint makes no specific allegations that the EWI Defendants or the TM Defendants used interstate commerce with respect to Noah TIC interests, Count 8 should be dismissed.

Plaintiffs' only allegations related to any of these specific Defendants using interstate commerce are that Hamrick sent an email to the Talbot Plaintiffs on October 11, 2017, in which he represented that Noah was a successful and profitable business, and that at an unknown time "very shortly prior to closing, the Tierneys […] had a telephone conversation with at least Hamrick or another agent of E&W, as well as Ashby and possibly Nelson of Rockwell" during which "Hamrick and Ashby acknowledged that the building was not completed, but insisted that this was not unusual, but was the way that things were done on Noah projects" and "further represented that the Tierneys would be protected because the lease was 'corporate guaranteed' and "that Noah was doing very well and that their TIC investment would be held in escrow separate from Noah and paid out on a draw-down disbursement basis." [Complaint, ¶¶ 208-209, 249.] Other than those two instances where Hamrick allegedly used phone and email to communicate to a Plaintiff, Plaintiffs otherwise resort to group pleading asserting conclusory allegations against all Defendants as a whole. See Complaint ¶ 417 ("***Defendants*** made use of means or instruments of communication in interstate commerce or the mails – including telephone lines, the internet, email transmissions over the internet, and the United States Postal Service – for the purpose of offering, selling, and delivering interests in Noah TIC Properties […]"). Thus, Plaintiffs' allegations are again fraught with group pleading and conclusory statements with no specific factual allegations

to support their claims against the EWI Defendants or the TM Defendants, and are therefore insufficient to withstand scrutiny under Iqbal or Rule 9(b).

Moreover, Plaintiffs' claims under § 12(a)(1) of the Securities Act are time-barred. 15 U.S.C. § 77m provides that any action "to enforce a liability created under section 12(a)(1)" must be brought "within one year after the violation upon which it is based." 15 U.S.C. § 77m. Plaintiffs filed their Complaint on January 3, 2020, and thus any sales which occurred more than one year before that date are time-barred. Plaintiffs Fucci, Ableside Park, Inc., Johannessen, McKoy, Paul, Smith, Neil, Tierney, Spiritus, E&H Jackson, LLC, Le, Bromberg, Merritt, and Cousins all allege that their interactions with the EWI Defendants or the TM Defendants occurred in 2018 [Complaint, ¶¶ 129, 133, 139, 143, 156, 163, 166, 172, 176, 183, 205, 221, 260, 329] and thus their claims under § 12(a)(1) are barred. Plaintiffs Talbot and Funk allege interactions with the EWI Defendants that occurred in 2017 [Complaint, ¶¶ 248–250, 279], and thus their claims under § 12(a)(1) are barred. Plaintiff The Real Mint, LLC alleges that Marshall referred it to Rockwell in 2016 [Complaint, ¶ 210], and thus its claims under § 12(a)(1) are barred. See Lillard v. Stockton, 267 F. Supp. 2d 1081, 1115 (N.D. Okla. 2003) (dismissing Plaintiffs' claims under §12(a)(1) of the Securities Act because Plaintiffs "failed to meet their burden of pleading that their registration claims fall within the applicable one-year statute of limitations."); Sheldon v. Vermonty, 2000 U.S. App. LEXIS 27292 at *12-13, Nos. 99-3202 & 99-3389 (10th Cir. Oct. 30, 2000) (10th Circuit upholding district court's dismissal of claim under §12(a)(1) of the Securities act as time-barred when the purchase was made over a year before the action was filed).

## VIII. PLAINTIFFS FAILED TO STATE A CLAIM FOR CONTROL PERSON LIABILITY (TENTH CLAIM FOR RELIEF)

"[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged

controlling person." <u>City of Phila. V. Fleming Cos., Inc.</u>, 264 F.3d 1245, 1270 (10th Cir. 2001) (<u>quoting Maher v. Durango Metals, Inc.</u>, 144 F.3d 1302, 1305 (10th Cir. 1998)).

The Complaint asserts only conclusions regarding control person liability as to Mr. Hamrick, Mr. Brown, and Mr. Marshall, but fails to allege sufficient facts to support this claim. Paragraphs 80, 81, and 86 describe the defendants as "principal and control person" of their respective companies, but allege no facts to support this legal conclusion. Similarly, under Plaintiffs' Tenth Claim for Relief, Plaintiffs use conclusory (and confusing) language, grouping all defendants together to allege: "a) Defendants were officers, directors, or other control people of entities that are Liable Persons. (b) Defendants had authority over the Liable Persons as employers, supervisors, or persons with the ability to affect the terms of the Liable Person's employment or livelihood. (c) Defendants exercised actual control over the Liable Persons through authority, economic influence, contractual rights, or the use of dominant bargaining power or position. (d) Liable Persons willingly submitted to and complied with the instruction, direction, or authority of Defendants." Complaint ¶ 431(a) – (d). First, these allegations are woefully insufficient under the PSLRA, and second, even under the more lenient <u>Iqbal</u> standard, they assert only legal conclusions and thus must not be considered by the Court as true. As such, Plaintiffs have failed to allege control person liability as against Mr. Hamrick, Mr. Brown, or Mr. Marshall.

