Reid W. Lambert, #5744
Scarlet R. Smith, #15024
R. Jesse Davis, #16032
**STRONG & HANNI, P.C.**
102 S. 200 E. Suite 800
Salt Lake City, UT 84111
Telephone: (801) 532-7080
Email: rlambert@strongandhanni.com
ssmith@strongandhanni.com
jdavis@strongandhanni.com

*Attorney for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER C. FUCCI, et al<br>Plaintiffs<br><br>v<br><br>WILLIAM BOWSER, et al<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS EDMUND & WHEELER, INC., JOHN D HAMRICK, CHRIS BROWN, TM 1031 EXCHANGE, AND TIM MARSHALL'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) & 12(b)(6)**<br><br>Case No. 2:20-cv-00004<br><br>Judge: David Barlow |

Plaintiffs Christopher C. Fucci, et al. (collectively, the "Plaintiffs" or "TIC Owners") submit the following opposition to the Motion to Dismiss (the "Motion") [Dkt. 79] filed by Edmund & Wheeler, Inc. ("E&W"), John D. Hamrick ("Hamrick"), Chris Brown ("Brown"), TM 1031 Exchange ("TM"), and Tim Marshall ("Marshall") (collectively, the "Moving Parties" or the "QI Defendants").

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
665 A.2d 1038 (Md. 1995) ................................................................. 31

*Berkeley Bank for Cooperatives v. Meibos*,
607 P.2d 798 (Utah 1980) ................................................................. 25

*Gabriel Capital, LP v. NatWest Fin., Inc.*,
94 F.Supp.2d 491 (S.D.N.Y. 2000) ..................................................... 31

*Gildea v. Guardian Title Co.*,
970 P.2d 1265 (Utah 1998) ................................................................. 31

*Hampton v. root9B Technologies, Inc.*,
897 F.3d 1291 (10th Cir. 2018) ........................................................... 25

*In re Pretium Resources Inc. Securities Litigation*,
256 F. Supp.3d 459 (S.D.N.Y. 2017) ................................................... 25

*In re Time Warner, Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir.1993) ..................................................................... 25

*In re Zagg*,
797 F.3d 1194 (10th Cir. 2015) ........................................................... 22

*Lynch v. MacDonald*,
367 P.2d 464 (Utah 1962) ................................................................... 31

*Oberg v. Sanders*,
184 P.2d 229 (Utah 1947) ................................................................... 25

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*,
575 U.S. 175, 135 S. Ct. 1318 (2015) ................................................. 26

*TDC Lending LLC v. Private Capital Group*,
340 F.Supp.3d 1218 (D. Utah 2018) ................................................... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ................ 21, 22

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016) ............................................................... 26

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991) ......................................................................... 25

*Wells Fargo Bank v. Arizona Laborers*,
38 P.3d 12 (Ariz. 2002) ..................................................................... 31

# TABLE OF CONTENTS

RELIEF SOUGHT AND GROUNDS FOR RELIEF ................................................. 1

INTRODUCTION ................................................................................................... 1

Statement of Relevant Facts................................................................................... 4

    Background ........................................................................................................... 4

    The Complaint...................................................................................................... 5

LEGAL STANDARD.............................................................................................. 6

    Motion to Dismiss ............................................................................................... 6

    Pleadings .............................................................................................................. 7

Argument ................................................................................................................ 8

    I.     This Court Has Jurisdiction Over the QI Defendants. .................................. 9

    II.    Plaintiffs Made Sufficient Allegations of Interactions with the E&W/TM Defendants. 15

    III.   Plaintiffs Sufficiently Allege Claims for Securities Fraud and Common Law Fraud Under PSLRA and the Federal Rules of Civil Procedure. .................................................... 16

    1.    The allegations adequately identify the parties, the scheme, and the particulars of the misrepresentations and omissions. ......................................................................................... 19

    2.    The Complaint is not impermissible group pleading....................................................... 20

    3.    The misrepresentations made by the QI Defendants were not mere corporate optimism or puffery. ................................................................................................................................... 21

    5.    The allegations of the Complaint support a strong inference of scienter. ........................ 23

    6.    The Complaint adequately alleges a confidential relationship supporting a claim for constructive fraud. ................................................................................................................... 25

    IV.   Plaintiffs Have Properly State a Claim for Breach of Fiduciary Duty. ..................... 26

    V.    Plaintiffs Have Properly Stated a Claim for Aiding and Abetting Tortious ................. 27

    Conduct................................................................................................................. 27

    VI.   Plaintiffs Have Properly Alleged Civil Conspiracy. .................................................. 29

    VII.   Plaintiffs Sufficiently Allege the Sale of Unregistered Securities. ............................ 30

    VIII.  Plaintiffs Have Sufficiently Plead A Claim for Control Person Liability. ................. 31

    IX.   Plaintiffs Have Sufficiently Stated Claims for State Law Securities Violations........ 32

    and Fraud. ............................................................................................................. 32

    X.    Plaintiffs' Sufficiently State a Claim for Abuse of Vulnerable Adults......................... 35

Conclusion ............................................................................................................ 36

<u>RELIEF SOUGHT AND GROUNDS FOR RELIEF</u>

Plaintiffs urge the Court to deny the Motion in full.  The grounds for this position are that the Court has jurisdiction over the QI Defendants, and the Complaint, taken as a whole, adequately states claims against them to satisfy, where applicable, Fed. R. Civ. P. 8 (a), Fed. R. Civ. P. 9 (b), and the Private Securities Litigation Reform Act ("PSLRA").  The Complaint properly alleges claims against each of the QI Defendants arising out of their participation in a tenant-in-common real estate scheme in which Plaintiffs paid over $24 million for completed event venue buildings leased to Noah Corporation, but received only unbuilt land subject to unpaid taxes, mechanics liens, and other restrictions.

Alternatively, if the Motion is granted in any respect as to any claim, Plaintiffs urge the Court to grant the Motion with leave to amend.  The basis for this claim is that Plaintiffs claims should not be dismissed based on the form of pleading where an amendment would not be futile and might reasonably be expected to cure the deficiency so that the claim could be resolved on the merits.

## **INTRODUCTION**

The QI Defendants are a subset of parties referred to in the Complaint as the "Upstream Parties."   The Upstream Parties were a primary source of business to Rockwell Debt Free Properties, Inc. and its affiliates ("Rockwell"), the issuer/seller of tenant in common ("TIC") interests in properties to be leased to Noah Corporation.  (Complaint, ¶ 114-116).[1]  The QI Defendants solicited Plaintiffs in connection with tax-exempt like-kind exchanges qualified

---

[1] Hereinafter, all references indicated by "¶" shall be to the Complaint, unless otherwise indicated.

under section 1031 of the Internal Revenue Code ("1031 Exchanges") and directed them to Rockwell to purchase TIC interests as replacement properties. (¶ 116). Each maintained a close business relationship with Rockwell and contracted with Rockwell for a substantial commission in connection with each sale of a TIC interest. (*Id.*).

The TIC Investments caused each Plaintiff substantial losses. Plaintiffs did not receive completed, operating event venues subject to triple net leases to a successful event venue tenant. They received unbuilt land subject to liens, unpaid taxes, and other restrictions (¶ 10, 360), leased to an insolvent, poorly run, and ultimately bankrupt company that was operating as a Ponzi scheme. (¶ 107). Plaintiffs' Complaint seeks to recover their losses from those who perpetuated the ill-designed and fraudulent TIC Investment scheme, including the QI Defendants.[2]

Plaintiffs' principal claim against the QI Defendants is that they violated applicable state securities laws that require securities agents to be licensed. The QI Defendants received substantial commissions in connection with the sales and were a material if not indispensable part of soliciting and selling the TIC investments. (¶116). The QI Defendants thus functioned as securities agents (¶ 437) and were required to be licensed. Because they were not, they are liable to the Plaintiffs as provided in the applicable statutes.

Plaintiffs have also asserted claims against the QI Defendants for their participation in the fraudulent scheme. These claims range from common-law fraud and breach of fiduciary duty to violations of the federal securities laws. In the Motion, the QI Defendants attempt to minimize

---

[2] The other "Upstream Parties" included in the Complaint are Belle Isle Enterprises, LLC, Results Real Estate Partners, LLC and Greg DeSalvo, who have settled with the Plaintiffs, and Eastern Starker 1031 Exchange, L.L.C.; Eastern Staker 1031 Exchange, LLP, and Connie Greenawalt, who have filed a separate Motion to Dismiss.

their roles and distance themselves from Rockwell, but the allegations of the Complaint sufficiently allege that each QI Defendant sold the TIC investments to the unknowing Plaintiffs and perpetuated the scheme despite abundant access to information that Noah was insolvent, failing to meet obligations, suffering substantial difficulties, missing construction deadlines, misusing funds, and likely to collapse. (¶ 364, 365). The QI Defendants lied about and failed to disclose these facts to the Plaintiffs, and instead continued to close deal after deal on which they earned substantial commissions.[3]

The factual basis for Plaintiffs' fraud-based claims is the misrepresentations and omissions set forth in great detail in the Complaint (¶ 120-340). As to the QI Defendants, the following specific allegations apply: (1) the QI Defendants participated in distributing the Rockwell marketing materials, thus making all of the misrepresentations to the Plaintiffs described in paragraphs 121 through 127 of the Complaint; (2) as the QI Defendants acknowledge in their Motion, they made specific representations to specific Plaintiffs that are identified by time, place and speaker interspersed throughout paragraphs 129 through 339 of the Complaint; and (3) the QI Defendants omitted to disclose the 13 different material facts identified in paragraph 340 of the Complaint. The Complaint adequately alleges that the QI Defendants made these misrepresentations and omissions, and that they knew that their statements were false, incomplete, and inaccurate, and that they made the misrepresentations knowingly and intending to lead the Plaintiffs to invest. (¶ 365, 367). In short, the Complaint includes all of the necessary information to put the QI Defendants on notice of the fraud-based claims against them and allow them a fair opportunity to respond.

---

[3] For reference, the E&W Defendants received approximately $486,000.00 in commission on sales to Plaintiffs, and the TM Defendants received approximately $304,000.00.

Plaintiffs submit that the Motion should be dismissed, and all claims asserted against the QI Defendants should be litigated to an adjudication on the merits.

STATEMENT OF RELEVANT FACTS

*Background*

The Plaintiffs are individuals and family entities located throughout the United States who bought TIC interests in real estate leased to Noah. (¶ 1). In many cases, the source of Plaintiffs' investments was commercial real estate that they had owned for many years, which Plaintiffs sought to exchange for income-producing properties in 1031 exchanges. (¶ 1).

The QI Defendants hold themselves out as 1031 exchange specialists. A substantial part of their business is to assist people in carrying out 1031 exchanges. (¶ 114, 116). The QI Defendants promoted and sold the Rockwell TIC investments as target properties for 1031 exchanges. (¶ 114). They each maintained substantial business relationships, financial arrangements, communications, and other ties with Rockwell and its principals in Utah. (¶ 79–81, 85–86, 116).

Although no one, including the QI Defendants, ever disclosed the fact to Plaintiffs, the QI Defendants contracted with Rockwell to earn a substantial commission in connection with each sale of a TIC interest. (¶ 116, 364 (c)). For a given property, TIC buyers would pay approximately $6.0 million in sale proceeds, and Rockwell would typically take over $1.0 million as a commission, a part of which was shared with referring Upstream Parties. Neither the total commission nor the commission to the Upstream Parties was ever disclosed to Plaintiffs, and in many cases, the QI Defendants misrepresented that they earned no commission beyond their comparatively modest 1031 exchange fee. After Rockwell and the Upstream Parties shared in their cut, the balance of the invested money was turned over to Noah, where it was lost, diverted, paid out to earlier investors, or taken by the Noah principals and their

4

families.  (¶ 347, 348, 351, 352).  When Noah ultimately collapsed, Plaintiffs were left with nothing but undeveloped land, and in some cases, land now encumbered by unpaid property taxes, liens, and restrictions diminishing its value. (¶ 360).

### The Complaint

The Complaint contains more than 490 paragraphs of allegations, enumerating each plaintiff and defendant, and outlining their roles in perpetuating the fraudulent scheme.  It makes clear which defendant interacted with which plaintiff and what omissions or misrepresentations were made.  Indeed, Plaintiffs have organized the Complaint into sections that make clear the role that each party played.  For instance, in a section entitled "Misrepresentations to the Independence, Ohio Plaintiffs," Plaintiffs identify specific misrepresentations to specific TIC Owners of the Independence, Ohio property, in each case stating the who, when, where and what of the particular statement.  (¶ 171-228).  Similarly, in the headings for each claim for relief, Plaintiffs identify which defendants are alleged to have engaged in the conduct giving rise to the liability.  Thus, each Defendant, including the QI Defendants can clearly identify the claims asserted against them, allowing them ample notice and opportunity to fashion a response.

