ERIK A. CHRISTIANSEN, USB# 7372
JEFFREY C. COREY, USB# 9938
PARSONS BEHLE & LATIMER PC
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

DOUGLAS W. HENKIN
DENTONS LLP
1221 Avenue of the Americas
New York, New York  10020-1089
Tel: (212) 768-6832
douglas.henkin@dentons.com
(admitted *pro hac vice*)

*Attorneys for Defendants First American Title Insurance Company and Kirsten Parkin*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CHRISTOPHER C. FUCCI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM BOWSER, et al.,<br><br>Defendants. | Case No. 2:20-cv-00004-DBB-DAO<br><br>**MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN**<br><br>The Honorable David Barlow<br><br>ORAL ARGUMENT REQUESTED |

## TABLE OF CONTENTS

FACTS .................................................................................................................................... 1
      A.      The Purchase and Sale Agreements ....................................................................... 1
      B.      The Title Policies .................................................................................................. 2
ARGUMENT ......................................................................................................................... 4
I.      THE FEDERAL ARBITRATION ACT GOVERNS THIS MOTION, STRONGLY FAVORS ARBITRATION, AND REQUIRES THAT ARBITRATION AGREEMENTS BE "RIGOROUSLY" ENFORCED .......................... 4
II.     THE STANDARD FOR COMPELLING ARBITRATION ............................................. 5
      A.      The FA Defendants Can Compel Arbitration under the PSAs ............................... 6
      B.      Plaintiffs Agreed to Individual Arbitrations Under the Policies ............................. 7
      C.      Ms. Parkin Can Compel Arbitration Under the Policies ........................................ 8
III.    PLAINTIFFS' CLAIMS ARE ARBITRABLE ............................................................... 10
      A.      The Arbitration Agreements Encompass Plaintiffs' Claims ................................ 10
      B.      The Specific Claims Alleged Against the FA Defendants Are Arbitrable ........... 11
      C.      Plaintiffs' Claims Must Be Individually Arbitrated Under the Policy ................. 12
IV.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION .................................................................................................................. 12
CONCLUSION ..................................................................................................................... 12

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson* ....................................................................................... 4

*Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ............................................... 5

*Armiio v. Prudential Insurance Co. v. America*, 72 F. 3d 793, 796-97 (10th Cir. 1995) ............. 12

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) .................................................. 8

*AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) .................................. 5, 10

*Chelsea Family Pharmacy v. Medco Health*, 567 F.3d 1191, 1200 (10th Cir. 2009) .................. 12

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ................................................................ 4

*Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.* ..................................................................... 4

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985) ............................................... 5

*Discovery Res., Inc. v. Ernst & Young U.S. LLP*, 62 N.E.3d 714, 720 (Ohio Ct. App. 2016) ... 8, 9

*DiTucci v. Ashby*, No. 2:19-CV-277-TC-JCB, 2021 WL 778579 (D. Utah Mar. 1, 2021) .......... 11

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ................................................................ 5

*Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) ....................................... 7

In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation, 835 F.3d 1195, 1202
 (10th Cir. 2016) ........................................................................................................................ 11

*Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*, No. CIVIL 2:02-CV-562, 2008 WL
 2673925, at *12 (D. Utah July 7, 2008) .................................................................................... 7

*Kolsky v. Jackson Square*, 28 So. 3d 965, 969 (Fla. Dist. Ct. App. 2010) ................................. 8, 9

*KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) .............................................................................. 4

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) ............................................................ 5

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25 ................................................................................ 5

*Owner-Operator Independent Drivers Ass'n v. C.R. England, Inc.*, 325 F.Supp.2d 1252, 1257 (D. Utah 2004) .................................................................................................................. 6

*P&P Indus, Inc.*, 179 F.3d 861 at 866 (10th Cir. 1999) ................................................................ 10

*Perry v. Thomas*, 482 U.S. 483, 489 (1987) .................................................................................. 4

*Riggs v. Patriot Energy Partners, LLC*, 2014-Ohio-558 ¶ 41 at 13 (Ohio Ct. App. 2014) ........ 8, 9

*Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145–46 (10th Cir. 2014) ..................... 5, 10

