Reid W. Lambert, #5744
Zachary T. Shields, #6031
**STRONG & HANNI, P.C.**
102 S. 200 E. Suite 800
Salt Lake City, UT 84111
Telephone: (801) 532-7080
Email: rlambert@strongandhanni.com
Email: zshields@strongandhanni.com

*Attorneys for the Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER C. FUCCI, et al.<br><br>Plaintiffs<br><br>v<br><br>WILLIAM BOWSER, et. al<br><br>Defendants. | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN**<br>**[HEARING REQUESTED]**<br>Case No. 2:20-cv-00004<br>Judge: David Barlow<br>Magistrate Judge: Evelyn J. Furse |

Plaintiffs Christopher C. Fucci, *et. al* ("Plaintiffs" or the "Unbuilt TIC Owners") submit the following Memorandum in Opposition to the Motion to Compel Arbitration by Defendants First American Title Insurance Company ("FA") and Kirsten Parkin ("Parkin").

### RELIEF SOUGHT AND GROUNDS

Plaintiffs seek denial of the Motion. Rockwell has waived the PSA arbitration provision; equitable estoppel does not apply; and the claims at issue are not within the scope of the PSA arbitration provision. The Florida title policy does not provide for compulsory arbitration; the Ohio Plaintiffs had no notice of and did not consent to the arbitration provision in the policies; and the Amount of Insurance defined in the policies exceeds the policies' $2,000,000.00 cap for compulsory arbitration.

i

## TABLE OF CONTENTS

**RELIEF SOUGHT AND GROUNDS** ................................................................................. i

**TABLE OF AUTHORITIES** ............................................................................................. iii

**FACTS** ................................................................................................................................ 1

**ARGUMENT** ...................................................................................................................... 3

I.     A PARTY CANNOT BE COMPELLED TO ARBITRATE UNLESS IT HAS CONSENTED UNDER STATE-LAW PRINCIPALS OF CONTRACT LAW ........ 3

II.    FA AND PARKIN CANNOT COMPEL ARBITRATION UNDER THE PSA ........ 4

       A.     Rockwell's arbitration rights have been waived ......................................... 4

       B.     FA and Parkin cannot compel Plaintiffs to arbitrate under principals of equitable estoppel ........................................................................................ 5

       C.     Claims against non-parties are beyond the express scope of the PSA arbitration provision .................................................................................... 6

III.   FA AND PARKIN CANNOT COMPEL ARBITRATION UNDER THE TITLE POLICIES ................................................................................................. 8

       A.     The Florida Policy permits arbitration only by mutual consent of the parties at the time of the controversy or claim ................................... 8

       B.     The Ohio Plaintiffs did not assent to arbitration under the Policies ........ 8

       C.     Because the Amount of Insurance under the Ohio Policies is in excess of $2.0 million, arbitration under the Policies requires mutual consent   10

     IV.    FA AND PARKIN SEEK ARBITRATION FOR AN IMPROPER PURPOSE .............................................................................................. 10

**CONCLUSION** ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, (2009) ....................................................... 3, 5

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ........................... 3, 10

*Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279 (10th Cir. 1997) ................................................. 3

*Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765 (Fla. Dist. Ct. App. 2018) ................................................................................................................. 7

*Council of Smaller Enterprises v. Gates, McDonald & Co.*, 687 N.E.2d 1352 (Ohio 1998) ........................................................................................................... 3, 4

*Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) ................................................. 3

*Discovery Res., Inc. v. Ernst & Young U.S. LLP*, 2016-Ohio-1283, 62 N.E.3d 714 (Ohio Ct. App. 2016) .................................................................................................. 5

*Doe v. Carmel Oper., LLC*, 160 N.E.3d 518 (Ind. 2021) ......................................................... 6

*Eberhard v. Chicago Title Ins., Co.*, 2013 WL 12293478 (N.D. Ohio Mar. 12, 2013) .......... 9

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ............................................... 3

*Goldauskas v. Elyria Foundry Co.*, 763 N.E.2d 645 (Ohio App. 2001) ................................. 6

*Henderson v. Laws. Title Ins. Corp.*, 843 N.E.2d 152 (Ohio 2006) ........................................ 9

*Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940 (Fla. Dist. Ct. App. 2004) ...................................... 4

*Kolsky v. Jackson Square, LLC*, 28 So. 3d 965 (Fla. Dist. Ct. App. 2010) ............................. 5

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351 (11th Cir. 2017) ....................................................................................................... 6-7

*Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011) .......................................... 5

