ERIK A. CHRISTIANSEN, USB# 7372
JEFFREY C. COREY, USB# 9938
PARSONS BEHLE & LATIMER PC
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

DOUGLAS W. HENKIN
DENTONS LLP
1221 Avenue of the Americas
New York, New York  10020-1089
Tel: (212) 768-6832
douglas.henkin@dentons.com
(admitted *pro hac vice*)

*Attorneys for Defendants First American Title Insurance Company and Kirsten Parkin*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CHRISTOPHER C. FUCCI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>WILLIAM BOWSER, et al.,<br><br>    Defendants. | Case No. 2:20-cv-00004-DBB-DAO<br><br>**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN**<br><br>The Honorable David Barlow<br><br>ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................ 1

I.     PLAINTIFFS MUST ARBITRATE UNDER THE PSAS .................................................. 1

       A.     The Purported Waiver of the PSAs' Arbitration Provisions is Invalid ................... 1

       B.     Plaintiffs Are Equitably Estopped From Avoiding The FA Defendants' Enforcement Of The PSAs' Arbitration Provisions ............................................... 3

II.    PLAINTIFFS AGREED TO ARBITRATE THEIR DISPUTES UNDER THE POLICIES UNDER OHIO LAW AS WELL ...................................................................... 6

       A.     Plaintiffs Had Notice of the Policies and are Bound by the Arbitration Provisions ................................................................................................................ 6

       B.     The Plaintiffs Were Insured for an Amount of Insurance that Was Less than $2,000,000 ..................................................................................................... 9

CONCLUSION .................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arthur Andersen LLP v. Carlisle*,
 556 U.S. 624 (2009) ................................................................................................. 3, 4

*Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*,
 249 So. 3d 765 (Fla. Dist. Ct. App. 2018) ................................................................... 5

*Brazzle v. Washington City*,
 No. 2:09–CV–00074–EJF, 2012 WL 4055817 (D. Utah Sep. 14, 2012) ..................... 7

*DiTucci v. Ashby*,
 No. 2:19-CV-277, 2021 WL 778579 (D. Utah Mar. 1, 2021) ............................. 7, 8, 9

*Doe v. Carmel Operator, LLC*,
 160 N.E.3d 518 (Ind. 2021) ......................................................................................... 4

*Henderson v. Laws. Title Ins. Corp.*,
 843 N.E.2d 152 (Ohio 2006) .................................................................................. 8, 9

*Ikerd Scuba Enter. LLC v. Lakes*,
 Appellate Case No. 25704, 2014 Ohio 533 (Ohio Ct. App. 2014) ............................. 2

*Kolsky v. Jackson Square*,
 28 So. 3d 965 (Fla. Dist. Ct. App. 2010) ................................................................ 3, 4

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
 845 F.3d 1351 (11th Cir. 2017) ............................................................................. 4, 5

*Lady Balt. Foods, Inc. v. Harvest Ins. Co.* (*In re Lady Balt. Foods, Inc.*),
 Case No. 02-43428, 2006 Bankr. LEXIS 1553 (Bankr. D. Kan. Aug. 2, 2006) ......... 2

*Lewallen v. Green Tree Servicing, L.L.C.*,
 487 F.3d 1085 (8th Cir. 2007) ..................................................................................... 2

*Lynkus Communications v. Webmd Corp.*,
 965 So. 2d 1161 (Fla. Dist. Ct. App. 2007) ................................................................. 2

*Manning v. Wiscombe*,
 498 F.2d 1311 (10th Cir. 1974) ................................................................................... 3

*Massey Servs. v. Sanders*,
  312 So. 3d 209 (Fla. Dist. Ct. App. 2021) ..............................................................................10

*Qualls v. Wright Patt Credit Union*,
  2021-Ohio-2055, 174 N.E.3d 874 (Ohio Ct. App. Jun. 18, 2021).............................................6

*Regions Bank v. Chattanooga-Hamilton Cty. Hosp. Auth.*,
  No. 4:14-CV-0191-HLM, 2014 WL 12621478 (N.D. Ga. Oct. 29, 2014)................................2

*Riggs v. Patriot Energy Partners, LLC*,
  2014-Ohio-558 (Ohio Ct. App. 2014).................................................................................3, 4

*Riley v. Wayne Mut. Ins. Co.*,
  2014 WL 1758694, 2014-Ohio-1818 (Ohio Ct. App. 2014) ....................................................8