Further, to the extent this Court denies Plaintiffs' federal securities act claims against EWI or TM 1031, Plaintiffs' control person liability claims against Hamrick, Brown, and Marshall necessarily fail. See <u>In re Gold Resource Corp.</u>, 776 F.3d at 1118 ("Because the district court properly dismissed plaintiff's claims relating to primary violations of the securities laws, plaintiff's § 20(a) claim necessarily also fails."); <u>Rumbaugh v. USANA Health Scis., Inc.</u>, No. 2:17-cv-106,

2018 WL 5044240, at *10 (D. Utah Oct. 17, 2018) (unpublished) (dismissing control person claim where complaint failed to state a claim for a primary violation under Section 10(b)).

## IX. PLAINTIFFS FAILED TO STATE A CLAIM FOR STATE LAW SECURITIES VIOLATION AND/OR FRAUD (ELEVENTH, TWELFTH, AND THIRTEENTH CLAIMS FOR RELIEF)

In Plaintiffs' Eleventh and Twelfth Claims for Relief, Plaintiffs allege the "Upstream Parties", which includes the EWI Defendants and TM Defendants, violated state securities laws. Plaintiffs reference "applicable provisions of state law" and provide a footnote that the "applicable law […] includes at least the following statutes" and then cites to 16 different states' laws. It is unclear what law Plaintiffs are alleging these Defendants violated. Plaintiffs have not provided sufficient notice to Defendants as to what their claims are such that Defendants are not able to respond, and therefore, Plaintiffs' claims should be dismissed pursuant to F.R.C.P. 8.

Plaintiffs' Thirteenth Claim for Relief alleges Defendants "materially aided the Liable Persons in violating the applicable state securities laws" in the following ways:

(a) Defendants were officers, directors, or other control people of entities that are Liable Persons, and authorized, ratified, endorsed, or participated in the conduct constituting the violation.

(b) As part of their employment or business or commercial activity and in exchange for payment or other compensation, Defendants provided information, services, labor or funds that significantly advanced the Liable Persons' unlawful conduct or purposes with respect to Plaintiffs.

(c) Defendants otherwise engaged in conduct materially aiding the Liable Persons in accomplishing the unlawful sale of securities to the Plaintiffs. [Complaint ¶ 461.]

Plaintiffs allege this vague conduct was unlawful under "applicable state law related to those who materially aid securities violations" and again cite to 16 different states' laws.

Plaintiffs' allegations are so vague and asserted at all Defendants that it is impossible for any individual Defendant to identify what law Plaintiffs allege they violated, or what alleged conduct the individual Defendant committed to subject him to liability.

Further, for the reasons set forth above discussing Plaintiffs' failure to state a claim for federal securities violations or common law fraud, Plaintiffs have not satisfied the heightened pleading standards required for fraud claims, and thus the state law claims must be dismissed.

Finally, the state law securities claims appear duplicative to the federal securities act claim and the common law fraud claims, and as such, should be dismissed. See Shaffer Smith, 2424, LLC v. Foster, 168 F. Supp. 3d 654, 660 n.1 (S.D.N.Y. 2016), supra.

## X.     PLAINTIFFS FAILED TO STATE A CLAIM FOR ABUSE OF VULNERABLE ADULTS (FIFTEENTH CLAIM FOR RELIEF)

In Plaintiffs' Fifteenth Claim for Relief, they again cite to "applicable state laws," but only provide one such law, Utah Code Ann. § 76-5-111. As noted in Defendants Rutherford and First American Title's Motions to Dismiss, Plaintiffs' claim fails because they are asserting a "prima facie tort or negligence per se," [Complaint, ¶ 477] and such theory has been expressly displaced per Utah State Code § 62A-3-314; see also Daniels v. Gamma West Brachytherapy, LLC, 221 P.3d 256, 270 (Utah 2009). Plaintiffs have failed to allege the elements required under the criminal statute they cite (or under any other "applicable state law") related to abuse of a vulnerable adult, and as such, their claim is denied.

Further, as none of the Plaintiffs with which the EWI Defendants or the TM Defendants had any contact was a resident of Utah (and there is no evidence that any of the conduct directed

at these Plaintiffs occurred in Utah), it is unclear how these Defendants could be liable under a Utah criminal statute for conduct committed outside of Utah with non-Utah residents.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Edmund & Wheeler, Inc., John D. Hamrick, Chris Brown, TM 1031 Exchange, and Tim Marshall respectfully request that the instant Motion be GRANTED and that they be DISMISSED as Defendants in this action.


DATED this 20th day of July, 2020.


Respectfully submitted,

By: */s/ Scott D. Sweeney*

Scott D. Sweeney
Utah Bar No. 15070
WILSON ELSER, LLP
1225 17th Street, Suite 2750
Denver, CO 80202
Tel: 303.572.5300/Fax: 303.572.5301
scott.sweeney@wilsonelser.com

*Attorneys for Defendants Edmund and Wheeler,*
*John D. Hamrick, Chris Brown, TM 1031*
*Exchange, and Tim Marshall*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July, 2020, a true and correct copy of the foregoing was filed with the Court and served electronically via CM/ECF to all parties of record.

/s/ Scott D. Sweeney
Scott D. Sweeney