As an example, the first claim for relief makes clear that fraud and negligent misrepresentation is being alleged against "Bowser/Winkle/Rockwell/Upstream Parties," thus including the QI Defendants.  (¶ 70).  The claim then incorporates all of the prior factual allegations, including the allegations specifically identifying the QI Defendant's misrepresentations and omissions. (¶ 361).  That incorporation would also include the facts set out in paragraphs 114 through 116 concerning the Upstream Parties and their relationship with Rockwell specifically.  The First Claim for Relief also includes specific allegations concerning the false and misleading nature of the Defendants statements (¶ 364 (a) through (f)), and a factual basis for determining that the Defendants had knowledge that the statements were false (¶ 365

(a) – (f)).  All of these specifics are incorporated into each successive Claim for Relief, including specifically the Ninth Claim for Relief for Federal Securities Fraud.  Taken as a whole, the Complaint fairly identifies each QI Defendant, identifies the misrepresentations and omissions for which each is liable, and alleges facts creating a strong inference of each QI Defendants' knowledge that their statements were false or misleading.  In short, the Complaint contains a sufficiently particular recitation of the facts to notify the QI Defendants of the claims against them and allow them to fashion an appropriate response.

## **LEGAL STANDARD**

### *Motion to Dismiss*

"A rule 12(b)(b) motion to dismiss may be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling [plaintiff] to relief under the theory of recovery." *Gray v. Oracle Corp.*, 2005 WL 3132344, *1 (D. Utah 2005) (citation and internal quotation marks omitted). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Id.* "In reviewing the sufficiency of a complaint, the issue is not whether the plaintiff *will prevail*, but whether the plaintiff is entitled to offer evidence to support [his or her] claims." *Id.* Put another way, pleading requirements "do not require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citation omitted).

Courts instead must use caution to carry out the spirit of the liberal rules of pleadings and to protect the interests of justice. Indeed, "motions to dismiss for failure to state a claim [are] viewed with disfavor, and therefore are rarely granted." *Jenkins v. Security Sav. Bank of Mich.*, 1993 WL 669270, *3 (10th Cir. 1994).

If a motion to dismiss is granted, the Court should afford a chance to amend, unless amendment would be futile. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). Liberally allowing amendment "when justice so requires," Fed. R. Civ. P. 15(a)(2), provides "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982).

### Pleadings

The pleading standards differ on Plaintiffs different claims. As a general rule, to survive a motion to dismiss, "the complaint must allege 'enough facts to state a claim to relief that is plausible on its face,' and any '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *TDC Lending LLC v. Private Capital Group, Inc.*, 340 F. Supp. 3d 1218, 1224 (D. Utah 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"When alleging fraud, a plaintiff must 'state with particularity the circumstances constituting fraud or mistake.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). This requires a plaintiff to "set forth the who, what, when, where and how of the alleged fraud' and describe 'the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Id.* (citation omitted).

"A plaintiff claiming a violation of Section 10(b) must further allege that the defendant acted with "scienter," which the Tenth Circuit defines as 'intent to defraud or recklessness.'" *Id.* (quoting *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003)). "Recklessness is 'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Id.* (quoting *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir. 1996)). These elements must be plead with particularity under the heightened pleading standard of PSLRA. Under that standard, the complaint must "specify each

statement alleged to have been misleading" as well as "the reason or reasons why the statement is misleading." *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)). To properly plead scienter, one must plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (quoting *Adams*, 340 F.3d at 1095–96). "An inference of scienter is 'strong' under the PSLRA if it is . . . 'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Id.* (quoting *Tellabs, Inc. v. Makar Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).

Generally, the Federal Rules of Civil Procedure requires a showing that "the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While PSLRA certainly heightened standards for securities fraud lawsuits, [the Tenth Circuit] believe[s] that if Congress had intended in securities fraud lawsuits to abolish the concept of notice pleading that underlies the Federal Rules of Civil Procedure, Congress would have done so explicitly." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1101 (10th Cir. 2003). "Clearly, the Reform Act requires some precision in alleging facts, however, it does not require pleading all of the evidence and proof thereunder supporting a plaintiff's claim." *Id.* (citation and internal quotation marks omitted). In other words, the "level of factual specificity required to meet this standard may put defendants on notice of precisely what they are alleged to have done wrong and permit them to defend against the charge." *Id.* at 1102.

## ARGUMENT

Although they challenge all of the claims asserted in the Complaint, the QI Defendants' Motion rests on a relatively small handful of arguments. First, the QI Defendants argue that they are outside of the personal jurisdiction of the Court; second, they argue that the allegations of

fraud are insufficient to meet the pleading standards of Fed. R. Civ. P. 9 (b) and the PSLRA.

Finally, they contend that Utah law does not expressly recognize some of the claims asserted in

the Complaint. Plaintiffs will address each category of argument and its application to each of

the relevant claims in the same order as the Motion.

### I.      This Court Has Jurisdiction Over the QI Defendants.

Defendants acknowledge that the federal securities laws provide for nationwide service

of process but argue that jurisdiction is yet improper in this case based on the five factors

outlined in *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000).

(Motion, at 6-10). In general, the QI Defendants argue that the forum is inconvenient, and they

lack minimum contacts. Plaintiffs submit that the QI Defendants' argument fails to raise an issue

of constitutional dimension that would defeat the statutory basis for jurisdiction in this case.

"When a federal statute provides for a nationwide service of process, it becomes the

statutory basis for personal jurisdiction." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d

1206, 1210 (10th Cir. 2000) (citations and quotation marks omitted). Federal security laws

provide for nationwide service of process which has been consistently interpreted as establishing

the United States as the relevant location to determine minimum contacts in a federal securities

action. *See In re Application to Enforce Admin. of Subpoena of SEC v. Knowles*, 87 F.3d 413

(10th Cir. 1996). Because the QI Defendants are residents of the United States, minimum

contacts are undisputed and the "specific contacts with the district in which enforcement is

sought, in this case [Utah,] are unnecessary." *Knowles*, 87 F.3d at 417. Indeed, the QI

Defendants implicitly concede that jurisdiction has been established absent a compelling Fifth

Amendment argument. (Motion 6.)

There is no compelling Fifth Amendment argument. "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Peay*, 205 F.3d at 1212 (citation and internal quotation marks omitted). "To establish that jurisdiction does not comport with Fifth Amendment due process principles, a defendant must first demonstrate that his liberty interests actually have been infringed." *Peay*, 205 F.3d at 1211. The QI Defendants carry the burden to "show that the exercise of jurisdiction in the chosen forum will make litigation so gravely difficult and inconvenient that [they] unfairly [are] at a severe disadvantage in comparison to [their] opponent." *Archangel Diamond Corp. v. OAO LUKOIL*, 75 F. Supp. 3d 1343, 1372 (D. Colo. 2014) (citation and internal quotation marks omitted); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985); *Peay*, 205 F.3d at 1212.

By contrast, to survive a motion to dismiss for lack of jurisdiction, Plaintiffs need only make a prima facie showing that jurisdiction exists. *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009) (citation and internal quotation marks omitted). And "[a]ll factual disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing." *Id.* (citation and internal quotation marks omitted).

Plaintiffs submit that a review of the circumstances of this case, including the well-pleaded allegations of the Complaint, dictates the conclusion that the *Peay* factors strongly support a finding that jurisdiction over the QI defendants is appropriate in this Court.[4]  First, as alleged, the QI Defendants had numerous and specific contacts with Utah, including frequent

---

[4] E&W, Hamrick and Brown made this same jurisdictional argument in a related case brought by the TIC buyers of property in Carmel, Indiana in *DiTucci et al. v. Ashby et al.*, Case No. 2:19-cv-277-TC-PMW.  Judge Campbell's opinion and analysis of the issue in that case, a copy of which is attached hereto as Exhibit A, is instructive, including her ultimate finding that jurisdiction over E&W, Hamrick and Brown did not offend due process.  (Opinion, at 13-15). Plaintiffs urge the same outcome here.

visits to the state and communications with Utah residents. For instance, Hamrick of E&W flew to meet Defendant Bowser, a Utah resident and owner of Noah, a Utah company. (Complaint ¶¶ 129–130.) In other examples, Hamrick represented that he invested in Noah (Complaint ¶ 136) and that he had seen Noah's financial statements (Complaint ¶ 141). More to the point, all of the QI Defendants encouraged Plaintiffs to invest with Rockwell or Noah, Utah companies, representing that it would be a good investment. The QI Defendants strong business relationship, agreements, communications, and on-going payments of commissions are easily enough contact to dismiss any constitutional concerns.

Second, litigation in Utah imposes no extraordinary inconvenience to the QI Defendants. The only burden the QI Defendants cite are the potential burdens associated with physically travelling to Utah. They suggest that they should not have to travel because of the Covid-19 pandemic. (Motion, at 7.)  But, as the Tenth Circuit has noted, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern . . . in this age of instant communication and modern transportation, the burdens of litigation in a distant forum have lessened." *Archangel*, 75 F. Supp. 3d at 1372; *accord Peay*, 205 F.3d at 1213.  Indeed, Utah courts are not even conducting in-person hearings or meetings during the pandemic. So, most, if not all, communications and meetings will occur virtually and within the protection and convenience of the QI Defendants' home or business.

At a minimum, litigation in Utah is no more inconvenient to the QI Defendants than it will be for many of the Plaintiffs. The question of fundamental fairness asks whether these defendants will be more inconvenienced than Plaintiffs. In this case, few of the parties live in Utah, but the core of the alleged fraud occurred in Utah and the Rockwell Defendants and Noah Defendants are based in Utah.  The nature of litigating a far-reaching fraud scheme necessarily

demands a single forum to address parties and conduct in multiple states. Here, the selection of Utah as the forum state, even if it inconveniences many parties, serves well the collective convenience of all parties.[5]

Even if the Court were to accept the QI Defendants argument, the remedy for an inconvenient forum is to move venues, not dismissal of the case. *Peay*, 205 F.3d at 1213 n.6. But moving venues would cause unnecessary burdens for Plaintiffs and the QI Defendants. Not only does this lawsuit involve multiple parties that rely on the same nucleus of facts, but the QI Defendants are also defending another lawsuit in Utah brought by another set of plaintiffs. As a result, these defendants are already saddled with the purported burdens of litigating in Utah and allowing a change of venue for the QI Defendants would require Plaintiffs to litigate the same core fraud in two separate venues.

As for the third *Peay* factor, judicial economy favors resolution of this action in Utah. Most of the defendants reside in or have some nexus with the state of Utah, and the core of the fraudulent scheme stems from Utah companies. This Court can handle far more efficiently the various claims stemming from the sale of Noah's investments than several different federal courts in each jurisdiction in which the defendants sold the investments.

Fourth, the QI Defendants concede that "the probable site of all or most discovery will likely occur in Utah, as all counsel reside in Utah, and the primary Defendants . . . reside in Utah." Although they claim this imposes a burden if they want to attend depositions in person,

---

[5] Even if the forum were determined to be inconvenient, the proper remedy would not be dismissal, but transfer. *Peay*, 205 F.3d at 1213 n.6. In this case, however, moving venues would only cause unnecessary burdens for Plaintiffs and the QI Defendants, who already been involved in this case, the Noah Corporation bankruptcy, the Rockwell Debt Free Properties, Inc. bankruptcy, and a separate lawsuit brought by the TIC owners of the Carmel, Indiana property— all in Utah.

the QI Defendants fail to point out that their attorneys will be able to attend the depositions in person (if they are in fact conducted in person at all). On a balance, it would impose an unnecessary burden on Plaintiffs as well as the QI Defendants' counsel to force a change of venue where most of the discovery will likely occur in Utah.

Fifth, the regulated activity—the illegal sale of unregistered securities—is nationwide in scope. The QI Defendants try to skirt around this by claiming that they do not regularly conduct activities outside the borders of their states. But this is not a question of minimum contacts for general personal jurisdiction. The QI Defendants conducted significant business with Rockwell, and indeed every transaction that is the subject of this action was closed in Utah. The QI Defendants also sold the TIC interests to residents of other states. Because the QI Defendants' sold securities to residents of many states and their activities are regulated by federal law, their activities unquestionably have a significant impact beyond the borders of their respective home states. *See Peay*, 205 F.3d at 1213 (defendants operated and administered a multi-state insurance plan).

As a final matter, the QI Defendants argue that even if the Court has jurisdiction over their entity, it has no jurisdiction over the individual defendants—Hamrick, Brown, and Marshall. They appear to argue that they cannot be held liable in Utah because their contacts with Utah were all in their capacity as representatives of their respective business entities. (Motion, at 9). That argument misses the mark. When national service of process applies—as it does under the federal securities laws—the court need not undertake the minimum contacts analysis typically required for personal jurisdiction. *See United States v. Botefuhr*, 309 F.3d

1263, 1273 (10th Cir. 2002).[6]  Instead, when the personal jurisdiction of a federal court is invoked based on a federal statute providing for nationwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States. *Knowles*, 87 F.3d at 417. Undisputedly Defendants are citizens and reside in the United States.