*Seaborn v. Larry H. Miller Mercedes Benz*, No. 2:19-CV-941, 2020 WL 1550789 at *4 (D. Utah Apr. 1, 2020) ............................................................................................................... 11

*See P&P Indus, Inc. v. Sutter Corp*, 179 F.3d 861, 866 (10th Cir. 1999) ...................................... 6

*Strong v. Geringer*, No. 2:15-CV-00837, 2016 WL 4926175 (D. Utah Sep. 15, 2016) ............... 11

**Statutes**

9 U.S.C. § 2 ..................................................................................................................................... 5

9 U.S.C. § 4 ..................................................................................................................................... 5

9 U.S.C. §§ 1-14 ......................................................................................................................... 1, 4

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) ......................................................................................... 6

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (the "FAA"), Defendants First American Title Insurance Company ("First American") and Kirsten Parkin ("Parkin," and together with First American, the "FA Defendants") move to compel arbitration of all claims asserted against the FA Defendants in the Amended Complaint filed by Plaintiffs on August 17, 2021 (ECF 122, the "Amended Complaint").  In support of this motion, the FA Defendants state the following:

### FACTS

Plaintiffs are individuals, trustees, and companies that each purchased Tenant-in-Common ("TIC") interests in real estate developments located in Jacksonville, Florida (the "Florida Property"); Independence, Ohio (the "Independence Property"); Dublin, Ohio (the "Dublin Property"); and/or Toledo, Ohio (the "Toledo Property," and collectively, the "Properties"). Amended Complaint ¶ 14.  Each Plaintiff's TIC interest was sold to it by Rockwell Debt Free Properties or a related Rockwell entity ("Rockwell") pursuant to a Purchase and Sale Agreement ("PSA").  *Id*. ¶¶ 121–122, 360; Exhibits 1–45 (Individual Plaintiff PSAs).[1]  First American issued Rockwell a standard Owner's Policy of Title Insurance for each of the Properties (each a "Policy" and together the "Policies").  Amended Complaint ¶ 128; Exhibits 46–49 (respectively, the "Florida Policy," the "Independence Policy," the "Dublin Policy," and the "Toledo Policy").

A. **The Purchase and Sale Agreements**

Each Plaintiff's PSA contained a broad mandatory arbitration clause requiring:

> "[a]ny dispute between the parties [to be] submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association … .

---

[1] Despite relying extensively on the Rockwell Purchase Agreements in the Complaint, Plaintiffs attached none of them to the Complaint. Although First American does not have all Plaintiffs' Rockwell Purchase Agreements, it is attaching those it does have to this Motion.

1

> Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement."

Ex. 1 ¶ 9.

The PSAs specify which state's law governs their construction. *Id.* ¶ 18. The PSAs for the Independence, Dublin, and Toledo Properties are governed by Ohio law (*e.g.,* Ex. 27 ¶ 18), whereas the PSAs for the Florida Property are governed by Florida law (Ex. 25 ¶ 18). Pursuant to the PSAs, First American acted as the escrow agent for each TIC transaction, Rockwell purchased endorsements for each Plaintiff from First American for the relevant Policy, and the FA Defendants executed settlement statements in connection with each TIC transaction closing. *E.g., id.* ¶¶ 2, 4, 6. Each PSA also contains express representations and disclaimers regarding each Plaintiff's individual due diligence and a waiver of claims against Rockwell's agents in connection with each transaction (which includes the FA Defendants). *E.g., id.* at 1–2 & ¶¶ 5, 12.

### B. The Title Policies

Plaintiffs admit that the Policies were amended through individual endorsements to add each Plaintiff as an "Insured" in an "Amount of Insurance" equal to their proportionate share of ownership interest as set forth in their respective PSAs. Amended Complaint ¶ 128 (Rockwell "agrees to pay for an endorsement to the [Policy] insuring Buyer in the amount of the Purchase Price") & Exhibits 50–53 (respectively, the "Florida Endorsement," the "Independence Endorsement," the "Dublin Endorsement," and the "Toledo Endorsement").[2] The Policies, as

---

[2] The Endorsements are identical except for the specific Policy referenced and the Plaintiff's name and ownership interest.

endorsed pursuant to the PSAs, formed insurance contracts between First American and each Plaintiff. The Policies contain a broad arbitration provision:

> **14. ARBITRATION**
>
> Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. …

*See, e.g.,* Ex. 46 ¶ 14; *see also* Ex. 49.