*Miami Gardens, Inc. v. Conway*, 102 So. 2d 622 (Fla. 1958) ................................................. 6

*Raber v. Emeritus at Marietta*, 49 N.E.3d 345 (Ohio 2016) ................................................... 3

*Riggs v. Patriot En. Partners, L.L.C.*, 2014-Ohio-558 (Ohio App. 2014) .............................. 5

*Riley v. Wayne Mut. Ins. Co.*, 2014-Ohio-1818, ¶¶ 11-14*)* .................................................... 9

*Rolls-Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So. 2d 768
(Fla. Dist. Ct. App. 2007) ...................................................................................... 3, 4

*State ex rel. Rogers v. Philip Morris, Inc.*, 2008-Ohio-3690 ................................................... 4

*Taylor v. Ernst & Young, L.L.P.*, 958 N.E.2d 1203 (Ohio 2011) ........................................... 4

*Turner Constr. Co. v. Advanced Roofing, Inc.*, 904 So.2d 466 (Fla. 3d DCA 2005) ............. 7

## FACTS

1. Each Plaintiff entered a PSA with Rockwell Debt Free Properties, Inc. or an affiliate ("Rockwell") to purchase an undivided tenant-in-common ("TIC") interest in property located in Jacksonville Florida; Dublin, Ohio; Independence, Ohio; or Toledo, Ohio.

2. Each PSA provided that "[a]ny dispute **between the parties** will be submitted to binding arbitration . . . ." (*See, e.g.*, Motion, Ex. 1, at 5, ¶ 9)(emphasis added). The term "parties" is used throughout the PSA to mean the Seller and Buyer, collectively and exclusively.[1] (*Id.* at ¶¶ 5, 6, 8.2, 9, 14, 16, and p. 7). FA has stated unequivocally that it was not a party to the PSA.[2]

3. Rockwell filed bankruptcy on September 2, 2020, and Steven R. Bailey was appointed to serve as the Chapter 7 Trustee. On behalf of Rockwell, the bankruptcy estate, and all agents, employees, assigns, and other representatives, Bailey has waived the arbitration provisions of the PSA. Written confirmation of the waiver is attached as Exhibit B.

4. Unlike the Ohio policies quoted in the Motion, the Florida title policy does not provide for compulsory arbitration but permits arbitration only "if agreed to by both the Company and the Insured at the time of a controversy or claim." (See, Motion, Ex. 46, p. 6, ¶ 14; p. 18, ¶ 14; p. 30, ¶ 14; p. 42, ¶ 14).

---

[1] The signature block, for instance, states that the "parties have set their hands" to the document and includes signature lines for for Rockwell and the Buyer only. (PSA, p. 7)

[2] *See* FA and Parkin's Motion to Dismiss [Dkt. 23], at 4 ("[Plaintiffs allege] that [the PSAs imposed obligations on FA (which was not a party to them)"); 7 ("Plaintiffs fail to plead the existence of any such agreement between any Plaintiffs and FA"); 8 ("As an initial matter, First American is not a party to any [PSAs] . . ."); Reply in Support of Motion to Dismiss [Dkt. 58], at 3 ("the Complaint does not allege the existence of any agreement . . . between FA and any Plaintiff . . ."); 4, n. 6 ("such a situation could not arise from a contract to which no FA Defendant was even a party"); 5 (". . . citing terms in the PSAs to which FA was not a party, . . .").

5.      When the Ohio Plaintiffs closed the PSA transaction, none had received the policy or endorsement. (*See* Declarations, Exhibit A, at ¶ 2-3, 5).[3] Plaintiff's did not know any of the terms of the policy or that it provided for arbitration. (Declarations, ¶ 4). No plaintiff ever consented or intended to consent to the arbitration provision in the policies. (Declarations, ¶ 6).

6.      Each of the Ohio policies specified an "Amount of Insurance," a term defined in paragraph 1 (a) of the Conditions (*see* Motion, Ex. 49, at 3), which is referenced throughout the policies as a defined and capitalized term of art.[4] The policies provide that an endorsement does not modify the policy or increase the Amount of Insurance unless expressly stated. (*Id.,* at 5, ¶ 15 (d)). The Amount of Insurance for the Ohio policies are as follows:

Dublin, $5,930,000.00 (Motion, Ex. 48, at 8)
Toledo, $6,115,000.00 (Motion, Ex. 49, at 6)
Independence, $5,835,000.00 (Motion, Ex. 47, at 8).