*Rudolph v. Wright Patt Credit Union*,
  2021 WL 2709491, 2021-Ohio-2215 (Ohio Ct. App. Jun. 30, 2021)...................................6, 7

*Smith v. Pickersgill*,
  2014 Ohio 5606 (Ohio Ct. App. 2014) ..................................................................................10

*In re Stemwedel*,
  Case No. 11-39196, 2018 Bankr. LEXIS 3083 (Bankr. D. Colo. Sep. 27,
  2018), *aff'd*, *Stemwedel v. Peak Props. & Dev.* (*In re Stemwedel*), 2019 U.S.
  Dist. LEXIS 159795 (D. Colo., Sep. 19, 2019) .......................................................................2

*In re Touchstone Home Health LLC*,
  572 B.R. 255 (Bankr. D. Colo, 2017) ......................................................................................2

**Statutes**

28 United States Code
  § 157(a)....................................................................................................................................1
  § 1334......................................................................................................................................1

**Other Authorities**

Restatement (Second) of Contracts § 311(3) (1981) .......................................................................3

Despite trying to muddy the record with slipshod declarations and a (literally) last-minute attempt to rewrite history, Plaintiffs cannot avoid the application of their agreements to arbitrate their claims.[1] The FA Defendants' motion to compel arbitration should be granted.

## ARGUMENT

I. **PLAINTIFFS MUST ARBITRATE UNDER THE PSAS**

   A. **The Purported Waiver of the PSAs' Arbitration Provisions is Invalid**

In an act of last-minute desperation undertaken *the day their opposition to this Motion was due* and after Defendants had already asserted their rights under the PSAs,[2] Plaintiffs asked the Chapter 7 Trustee of Rockwell Debt Free Properties (the "Trustee") to retroactively waive the PSAs' arbitration clause. *See* Opp. Ex. C. That attempt fails for three distinct reasons.

*First*, the Trustee lacked power to do what Plaintiffs asked. Rockwell filed its Chapter 7 petition on September 2, 2020 in the United States Bankruptcy Court for the District of Utah, Case No. 20-25326. *See* **Exhibit A** (Bankruptcy Court docket). The Bankruptcy Court has exclusive jurisdiction over Rockwell and its estate pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Trustee may not deal with property of the estate outside of the ordinary course of business without

---

[1] Capitalized terms not defined herein have the meanings set forth in the FA Defendants' Motion to Compel Arbitration (ECF 126) ("Motion"). References to Plaintiffs' Opposition to the FA Defendants' Motion to Compel Arbitration (ECF 135) are in the form "Opp. x." If the Court agrees that the PSAs control, all Plaintiffs are required to arbitrate their claims. If the Court agrees that the Policies control, all Plaintiffs except Oak Hill Management, Inc. ("OHMI") are required to arbitrate their claims.

[2] The facsimile headers on the purported waiver letter show that it was sent and received by Plaintiffs' counsel after the close of business on October 20, 2021, the day Plaintiffs' opposition to this Motion was due and over 4 weeks after the FA Defendants asserted their right to compel arbitration. Opp. Ex. C (facsimile headers). Indeed, Plaintiffs' counsel did not even ask the Trustee for the purported waiver until 19 days after Plaintiffs' opposition to this Motion was originally due (October 1, 2021). *See* Opp. at 1; *see also id.* Ex. B (confirming Plaintiff counsel's purported waiver request did not occur until October 20, 2021).

Bankruptcy Court participation, for which formal notice and an opportunity for a hearing is required. *In re Stemwedel*, Case No. 11-39196, 2018 Bankr. LEXIS 3083 at 10 (Bankr. D. Colo. Sep. 27, 2018), *aff'd*, *Stemwedel v. Peak Props. & Dev.* (*In re Stemwedel*), 2019 U.S. Dist. LEXIS 159795 (D. Colo., Sep. 19, 2019). No such notice was given by the Trustee regarding his last-minute decision to sign Plaintiffs' letter purporting to waive the PSA arbitration provision.

Whether to permit, waive, or block arbitration is frequently the subject of litigation before bankruptcy courts—and is not a decision left to the discretion of a Trustee. *See, e.g., Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085 (8th Cir. 2007); *In re Touchstone Home Health LLC*, 572 B.R. 255 (Bankr. D. Colo, 2017); *Lady Balt. Foods, Inc. v. Harvest Ins. Co.* (*In re Lady Balt. Foods, Inc.*), Case No. 02-43428, 2006 Bankr. LEXIS 1553 (Bankr. D. Kan. Aug. 2, 2006). The Trustee's purported waiver was subject to the jurisdiction of the Bankruptcy Court, was not in the "ordinary course of business," and was not the subject of prior notice to the Bankruptcy Court. It is thus a nullity under the Bankruptcy Code.