In any event, the corporate or fiduciary shield doctrine does not apply when the officer or director acted to serve his personal interests. *Newsome v. Gallacher*, 722 F.3d 1257, 1279 (10th Cir. 2013); *see also Ten Mile*, 810 F.2d at 1526–27 ("However, if the corporation is not a viable one and the individuals are in fact conducting personal activities and using the corporate form as a shield, a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals." *Ten Mile*, 810 F.2d at 1527 (citation and internal quotation marks omitted)). "'The shield is removed if the individual's personal interests motivate his actions . . . .'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 359 n. 6 (5th Cir. 2001)). So, "If any suggestion of self-dealing is made by the plaintiffs' Complaint and other documents submitted to this Court, the fiduciary shield doctrine will not be applied." *Id.* (citation and internal quotation marks omitted). "In essence, regardless of whatever else the fiduciary shield may protect, it makes little sense to apply it to claims of breach of fiduciary duty—a claim alleging, by its very nature, that the agent did *not* act on the principal's behalf, but in the agent's own interest at the principal's expense." *Id.*

The claims against Hamrick, Brown, and Marshall are not claims seeking to them responsible for the acts of the business entities.  They are tort claims and statutory securities claims on which each individual must answer for his own conduct, regardless of any business

---

[5] If the state law claims turn on the same operative facts as the federal security claims, the Court generally retains jurisdiction over the supplemental state law claims. *United States v. Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir. 2002).

entity.  Just as acting in a corporate capacity does not free one from individual liability for individual acts, the existence of the corporate entity does not change the analysis of jurisdiction over the individual for their individual acts.  These individuals were not simply employees working for a company, they were the principals of their respective companies and made the decisions to conduct business with Utah based companies.  More importantly, they encouraged Plaintiffs to invest with Rockwell and Noah (over other investments) to benefit from the extraordinarily high commissions and fees. This is especially appropriate where the corporation is influenced and governed by the individual such that "there is a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased." *Ten Mile*, 810 F.2d 1226–27 (citations omitted).

In sum, the nationwide service of process only requires minimum contacts with the United States, which is undisputed. Hamrick, Brown, and Marshall were also the primary participants in the activities that are the basis for the securities claims and benefitted personally. Accordingly, the exercise of specific personal jurisdiction over them is reasonable and just and satisfies traditional notions of fair play.

## II.      Plaintiffs Made Sufficient Allegations of Interactions with the E&W/TM Defendants.

In Part II of their Motion, The QI Defendants insist "it is unknown which plaintiffs are asserting claims against [them]."  (Motion, at 10).  They argue the claims by any plaintiff that does not allege some interaction with them should be dismissed.  Plaintiffs submit that the QI Defendants' own statements contradict their argument, however, and the allegations against them are sufficient.

First, although the QI Defendants claim they do not know which plaintiffs assert claims against them, they then calculate with specificity the number of plaintiffs that had contacts with

them, stating that "only 11 of those plaintiffs had any contact with the EWI Defendants, and only 7 had any contact with the TM Defendants." (Motion, at 10). Their ability to identify the plaintiffs that they sold from the face of the Complaint belies their argument that the Complaint is insufficient.

Indeed, the QI Defendants implicitly concede the plaintiffs alleging claims against them can be identified through the allegations when they criticize the sufficiency of the allegations made by three specific plaintiffs. They make the argument that three plaintiffs—Liem Quang Le, The Real Mint, LLC, and Norman and Armenay Merritt—have failed to allege any misrepresentation or contractual relationship by the QI Defendants. On the contrary, these defendants allege that the QI Defendants directed them to Rockwell and all of the misrepresentations contained in the Rockwell marketing materials. They allege that Rockwell made all of the omissions described in paragraph 340 of the Complaint, and they allege that the QI Defendant's conduct aided and abetted or constituted a conspiracy to carry out the fraudulent scheme as to all parties.

Plaintiffs submit that there is little force of reason behind the QI Defendants' argument that dismissal is appropriate where less than all of the plaintiffs allege a specific factual basis for less than all the claims against them. While each claim of each party will ultimately require an evaluation on its own merits, the Court must deny the QI Defendants Motion at this point because at least some Plaintiffs have alleged a factual basis for each of the claims asserted against these defendants, the Motion should be denied.

### III. Plaintiffs Sufficiently Allege Claims for Securities Fraud and Common Law Fraud Under PSLRA and the Federal Rules of Civil Procedure.

In Part III of the Motion, the QI Defendants' attack the sufficiency of the Plaintiffs allegations of Fraud. The Motion rests primarily on the argument that Plaintiffs' fraud-based

claims are not plead with sufficient particularity to satisfy Fed. R. Civ. P. 9(b) or the requirements of the PSLRA. (Motion, at 12–20). Plaintiffs submit that the Complaint contains sufficiently specific allegations to notify the QI Defendants of the claims against them and to allow them to formulate a proper response.

### A. Pleading standards in fraud-based claims.

As stated above, claims sounding in fraud are subject to Rule 9(b)'s heightened pleading standard, which requires the claimant to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). More specifically, "Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (citation and internal quotation marks omitted). But the Tenth Circuit reads Rule 9(b) "in conjunction with the principals of Rule 8, which calls for pleadings to be 'simple, concise, and direct, . . . and to be construed as to do substantial justice.'" *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Fed. R. Civ. P. 8(e), (f)). In that vein, the Tenth Circuit applies Rule 9(b) as much as it serves its underlying purpose, which is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based." *Id.*; *accord Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982 (10th Cir. 1992). In applying that rule, the Tenth Circuit explained that "[t]he federal rules do not require a plaintiff to provide a factual basis for every allegation. Nor must every allegation, taken in isolation, contain all the necessary information." *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1173 (10th Cir. 2010). Accordingly, where the complaint "gives each defendant notice of what he is charged with . . . [n]o more is required by Rule 9 (b)." *Schwartz*, 124 F.3d at 1253. *See also*, *Bradford v. Moench*, 670 F. Supp. 920, 923 (D. Utah 1997) (indicating that Rule 9 (b) should read in

conjunction with the purposes of the Federal Rules of Civil Procedure, which are to get away from "booby traps which common law pleaders could set to prevent litigants from having a day in court").

Beyond Rule 9 (b), the PSLRA requires that a plaintiff in a federal securities fraud action

shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1)(B). In addition, the plaintiff "shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" for the fraud claim asserted. 15 U.S.C. § 78u-4(b)(2)(A).

A claim under Rule 10b-5 requires that the defendant act with scienter, which is defined as "intent to defraud or recklessness." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003). That standard is satisfied by "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Dronsejko v. Thornton*, 632 F.3d 658, 665 (10th Cir. 2011). The Tenth Circuit has found "the magnitude of the alleged falsity" to be a significant factor in assessing whether a plaintiff has sufficiently alleged scienter. *Adams*, 340 F.3d at 1106.

Plaintiffs attempt to distill the PSLRA requirement that Plaintiffs plead facts giving rise to a strong inference of scienter down to a pointed scrutiny of specific language of the claims at issue, but the Tenth Circuit has never applied the PSLRA in that fashion. It explained the heightened pleading requirement as follows:

In assessing the sufficiency of a plaintiff's allegations under the PSLRA, a court "must consider the complaint in its entirety" and decide "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

Although an inference of scienter "need not be irrefutable, i.e., of the 'smoking-gun' genre," it "must be more than merely plausible or reasonable." *Id.* at 324, 127 S.Ct. 2499. Because the inference must be "powerful or cogent" not only in its own right but "strong in light of other explanations[,]" we must "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 323–24, 127 S.Ct. 2499. Under this standard, a complaint survives dismissal "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324, 127 S.Ct. 2499.

*Smallen v. The Western Union Co.*, 950 F.3d 1297, 1306 (10th Cir. 2020). In applying this standard, the Tenth Circuit follows three "prescriptions" identified by the Supreme Court in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, (2007). *In re Zagg, Inc. Securities Litigation*, 797 F.3d 1194, 1202 (10th Cir. 2015). First, all factual allegations of the Complaint are accepted as true; second, the inquiry is a "holistic" review of the complaint in its entirety, including documents incorporated therein, rather than a focus on any specific paragraph or allegation; and third, the inference of scienter must be found to be at least as compelling as other, nonculpable inferences that may be fairly drawn from the complaint. *Id.*

**B.    Plaintiffs' fraud-based claims are sufficiently pled.**

The QI Defendants point to individual allegations within the claims at issue and argue that Plaintiffs have failed to meet the pleading standards outlined above. Viewed holistically, however, Plaintiffs submit that the Complaint satisfies the applicable pleading standards.

*1.    The allegations adequately identify the parties, the scheme, and the particulars of the misrepresentations and omissions.*

The QI Defendants do not appear to contest that the Complaint adequately lays out the fraudulent scheme and the role of all of its particular players, including themselves. They do not

separately address the sufficiency of paragraphs 120 through 340 that catalogue the misrepresentations and omissions made to the Plaintiffs, or those paragraphs of the Complaint that set forth the basis for Plaintiffs' contention that the facts represented were false. (*See*, ¶ 122-127, 364 (a) – (f)). Plaintiffs submit that judged as a whole and in light of the purposes of the Rules and the PSLRA, the Complaint is sufficient to give notice to the QI Defendants of the claims asserted against them.

### 2. The Complaint is not impermissible group pleading.

Citing cases decided under the PSLRA and pointing only to specific paragraphs within the applicable claim for relief, Defendants argue that the Complaint is impermissible group pleading. (Motion, at 16-18). As a starting point, however, Plaintiffs note that while at least one case in this District has found "group pleading" inconsistent with the heightened standards of the PSLRA because it obscures individual allegations of scienter for each defendant, *see TDC Lending LLC v. Private Capital Group*, 340 F.Supp.3d 1218, 1227 (D. Utah 2018), neither the Supreme Court nor the Tenth Circuit have addressed the issue. *Id.* at 1226.[7]

Here, there are admittedly many statements of fact that because they pertain equally to many defendants are stated collectively. There are, however, also individual allegations as to each of the Individual Defendant showing a direct connection to specific sales of Noah TIC investments. Moreover, this is not a case where Plaintiffs seek to impute specific knowledge to a large number of executives at a large company with sprawling operations. There are two principals of E&W and one of TM. While a defendant's role in the company, without more, is

---

[7] Because the relevant provision of the PSLRA pertains only to allegations of scienter, any limitation on group pleading pertains only to the issue of scienter, and to no other element of securities fraud claim.

ordinarily not determinative, it is always a relevant factor on the issue of scienter. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229 (10th Cir. 2016). Here, the defendants' exclusive control of the entities—taken together with the allegations of the close business relationship between the entities, the communications between them, and the business arrangements to share compensation—is a substantial factor creating an inference of scienter. In any case, the inference that Hamrick, Brown and Marshall each had notice of all of the information available to their particular entity is much more likely than the opposite. Based on the allegations regarding the business relationship, the on-going communications, the disclosures concerning Noah's financials, the misuse of money, and the missed obligations, Plaintiffs submit that the inference that Harmrick, Brown and Marshall turned a blind eye to obvious peril in order to earn easy commissions is much stronger than any contrary inference.

In this regard, Plaintiffs urge the Court to reach a conclusion similar to the one that Judge Campbell reached when a similar argument was presented to her regarding a similar Complaint arising out of the same scheme. In the *DiTucci v. Ashby* matter, she concluded as follows:

> The complaint does undoubtedly include some generalized pleading. But many of the allegations that could arguably be called "group pleading" are simply there to provide greater context to the other, more individualized allegations. Reviewing the complaint as a whole, the court concludes that Plaintiffs have provided sufficient Defendant-specific allegations to plead the first element of this claim.

*See*, Exhibit A, at 7.

### 3. The misrepresentations made by the QI Defendants were not mere corporate optimism or puffery.

As part of their effort to identify a plausible inference that Defendants acted without the requisite scienter, the QI Defendants argue that "much of the alleged misrepresentations made . . . are simply corporate optimism or puffery." (Motion, at 18). They cite authority for the

proposition that statements of opinion or corporate optimism generally do not support a claim sounding in fraud. *See Grossman v. Novell*, 120 F.3d 1112, 1119 (10th Cir. 1997).

Even if the "puffery" explanation were sufficient to excuse recklessness (which it is not), however, that explanation would not apply in this case because the QI Defendants so-called puffery falls within clear exceptions to the general rule. First, an opinion may be actionable if the speaker does not hold the opinion expressed. *Hampton v. root9B Technologies, Inc.*, 897 F.3d 1291, 1299 (10th Cir. 2018). In other words, "an opinion or belief is actionable if the defendant's opinions were both false and not honestly believed when they were made." *In re Pretium*, 256 F. Supp. 3d at 472. Thus, a statement about a party's intent in the future may be actionable if the party in fact had no such intent. *See Berkeley Bank for Cooperatives v. Meibos*, 607 P.2d 798, 804 (Utah 1980); *See also*, *Oberg v. Sanders*, 184 P.2d 229, 235 (Utah 1947) (holding that a "dishonest opinion" is actionable).