The Policies define the "Amount of Insurance" as "[t]he amount stated in Schedule A, as may be increased or decreased by endorsement to this policy." *Id*. Ex. 46 ¶ 1(a). The amount originally stated in the Schedule A for each of the Policies is as follows:

- Florida Property: $1,200,000 (Ex. 46);
- Independence Property: $5,835,000 (Ex. 47);
- Dublin Property: $5,930,000 (Ex. 48);
- Toledo Property: $6,115,000 (Ex. 49).

Each endorsement provided that each Plaintiff would be insured in an amount equal to that Plaintiff's percentage interest in the property. *E.g.,* Ex. 50. Each Endorsement also states that "it does not … increase the amount of insurance." *Id*. No Plaintiff's TIC interest resulted in them having coverage for more than $2,000,000 on any particular property. As a result the Amount of Insurance for each Plaintiff is less than $2,000,000.

3

For example, Plaintiffs William and Susan Wright purchased a 3.37% TIC interest in the Dublin Property from Rockwell. Ex. 17. Their endorsement accordingly added them as an Insured to the Dublin Policy based on the 3.37% interest they held in the Dublin Property, for a total Amount of Insurance equaling approximately $200,000. Each and every other Plaintiff's Amount of Insurance is likewise less than the $2 million threshold for mandatory arbitration contained in the Policies.

The Policies also contain choice of law provisions stating that "the court … shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court … apply its conflicts of law principles to determine the applicable law." Ex. 46 ¶ 17. Here that means that Ohio law and Florida law apply to interpret and enforce the terms of the respective Policies insofar as neither state's law conflicts with the FAA (in which case the FAA controls, *see generally Perry v. Thomas*, 482 U.S. 483, 489 (1987)).

## ARGUMENT

**I.  THE FEDERAL ARBITRATION ACT GOVERNS THIS MOTION, STRONGLY FAVORS ARBITRATION, AND REQUIRES THAT ARBITRATION AGREEMENTS BE "RIGOROUSLY" ENFORCED**

The FAA governs transactions "affecting" interstate commerce, and state and federal courts must enforce the FAA. 9 U.S.C. §§ 1-2; *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). Real estate transactions, such as those alleged in Plaintiffs' complaints, have a substantial effect on interstate commerce and thus are subject to the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995); *Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131–32 (10th Cir. 2004) (FAA applies

4

to all written arbitration agreements "involving commerce" and "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act").

The FAA controls motions to compel arbitration regardless of what law governs the contract in other ways. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). The FAA reflects a "liberal federal policy favoring arbitration agreements" and declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The FAA permits parties to seek an order directing that arbitration "proceed in the manner provided for in such agreement," 9 U.S.C. § 4, and any "doubts concerning the scope of arbitral issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25. The FAA also requires courts "'rigorously' to 'enforce arbitration agreements according to their terms[.]'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (ordering arbitration). Courts must compel arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).

## II.  THE STANDARD FOR COMPELLING ARBITRATION

Determining whether a dispute is subject to arbitration involves considering whether (1) there is a valid arbitration agreement and (2) the particular dispute falls within the scope of that agreement. *See id.* at 649. The FAA "leaves no place for the exercise of discretion" if there is a

valid, applicable agreement, and courts must "rigorously enforce" arbitration agreements according to their terms. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145–46 (10th Cir. 2014). Any doubt regarding whether claims are arbitrable must be resolved in favor of arbitration, particularly where the arbitration provision is broad in scope. *See P&P Indus, Inc. v. Sutter Corp*, 179 F.3d 861, 866 (10th Cir. 1999); *Owner-Operator Independent Drivers Ass'n v. C.R. England, Inc.*, 325 F.Supp.2d 1252, 1257 (D. Utah 2004).

### A. The FA Defendants Can Compel Arbitration under the PSAs

The PSAs' arbitration clause encompasses "[a]ny dispute between the parties." *E.g.,* Ex. 27 ¶ 9. This includes the FA Defendants because a "party" is ordinarily defined as "someone who takes part in a transaction," Black's Law Dictionary (11th ed. 2019), and the PSAs contemplated that the FA Defendants would participate in the transactions as the escrow agent (*e.g.,* Ex. 27 ¶ 2.2) and adding Plaintiffs to the Policies by endorsements paid for by Rockwell (*e.g., id.* ¶ 4). The FA Defendants can thus compel arbitration under the PSAs.