7.      FA issued endorsements to each Plaintiff, although no Plaintiff received the endorsements until well after closing. (Declarations, ¶ 3). The endorsements make each Plaintiff an additional "named Insured," but do not change the "Amount of Insurance." (*See, e.g.,* Motion, Ex. 53). In fact, the endorsements expressly state that they do not modify any terms of the policy or increase the Amount of Insurance. (*Id.*)

8.      Plaintiff Oak Hill Management, Inc. purchased an undivided 58.12 percent TIC interest in the Toledo, Ohio property for $3,554,202.60. A copy of the Oak Hill Management, Inc. PSA is attached hereto as Exhibit C.

---

[3] Plaintiffs' "Declarations" are compiled and individually bookmarked in Exhibit A.
[4] For instance, the Amount of Insurance is referenced in setting the coverage limit (Ex. 49, at 2); describing FA's options for settling claims (*id.,* at 4, ¶ 7 (a)); and explaining the effects of FA's payments on remaining coverage (*id.,* at 4, ¶¶ 10, 11).

# ARGUMENT

I. A PARTY CANNOT BE COMPELLED TO ARBITRATE UNLESS IT HAS CONSENTED UNDER STATE-LAW PRINCIPALS OF CONTRACT LAW.

It is fundamental that a party may not be compelled to arbitrate without its knowing consent. The Supreme Court has consistently held that "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation and citation omitted). Ohio and Florida law are no different. *See Council of Smaller Enterprises v. Gates, McDonald & Co.*, 687 N.E.2d 1352, 1356 (Ohio 1998) ("[T]he most fundamental question of all arbitration cases . . . [is] that no party can be required to submit to arbitration when that party has not agreed to do so"); *Rolls-Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So. 2d 768, 770–71 (Fla. Dist. Ct. App. 2007) (citing and following the *AT&T* holding hat "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Accordingly, "[t]he existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Moreover, the determination of the validity and scope of an arbitration agreement is governed by state contract law. *See, e.g., Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31, (2009); <u>First Options</u>, 514 U.S. at 944; *Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1287 (10th Cir. 1997); *Raber v. Emeritus at Marietta*, 49 N.E.3d 345, 351 (Ohio 2016); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014). While Ohio law recognizes a presumption favoring arbitration where a claim falls within the scope of a valid arbitration

3

provision, there is also a "counterweighing presumption against arbitration when a party seeks to invoke an arbitration provision against a nonsignatory," because "there is serious doubt that the party resisting arbitration has empowered the arbitrator to decide anything." *Taylor v. Ernst & Young, L.L.P.*, 958 N.E.2d 1203, 1210 (Ohio 2011).[5] Similarly, in Florida, the general rule is that "a non-signatory to a contract containing an arbitration agreement ordinarily cannot compel a signatory to submit to arbitration" and that exceptions to this rule should be "rare." *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. Dist. Ct. App. 2004).[6]

In short, FA and Parkin cannot compel Plaintiffs to arbitrate unless the Court finds, based on state-law contract principals, that Plaintiffs knowingly consented to arbitrate the claims against FA and Parkin. Plaintiffs did not do that. (*See,* Declarations, Exhibit A, at ¶ 6).

II. **FA AND PARKIN CANNOT COMPEL ARBITRATION UNDER THE PSA.**

A. **Rockwell's arbitration rights have been waived.**

Like all contract rights, a contractual right to arbitrate is subject to waiver by the parties. Here, Rockwell was sued as a party Defendant, but did not move to compel arbitration. Instead, it filed a Motion to Dismiss, which was fully briefed by the parties. While Plaintiff's claims against Rockwell were clearly "disputes between the parties," Rockwell's conduct demonstrated an intent to waive the arbitration provision and proceed in court.

---

[5] *See also State ex rel. Rogers v. Philip Morris, Inc.*, 2008-Ohio-3690, ¶ 17 ("If a party has not signed an arbitration agreement, a presumption arises against arbitration"); *Council of Smaller Enterprises v. Gates, McDonald & Co.*, 1998-Ohio-172, 80 Ohio St. 3d 661, 666–67, 687 N.E.2d 1352, 1356 (Where the party resisting arbitration has not personally signed the document, "the presumption is against arbitrability").

[6] A *See also Rolls-Royce PLC v. Royal Caribbean Cruises LTD.*, 960 So. 2d 768, 770–71 (Fla. Dist. Ct. App. 2007) (finding that "a non-signatory to a contract containing an arbitration agreement cannot compel a signatory to submit to arbitration" except in "certain limited circumstances").