*Second*, the attempted waiver violates PSA Section 14, which requires all "subsequent modifications" to any PSA to be "in writing and signed by the parties."[3] Plaintiffs' Exhibit C is not such a writing, and is thus a nullity under the PSAs themselves. *See, e.g., Ikerd Scuba Enter. LLC v. Lakes*, Appellate Case No. 25704, 2014 Ohio 533 (Ohio Ct. App. 2014) (similar requirement precluded any amendment to the contract that was not in writing); *Lynkus Communications v. Webmd Corp.*, 965 So. 2d 1161, 1168 (Fla. Dist. Ct. App. 2007) (similar). Nor are Plaintiffs' declarations such a writing; no declarations mention the PSAs, say anything about amending any portion of any PSAs, or say anything about allowing anyone else to do so.

---

[3] The FA Defendants filed copies of the governing PSAs as exhibits 1 through 45 to their Motion Each PSA contains the quoted Section 14 terms requiring modifications to be signed by the parties. *See, e.g.*, Motion Ex. 1 at 5.

2

*Third*, even if Plaintiffs could overcome these independently fatal problems, they could not nullify the FA Defendants' rights to compel arbitration. Signatories to an agreement cannot waive a third party's rights after those rights have accrued. *Regions Bank v. Chattanooga-Hamilton Cty. Hosp. Auth.,* No. 4:14-CV-0191-HLM, 2014 WL 12621478, at *18 (N.D. Ga. Oct. 29, 2014) (*citing Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir. 1974)). This principle ensures that third parties are not deprived of their expectations under contracts after a change in position. *Manning*, 498 F.2d at 1313; s*ee also* Restatement (Second) of Contracts § 311(3) (1981) (signatory's power to modify an obligation to a beneficiary "terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it"). Plaintiffs' attempt to escape the PSAs' arbitration provision after the FA Defendants invoked it by making the Motion is thus a nullity for this reason as well.

> **B.    Plaintiffs Are Equitably Estopped From Avoiding The FA Defendants' Enforcement Of The PSAs' Arbitration Provisions**

The alternative estoppel theories adopted by Ohio and Florida courts allow the FA Defendants to compel arbitration of Plaintiffs' claims according to Plaintiffs' respective PSAs. Plaintiffs' citations from Ohio, Florida, and the U.S. Supreme Court (Opp. 3) do not address the FA Defendants' estoppel arguments (Motion 7–8).[4]

Ohio and Florida law create specific rights for non-signatories seeking to compel arbitration. *See Riggs v. Patriot Energy Partners, LLC*, 2014-Ohio-558 ¶ 41 at 13 (Ohio Ct. App.

---

[4]   Plaintiffs try to avoid the PSA arbitration provisions by arguing that the FA Defendants have admitted to not being parties to the PSAs. *See* Opp. 1 n. 2. This has nothing to do with whether arbitration-by-estoppel applies, as arbitration-by-estoppel doctrines do not depend on whether an entity asserting them is a "party." In any event, Plaintiffs affirmatively plead that the FA Defendants were agents of Rockwell, *see, e.g.,* Amended Complaint ¶ 361, which is sufficient for the doctrines to apply.

3

2014) (allowing non-signatories to compel arbitration under equitable estoppel); *Kolsky v. Jackson Square*, 28 So. 3d 965, 969 (Fla. Dist. Ct. App. 2010) (same). These arbitration-by-estoppel rules are within the authority of each state to make. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Plaintiffs concede this, even citing *Carlisle* for the same point (Opp. 5). That makes Plaintiffs' claim that *Carlisle* "abrogated" cases like *Riggs* and *Kolsky* even stranger given that those opinions were written *after Carlisle* was decided. Plaintiffs' argument requires viewing *Carlisle* as simultaneously abrogating Ohio and Florida arbitration decisions that had not yet been issued and upholding the states' rights to issue them. Not surprisingly, Plaintiffs cite no authority for that proposition.

Plaintiffs do not otherwise attempt to distinguish the equitable factors favoring arbitration. Because Plaintiffs do not contest that their claims against the FA Defendants are (i) "inextricably intertwined" with the terms of the PSAs and (ii) allege "substantially interdependent and concerted misconduct" between the FA Defendants and Rockwell, the FA Defendants satisfy the elements required to compel arbitration under either estoppel theory. *See* Motion 7-8.