Second, an opinion may be actionable if the speaker had no factual basis that justifies the opinion as accurate, and the lack of such a basis would render the opinion misleading. *Hampton*, 897 F.3d at 1299; *see also In re Time Warner, Inc. Sec. Litig.,* 9 F.3d 259, 266 (2d Cir.1993) (explaining that "[m]aterial statements which contain the speaker's opinion are actionable under Section 10(b) of the Securities Exchange Act if the speaker does not believe the opinion and the opinion is not factually well-grounded").

Third, when the relationship of the parties dictates that a buyer will rely on the seller's expression of an opinion, the statement may be actionable. In that regard, the U.S. Supreme Court has stated that "[a]n opinion is a fact. . . When the parties are so situated that the buyer may reasonably rely upon the expression of the seller's opinion, it is no excuse to give a false

one." *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1094 (1991) (quoting Keeton, Dobbs, Keeton, Owen, Prosser, and Keeton on Law of Torts § 109, 760–762 (5th ed. 1984)).

Finally, an opinion may be actionable, even if it accurately states the speaker's opinion, if the opinion omits to state material facts necessary to make the opinion not misleading. *In re Pretium,* 256 F. Supp. 3d at 472. "[O]pinions, though sincerely held and otherwise true as a matter of fact, may nonetheless be actionable if the speaker omits information whose omission makes the statement misleading to a reasonable investor." *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016)(citing, *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175, 135 S. Ct. 1318, at 1332 (2015)).

In this case, the Complaint adequately alleges that the individual defendants had no objective information of any kind suggesting that Noah was a healthy or even a viable business, because no such information existed. Yet the QI Defendants lead the Plaintiffs down the path, making unreliable and false statements about construction, omitting to disclose that they had no reliable financial information, claiming that Noah was prospering, and excusing Noah and Rockwell's failures to perform, to pay their obligations, and even to build the buildings. Taken together with the QI Defendants objectively false statements about their own commissions, the Court is strongly compelled to infer that this was not puffery. It was at best a reckless disregard for the truth in an effort to earn easy and substantial commissions.

> ### 4. The allegations of the Complaint support a strong inference of scienter.

Defendants also argue that the Complaint fails to create a strong inference of scienter, because it is more plausible that Defendants themselves were deceived and that they actually believed that Noah was doing great. Accepting the allegations of the Complaint as true, however, the QI Defendants' suggested inference is not only weak, but almost wholly

implausible. We can begin with the fact that the QI Defendants' misrepresented facts within their clear knowledge in order to get a sale because they told Plaintiffs they were not earning a commission beyond their 1031 exchange fee. Obviously, the QI Defendants knew that they had agreed with Rockwell to a substantial commission. There is no innocent explanation for the misrepresentations to the contrary, and the Court cannot do other than infer scienter. As to representations concerning Noah's financial condition and the numerous omissions making those statements misleading, the Complaint adequately alleges that the QI Defendants had no factual basis for their rosy statements, because such information did not exist. The QI Defendants knew that they had no basis to believe that Noah was financially successful, but they did know that venues were not meeting construction schedules, taxes were not being paid, and Noah was failing to meet other obligations. In these circumstances, the Court can only infer that the QI Defendants were, at best, willfully ignorant. In fact, the Court is compelled to conclude that the QI Defendants knew that they had no basis for their rosy statements at the time they were made.

Plaintiffs urge the Court to consider the QI Defendants' proposed inference in light of all of the circumstances of the matter set forth in the Complaint. Plaintiffs presented a simple opportunity for the QI Defendants to make easy money, so long as the Plaintiffs did not detect the fraud. The intersection of that opportunity with the QI Defendants' motive to make money certainly makes it far more likely than not that the QI Defendants were not victims here. Plaintiffs submit that it is far more likely than not that they saw an opportunity to profit, and were willing to sell out the truth to do so. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 368 (5th Cir. 2004)(recognizing that "allegations of motive and opportunity may meaningfully enhance the strength of the inference of scienter.")(quoting *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)).

5. *The Complaint adequately alleges a confidential relationship supporting a claim for constructive fraud.*

The QI Defendants conclude part III of the Motion with argument that Plaintiffs' claim for Constructive Fraud is not adequately plead because the allegations of a confidential relationship fail to identify them by name.[8] (Motion, at 20). The claim expressly identifies the Upstream Parties, including the QI Defendants, as the relevant defendants, however, and paragraph 373 sets forth 8 separately stated bases for a confidential relationship between the QI Defendants and the relevant Plaintiffs. The concept of an individualized pleading requirement under the PSLRA does not apply to this state-law claim, however, and the QI Defendants provide no real argument that the content of the allegations does not adequately state a claim against them under Rule 8 (a) and, to the extent that it may apply to allegations of a confidential relationship as part of a fraud claim, Rule 9 (b). Plaintiffs submit that the Complaint adequately notifies the QI Defendants of the claim against them, including the factual basis for all of its component elements. It cannot be said that the pleadings are insufficient to allow the QI Defendants to prepare a response.

The QI Defendants also suggest that the Complaint fails to identify the material omissions with particularity. Paragraph 340 of the Complaint, however, identifies 13 specific omissions, none of which are addressed in the Motion. By their nature, omissions cannot be identified by time, place, and speaker, but Plaintiffs have adequately alleged that the facts were material and were never disclosed to them before their investment. In short, the Complaint

---

[8] The QI Defendants' argument in this part of the Motion is built upon Plaintiffs' obvious mistake in identifying paragraph 370 instead of 373 and paragraph 338 instead of 340 as the paragraphs setting forth the basis for the parties' confidential relationship and the QI Defendants' material omissions. As that error is apparent and easily cured by amendment, Plaintiffs' argument here addresses the sufficiency of the pleadings as a whole, without further reference to the error.

adequately alleges material omissions sufficient to state a claim for constructive fraud under Utah law. *See Newport Enters. v. Isys Tech.*, 2015 WL 4715300 *3 (D. Utah 2015) (finding constructive fraud where there is a confidential relationship and a failure to disclose material facts).

**IV.     Plaintiffs Have Properly Stated a Claim for Breach of Fiduciary Duty.**

In Part IV of their Motion, the QI Defendants make a single argument that Plaintiffs' claim for breach of fiduciary duty is subject to Rule 9 (b) because it is "clearly predicated on a scheme to defraud." (Motion, at 21). The general rule, of course, is Rule 9 (b) does not apply to claims for breach of fiduciary duty, because they are founded in negligence. *Precision Vascular Sys. Inc. v. Sarcos, LC*, 199 F. Supp. 2d 1181, 1191 (D. Utah 2002). The exception upon which the QI Defendants rely applies only where the alleged breach itself is a scheme to defraud. *Id.* The difference between the two is well-illustrated in the *Precision Vascular* case, where despite abundant allegations of fraud, the Court found that the claim for breach of fiduciary duty adequately alleged other breaches of duty grounded in negligence, and that the claim was thus subject only to the Rule 8 (a) requirement to state a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 1192 (quoting, Fed. R. Civ. P. 8 (a)).

There can be no doubt that Plaintiffs' claim for breach of fiduciary duty adequately states a claim based on duty, breach, causation and damages. Even where paragraph 374 (a) identifies the misrepresentations and omissions as breaches of duty, those misrepresentations and omissions are not actionable here because they were part of a fraud scheme; they are actionable because the QI Defendants had a fiduciary obligation to seek their clients' interest and not their own, and make a full disclosure to clients that would serve that interest. *See Rankin v. Rots*, 278 F. Supp. 2d 853, 876–77 (E.D. Mich. 2007) ("Defendants had a duty under securities laws not to

make any material misrepresentations; they also have a duty to disseminate truthful information to plan participants . . . .").  Moreover, even if the alleged breach in paragraph 374 were the fraud scheme itself, that factual basis for that scheme is stated in abundant particularly sufficient to satisfy Rule 9 (b).

The remaining allegations of breach in paragraphs 374 (b) through (f) do not depend on proving a fraud scheme but delineate specific and independent breaches of duty to the Plaintiffs that caused injury to Plaintiffs in their own right.  As in *Precision Vascular*, the breaches identified here state a claim sounding in negligence and based upon duty, breach, causation and damages.

### V.  Plaintiffs Have Properly Stated a Claim for Aiding and Abetting Tortious Conduct.

Part V of the Motion seeks dismissal of Plaintiffs' Sixth Claim for Relief based on a single argument that Utah has not yet recognized a claim for aiding and abetting fraud.  (Motion, at 21).  To the extent that Utah law governs, which is not certain, Plaintiffs disagree and submit that the Utah Supreme Court has or would likely recognize a claim for aiding and abetting fraud.  Although it has not recently or explicitly addressed such a claim, the Utah Supreme Court affirmed such a claim in *Lynch v. MacDonald*, 367 P.2d 464 (Utah 1962). In that case, which remains good case law involving a fraudulent scheme, the court explained it has "frequently been held that one who knowingly aids and abets a fiduciary to make secret profit may be held jointly with the fiduciary for such secret profits." *Id.* (citations omitted). As to fraud, the court explained that

> the respondents were the victims of a fraud perpetrated upon them by their coadventurer, MacDonald, assisted by Morgan, who knowing all the facts, **actively aided and abetted Doc MacDonald in the consummation of this fraud. Morgan, therefore, was as much guilty as Doc MacDonald**.

*Id.* (emphasis added). The logic applicable to Morgan and Doc MacDonald remains sound in its application to the QI Defendants.

Plaintiffs acknowledge that some courts in Utah have recently declined to address whether a claim for aiding and abetting fraud exists. *See Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1251 n.1 (D. Utah 2017) (expressly not addressing the issue because the case was resolved on other grounds); *Coroles v. Sabey*, 2003 UT App 339, ¶¶ 36–37 & n. 19–20, 79 P.3d 974 (declining to address the issue because the case was dismissed on other grounds). By the same token, however, these have not concluded that such a claim does not exist, and Plaintiffs urge this Court to recognize such a claim.

To the extent that Utah court have not recognized the claim, this Court must predict how Utah state courts would rule. *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002). Not only does *Lynch* suggest that courts regularly recognize such a claim, but Utah courts have explicitly recognized other secondary fraud-based claims. *See Gildea v. Guardian Title Co.*, 970 P.2d 1265, 1271 (Utah 1998) (recognizing civil conspiracy to defraud). Other jurisdictions routinely recognize this claim. *Gabriel Capital, LP v. NatWest Fin., Inc.*, 94 F. Supp. 2d 491, 511 (S.D.N.Y. 2000) (recognizing the claim); *Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 23 (Ariz. 2002) (same); *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1050 (Md. 1995) (same); 1 Lender Liability Law, Prac. & Prevention § 6.4 (Mar. 2020 update) (describing the claim as similar to that of aiding and abetting another's breach of fiduciary duty). On this basis alone, the Court should deny the QI Defendants' Motion on this claim.

## VI. Plaintiffs Have Properly Alleged Civil Conspiracy.

In Part VI of the Motion, the QI Defendants argue first that the claim for civil conspiracy fails because the underlying fraud is not plead with particularity. (Motion, at 22). Plaintiffs reincorporate their relevant argument above and urge the Court to deny the Motion on this basis.

The QI Defendants also argue that Plaintiffs fail to allege facts that could "plausibly support the existence of a conspiracy in which the EWI Defendants or the TM participated." (Motion, at 22). They argue the Complaint lacks specific allegations showing a "meeting of the minds" or an agreement among the defendants. To the extent that this argument is plausible in reference to paragraphs 409 to 413 standing alone, Plaintiffs urge a more holistic reading of the Complaint, consistent with paragraph 408, which incorporates by reference all other factual allegations. A review of the whole Complaint—reading paragraphs 409 to 413 with all the detailed paragraphs elsewhere in the Complaint—provides a substantial and detailed factual basis from which the Court may infer a combination of parties, a tortious object to be accomplished, a meeting of the minds, numerous overt acts, and substantial damages. For instance, the Complaint shows that Hamrick, Brown and Marshall—along with the Rockwell parties, Bowser, and others—made multiple, systematic, and consistent misrepresentations about the TIC investments to numerous parties over time. The Complaint alleges a close business relationship, constant communication, and an established compensation system between Hamrick, Brown and Marshall and the Rockwell parties. (¶ 116, among others). In short, the Complaint as a whole alleges substantial facts sufficient to state an express, implied or tacit agreement between the parties to pursue the fraudulent TIC program at Plaintiffs' expense.