The FA Defendants are also entitled to enforce the PSA arbitration clause under the same Florida and Ohio estoppel principles discussed in Section II(C), *infra*. Plaintiffs allege substantially interdependent conduct between Rockwell and the FA Defendants.[3] Plaintiffs'

---

[3] *See, e.g.*, Amended Complaint ¶ 127 ("First American and Parkin participated in Rockwell's acquisition of approximately 40 properties and hundreds of sales of TIC interests to investors. Through its long and close relationship with Rockwell and Noah … ."); ¶ 412 (FA Defendants "breached their fiduciary duty by … Disbursing funds from the escrow at the request of Rockwell, without ensuring that the funds would be used in connection with the intended TIC Property."); ¶ 427(a) ("First American and Parkin participated and substantially assisted in the tortious conduct by conducting closings, providing title insurance, acting as escrow agent with respect to the TIC Investments, and by disbursing the Plaintiffs' TIC Investments to Rockwell and otherwise carrying out

6

claims are also significantly intertwined with the PSA's terms: The gravamen of Plaintiffs' claims stem from escrow obligations contained in the PSA.[4] The interwoven nature of Plaintiffs' claims against the FA Defendants with the terms of the PSAs means Plaintiffs can compel arbitration by estoppel. *See infra* Section II(C).

B. **Plaintiffs Agreed to Individual Arbitrations Under the Policies**

Plaintiffs concede that they entered into endorsements of the Policies, Amended Complaint ¶ 128, and are bound by these judicial admissions, *see Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) (allegation in complaint is conclusively binding admission); *Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*, No. CIVIL 2:02-CV-562, 2008 WL 2673925, at *12 (D. Utah July 7, 2008) (plaintiffs' judicial admission of being party to agreement with arbitration clause is binding and "[a]s a result of their judicial admission, Plaintiffs cannot now avoid the 'conditions, covenants and obligations' of the [agreement] including its arbitration provision").

Each PSA required Rockwell "to pay for an endorsement to the standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price." *E.g.,* Ex. 27 ¶ 4. Each Plaintiff thus agreed in its PSA to be added to a Policy by and be subject to an endorsement

---

    instructions from Rockwell or Noah with respect to the transactions which are the subject of this Complaint.").

4   *See, e.g.,* Ex. 27 ¶ 3.2; Amended Complaint ¶ 409 ("First American and Parkin owed a fiduciary duty to Plaintiffs … according to the agreements and instructions of the parties."); ¶ 433(b) ("Facts manifesting the Defendants' agreement [to participate in a conspiracy] include…First American and Parkin agreed to receive escrow funds in connection with each Construction TIC transaction, but to disburse those funds to Rockwell without Plaintiffs' consent and contrary to the terms of the Purchase Agreements."); ¶ 475 ("First American and Parkin also knew or were in possession of sufficient facts that they must have known that Rockwell was not following its own purchase agreement with Plaintiffs or its own Construction TIC program, and that Plaintiffs' 1031 Exchanges were likely invalid.").

amending and incorporating that Policy, and all Policies contain a broad agreement to arbitrate disputes. The FA Defendants may compel each Plaintiff to arbitrate because the Amount of Insurance at issue is less than $2,000,000 for each Plaintiff.

### C. Ms. Parkin Can Compel Arbitration Under the Policies

Because Ms. Parkin is a First American employee, all claims against her concern her work for First American, and those claims are inextricably intertwined with the claims against First American, First American can compel arbitration of the claims against Ms. Parkin. *Kolsky v. Jackson Square*, 28 So. 3d 965, 969 (Fla. Dist. Ct. App. 2010); *Discovery Res., Inc. v. Ernst & Young U.S. LLP*, 62 N.E.3d 714, 720 (Ohio Ct. App. 2016). To the extent that Ms. Parkin needs to move to compel arbitration separately, questions regarding who may enforce an arbitration provision are governed by state law relating to contracts in general. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (whether a non-signatory can be bound by or compel arbitration under an arbitration agreement is governed by state law). Therefore, the Court must apply the law of the jurisdiction where the land is located, Ohio or Florida, to determine who may enforce each Policy's arbitration provision.