On September 2, 2020, Rockwell filed bankruptcy. Plaintiff's claims against Rockwell in this Court were stayed by the automatic stay under 11 U.S.C. § 362, and Plaintiffs filed proofs of claim in the bankruptcy. The Chapter 7 Trustee now holds all of the rights of Rockwell under the PSA. By the written confirmation attached as Exhibit C, the Trustee has waived arbitration under paragraph 9 of the PSA on behalf of Rockwell, the bankruptcy estate, and all agents, employees, assigns and other representatives. Rockwell's waiver leaves no arbitration agreement for First American to enforce, and arbitration cannot be compelled under the PSA.

### B. FA and Parkin cannot compel arbitration based on equitable estoppel.

The movants' reliance on equitable estoppel fails for several reasons. First, compelling arbitration with non-signatories is contrary to a fundamental legal principal of Ohio and Florida that a party may not be compelled to arbitrate against its consent. There is a presumption against such compelled arbitration, and any exceptions to the general rule should be rare. (*See* Part I).

Second, the cases cited in the Motion[7] are uncertain precedent based on federal holding that have been abrogated by the U.S. Supreme Court. Previously, both state and federal courts erroneously applied federal law, which tended to expand the scope of arbitration based upon the federal policy favoring arbitration. This error was corrected in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009), where the Court clarified that principles of state contract law govern issues regarding the existence and the scope of arbitration agreements. Courts have since recognized that the prior cases were "overruled or at least undermined to the point of abrogation by *Carlisle*." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011).

---

[7] *See* Motion, at 8-9 (*citing Kolsky v. Jackson Square, LLC*, 28 So. 3d 965, 969 (Fla. Dist. Ct. App. 2010); *Discovery Res., Inc. v. Ernst & Young U.S. LLP*, 62 N.E.3d 714, 720 (Ohio App. 2016); *Riggs v. Patriot En. Partners, L.L.C.*, 2014-Ohio-558 ¶41 at 13 (Ohio App. 2014)).

Under state law, reliance is a fundamental element of estoppel in both Ohio and Florida.[8] Neither FA nor Parkin could relied on the PSA arbitration provision, however, because neither was a party to it. *See also, Doe v. Carmel Oper., LLC*, 160 N.E.3d 518, 525-26 (Ind. 2021) (equitable estoppel does not allow non-parties to enforce arbitration agreements).

Finally, Plaintiffs submit that even under the old federal standard, this case is not the "rare exception" where FA and Parkin can enforce an arbitration agreement to which they are not a party. While there is no question that FA and Parkin were involved in the overarching scheme alleged in the Amended Complaint, the primary claim against them is based on a unique duty that arises from their role as escrow officer. They were not an agent, director or officer of Rockwell such that they may have relied on the arbitration provision to protect them in that role. They were an independent actor with their own unique fiduciary obligation to Plaintiffs that did not arise from the PSA. In short, FA and Parkin are too attenuated to be included in the range of persons who may have relied on the arbitration provision of the PSA.

### C. Claims against non-parties are beyond the express scope of the PSA arbitration provision.

Even where the concept of equitable estoppel allows a non-signatory to claim the benefit of an arbitration agreement, arbitration will not be compelled if the matter at issue is not within the scope of arbitrable issues defined in the agreement. In *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1355 (11th Cir. 2017), the court found that even if the non-signer could enforce the arbitration provision on principal of equitable estoppel, it could not compel arbitration under a contract provision which provided for arbitration of disputes arising between the parties. The court explained:

---

[8] *See Goldauskas v. Elyria Foundry Co.*, 763 N.E.2d 645, 649 (Ohio App. 2001); *Miami Gardens, Inc. v. Conway,* 102 So. 2d 622, 626 (Fla. 1958).

6

> [U]nder Florida law even if a non-signatory to an agreement containing an arbitration clause can invoke the doctrine of equitable estoppel to access that clause, she can compel arbitration under it only if her dispute with the signatory falls within the scope of the arbitration clause. . . . If the [movants] are not considered "parties" to the agreement within the scope of the arbitration clause, they cannot use equitable estoppel to compel arbitration of the claims, even if the doctrine were otherwise applicable in this case.