Contrary to Plaintiffs' assertion (Opp. 6), neither Ohio nor Florida law requires the FA Defendants to demonstrate "reliance" on Plaintiffs' conduct. *See* Motion 7-8. Plaintiffs' argument is based on (i) cases addressing traditional estoppel theories in non-arbitration contexts and (ii) a non-controlling *Indiana* decision explicitly recognizing that *Carlisle* allows "states … to opt into the alternative [estoppel] theories … ." *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 525 (Ind. 2021). In any event, the FA Defendants *did* rely on Plaintiffs' executions of the PSAs in performing the FA Defendants' roles in connection with each PSA and then moving to compel arbitration.

4

Ohio and Florida have adopted alternative estoppel theories, as *Doe* concedes *Carlisle* allows. Indeed, *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351 (11th Cir. 2017), *which Plaintiffs cite* (Opp. 6-7), explicitly recognizes Florida's case law granting non-signatories the right to compel arbitration by estoppel.[5] Plaintiffs cite *Kroma Makeup* to argue that the FA Defendants are not "parties" within the scope of the Florida PSA's arbitration clause. Opp. 6–7. But the FA Defendants are the exact type of non-signatory agents that can compel arbitration, as *Kroma Makeup* specifically distinguished from the "parties" argument for which Plaintiffs cite it. Citing numerous Florida cases, the 11th Circuit stated that:

> a non-signatory defendant can invoke an arbitration clause that limits arbitration to disputes between "the parties," in those cases the non-signatory defendants were officers *and agents* of a signatory, and they had themselves received rights and taken on obligations under the agreement.

845 F.3d at 1355 (emphasis added). There is no dispute that the FA Defendants are alleged to be agents of Rockwell with rights and obligations under the PSAs relating to their title and escrow responsibilities, which are the bases for Plaintiffs' claims. Amended Complaint ¶¶ 13, 127, 129, 361–62, 365, 408(a), 427(a), 433(b), 475; Motion Ex. 1 ¶¶ 3.2–3.5, 4. Plaintiffs are estopped from avoiding the PSAs' arbitration clauses.[6]

---

[5] Plaintiffs fail to challenge the FA Defendants' twin argument that Ms. Parkin is able to compel arbitration under the same estoppel theories (Motion 8–9), further confirming that Plaintiffs recognize the validity of these estoppel theories.

[6] Plaintiffs also cite *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 766 (Fla. Dist. Ct. App. 2018), to argue the FA Defendants are not "parties" that can compel arbitration under Florida law. But the non-signatory seeking to compel arbitration in *Beck Auto* attempted to do so by arguing it had derivative liability for a signatory's acts. This case is not applicable to the *agency* relationship here.

## II. PLAINTIFFS AGREED TO ARBITRATE THEIR DISPUTES UNDER THE POLICIES UNDER OHIO LAW AS WELL

### A. Plaintiffs Had Notice of the Policies and are Bound by the Arbitration Provisions

Plaintiffs had notice of the Policy applicable to each of their purchases, and this notice is sufficient to form an agreement to arbitrate. At most, Plaintiffs' slipshod collection of declarations purport to show that some Plaintiffs did not receive a copy of the Policy. But they do not contradict the record showing that all Plaintiffs were on notice of the Policies, had an opportunity to investigate the terms of the Policies, and agreed to be added to those Policies by endorsement when they signed their respective PSAs.

Ohio "has expressed a strong policy favoring arbitration of disputes," and a "provision in any written contract to settle by arbitration a controversy that subsequently arises out of the contract … shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract." *Qualls v. Wright Patt Credit Union*, 2021-Ohio-2055, ¶ 82, 174 N.E.3d 874, 893 (Ohio Ct. App. Jun. 18, 2021). Contrary to Plaintiffs' assertion, "there is no requirement that an arbitration agreement be signed by either party in order to be enforceable; the only requirement is that the arbitration agreement be reduced to writing." *Id.* ¶ 86. The Ohio Policies' arbitration provisions were reduced to writing. *See* Motion Exs. 47–49 ¶ 14. Because Plaintiffs had constructive and inquiry notice of the Policy, they are bound by its written arbitration provision. *Rudolph v. Wright Patt Credit Union*, 2021 WL 2709491 at *9–12, 2021-Ohio-2215, ¶¶ 44–57 (Ohio Ct. App. Jun. 30, 2021).