## VII. Plaintiffs Sufficiently Allege the Sale of Unregistered Securities.

In Part VII of the Motion, the QI Defendants seek dismissal of the claim for sale of unregistered securities on the basis that it fails to plead specific allegations against them. The claim for the sale of unregistered securities, however, has only three elements: "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972). It is not grounded in fraud, and therefore not subject to the heightened requirements of Rule 9 (b) or the PSLRA. The Complaint identifies the Upstream Parties as defendants on this claim, and provides a short, plain statement of the claim applicable to them, as required by Fed. R. Civ. P. 8 (a). Nothing more is required. *See Utah Physicians for a Healthy Env't, Inc. v. Dieselsellerz.com, LLC*, 2017 WL 11477130 *1 (D. Utah 2017)(holding that under Rule 8, pleadings need only provide the defendants notice of the claims against them and the grounds on which they rest").

The QI Defendants also argue that the Complaint fails to allege these specific parties specific use of instrumentalities of interstate commerce. That argument fails for two reasons. First, the use of interstate commerce need only be generally plead sufficient to put Defendants on notice of the claim. Paragraph 417 of the Complaint easily satisfies that standard. Second, read holistically, the Complaint includes sufficient details to establish the use of elements of interstate commerce. For instance, it alleges that Hamrick and Brown were in New Hampshire and Marshall was in California and at least some of their clients were in other states. It alleges communications with Rockwell and Noah. It alleges properties in Ohio and Florida. In short, the Complaint fairly alleges that the QI Defendants sold out-of-state property to out-of-state

clients through an out-of-state TIC company. In that light the allegations of interstate commerce in paragraph 417 a clearly sufficient with respect to the QI defendants.[9]

Finally, the QI Defendants argue that the claim is beyond the one-year limitations period applicable to claims for the sale of unregistered securities. In this case, Plaintiffs contend that the limitations period began to run in March or April of 2019, when Plaintiffs became aware of problems with their investments. The primary purpose of the act "is to protect investors by requiring publication of material information thought necessary to allow them to make informed investment decisions concerning public offerings of securities in interstate commerce." *Pinter v. Dahl*, 486 U.S. 622, 638 (1988). "[I]n many instances a private suit is the only effective means of detecting and deterring a seller's wrongful failure to register securities before offering them for sale." *Id.* (citations and internal quotation marks omitted). For this reason, section 77m, specifically provides that if an action is brought alleging that a material misrepresentation or omission was made either in the registration statement or the sale itself, the statute of limitations does not begin to run until the plaintiff discovers the problem. Here, the Complaint contains allegations that show the sale of the securities involved fraud and misrepresentations by the QI Defendants. It also shows that Plaintiffs sued within one year after the discovery of problems with their investments, the first signs of which were in March and April of 2019. The claim was thus raised within the one-year limitations period.

### VIII. Plaintiffs Have Sufficiently Plead A Claim for Control Person Liability.

In Part VIII of the Motion, the QI Defendants move for dismissal of the claims for control person liability against Hamrick, Brown and Marshall on two bases. First, they argue

---

[9] The E&W Defendants made this same argument in the *DiTucci v. Ashby* matter, and Judge Campbell rejected it with dispatch. *See* Exhibit A, at 10-11.

that Plaintiffs' allegations concerning Hamrick, Brown and Marshall's control of their respective entities are not sufficient detailed to satisfy the PSLRA or even Rule 8 (a). The PSLRA, however, has no provision pertaining to the manner in which control person liability is plead. Moreover, Rule 8 (a), even after *Iqbal*, requires nothing more than a short, plain statement of the claim sufficient to notify the Defendants of a plausible claim against them. On the issue of control, the allegation that these defendants are officers, directors or other control people of their respective organizations—a fact apparent on the face of each entity's state corporate filings—is sufficient factual basis to satisfy the most exacting pleading standard. Moreover, a holistic reading of the Complaint, including the specific allegations regarding the QI Defendants— includes sufficient facts to notify Hamrick, Brown and Marshall that Plaintiff contend that they actually controlled the entities by speaking, contracting, bargaining, and directing their affairs in all respects.

The QI Defendants' second argument merely reiterates their contentions regarding the underlying securities fraud claims and pointing out that if the underlying claim is dismissed, the claim for control person liability should be dismissed as well. Plaintiffs acknowledge that proving the underlying fraud is an element of a claim for control person liability and incorporate herein all of their argument above with respect to those underlying claims.

### IX. Plaintiffs Have Sufficiently Stated Claims for State Law Securities Violations and Fraud.

The Complaint includes three very different claims arising under applicable state securities laws. The Eleventh Claim for Relief alleges that the QI Defendants violated laws requiring them to be licensed to sell securities. The Twelfth Claim for Relief alleges that the QI Defendants violated the anti-fraud provisions of applicable state law. And the Thirteenth Claim for Relief alleges that the QI Defendants materially aided and abetted violations of state

securities laws, as that term is defined in the applicable statute. Plaintiffs lump these claims together and argue first, that the claims are not sufficiently plead because Plaintiffs have not identified which state law applies; second, that the fraud claim is not plead with particularity; and third, that the claims are duplicative. Plaintiffs will address each claim separately.

The Eleventh Claim for Relief is based on the QI Defendants' status as unlicensed individuals. Plaintiffs acknowledge that in pleading this claim, they have not attempted to resolve a potentially vexing choice-of-law issue because it may not ultimately require a resolution. Instead, they have identified the statutory basis for their claim in all of the potentially relevant states, all of which require the same fundamental thing: licensing of persons selling securities.[10] Plaintiffs submit that where all potentially applicable state law is substantially the same, a short, plain statement of the factual basis for the claim showing entitlement to relief under the laws of all the relevant states is sufficient to notify the QI Defendants of the claim and allow them to provide a response. Where the QI Defendants' response does not argue the choice of law issue or identify any jurisdiction in which the Eleventh Claim for Relief would not adequate state a claim against them, the Court need not address either the choice of law issue nor the substance of the claim at this point but should merely deny the Motion and allow the claim to be litigated on the merits.

The QI Defendants' other two arguments have no application to the Eleventh Claim for Relief. As it is not grounded in fraud, the Eleventh Claim for Relief is not subject to any heightened pleading standard or dependent on any underlying claim. Moreover, the claim is not

---

[10] These statutes vary slightly in language, but all require licensing. For example, Fla. Stat. § 517.12 prohibits "unregistered dealers, associated persons, or issuers of securities," while Ga. Code Ann. § 10-5-31 (a) makes it unlawful to "transact business in this state as an agent unless the individual is registered" under state law. All of the state statutes identified in paragraph 438, footnote 2 of the Complaint are substantially similar.

duplicative of any federal claim, as the federal statutes have not parallel requirements pertaining to the licensing of securities agents. The Motion must therefore be denied as to the Eleventh Claim for Relief.

The Twelfth Claim for Relief alleges violations of state-law anti-fraud statutes. As with the Eleventh Claim for Relief, all potentially relevant statute statues are identified (Complaint, ¶ 453, n. 3), and again, the statutes cited are substantially similar. The QI Defendants do not identify which state law they believe controls or identify any state in which the allegations of the Claim would not adequately state a claim. Plaintiffs submit Rule 9 (b) does not require Plaintiffs to resolve all possible choice of law issues at the pleading stage, particularly where the claim is adequately plead under the law of any of the potentially relevant states.

The QI Defendants argument that the factual allegations of the Twelfth Claim for Relief do not meet the heightened standard of Rule 9 (b) merely incorporates their prior argument relating to the common-law fraud claims. Plaintiffs incorporate herein their responses as set forth above. The argument that the claims are improperly duplicative also fails, primarily because there is no rule against asserting duplicative claims at the pleading stage. *See Christine S. v. Blue Cross Blue Shield of New Mexico*, 428 F. Supp. 3d 1209, 1232 (D. Utah 2019) (although duplicative recovery may be barred, parties may assert duplicative claims, and resolution of the duplicative claims in not appropriate at the stage of a motion to dismiss on the pleadings). In fact, the authority cited to the contrary in the QI Defendants' brief did not suggest that a party cannot plead duplicative claims. It merely held that where a securities fraud claim

failed to satisfy Fed. R. Civ. P. 9 (b), its "common law doppelganger" would fail as well. *Shaffer Smith v. Foster*, 168 F. Supp. 3d 654, 660 n. 1 (S.D.N.Y. 2016).[11]

As to the Thirteenth Claim for Relief, Plaintiffs position with respect to all three of the QI Defendants' arguments is the same. The Complaint identifies the applicable statutes, which are not substantially different from one another, and states a factual basis for relief under any of them. Since the QI Defendants do not identify any state in which their allegations would not state a claim, the Court may simply deny the Motion. As to pleading with particularity, Plaintiffs incorporate their arguments regarding the sufficiency of the underlying fraud claims, and note that the broader allegations of the Claim concerning the QI Defendants material assistance in the fraud scheme must be read holistically with the specific allegations throughout the Complaint regarding the QI Defendants and the Upstream Parties specific acts and involvement in the overall fraud scheme. Finally, the claim is not duplicative, because there is no federal equivalent, and even if there were, there is no bar on pleading alternative claims.

## X.  Plaintiffs' Have Stated a Claim for Abuse of Vulnerable Adults.

The QI Defendants contend that the claim for abuse of vulnerable adults is preempted under Utah law. As a threshold question, however, Plaintiffs' question whether Utah law even applies to this claim. While Plaintiffs did cite Utah Code section 76-5-11, they did so as an example of statutes protecting vulnerable adults, and intentionally plead the claim broadly and under "applicable laws" because of the uncertainly as to governing law. Plaintiffs' only reference to Utah law was with respect to the definition of vulnerable adults as persons over 65 years old.

---

[11] Even if duplicate claims were improper, Plaintiffs note that the state-law securities fraud claims are substantively different than the federal claims because they require a different showing of scienter, *see, e.g. Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011)(holding that mere negligence is sufficient to prove securities fraud under Florida law), and they provide for different remedies.

(Complaint ¶ 474.) The balance of the allegations track general language and elements of "elder abuse" claims recognized in multiple jurisdictions and are sufficient, in that regard, to put defendants, including the QI Defendants, on notice of the claim.

Even if Utah law were the applicable framework, the Complaint would still state a proper claim for relief. Utah code section 61A-3-314 permits a right of action for financial loss as a result of exploitation.[12] In turn, financial exploitation is defined in the criminal code to include deception, Utah Code Ann. § 76-5-111(9)(a)(i), and mismanagement, *id.* § 76-5-111(9)(a)(iii). The detailed factual allegations setting forth the QI Defendants' misrepresentations and omissions, fraud, breach of fiduciary duty, and other conduct—which are expressly incorporated in the claim (Complaint ¶ 473), are certainly sufficient to state a claim for exploitation of vulnerable adults. Thus, the QI Defendants Motion should be denied.

## CONCLUSION

Based on the above, Plaintiffs urge the Court to deny the Motion to Dismiss. Alternatively, if the Court determines any claims are inadequately pled, Plaintiffs request the chance to amend the complaint to cure any deficiencies.

DATED this 10th day of May 2021.

**STRONG & HANNI, P.C.**

    */s/ Reid W. Lambert*
Reid W. Lambert
Attorneys for Plaintiffs

---

[12] The QI Defendants assert that the statute preempts all other remedies, but the statute is narrowly tailored to very specific offenses and does not exclude other possible remedies for abuse or exploitation of vulnerable adults that may exist at common law or arise from violations of the criminal law.