Ohio and Florida both allow non-signatories to compel arbitration based on a contractual arbitration provision. *See Riggs v. Patriot Energy Partners, LLC*, 2014-Ohio-558 ¶ 41 at 13 (Ohio Ct. App. 2014) ("non-signatories to an arbitration agreement can compel arbitration against a signatory pursuant to an 'alternative estoppel theory'"); *Kolsky*, 28 So. 3d at 969 (Fla. Dist. Ct. App. 2010) ("a non-signatory may compel a signatory to arbitration based on the doctrine of equitable estoppel"). Under both Ohio and Florida law, equitable estoppel allows a non-signatory to compel arbitration when the signatory alleges substantially interdependent and concerted

misconduct by both the non-signatory and one or more signatories to the contract containing the arbitration clause. *Kolsky*, 28 So. 3d at 969; *Discovery Res., Inc.*, 62 N.E.3d at 720. That is precisely what Plaintiffs do here. Plaintiffs repeatedly group alleged misconduct by Ms. Parkin and First American together throughout the Amended Complaint. For example, Plaintiffs allege that "[a]t all relevant times, Parkin acted as the escrow agent for First American and in that capacity, had full and complete control of the escrowed funds," that "Parkin and First American knew that disbursing the escrow funds before the completion of construction would not comply with applicable rules for 1031 Exchanges and would subject Plaintiffs to risk that their funds would be misappropriated, diverted, or converted," and that "First American and Parkin knowingly aided and abetted … tortious conduct." Amended Complaint ¶¶ 407, 408(d). These allegations stem from the conduct of Ms. Parkin as a First American employee and thus permit Ms. Parkin to compel arbitration.

Ohio and Florida also allow a non-signatory to compel arbitration against a signatory when the claims are integrated or intertwined with the agreement containing the arbitration clause. *Riggs*, 2014-Ohio-558 at ¶ 42; *Kolsky*, 28 So. 3d at 968. A substantial portion of the allegations in the Amended Complaint are predicated on the issuance of the title policies, which was done by First American and Ms. Parkin (as its employee). *See, e.g.,* Amended Complaint ¶¶ 131 ("First American and Parkin were familiar with all of the documents involved in the purchase and sale of the TIC interests in the Unbuilt Properties"), 427(a) ("First American and Parkin participated and substantially assisted in the tortious conduct by … providing title insurance."). Because Plaintiffs' claims rely on the Policies Ms. Parkin helped facilitate the issuance of, she may compel arbitration under the Policies' terms.

### III. PLAINTIFFS' CLAIMS ARE ARBITRABLE

#### A. The Arbitration Agreements Encompass Plaintiffs' Claims

There is a presumption of arbitrability, and any "doubts should be resolved in favor of coverage." *AT & T Techs.*, 475 U.S. at 650; *P&P Indus, Inc.*, 179 F.3d 861 at 866 (10th Cir. 1999). In determining whether a dispute falls within the scope of an arbitration provision, a court must first classify the particular arbitration provision as broad or narrow.

The PSA arbitration provisions are broad, stating "[a]ny dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association." *E.g.,* Ex. 27 ¶ 9. The presumption of arbitrability applies to the broad provision in the PSAs. *Sanchez*, 762 F.3d at 1146. The Court should thus compel Plaintiffs to arbitrate their claims under the PSAs.

If the Court does not compel arbitration under the PSAs, then it should compel arbitration under the Policies. The Policies' arbitration provisions are also broad. They require arbitration of "any controversy or claim between the Company and Insured arising out of or relating to this policy … or to any controversy or claim arising out of this transaction[.]" *E.g.,* Ex. 46 ¶ 14. This broad language means what it says. *See P & P Indus.*, 179 F.3d at 871; *Sanchez*, 762 F.3d at 1146–47 (collecting cases).

When an arbitration provision is broad (and both provisions here are), "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Sanchez*, 762 F.3d at 1146. That presumption applies here and mandates that the Court compel Plaintiffs to arbitrate their claims against the FA Defendants under the PSAs or the Policies.