(*Id.* at 1355). The court found that the movant was not a "party," and distinguished cases where the non-signer was an agent, officer or director of the signer, are relationship it found critical to a finding of equitable estoppel.[9] *Id.*

Likewise, in *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765 (Fla. Dist. Ct. App. 2018), the court found that a non-signer could not enforce an arbitration provision, even assuming it met the requirements for estoppel, because the arbitration provision was limited to disputes "between the parties":

> Application of equitable estoppel could address the [movant's] non-signatory status—effectively counting it as a signatory—but it would not expand the scope of disputes subject to arbitration. Although Florida law, like federal law, favors arbitration, it is still true that no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate. Therefore, even when a non-signatory can rely on equitable estoppel to access the arbitration clause, the non-signatory can compel arbitration only if the dispute at issue falls within the scope of the arbitration clause. And the scope of the arbitration clause is a pure matter of contractual interpretation.

*Id.* at 768.

Plaintiffs' dispute with FA and Parkin is not within the scope of "disputes between the parties" required by the PSA. They attempt to characterize themselves as parties by subtly transforming the Blacks Law definition of a party— "one who takes part in a transaction"—into anyone who might "participate" in a transaction. Thus, where the dictionary clearly means the

---

[9] *See also Turner Constr. Co. v. Advanced Roofing, Inc.*, 904 So.2d 466, 470 (Fla. 3d DCA 2005) (limiting application of the estoppel exception and finding that being an "agent, officer, or director of a signatory . . . is critical to the exception."

7

actual contracting parties,[10] FA and Parkin would add to that real estate agents, banks, delivery drivers, appraisers, and anyone else whose participation might be implicated in a given contract.

Here, the Court need not trifle with dictionaries. The term "parties" is used throughout the PSA, where it always means the Seller and the Buyer. The very signature block indicates that the "parties have set their hands" to the document, and the signers are the Rockwell Seller and the Plaintiff Buyer. FA and Parkin understood this when they filed their earlier Motion to Dismiss, repeatedly insisting that they were not "parties" to the PSA. They cannot now claim otherwise. The claims against FA and Parkin are not "disputes between the parties," and compulsory arbitration is therefore not available under the PSA.

    III.    **FA AND PARKIN CANNOT COMPEL ARBITRATION UNDER THE TITLE POLICIES.**

        A.    **The Florida Policy permits arbitration only by mutual consent of the parties at the time of the controversy or claim.**

Exhibit 46 to the Motion includes four copies of the Florida arbitration provision, all of which allow arbitration only on mutual consent "at the time of the controversy or claim."

        B.    **The Ohio Plaintiffs did not assent to arbitration under the Policies.**

FA's attempt to subject the Plaintiffs to arbitration under the title insurance policies is contrary to clear Ohio law. Here, it is undisputed that the Plaintiffs did not see the policies and were not aware of the arbitration provisions in them until substantially after closing.[11] (*See*

---

[10] Indeed, Black's Law cites a treatise stating, "if an agreement, conveyance, lease, or the like is entered into between A and B, they are said to be the parties to it . . . ." (8th ed. 2004).

[11] FA and Parkin contend that Plaintiffs "admit" a lot of things about the policies, the endorsements, and the Amount of Insurance in paragraph 128 of the Amended Complaint (Motion, at 2). That paragraph contains no such admissions, but states as follows:
> For each Noah TIC Property, First American issued a policy of title insurance to Rockwell when Rockwell acquired the property. After TIC Investors closed their purchase, First American issued an endorsement of the policy, although TIC Investors did not sign the endorsement, did not see the policy, did not pay for the endorsement, and did not receive the endorsement until after the closing.

8

Declarations, Exhibit A, at ¶¶3-6). In short, without notice of the arbitration provision, Plaintiffs cannot be bound by it, even if there was an otherwise binding insurance contract.

The Ohio Supreme Court in *Henderson v. Laws. Title Ins. Corp.*, 843 N.E.2d 152 (Ohio 2006) reached the same conclusion. It recognized that a binding insurance contract may be consummated without delivery of the policy, but it held that the contract would only be deemed to include standard insurance policy terms. (*Id.* at 157). Despite the insurer's argument that arbitration provisions are standard terms, the Court found that arbitration provision are not standard terms because they are not found in all policies or may vary between policies. (*See Id.* at ¶¶157-158).

The court further found that such a policy was not in violation of the FAA, explaining that it was not limited to arbitration provisions but that it applied to all non-standard provisions in an insurance policy:

> [W]e have applied a principle under which standard terms in a title insurance policy will be enforced in the commonplace situation in which the proposed insured makes an unqualified request for coverage, and the insurer then issues a policy without further negotiation. **The corollary, of course, is that any nonstandard term that appears in the ensuing policy will be invalidated as contrary to the parties' intent.** To the extent that the application of this principle can be said to result in the imposition of a requirement for notice or advance delivery of the policy, **that requirement governs not just arbitration provisions** but any nonstandard term in a title insurance policy.