The courts in both *Qualls* and *Rudolph* compelled arbitration despite those plaintiffs' claims that they never received or reviewed the underlying agreements. *Id.*; *Qualls*, 174 N.E.3d at 879–80. Both decisions found that the plaintiffs were on notice of the agreements containing the arbitration clauses even though they were published on a website the plaintiffs had not viewed.

6

The notice to each plaintiff was provided by an earlier agreement that stipulated future amendments would be viewable online. *Rudolph* ¶¶ 9–10; *Qualls,* 174 N.E.3d at 878 (in *Qualls*, almost 4 years elapsed in between the first agreement and the online modification). Plaintiffs thus cannot avoid the Policies' terms by arguing they did not receive them, because all Plaintiffs signed PSAs containing the condition that they would be added to a Policy. *See, e.g.,* Motion Ex. 1 ¶ 4. Each Policy pre-dated Plaintiffs' investments, and each Plaintiff agreed to review all investment-related materials:

> The Buyer acknowledges that it has been advised to obtain independent tax and legal advice regarding the transaction described herein and acknowledges and agrees that it has not relied upon any advice, statements or representations made by the Seller or any of the Seller's agents, employees, members, consultants, or attorneys. The Buyer acknowledges the unique risks associated with a construction 1031 Exchange, including but not limited to the risks of delays in construction that may result in all or a portion of the improvements not being completed prior to the 1031 Deadline. The Buyer acknowledges and agrees that the Buyer assumes full responsibility for ensuring that its relationship with Accommodator satisfies the requirements for a 1031 Exchange and that it will consult tax and legal professionals regarding the 1031 Exchange and hereby waives any and all claims against the Seller, the Seller's agents, employees, members, consultants, or attorneys related to the 1031 Exchange.
>
> Buyer's Initials: [CAW] [DML]

*Id.* at 4. It is thus not surprising that many Plaintiffs confirmed that they *had* received a copy of the relevant Policy prior to bringing this lawsuit, thus having actual knowledge of its terms and further demonstrating it was generally available to Plaintiffs. *See, e.g.,* Opp. Ex. A, ECF 135-1 at 7, 21, ECF 135-2 at 16, 24, ECF 135-3 at 2, 10, 16. As shown in **Exhibit B**, *eleven* other Plaintiffs have submitted deficient declarations that make it impossible for this Court to ascertain whether those Plaintiffs knew of the Policies' terms and improper to rely on them for any reason at all. *Brazzle v. Washington City*, No. 2:09–CV–00074–EJF, 2012 WL 4055817 (D. Utah Sep. 14, 2012) (striking paragraphs of declaration where there was no foundation or where it "lacks context to

substantiate the assertion and facts"). *If* some Plaintiffs failed to comply with their contractual due diligence covenants, that is not a basis for evading the Policy arbitration clause.

Plaintiffs also fail to even acknowledge that Judge Campbell, considering nearly identical circumstances, found that purchasers of TIC interests under Rockwell PSAs were bound by the accompanying title policy arbitration clauses based on the prior notice they had received, as the FA Defendants noted in the Motion. *DiTucci v. Ashby*, No. 2:19-CV-277, 2021 WL 778579 at *7–8 (D. Utah Mar. 1, 2021); Motion 11 n. 5.[7] Like the Plaintiffs here, Judge Campbell found that the plaintiffs in *DiTucci* (a) "were on notice that they would receive title insurance for the property through an endorsement to an already existing policy," (b) "had sufficient time to request and review the Policy before closing," (c) were issued endorsements "incorporate[ing] the Policy by reference," (d) had "been advised to obtain independent tax and legal advice regarding the transaction," and (e) "had the responsibility to perform [their] own due diligence before signing the PSA" based on Section 12 of the PSA. *Id.* Plaintiffs were on notice of the Policies, had an opportunity to review their terms, were encouraged to do so, and promised to do so. This binds them to the Policies' arbitration provisions under Ohio law.

Indeed, the circumstances under which Plaintiffs received notice of the Policies demonstrate why this case is not controlled by *Henderson v. Laws. Title Ins. Corp.*, 843 N.E.2d 152 (Ohio 2006) and the other cases cited by Plaintiffs (Opp. 9–10). Plaintiffs' citations each dealt with situations where the plaintiff did not have access to the insurance policy prior to closing on

---

[7] *DiTucci* is currently on appeal to the United States Court of Appeals for the Tenth Circuit because Judge Campbell, based on Indiana law, denied the FA Defendants' motion to compel arbitration of the claims against Ms. Parkin under the Title Policies and denied the motion under the PSAs. *See DiTucci et al. v. Ashby et al.*, Case No. 2:19-cv-00277 (D. Utah Oct. 4, 2021), ECF 268. Because this Motion raises similar issues (albeit under different state laws), the Court may wish to delay deciding the Motion until the Tenth Circuit has decided that appeal.