# CERTIFICATE OF SERVICE

I certify that on the 10th day of May 2021, I caused the **PLAINTIFFS' OPPOSITION TO DEFENDANTS EDMUND & WHEELER, INC., JOHN D HAMRICK, CHRIS BROWN, TM 1031 EXCHANGE, AND TIM MARSHALL'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) & 12(b)(6)** to be served electronically filed which delivered immediate notice to the same to the following:

- **Landon A. Allred -** landon@yorkhowell.com, ciara@yorkhowell.com
- **Erik A. Christiansen** echristiansen@parsonsbehle.com, ecf@parsonsbehle.com, cgroos@parsonsbehle.com, docket@parsonsbehle.com
- **Jeffrey C. Corey -** ecf@parsonsbehle.com, jcorey@parsonsbehle.com
- **Royce B. Covington -** rcovington@parrbrown.com, calendar@parrbrown.com
- **R. Jesse Davis -** jdavis@strongandhanni.com
- **Jonathan O. Hafen -** jhafen@parrbrown.com, calendar@parrbrown.com
- **Douglas W. Henkin -**douglas.henkin@dentons.com, DOCKET.GENERAL.LIT.KCM@dentons.com
- **Reid W. Lambert -** rlambert@strongandhanni.com, tlawrence@strongandhanni.com
- **David L. Mortensen -** dlmortensen@stoel.com, slcdocket@stoel.com, sakamaya@stoel.com, 1904567420@filings.docketbird.com
- **Sara M. Nielson -** snielson@parrbrown.com, acoats@parrbrown.com, calendar@parrbrown.com
- **Chad S. Pehrson -** cpehrson@kba.law, calendar@parrbrown.com
- **Joseph M. Stultz -** joe@yorkhowell.com, ciara@yorkhowell.com
- **Scott D. Sweeney -** scott.sweeney@wilsonelser.com, DenverCourtFilings@wilsonelser.com, lauren.hauert@wilsonelser.com, laura.devico@wilsonelser.com

I certify that on the 10th day of May 2021, I caused the **PLAINTIFFS' OPPOSITION TO DEFENDANTS EDMUND & WHEELER, INC., JOHN D HAMRICK, CHRIS BROWN, TM 1031 EXCHANGE, AND TIM MARSHALL'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) & 12(b)(6)** to be served via US Mail services to the following:

**William Bowser**
55 W South Temple Unit 404
Salt Lake City, Ut 84101

**Gabriel Management**
C/O William Bowser
55 W South Temple Unit 404
Salt Lake City, UT 84101

**STRONG & HANNI**

_____
_/s/ Tiffany B. Lawrence_
Legal Assistant to Reid W. Lambert
Attorney for the Plaintiffs

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROSA DiTUCCI, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CHRISTOPHER ASHBY, et al., <br><br> Defendants. | ORDER AND <br> MEMORANDUM DECISION <br><br> Case No. 2:19-cv-277-TC-PMW |

Nineteen Plaintiffs[1] have brought suit against a group of fifteen Defendants,[2] who

allegedly misappropriated funds from a real estate development project in Indiana.  Two motions

to dismiss are now before the court, one filed by Defendants John Hamrick, Chris Brown, and

Edmund and Wheeler, Inc. (the "E&W Defendants") and the other filed by Greg DeSalvo and

Belle Isle Enterprises, LLC (the "Belle Isle Defendants").  (See ECF Nos. 108, 139.)[3]  Although

not identical, the motions raise many similar arguments, and so are addressed together.

---

[1] The Plaintiffs are Rosa DiTucci, Steven R. LaRoza, Debra A. LaRoza, Bruce I. Rose, Maureen A. Rose, Russell E. Hertrich, the Russel E. Hertrich Revocable Trust, Sanford Roberts, the Sanford Roberts Revocable Trust, Helaine B. Roberts, the Helaine B. Roberts Revocable Trust, Fred Jacob, the Fred Jacob Living Trust, Edward A. Hennessey, the Edward A. Henessey 2001 Revocable Living Trust, CAMAC, Inc., Blush Property, LLC, Linda Camp, and Bryan Merklin.

[2] The Defendants are Christopher J. Ashby, John D. Hamrick, Jordan S. Nelson, Scott W. Beynon, William Bowser, Chris Brown, Scott Rutherford, Greg DeSalvo, Rockwell Debt Free Properties, Inc., Rockwell TIC, Inc., Noah Corp., Edmund and Wheeler, Inc., Rockwell Indianapolis, LLC, Gabriel Management Corp., and Belle Isle Enterprises, LLC, plus Does I-X and Roe Corporations I-X.  Defendants Scott B. LeFevre and LeFevre Management were dismissed from the action on September 10, 2019.

[3] A third motion to dismiss, by Defendant Scott Rutherford (ECF No. 101), was stayed after Mr. Rutherford filed a notice of bankruptcy.  (See ECF No. 114.)

For the reasons stated below, the E&W Defendants' motion to dismiss is granted in part and denied in part.  The Belle Isle Defendants' motion to dismiss is denied.

## BACKGROUND[4]

This action involves four groups of Defendants: the Rockwell Defendants (Christopher Ashby, Jordan Nelson, Scott Beynon, Scott Rutherford, Rockwell Debt Free Properties, Inc., Rockwell TIC, Inc., and Rockwell Indianapolis, LLC); the Noah Defendants (Noah Corporation, Gabriel Management Corporation, and William Bowser), the E&W Defendants, and the Belle Isle Defendants.  (Second Amended Complaint ("SAC") ¶¶ 63–77 (ECF No. 94).)

The Rockwell Defendants are in the business of selling Tenant-in-Common ("TIC") investments.  (Id. at ¶ 128.)  A TIC investment is one in which up to thirty-five investors hold real property as tenants-in-common.  (Id. at ¶ 83.)  Such investments are considered attractive because they can provide a steady return-on-investment through rental income and because they allow investors to receive certain federal tax benefits.  (Id. at ¶¶ 86–89.)

In 2018, the Rockwell Defendants purchased real property in Indiana.  (Id. at ¶¶ 139–141.)  The E&W Defendants and the Belle Isle Defendants were "finders" who worked with the Rockwell Defendants to locate potential investors and convince them to purchase TIC interests in the property.  Through the efforts of the E&W Defendants, TIC interests were sold to Plaintiffs Rosa DiTucci, Steven LaRoza, Debra LaRoza, Edward Hennessey, the Edward A. Hennessey 2001 Revocable Living Trust, Sanford Roberts, the Sanford Roberts Revocable Trust, Helaine Roberts, the Helaine Roberts Revocable Trust, Russell Hertich, and the Russell E. Hertrich Revocable Trust.  (Id. at ¶¶ 142–43, 167, 181, 204–05, 210, 219, 221, 226, 229, 234, 237.)  The Belle Isle Defendants helped sell TIC interests to Plaintiffs Linda Camp, Bryan

---

[4] The court draws these facts from the operative Second Amended Complaint.  The court accepts these allegations as true for purposes of these motions only.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

2

Merklin, and Blush Property, LLC.  (Id. at ¶¶ 265, 269.)  Meanwhile, Plaintiffs Fred Jacob, the

Fred Jacob Living Trust, Bruce Rose, Maureen Rose, and CAMAC, Inc., worked directly with

the Rockwell Defendants to purchase their interests.  (Id. at ¶ 231–33, 244, 256, 263–64.)

The funds from these investments were supposed to be used by the Noah Defendants to

build an event center on the property, which would be known as Noah's Carmel.  The Noah

Defendants would then use the profits from the event center to pay rent to the Rockwell

Defendants, who in turn would disburse a portion of this rental income to the investors.  (Id. at ¶¶

131–132, 142–147, 155.)

Plaintiffs allege that Defendants made numerous fraudulent misrepresentations and

omissions while convincing Plaintiffs to invest in Noah's Carmel.  For example, Defendants'

marketing materials included false statements about Plaintiffs' likely return on investment and

about the types of commissions earned by the E&W Defendants and the Belle Isle Defendants.

(Id. at ¶¶ 8, 27, 39, 41, 102, 113–14, 122–23, 126, 155–58.)  Plaintiffs also assert that Defendants

made misleading statements about the status of the event center; some Plaintiffs were led to

believe the center had already been built, while others believed construction of the center was

ongoing, when in fact construction had not yet begun.  (Id. at ¶¶ 160–65, 172, 180, 211, 202,

220, 227, 231.)  Finally, the complaint states that Defendants failed to inform Plaintiffs that their

investments would not actually go toward building Noah's Carmel.  Instead, the money was used

by the Noah Defendants to fund unrelated projects—"stealing from Peter to pay Paul," as

Defendant William Bowser allegedly put it—which ultimately led to Noah declaring bankruptcy

in May of 2019.  (Id. at ¶¶ 17–21, 25, 126.)

Based on these facts, Plaintiffs bring the following causes of action against some or all

Defendants:

1. Negligent Misrepresentation;
2. Negligence;
3. Breach of Fiduciary Duty;
4. Fraud;
5. Negligent Hiring/Supervision/Retention;
6. Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder;
7. Violation of Section 12(a)(1) of the Securities Act and Section 5 Thereunder;
8. Sale of Securities by an Unlicensed Broker under various state securities statutes;
9. Violation of State Blue Sky Laws;
10. Control Person Liability Under Exchange Act Section 20(a);
11. Conversion;
12. Fraudulent Inducement;
13. Breach of Contract;
14. Elder Abuse;
15. Unjust Enrichment;
16. Civil Conspiracy; and
17. Aiding and Abetting.

The E&W Defendants and Belle Isle Defendants now move to dismiss the claims asserted against them.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint when the complaint fails to "state a claim upon which relief may be granted." When reviewing a complaint, the court must take all well-pleaded factual allegations as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

\\

\\

## I.      Federal Securities Claims

### A.  Section 10(b) and Rule 10b-5

Section 10(b) of the Securities Exchange Act of 1934 instructed the Securities and

Exchange Commission ("SEC") to craft rules and regulations to prevent securities fraud.  See 15

U.S.C. § 78j.  Rule 10b-5 is one of the regulations the SEC has promulgated and Plaintiffs' sixth

cause of action is for violations of Rule 10b-5.  Under that rule:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of interstate commerce, or of the mails or of any facility of any
> national securities exchange,
>> (a) To employ any device, scheme, or artifice to defraud,
>> (b) To make any untrue statement of a material fact or to omit to state a
>> material fact necessary in order to make the statements made, in the light
>> of the circumstances under which they were made, not misleading, or
>> (c) To engage in act, practice, or course of business which operates or would
>> operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

The parties address only subdivision (b) of this rule.  (See E&W Mot. at 13 (ECF No.

108); Belle Isle Mot. at 7 (ECF No. 139).)[5]  A defendant is liable under that subsection if:

> (1) the defendant made an untrue or misleading statement of material fact, or
> failed to state a material fact necessary to make statements not misleading; (2) the
> statement complained of was made in connection with the purchase or sale of
> securities; (3) the defendant acted with scienter, that is, with intent to defraud or
> recklessness; (4) the plaintiff relied on the misleading statements; and (5) the
> plaintiff suffered damages as a result of his reliance.

Weinstein v. McClendon, 757 F.3d 1110, 1112–13 (10th Cir. 2014) (quoting In re Level 3

Commc'ns, Inc. Sec. Litig., 667 F.3d 1331, 1333 (10th Cir. 2012)).

---

[5] Although Defendants' motions to dismiss analyze only subsection (b), Plaintiffs suggest (in response to the Belle
Isle motion, but not the E&W motion) that their Rule 10b-5 cause of action actually includes claims under
subsections (a) and (c) as well.  (Pl.'s Opp'n at 6 n.3 (ECF No. 140).)  Because the court concludes that Plaintiffs
have sufficiently alleged a cause of action under subsection (b), the court need not address whether Plaintiffs have
alternatively pled a claim under subsections (a) or (c).

The Belle Isle Defendants move to dismiss this cause of action on the ground that Plaintiffs have not sufficiently alleged the first, third, fourth, or fifth elements of the claim. The E&W Defendants challenge only the first and third elements.

1. <u>Material Statements or Omissions</u>

Under the Private Securities Litigation Reform Act (PSLRA), the complaint is subject to a heightened pleading standard. For the first element of their Rule 10b-5 claim, Plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." PSLRA, 15 U.S.C. § 78u-4(b)(1). A statement or omission is material if it is "reasonably calculated to influence the decisions of an investor—institutional or otherwise—in its trading in securities." <u>SEC v. Gann</u>, 565 F.3d 932, 937 (5th Cir. 2009); <u>see also</u> <u>Flynn v. Bass Bros. Enters., Inc.</u>, 744 F.2d 978, 985 (3d Cir. 1984) (defining "material" for Rule 10b-5 cases as a "'substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available'") (<u>quoting</u> <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976)).

The E&W Defendants and the Belle Isle Defendants mostly do not challenge whether the statements included in the complaint could be considered false misrepresentations.[6] Rather, they focus on Plaintiffs' failure to provide specific facts showing that it was <u>these</u> Defendants, as

---

[6] The E&W Defendants do very briefly suggest that some of the statements identified by Plaintiffs are nonactionable, either because they were just statements of opinion or because they were just puffery and "corporate optimism." (<u>See</u> E&W Mot. at 20–21.) But in the court's view, these issues should more appropriately be resolved at the summary judgment stage. Whether something is an opinion or puffery, as opposed to a knowing misstatement of fact, depends largely on the speaker's intent, which cannot be determined at the motion to dismiss stage. <u>See, e.g.</u>, <u>In re Syngenta AG MIR 162 Corn Litig.</u>, 131 F. Supp. 3d 1177 (D. Kan. 2015) (denying motion to dismiss because the court could not determine from the pleadings alone whether the alleged misstatements were "forward-looking predictions and opinions," which would not be actionable, or "present expectations, which could constitute misrepresentations of fact.").

opposed to other Defendants, who made the misrepresentations. The Defendants contend that Plaintiffs have improperly engaged in "group pleading"—treating all Defendants as a single unit, rather than as individuals—which is not permitted under the PSLRA. See, e.g., TDC Lending, LLC v. Private Capital Group, Inc., 340 F. Supp. 3d 1218, 1226–27 (D. Utah 2018); accord In re Thornburg Mortg., Inc. Sec. Litig., 695 F. Supp. 2d 1165, 1196 (D.N.M. 2010).