### B.      The Specific Claims Alleged Against the FA Defendants Are Arbitrable

Plaintiffs have alleged a number of claims against the FA Defendants that arise under or relate to their TIC transactions and the Policies, including breach of fiduciary duty (Claim Four), aiding and abetting tortious conduct (Claim Six), conspiracy (Claim Seven), aiding state-law securities fraud (Claim Thirteen), unjust enrichment (Claim Fourteen), and abuse of vulnerable adults (Count Fifteen). Courts routinely find these and similar claims are within the scope of broad arbitration provisions like the ones in the PSAs and the Policies. *See, e.g.*, *Seaborn v. Larry H. Miller Mercedes Benz*, No. 2:19-CV-941, 2020 WL 1550789 at *4 (D. Utah Apr. 1, 2020) (unjust enrichment, conversion, fraudulent misrepresentation claims subject to "broad" arbitration clause); *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195, 1202 (10th Cir. 2016) (broad arbitration provision encompassed antitrust claim "even though it arises out of events that predated the agreement"); *Strong v. Geringer*, No. 2:15-CV-00837, 2016 WL 4926175 (D. Utah Sep. 15, 2016) (compelling arbitration of, *inter alia*, civil conspiracy, state securities fraud, breach of fiduciary duty, fraud, and negligent misrepresentation claims). Because Plaintiffs' claims against the FA Defendants all "relate to" or "arise from" their TIC transactions and the Policies, the claims must be arbitrated.[5]

---

[5]   In a related case, Judge Campbell found nearly identical claims subject to arbitration under the Policy arbitration clause. *See DiTucci v. Ashby*, No. 2:19-CV-277-TC-JCB, 2021 WL 778579 (D. Utah Mar. 1, 2021) (applying Indiana law). Although Judge Campbell denied Ms. Parkin's ability to compel arbitration, and instead stayed all claims against her, that decision was made under a particular approach to equitable estoppel in Indiana that is not at issue here. *See DiTucci v. Ashby*, 2021 WL 778579 at 5–7; ECF 265.

    **C.**    **Plaintiffs' Claims Must Be Individually Arbitrated Under the Policy**

The arbitration provision in the Policies expressly requires each Plaintiff to arbitrate their claims individually. *E..g.,* Ex. 46 ¶ 14. That language must be enforced as written. *See In re Cox*, 835 F.3d at 1202; *Baker v. Comcast Corporation*, No. 2:19-cv-00652, 2020 WL 3895411 at *3 (D. Utah Jul. 10, 2020).

**IV.**    **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION**

When all claims against defendants are subject to arbitration, courts usually dismiss them in favor of that remedy. *See, e.g., National American Ins. Co.*, 362 F. 3d 1288, 1292 (10th Cir. 2004); *Armiio v. Prudential Insurance Co. v. America*, 72 F. 3d 793, 796-97 (10th Cir. 1995). The only exception is when some claims might not be arbitrable, and thus there might be something for the Court to address after arbitration has occurred. *Chelsea Family Pharmacy v. Medco Health*, 567 F.3d 1191, 1200 (10th Cir. 2009). But that is not the case here: Because none of Plaintiffs' claims against the FA Defendants conceivably fall outside the applicable arbitration provisions, there would be nothing for the Court to do after arbitration is complete, and so Plaintiffs' claims should be dismissed and Plaintiffs should be compelled to arbitrate them.

### CONCLUSION

For all the foregoing reasons, the FA Defendants respectfully ask this Court to enter an order granting their motion to compel Plaintiffs to arbitrate their claims against the FA Defendants under the PSAs or the Policies and dismissing those claims in favor of arbitration.

Respectfully submitted this 16th day of September, 2021.

                                            /s Jeffrey C. Corey
                                            ERIK A. CHRISTIANSEN, USB # 7372
                                            JEFFREY C. COREY, USB # 09938

        PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 81.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

DOUGLAS W. HENKIN
DENTONS LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: (212) 768-6832
*douglas.henkin@dentons.com*
*(Admitted pro hac vice)*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September, 2021, a true and correct copy of the forgoing MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN was served on all counsel of record by electronically filing it through the Court's electronic filing system.

<u>/s/ Jeffrey C. Corey</u>