*Id.* at 159. *See also Riley v. Wayne Mut. Ins. Co.*, 2014-Ohio-1818, ¶¶ 11-14); *Eberhard v. Chicago Title Ins., Co.*, 2013 WL 12293478 (N.D. Ohio Mar. 12, 2013).

In applying this principle to the facts of the present case, it is apparent that the Plaintiffs are not bound by the arbitration provision in the title insurance Policies – even if there was otherwise a binding insurance agreement. As found by the Ohio courts, arbitration provisions are not standard insurance policy provisions. This is further confirmed by the facts of the present case, which show that the arbitration provisions in the Ohio policies (which would allow either

9

party to compel arbitration) were materially different from the Florida policy (which required both parties to agree to arbitration). Thus, when the Plaintiffs requested an insurance policy, they were not agreeing to submit to arbitration. Indeed, the Plaintiff had no knowledge of the existence of the arbitration provision, let alone the terms of such provision. Thus, to compel the Plaintiff's to arbitration under such circumstances would violate the most fundamental principle of arbitration – that " a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs.*, 475 U.S. at 648.

   **C.** **Because the Amount of Insurance under the Ohio Policies is in excess of $2.0 million, arbitration under the Policies requires mutual consent.**

Condition 14 of the Ohio policies requires mutual consent to arbitrate "when the "Amount of Insurance is in excess of $2,000,000.00." "Amount of Insurance" is a defined and capitalized term, and each policy states an Amount of Insurance well over $2,000,000.00. FA and Parkin ask the Court to imply a decreased Amount of Insurance based on percentages stated in later endorsements, but both the policies and the endorsements provide that the endorsement alter nothing unless it is expressly stated. Particularly where the TIC interests are undivided interests in the whole property, there is no need to doubt that the Amount of Insurance is anything other than what the policy clearly states.

FA and Parkin also assert that "each and every other Plaintiff's Amount of Insurance is likewise less than the $2 million threshold." Motion at 4. That assertion is untrue under any interpretation of the facts, as Plaintiff Oak Hill Management, Inc. owns 58.12 percent of the Toledo, Ohio property, with a stated Amount of Insurance of $6,115,000.00. (*See* Exhibit C).

   IV. FA AND PARKIN SEEK ARBITRATION FOR AN IMPROPER PURPOSE.

Finally, Part III.C. of the Motion betrays FA and Parkin's improper motive behind their demand to arbitrate, arguing that each Unbuilt TIC Owner will be required to arbitrate

10

individually.  Motion, at 12.  Instead of seeking judicial economy and a relatively speedy and inexpensive path to resolution, FA and Parkin seek to use arbitration to make litigation impractical, expensive, and unbearably burdensome for Plaintiffs.

## **CONCLUSION**

For the reasons set forth below, Plaintiffs urge the Court to deny the Motion in all respects and allow Plaintiffs to litigate the merits of their claims in this Court.

DATED this 20th day of October, 2020.

                                            **STRONG & HANNI**

                                            /s/ *Reid W. Lambert*
                                            Reid W. Lambert
                                            Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I certify that on the 20th day of October, 2021, I caused the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN** to be served electronically through the ECF system which delivered notice to the following:

- **Daniel K. Brough**
  dbrough@btjd.com, hollyv@btjd.com, docketing@btjd.com
- **Erik A. Christiansen**
  echristiansen@parsonsbehle.com, ecf@parsonsbehle.com, cgroos@parsonsbehle.com
- **Jeffrey C. Corey**
  ecf@parsonsbehle.com, jcorey@parsonsbehle.com
- **Royce B. Covington**
  rcovington@parrbrown.com, calendar@parrbrown.com
- **R. Jesse Davis**
  jdavis@strongandhanni.com
- **Jonathan O. Hafen**
  jhafen@parrbrown.com, calendar@parrbrown.com
- **Douglas W. Henkin**
  douglas.henkin@dentons.com
- **Reid W. Lambert**
  rlambert@strongandhanni.com, tlawrence@strongandhanni.com
- **Sara M. Nielson**
  snielson@parrbrown.com, acoats@parrbrown.com, calendar@parrbrown.com
- **Chad S. Pehrson**
  cpehrson@parrbrown.com, calendar@parrbrown.com

                                                /s/
                                        Reid W. Lambert