8

the agreement. For example, the court in *Riley v. Wayne Mut. Ins. Co.*, 2014 WL 1758694 at *4, 2014-Ohio-1818 ¶ 14–16 (Ohio Ct. App. 2014), a case interpreting and applying *Henderson*, determined that the plaintiff may have been subject to the insurance agreement's terms had it been shown he "had access to the policy" or "had the opportunity to review his policy prior to signing." As demonstrated above, both *Riley* conditions are true here, making it (and the cases like it) inapplicable.

And contrary to Plaintiffs' assertion (Opp. 9), *Henderson* did not make a blanket holding that "arbitration provisions are not standard insurance policy provisions." In fact, it specifically noted that what provisions are "standard" may change over time. *Henderson*, 843 N.E.2d at 157–158. Plaintiffs' subsequent comparison of the Ohio arbitration provision to the Florida arbitration provision is disingenuous. Nothing in *Henderson* states that arbitration provisions need to be identical. In fact, *Henderson* acknowledged that what is considered "usual and customary" would likely require "some degree of practical variation." *Id*. at 158.

### B. The Plaintiffs Were Insured for an Amount of Insurance that Was Less than $2,000,000.

Plaintiffs were each insured for less than $2,000,000.[8] Judge Campbell held that "the endorsement decreases the Amount of Insurance to the amount of the insured's financial interest in the property." *DiTucci*, 2021 WL 778579 at *8–9. Each Plaintiff's endorsement only insures that Plaintiff in an amount equal to what they spent for their TIC interest under their PSA. *E.g.*, Motion Ex. 1 ¶ 4. The Policies' language is in accord with this limitation because (i) the Policies state that the "Amount of Insurance … may be increased or decreased by endorsement" (Motion Exs. 46–49 at 3 ¶ 1(a)) and (ii) the endorsements explicitly "do[] not … increase the Amount of

---

[8] With the apparent exception of OHMI.

Insurance." (Motion Exs. 50–53 (Endorsements)). Plaintiffs' argument would mean that First American increased the insured amount by many times over for each property despite clear language in the PSAs and endorsements to the contrary.

That Plaintiffs share "undivided" percentage interests in their respective properties (Opp. 10) is irrelevant. Nothing in the PSAs, Endorsements, or Policies say that an undivided interest in the property translates into an undivided interest in the respective Policy's coverage. If Plaintiffs' interpretation were correct, there would be no way to apply key portions of the Policies.[9] For example, the Policies provide that "[a]ll payments under this policy, except for payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment." (Motion Exs. 46–49 at 5 ¶ 10). Under Plaintiffs' proposed interpretation, payments made by First American under a claim by one Plaintiff would reduce the total "Amount of Insurance" available to all other Plaintiffs, even if those Plaintiffs had not filed a claim, creating a conflict among insureds where the documents make clear there should be none. The Endorsements amended the Amount of Insurance available to each Plaintiff according to their share of the total purchase price, each of which (except for OHMI) is less than $2 million.

## CONCLUSION

For all the foregoing reasons and those set forth in the Motion, the FA Defendants respectfully ask this Court to enter an order granting their motion to compel Plaintiffs to arbitrate their claims against the FA Defendants under the PSAs or the Policies and dismissing those claims in favor of arbitration.

---

[9] *See Smith v. Pickersgill*, 2014 Ohio 5606, 5 (Ohio Ct. App. 2014) (words should be construed in harmony with the agreement); *Massey Servs. v. Sanders*, 312 So. 3d 209, 214 (Fla. Dist. Ct. App. 2021) (same).

Respectfully submitted this 17th day of November, 2021.

/s/ *Jeffrey C. Corey*
ERIK A. CHRISTIANSEN, USB # 7372
JEFFREY C. COREY, USB # 09938
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 81.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

DOUGLAS W. HENKIN
DENTONS LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: (212) 768-6832
douglas.henkin@dentons.com
*(Admitted pro hac vice)*

11

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of November, 2021, a true and correct copy of the forgoing REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN was served on all counsel of record by electronically filing it through the Court's electronic filing system.

/s/ *Jeffrey C. Corey*

US_Active\119791895\V-9