The complaint does undoubtedly include some generalized pleading. (See, e.g., SAC ¶¶ 7, 20, 127, 378.) But many of the allegations that could arguably be called "group pleading" are simply there to provide greater context to the other, more individualized allegations. Reviewing the complaint as a whole, the court concludes that Plaintiffs have provided sufficient, Defendant-specific allegations to plead the first element of this claim.

For example, Plaintiffs state that Mr. Hamrick, the Vice President of E&W, made a 5% commission on each sale, but falsely told each investor that he actually received only a $700 flat fee. (Id. at ¶¶ 27, 37(g), 122.) Similarly, "Defendants Rockwell, E&W, and Belle Isle advertised the property with no closing costs and did not disclose any commissions or fees other than [a] $700 [fee]," even though Belle Isle was also receiving a 3% commission. (Id. at ¶¶ 113, 125.) Given the amounts invested, Defendants' commissions were significantly higher than the $700 fee advertised.[7]

Plaintiffs also contend that Mr. DeSalvo sent a sales package to several Plaintiffs, even though this sales package contained misrepresentations about Plaintiffs' likely return on investment. (Id. at ¶¶ 102, 127, 155–58, 267.) Plaintiffs allege that Mr. Hamrick and Mr. Brown sent out the same materials. (Id. at ¶¶ 101, 126–27, 228.) The sales materials also contained

---

[7] For example, Plaintiff Blush Property, LLC, who worked with Mr. DeSalvo, invested $369,300. (SAC ¶ 269.) A 3% commission on this amount would equal approximately $11,079. Similarly, Plaintiff Edward A. Hennessey 2001 Revocable Living Trust purchased $400,000 worth of TIC investments from Mr. Hamrick. (SAC ¶ 221.) A 5% commission on this amount would equal $20,000.

representations regarding the favorable tax consequences of TIC investments, such as their

eligibility for 1031 exchanges.[8] (Id. at ¶ 155(b).) Mr. Hamrick distributed these sales materials

even though he "knew these securities did not qualify for 1031 treatment." (Id. at ¶ 122; see also

id. at ¶¶ 331–32.)

Plaintiffs' complaint also includes allegations of omissions. For example, Plaintiffs state

that no Defendants informed them about the lack of progress toward building Noah's Carmel (id.

at ¶¶ 160–65, 172, 180, 202, 211, 220, 227, 231) and that no Defendants disclosed how funds

were being moved around between multiple projects (id. at ¶¶ 17–21, 25, 126). While it is true

that some (though not all) of these paragraphs could be described as "group pleadings," it is

unclear how Plaintiffs could be more specific; because they are alleging that each Defendant

failed to make certain disclosures, there is no practical way for Plaintiffs to detail the date or

place of conversations that never occurred.

In sum, the court concludes that the above allegations are sufficient and that Plaintiffs

have properly pled that the E&W Defendants and the Belle Isle Defendants were responsible for

fraudulent misrepresentations and omissions.

2. Scienter

To properly plead scienter, the plaintiff must "state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind." PSLRA, 15 U.S.C.

§ 78u-4(b)(2)(A) (emphasis added). An affirmative misrepresentation violates Rule 10b-5 only

if Defendants acted with a "'mental state embracing intent to deceive, manipulate, or defraud,' or

recklessness." Anderson v. Spirit Aerosystems Holdings, Inc., 827 F.3d 1229, 1236–37 (10th

Cir. 2016) (quoting Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1105 (10th Cir. 2003)). To

---

[8] Section 1031 exchanges allow capital gains taxes from the sale of real estate to be deferred, if the capital gains are reinvested into other real property. (SAC ¶ 9.)

be reckless, Defendants must have "(1) acted in an extreme departure from the standards of ordinary care and (2) presented a danger of misleading buyers or sellers that was known to the defendants or so obvious that the defendants must have been aware of the danger." Id. at 1237 (internal quotations omitted). Similarly, for an omission to violate Rule 10b-5, "the plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors." Weinstein, 757 F.3d at 1113 (quoting City of Phila. v. Fleming Cos., Inc., 264 F.3d 1245, 1261 (10th Cir. 2001)). Similar to an affirmative misrepresentation, "[t]he requirement of knowledge in this context may be satisfied under a recklessness standard." Id.

The court concludes that Plaintiffs have satisfactorily pled scienter. Perhaps the most straightforward example is the alleged commissions. As noted above, Plaintiffs claim that the E&W Defendants and the Belle Isle Defendants told Plaintiffs that the only costs associated with the investment was a $700 closing fee, when in fact Defendants were taking a 5% and 3% commission from the top of the investments. (SAC ¶¶ 27, 37(g), 40(g), 122, 125, 277.) There is a strong inference that, because these funds were going directly into Defendants' pockets, they would be aware that they were making affirmative misrepresentations to Plaintiffs. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 325 (2007) ("[P]ersonal financial gain may weigh heavily in favor of a scienter inference."). And on its face, this information would be material to an investor because it directly diminished the size of their investment.

While the other misrepresentations and omissions identified by Plaintiffs are slightly less direct, the court nevertheless concludes that Plaintiffs' allegations create a strong inference of scienter for this misconduct as well. For example, Plaintiffs assert that the E&W Defendants and the Belle Isle Defendants were in almost constant contact with the Rockwell Defendants and the

Noah Defendants, visiting Utah "to strategize and disseminate marketing and other plans" and frequently communicating by email, including for the express purpose of discussing the status of the project with Mr. Bowser, who was in charge of overseeing the event center's construction. (Id. at ¶¶ 37(d), 37(f), 38(d), 40(d), 40(f), 116–18.) The Defendants were close business associates who had conceived of the project together. (Id. at ¶¶ 99, 102, 114, 399.) Mr. DeSalvo allegedly worked on investments with the Rockwell Defendants on at least seven earlier occasions. (Id. at ¶ 112.) Mr. Hamrick had also worked with the Rockwell Defendants on earlier projects, so much so that "[t]he vast majority of [Mr.] Hamrick's income was generated from commissions earned through the sale of Noah's TIC securities." (Id. at ¶ 122; see also id. at ¶¶ 169, 210, 220(b).) In short, given the longstanding nature of the parties' relationships, there is a strong inference that the E&W Defendants and the Belle Isle Defendants knew that the advertised return on investment was unrealistic, that construction had not begun on Noah's Carmel, and that funds that should have gone to Noah's Carmel were being used for other purposes. And given their long-term experience in the industry, the E&W Defendants and the Belle Isle Defendants would know that this information would be material to their clients.

Accordingly, the court concludes that Plaintiffs' scienter allegations are sufficient.

3. Reliance and Damages

The fourth element of a Rule 10b-5 claim is reliance. The fifth element is damages. Only the Belle Isle Defendants challenge these elements. They note that Ms. Camp, Mr. Merklin, and Blush Property, LLC (the "Blush Plaintiffs") are the only Plaintiffs to whom they sold TIC interests, and they argue that there are no allegations specifically addressing reliance by or damages to the Blush Plaintiffs.

The court disagrees. According to the SAC, the Blush Plaintiffs reviewed the sales package that Mr. DeSalvo provided to them and communicated with one of the Rockwell Defendants, Mr. Nelson, about the investment. The Blush Plaintiffs then relied on statements from Mr. DeSalvo and Mr. Nelson in deciding to purchase TIC interests in Noah's Carmel. (SAC ¶¶ 268–69.) The Blush Plaintiffs also allege that they were damaged when their investment was reduced by the Belle Isle Defendants' undisclosed 3% commission. (Id. at ¶ 113.) In addition to these allegations, which are unique to the Blush Plaintiffs, there are also more general allegations showing that all of the Plaintiffs relied upon misleading sales materials (id. at ¶ 14) and that $4.9 million from their investments was misappropriated (id. at ¶¶ 22). Plaintiffs also state that they have suffered damages due to "unpaid monthly 'base rents' or distributions due on their investments" and "potential tax-related losses." (Id. at ¶ 28.)[9]

Accordingly, the fourth and fifth elements have been adequately pled. And for all of the reasons described above, the court concludes Plaintiffs have sufficiently stated a cause of action for violations of Rule 10b-5.

## B. Section 12(a)(1)

Plaintiffs' seventh cause of action is for violation of another provision of federal securities law. Section 12(a)(1) of the Securities Act of 1933—now codified at 15 U.S.C. §§ 77e and 77l—imposes civil liability for the sale of unregistered securities in interstate commerce. The E&W Defendants and the Belle Isle Defendants challenge this cause of action on the ground that Plaintiffs have not given sufficient allegations regarding the interstate commerce element.[10]

---

[9] Although the E&W Defendants do not address the reliance element in their motion, they do spend one paragraph addressing the issue in their reply. (E&W Reply at 6 (ECF No. 135).) For the sake of completeness, the court notes that in its view, Plaintiffs have also sufficiently alleged reliance on the misrepresentations and omissions made by the E&W Defendants. (See SAC ¶¶ 172–73, 176, 181, 207, 210–16, 220–21, 227–29.)

[10] Use of interstate commerce is also an element of the Rule 10b-5 cause of action, but Defendants address the issue only in the context of Section 12(a)(1). In any event, the same analysis applies to both claims. Compare 15 U.S.C.

For purposes of this provision, "interstate commerce" is defined as "trade or commerce in securities or <u>any transportation or communication relating thereto</u> among the several States." 15 U.S.C. § 77b(a)(7) (emphasis added).  Plaintiffs have thoroughly pled this element by alleging that email, mail, telephone, and the Internet, as well as travel among the states, were used in connection with the overall scheme to sell the TIC investments.  (<u>See, e.g.</u>, SAC ¶¶ 37(b), 37(c), 37(d), 37(f), 37(g), 38(b), 38(d), 40(b), 40(c), 40(d), 40(f), 40(g), 41, 99–104, 113, 116–17, 125, 127, 167, 169, 226, 228, 265–67.)  Accordingly, the court rejects Defendants' challenge to the Section 12(a)(1) cause of action.

### C.  Control Person Liability

Plaintiffs' tenth cause of action is for control person liability under § 20(a) of the Securities Exchange Act.  <u>See</u> 15 U.S.C. § 78t(a).  The claim is brought against Mr. Hamrick and E&W (and other Rockwell Defendants), but is not asserted against Mr. Brown or the Belle Isle Defendants.

"[T]o state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person."  <u>City of Phila. v. Fleming Cos., Inc.</u>, 264 F.3d 1245, 1270 (10th Cir. 2001) (quoting <u>Maher v. Durango Metals, Inc.</u>, 144 F.3d 1302, 1305 (10th Cir. 1998)).

The E&W Defendants argue that Plaintiffs' allegations do not show, with sufficient specificity, how Mr. Hamrick exercised control over E&W.  Plaintiffs respond by suggesting that control person liability can be pled generally, and that their allegations that Mr. Hamrick was the vice president of E&W (SAC ¶ 27) and that he "exercised actual power and control over . . . E&W" (<u>id.</u> at ¶ 437) are enough.

---

§ 77b(a)(7) <u>with</u> 15 U.S.C. § 78c(a)(17) (creating substantively similar definitions of "interstate commerce" for both claims).

Even assuming that no heightened pleading standard applies,[11] the court concludes that these conclusory allegations are insufficient under the Supreme Court's Twombly/Iqbal standard. See Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added). Additionally, in their opposition brief, Plaintiffs state, "Although not plead [sic] in the SAC, Plaintiffs now know that [Mr.] Hamrick's girlfriend, Mary O'Toole, is president of E&W and that approximately a million dollars in commissions at the time of the Carmel investments was transferred directly from Rockwell to an account controlled by Mary O'Toole." (Pl.'s Opp'n at 13 n.1.) This statement casts further doubt on whether Mr. Hamrick (as opposed to Ms. O'Toole) is a control person at E&W.

Because the complaint consists of only one factual allegation (that Mr. Hamrick is the vice president of E&W) and one legal conclusion (that he exercises control over E&W), and because even these minimal allegations have been called into doubt by Plaintiffs' own opposition brief, the court concludes that Plaintiffs' control person liability claim has not been adequately pled.

## II.  State Law Claims

Plaintiffs also assert numerous causes of action arising from state law, to which the E&W Defendants and Belle Isle Defendants object.

### A.  Personal Jurisdiction

Defendants argue first that the court need not reach the merits of the state law claims because once the court dismisses the federal securities law claims, the state law claims must be

---

[11] A case from 1994 suggests that "allegations of 'controlling person' liability are not subject to the particularity requirements of Rule 9(b)." Arena Land & Inv. Co., Inc. v. Petty, 906 F. Supp. 1470, 1482 (D. Utah 1994). But neither party addresses whether this case remains good law in light of the heightened pleading requirements subsequently imposed by the PSLRA.

dismissed as well for lack of personal jurisdiction.  The E&W Defendants and the Belle Isle Defendants explain that this is necessary because they do not have sufficient minimum contacts with Utah.

For the reasons already stated above, Plaintiffs have sufficiently alleged federal security law violations by the E&W Defendants and the Belle Isle Defendants.  And when nationwide service of process applies—as it does here under the federal securities laws (see Appl. to Enforce Admin. Subpoenas of SEC v. Knowles, 87 F.3d 413, 417 (10th Cir. 1996))—the court need not undertake the minimum contacts analysis typically required for personal jurisdiction.  See U.S. v. Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002); see also IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2nd Cir. 1993).  Instead, the only jurisdictional question the court need address is whether exercising personal jurisdiction over the defendants would comport with due process.

"[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant.  In other words, the Fifth Amendment 'protects individual litigants against the burdens of litigation in an unduly inconvenient forum.'"  Peay v. BellSouth Med. Assistance Plan, 205 F.3d 1206, 1212 (10th Cir. 2000) (quoting Mathews v. Eldridge, 424 U.S. 319, 331–32 (1976)).  Defendants bear the burden "to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [they are] unfairly . . . at a severe disadvantage in comparison to [their] opponent.'"  Id. at 1212 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)).

In Peay, the Tenth Circuit listed the following factors to consider when determining whether Defendants have met their burden:

(1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.

Id. at 1212–13. The Tenth Circuit has also noted that "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. Certainly, in this age of instant communication and modern transportation, the burdens of litigating in a distant forum have lessened." Id. at 1213 (internal citations and quotations omitted).

This is not an unusual case. The core of the alleged fraud occurred in Utah and the Rockwell Defendants and Noah Defendants are all based in Utah. (SAC ¶¶ 63–72.) Although the E&W Defendants and Belle Isle Defendants are from New Hampshire and Florida, respectively, they also visited Utah and had sale agreements in place with Utah entities. (Id. at ¶¶ 13, 37–41.) Additionally, Defendants have access to counsel here and the ease of electronic communications significantly lessens the burden of litigating here. The court concludes, based on a balance of the factors, that Defendants would not be unduly inconvenienced by litigating in Utah.

## B. Fraud-Based Claims

Plaintiffs' fourth cause of action is for common law fraud. The Belle Isle Defendants and the E&W Defendants both contend that Plaintiffs' allegations of fraud do not satisfy the heightened pleading requirements of Rule 9(b). See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

But Rule 9(b) is a slightly less rigorous standard than the PSLRA.  See Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1095–96 (10th Cir. 2003).  Because Plaintiffs' common law fraud cause of action is based on the same misrepresentations and omissions as the federal securities claims (see SAC ¶ 378), and because the court already concluded above that Plaintiffs had sufficiently alleged securities fraud under the PSLRA, the court also concludes that the common law fraud claim has been pled with sufficient specificity.

The E&W Defendants make this same argument regarding Plaintiffs' third cause of action for breach of fiduciary duty, their ninth cause of action for violation of state securities laws, and the twelfth cause of action for fraudulent inducement.  Again, all of these claims are based on the same underlying facts as the federal securities law violations.  (Id. at ¶¶ 374, 420–23, 448.)  Because the court has already concluded that Plaintiffs pled those facts with sufficient specificity, this argument fails.

### C. Conversion

Plaintiffs' eleventh cause of action is for conversion.  They bring it against the E&W Defendants but not the Belle Isle Defendants.

In Utah, "[a] conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."  State v. Twitchell, 832 P.2d 866, 870 (Utah Ct. App. 1992) (quoting Allred v. Hinkley, 328 P.2d 726, 728 (Utah 1958)).  To be liable for conversion, a defendant need not engage in "conscious wrongdoing," but must have "an intent to exercise dominion or control over the goods inconsistent with the owner's right."  Id.

Here, Plaintiffs' allege that Defendants wrongfully converted money from Plaintiffs' TIC investments.

16

> Money may be the subject of conversion when the party charged wrongfully
> received it. Public Util. Dist. Number One v. Wash. Pub. Power Supply Sys., 104
> Wash. 2d 353, 705 P.2d 1195, 1211 (1985), modified, 713 P.2d 1109 (1986); see
> also Boyd v. Wimes, 664 S.W.2d 596, 599 (Mo. Ct. App. 1984) "[w]hile
> ordinarily money represented by a general debt cannot be the subject of
> conversion, an exception is recognized for misappropriated funds placed in the
> custody of another for a definite application").

Id.

The E&W Defendants argue this cause of action should be dismissed because Plaintiffs

allege that the Rockwell Defendants and the Noah Defendants misappropriated Plaintiffs'

investment, not the E&W Defendants. That is not accurate. The complaint specifically states

that the E&W Defendants secretly skimmed off a portion of Plaintiffs' investment to pay

themselves a commission. (SAC ¶¶ 8, 27.) If, as alleged, the E&W Defendants were redirecting

part of Plaintiffs' funds for themselves, then the E&W Defendants may be liable for conversion.

Accordingly, this claim has been properly pled.

### D. Civil Conspiracy

Next, both the E&W Defendants and the Belle Isle Defendants move to dismiss

Plaintiffs' sixteenth cause of action for civil conspiracy.

> In order to plead a claim for civil conspiracy, a complaint must allege sufficient
> facts to establish (1) a combination of two or more persons, (2) an object to be
> accomplished, (3) a meeting of the minds on the object or course of action, (4)
> one or more unlawful, overt acts, and (5) damages as a proximate result thereof.

Harvey v. Ute Indian Tribe of Uinta and Ouray Reservation, 416 P.3d 401, 425 (Utah 2017)

(internal quotations omitted).

Plaintiffs allege that all of the Defendants, including the E&W Defendants and the Belle

Isle Defendants, worked together to promote and sell the TICs. (SAC ¶¶ 8, 10–14, 22.) This

satisfies the first three elements ("combination of two or more persons," "an object to be

accomplished," and "a meeting of the minds"). And, as the court has already held, Plaintiffs have

adequately alleged fraud against the E&W Defendants and the Belle Isle Defendants.  The fraud

claim satisfies the "unlawful overt act" element.  See Estrada v. Mendoza, 275 P.3d 1024, 1029

(Utah Ct. App. 2012) (requiring plaintiff to plead a tort as an overt act).  Finally, Plaintiffs state

that as a result of the scheme created by Defendants, they lost their investments.  (SAC ¶¶ 21, 28.)

That satisfies the last element ("damages as a proximate result").

Accordingly, the court concludes Plaintiffs have satisfactorily alleged a civil conspiracy.

### E.  Aiding and Abetting

The E&W Defendants also move to dismiss Plaintiffs' seventeenth cause of action for

aiding and abetting.[12]

The section of the SAC alleging aiding and abetting simply repeats verbatim Plaintiffs'

allegations regarding conspiracy.  (Compare SAC ¶¶ 489–96 with ¶¶ 497–504.)  This is not a

mere technical defect, as Plaintiffs appear to contend.  Rather, the failure to include the correct

elements deprives all Defendants of notice of the basis for Plaintiffs' claim.  Notably, in an

earlier motion to dismiss, Defendant William Bowser suggested that it was unclear whether this

cause of action was for aiding and abetting fraud or aiding and abetting breach of fiduciary duty.

Plaintiffs responded in their opposition by addressing only the aiding and abetting fraud claim.

(See Pls.' Opp'n at 14–15 (ECF No. 115).)  The court granted the motion to dismiss on the

ground that it was unclear whether aiding and abetting fraud was even a cause of action under

Utah law.  (See Order at 9–10 (ECF No. 152).)

The E&W Defendants' motion to dismiss, by contrast, proceeds under the assumption

that Plaintiffs were attempting to plead a claim of aiding and abetting securities fraud, which

they argue is impermissible.  Plaintiffs respond in the opposition that they were trying to plead a

---

[12] This cause of action has also been asserted against the Belle Isle Defendants, but they did not move to dismiss this claim.

cause of action for aiding and abetting breach of fiduciary duty.  (See Pls.' Opp'n at 18 (ECF No. 128).)[13]

Ultimately, Plaintiffs have simply pled conspiracy twice.  They have never actually explained in the complaint itself what their aiding and abetting cause of action is based on.  This practice does not provide fair notice to Defendants regarding what claim Plaintiffs are actually pursuing.

For this reason, the E&W motion to dismiss will be granted for the seventeenth cause of action.

### F.  Economic Loss Rule

Next, the E&W Defendants move to dismiss Plaintiffs' causes of action for negligent misrepresentation, negligence, and negligent hiring/supervision/retention on the ground that these claims are barred by the economic loss rule.

The E&W Defendants cite HealthBanc Int'l LLC v. Synergy Worldwide, Inc., 435 P.3d 193, 196 (Utah 2018), for the general proposition that negligence claims are barred by the economic loss rule unless there was physical damage to property or a bodily injury.  But as correctly noted by Plaintiffs in opposition, Utah courts do not apply the economic loss rule to negligence claims against real estate brokers, agents, or appraisers.  West v. Inter-Fin., Inc., 139 P.3d 1059, 1063–64 (Utah Ct. App. 2006).  Plaintiffs argue that since the E&W Defendants are "real estate professionals" (SAC ¶ 27), they are also excluded from the economic loss rule.

---

[13] To be clear, Plaintiffs' opposition to the E&W motion was filed before the court issued its order on the Bowser motion.  So it is not as though Plaintiffs tactically pursued another argument after seeing that their first argument was rejected by the court.  Rather, because Plaintiffs approached the claim in two entirely different ways in their opposition to the Bowser motion and their opposition to the E&W motion, it appears Plaintiffs themselves are uncertain about what exactly they are claiming in this aiding and abetting cause of action.

In their reply brief, the E&W Defendants never respond to this argument.  In fact, the

E&W Defendants ignore the economic loss rule entirely.  Instead, their reply focuses solely on

whether Plaintiffs' negligence claims should be dismissed because they were insufficiently pled.

(E&W Reply at 9 (ECF No. 135).)

The court does not consider arguments raised for the first time in reply, and so does not

address the sufficiency of the allegations.  See Pleasant Grove Dev. Partners, LLC v. FDIC, Case

No. 2:09-cv-00959-RJS, 2015 WL 4773027 at *6 n.6 (D. Utah Aug. 12, 2015).[14]  The E&W

Defendants' motion originally only challenged these causes of action under the economic loss

rule.  Absent an explanation from the E&W Defendants regarding why they do not fall within the

exception for real estate professionals articulated in West, the court concludes that none of

Plaintiffs' allegations are barred by the economic loss rule.

### G. Corporate Veil

Finally, the E&W Defendants argue that for each of Plaintiffs' non-fraud-based causes of

action,[15] Plaintiffs can only hold Mr. Hamrick and Mr. Brown liable if they first convince the

court to pierce the corporate veil and hold them accountable for the misconduct of E&W.  The

E&W Defendants move to dismiss these causes of action because Plaintiffs have not sufficiently

alleged any basis for piercing the corporate veil.

So far as the court can determine—and consistent with Plaintiffs' argument in

opposition—Plaintiffs are not trying to pierce the corporate veil.  The only allegation the E&W

Defendants cite to suggest that Plaintiffs are trying to pierce the corporate veil is the complaint's

allegation that Mr. Hamrick and Mr. Brown are agents of E&W. (SAC ¶ 344.)  But the purpose

---

[14] In the same section of the reply, the E&W Defendants suggest for the first time that Plaintiffs' elder abuse claim is also insufficiently pled.  Again, the court declines to consider this untimely argument.

[15] According to the E&W Defendants, this argument applies to Plaintiffs' causes of action for negligent misrepresentation, negligence, conversion, elder abuse, and unjust enrichment.

of this allegation is not to pierce the corporate veil.  In fact, the E&W Defendants have it

backwards.  Through this allegation, Plaintiffs are explaining why, under an agency theory,

E&W may be liable for the acts of Mr. Hamrick and Mr. Brown.  They are not suggesting that

Mr. Hamrick and Mr. Brown should be liable for E&W's misconduct.  (Id.)

      In short, Plaintiffs are free to assert claims against Mr. Hamrick and Mr. Brown for the

individual Defendants' own allegedly wrongful actions.  They need not allege facts sufficient to

pierce the corporate veil to reach Mr. Hamrick or Mr. Brown.

**ORDER**

      For the foregoing reasons, the motion to dismiss brought by Defendants John Hamrick,

Chris Brown, and Edmund and Wheeler, Inc. (ECF No. 108) is GRANTED for the tenth and

seventeenth causes of action and is otherwise DENIED.

      The motion brought by Greg DeSalvo and Belle Isle Enterprises, LLC (ECF No. 139) is

DENIED.

      DATED this 16th day of March, 2020.

                  BY THE COURT:

                  TENA CAMPBELL
                  U.S. District Court Judge