David W. Tufts (8736)
J. Tayler Fox (12092)
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 South Main, Suite 2400
Salt Lake City, Utah 84111
 (801) 415-3000
david.tufts@dentons.com
tayler.fox@dentons.com

Douglas W. Henkin (*Pro Hac Vice*)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020-1089
 (212) 768-6832
douglas.henkin@dentons.com

*Attorneys for Defendants First American Title Insurance Company and Kirsten Parkin*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER C. FUCCI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM BOWSER, et al.,<br><br>Defendants. | Case No. 2:20-cv-00004-DBB-DAO<br><br>**RENEWED MOTION TO COMPEL ARBITRATION BY DEFENDANTS FIRST AMERICAN TITLE INSURANCE COMPANY AND KIRSTEN PARKIN**<br><br>The Honorable David Barlow<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

STATEMENT OF RELIEF AND SUPPORTING AUTHORITIES ............................................. 1

FACTS ........................................................................................................................................ 1

    A.      The Purchase and Sale Agreements ................................................................. 2

    B.      The Title Policies ............................................................................................ 2

ARGUMENT ............................................................................................................................. 4

I.      THE FEDERAL ARBITRATION ACT GOVERNS THIS MOTION, STRONGLY FAVORS ARBITRATION, AND REQUIRES THAT ARBITRATION AGREEMENTS BE "RIGOROUSLY" ENFORCED ........................... 4

II.     THE STANDARD FOR COMPELLING ARBITRATION ............................................. 5

    A.      The FA Defendants Can Compel Arbitration under the PSAs .............................. 6

    B.      The Ohio Plaintiffs Agreed to Individual Arbitrations Under the Policies If Their Amount of Insurance is Below $2,000,000 ................................ 9

    C.      Ms. Parkin Can Compel Arbitration Under the Policies ...................................... 10

III.    PLAINTIFFS' CLAIMS ARE ARBITRABLE ................................................................ 11

    A.      The Arbitration Agreements Encompass Plaintiffs' Claims ................................. 11

    B.      The Specific Claims Alleged Against the FA Defendants Are Arbitrable .......... 12

    C.      Plaintiffs' Claims Must Be Individually Arbitrated Under the Policies ............... 13

IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION ................................................................................................................ 13

V.     IN THE ALTERNATIVE, THE FLORIDA PLAINTIFFS' AND OAK HILL MANAGEMENT'S CLAIMS SHOULD BE STAYED PENDING ARBITRATION OF THE REMAINING OHIO PLAINTIFFS' CLAIMS ..................... 14

CONCLUSION ........................................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)......................................................................................................4

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)......................................................................................................5

*Am. Fam. Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*,
    178 F. Supp. 3d 1121 (D. Colo. 2016).......................................................................13

*AP Atl., Inc. v. Silver Creek St. Augustine, LLLP*,
    266 So. 3d 865 (Fla. Dist. Ct. App. 2019).................................................................7

*Armiio v. Prudential Insurance Co. v. America*,
    72 F. 3d 793 (10th Cir. 1995)....................................................................................13

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)......................................................................................................6

*AT&T Techs. v. Communs. Workers of Am.*,
    475 U.S. 643 (1986)................................................................................................5, 11

*Baker v. Comcast Corporation*,
    No. 2:19-cv-00652, 2020 WL 3895411 (D. Utah Jul. 10, 2020)............................13

*Chelsea Family Pharmacy v. Medco Health*,
    567 F.3d 1191 (10th Cir. 2009).................................................................................13

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003)........................................................................................................4

*Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.*,
    391 F.3d 1129 (10th Cir. 2004)...................................................................................4

*In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*,
    835 F.3d 1195 (10th Cir. 2016).............................................................................12, 13

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)......................................................................................................5

*Discovery Res., Inc.*,
    62 N.E.3d 720 ...................................................................................................7

*DiTucci v. Ashby*,
    No. 2:19-CV-277-TC-JCB, 2021 WL 778579 (D. Utah Mar. 1, 2021) ...........................9, 10

*DiTucci v. First Am. Title Ins.*,
    No. 21-4120, 2023 WL 382923 (10th Cir. Jan. 25, 2023)......................................9

*Duff v. Christopher*,
    2023 WL 1773531 (Ohio Ct. App. 2023) ...............................................................11

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)...........................................................................................5

*Fla. Power & Light Co. v. Rd. Rock, Inc.*,
    920 So. 2d 201 (Fla. 4th DCA 2006) ......................................................................8

*Genaw v. Lieb*,
    2005 WL 435211 (Ohio Ct. App. 2005) ...............................................................8, 11

*Grynberg v. Bar S Servs., Inc.*,
    527 F. App'x 736 (10th Cir. 2013) ........................................................................9

*Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*,
    No. CIVIL 2:02-CV-562, 2008 WL 2673925 (D. Utah July 7, 2008) ...................................9

*Knight v. Altercare Post-Acute Rehab. Ctr., Inc.*,
    94 N.E.3d 957 (Ohio Ct. App. 2017)......................................................................8

*Koechli v. BIP Intern., Inc.*,
    870 So. 2d 940 (Fla. 1st DCA 2004) ....................................................................8, 9

*Kolsky*,
    28 So. 3d  969 (Fla. Dist. Ct. App. 2010) .............................................................7

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011)..................................................................................................4

*Kratos Investments LLC v. ABS Healthcare Services, LLC*,
    319 So. 3d 97 (Fla. Dist. Ct. App. 2021) ...............................................................7

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019)...........................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................................................5

*National American Ins. Co.*,
    362 F. 3d 1288 (10th Cir. 2004) ...............................................................................13

*Owner-Operator Independent Drivers Ass'n v. C.R. England, Inc.*,
    325 F.Supp.2d 1252 (D. Utah 2004) ..........................................................................6

*P&P Indus, Inc. v. Sutter Corp*,
    179 F.3d 861 (10th Cir. 1999) ......................................................................6, 11, 12

*Peabody Landscape Constr., Inc. v. Welty Bldg. Co., Ltd.*,
    198 N.E.3d 589 (Ohio Ct. App. 2022) ........................................................................7

*Perry v. Thomas*,
    482 U.S. 483 (1987) ....................................................................................................4

*Riggs v. Patriot Energy Partners, LLC*,
    2014-Ohio-558 (Ohio Ct. App. 2014) .................................................................6, 10

*Rivera v. Rent A Center*,
    2015 WL 5455882 (Ohio Ct. App. 2015) .................................................................11

*Roddy v. Rosewood Res., Inc.*,
    No. 13-CV-00871-RBJ, 2013 WL 3713915 (D. Colo. July 16, 2013) ....................13

*Sanchez v. Nitro-Lift Techs., L.L.C.*,
    762 F.3d 1139 (10th Cir. 2014) ....................................................................5, 11, 12

*Scott Fetzer Co. v. Miley*,
    2019 WL 5853409 (Ohio Ct. App. 2019) .................................................................14

*Seaborn v. Larry H. Miller Mercedes Benz*,
    No. 2:19-CV-941, 2020 WL 1550789 (D. Utah Apr. 1, 2020) ................................12

*Shader v. ABS Healthcare Servs., LLC*,
    337 So. 3d 1259 (Fla. Dist. Ct. App. 2022) ............................................................14

*Strong v. Geringer*,
    No. 2:15-CV-00837, 2016 WL 4926175 (D. Utah Sep. 15, 2016)..........................12

**STATUTES**

9 United States Code
§ 1.................................................................................................................4
§§ 1-14.........................................................................................................1
§ 2.............................................................................................................4, 5
§ 4.................................................................................................................5

**RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 12(b)(1)..........................................................................................1, 13

**OTHER AUTHORITIES**

Black's Law Dictionary
(11th ed. 2019)...........................................................................................6

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (the "FAA") and, to the extent necessary, Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants First American Title Insurance Company ("First American") and Kirsten Parkin ("Parkin," and together with First American, the "FA Defendants") renew their motion to compel arbitration of all claims asserted against the FA Defendants in the Amended Complaint filed by Plaintiffs on August 17, 2021 (ECF 122, the "Amended Complaint").

## STATEMENT OF RELIEF AND SUPPORTING AUTHORITIES

The FA Defendants bring this renewed motion under the Federal Arbitration Act and, to the extent necessary, Rule 12(b)(1) to compel arbitration of Plaintiffs' claims pursuant to the Purchase and Sale Agreements ("PSAs") and/or the title insurance policies issued by First American that are the subject of this dispute.  In support of this motion, the FA Defendants state the following:

## FACTS

Plaintiffs are individuals, trustees, and companies that each purchased Tenant-in-Common ("TIC") interests in real estate developments located in Jacksonville, Florida (the "Florida Property"); Independence, Ohio (the "Independence Property"); Dublin, Ohio (the "Dublin Property"); and/or Toledo, Ohio (the "Toledo Property," with the Independence and Dublin Properties, the "Ohio Properties," and collectively with the Florida Property, the "Properties").  Amended Complaint ¶ 14.  Each Plaintiff's TIC interest was sold to it by Rockwell Debt Free Properties or a related Rockwell entity ("Rockwell") pursuant to a PSA.  *Id.* ¶¶ 121–122, 360; Exhibits 1–45.[1]  First American issued Rockwell a standard Owner's Policy of Title Insurance for each of the Florida and Ohio Properties (each a "Policy," for the Ohio Properties the "Ohio Policy," and together the "Policies").  Amended Complaint ¶ 128; Exhibits 46–49 (respectively, the "Florida Policy," the "Independence Policy," the "Dublin Policy," and the "Toledo Policy").

---

[1]   References to exhibits correspond with those incorporated in the contemporaneously-filed *Declaration of Steven J. Nielsen in Support of Renewed Motion to Compel Arbitration.* Despite relying extensively on the PSAs in the Complaint, Plaintiffs attached none of them to the Amended Complaint. Relevant PSAs, Policies, and endorsements are attached to the Nielsen Declaration.

A.     **The Purchase and Sale Agreements**

Each Plaintiff's PSA contained a broad mandatory arbitration clause stating that:

> **"[a]ny dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association, but need not be filed with that organization**. Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in [forum state], before a single arbitrator. The parties will be entitled to conduct discovery in accordance with the Federal Rules of Civil Procedure as in effect when arbitration occurs, limited to document production and depositions and subject to further limitation by the arbitrator to secure just and efficient resolution of the dispute. If the amount in controversy exceeds $25,000, the arbitrator's decision will include a statement specifying in reasonable detail the basis for and computation of the award, if any. Judgment upon the award may be entered in any court having jurisdiction."

Ex. 1 ¶ 9 (emphasis added).

The PSAs specify which state's law governs their construction.  *Id.*  ¶ 18.  The PSAs for the Ohio Properties are governed by Ohio law (*e.g.,* Ex. 27 ¶ 18), whereas the PSAs for the Florida Property are governed by Florida law (*e.g.*, Ex. 25 ¶ 18).  Pursuant to express provisions of the PSAs, (i) First American acted as the escrow agent for each TIC transaction, (ii) Rockwell purchased endorsements from First American adding each Plaintiff to the relevant Policy in the amount of their respective purchase price, and (iii) the FA Defendants executed settlement statements in connection with each TIC transaction closing. *E.g., id.* ¶¶ 2, 4, 6.  Each PSA also contains express representations and disclaimers regarding each Plaintiff's individual due diligence and a waiver of claims against Rockwell's agents in connection with each transaction (which Plaintiffs allege to include the FA Defendants).  *E.g., id.* at 1–2 & ¶¶ 5, 12.

B.     **The Title Policies**

Plaintiffs admit that the Policies were amended through individual endorsements (as specifically required by the PSAs) to add each Plaintiff as an "Insured" in an "Amount of Insurance" equal to their proportionate share of ownership interest as set forth in their respective PSAs.  Amended Complaint ¶ 128 (Rockwell "agrees to pay for an endorsement to the [Policy] insuring Buyer in the amount of the Purchase Price") & Exhibits 50–53 (respectively, the "Florida Endorsement," the "Independence Endorsement," the

"Dublin Endorsement," and the "Toledo Endorsement").[2]  The Policies, as endorsed pursuant to the PSAs, formed insurance contracts between First American and each Plaintiff.  Each of the Ohio Policies contains the following broad arbitration provision:

**14. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules").  Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy.  All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured. …

*See* ¶ 14 of Exs. 47, 48 & 49.[3]

The Policies define the "Amount of Insurance" as "[t]he amount stated in Schedule A, as may be increased or _decreased_ by endorsement to this policy."  *Id*. Ex. 46 ¶ 1(a) (emphasis added).  The amount originally stated in the Schedule A for each of the Ohio Policies is as follows:

- Independence Property: $5,835,000 (Ex. 47);

- Dublin Property: $5,930,000  (Ex. 48);

- Toledo Property: $6,115,000 (Ex. 49).

Each endorsement provided that each Plaintiff would be insured in an amount equal to that Plaintiff's percentage interest in the property.  *E.g.,* Ex. 50.  Each Endorsement also states that "it does not … increase the amount of insurance."  *Id*.  With the exception of Plaintiff Oak Hill Management (which owns 58.12% of the Toledo Property), no Plaintiff's TIC interest resulted in them having coverage for more

---

[2]     The Endorsements are identical except for the specific Policy referenced and the Plaintiff's name and ownership interest.

[3]     The Florida Policy contains a different provision that requires mutual agreement of the parties in order to submit the dispute to arbitration.  *See* Ex. 46, ¶ 14.

than $2,000,000 on any particular property, and the Amount of Insurance for each Plaintiff (other than Oak Hill Management) is less than $2,000,000.

For example, Plaintiffs William and Susan Wright purchased a 3.37% TIC interest in the Dublin Property from Rockwell. Ex. 17. Their endorsement accordingly added them as an Insured to the Dublin Policy based on the 3.37% interest they held in the Dublin Property, for a total Amount of Insurance equaling approximately $200,000. With the sole exception of Oak Hill Management, every Ohio Property Plaintiff's Amount of Insurance is less than the $2 million threshold for mandatory arbitration contained in the Ohio Policies.

The Policies also contain choice of law provisions stating that "the court … shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court … apply its conflicts of law principles to determine the applicable law." Ex. 46 ¶ 17. Thus, Ohio law and Florida law apply to interpret and enforce the terms of the respective Policies insofar as neither state's law conflicts with the FAA (in which case the FAA controls, *see Perry v. Thomas*, 482 U.S. 483, 489 (1987)).

## ARGUMENT

I.   **THE FEDERAL ARBITRATION ACT GOVERNS THIS MOTION, STRONGLY FAVORS ARBITRATION, AND REQUIRES THAT ARBITRATION AGREEMENTS BE "RIGOROUSLY" ENFORCED**

The FAA governs transactions "affecting" interstate commerce, and state and federal courts must enforce the FAA. 9 U.S.C. §§ 1-2; *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). Real estate transactions, such as those alleged in the Amended Complaint, have a substantial effect on interstate commerce and thus are subject to the FAA. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995); *Comanche Indian Tribe Of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131–32 (10th Cir. 2004) (FAA applies to all written arbitration agreements "involving commerce"

4

and "creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act").

The FAA controls motions to compel arbitration regardless of what state law governs the relevant contracts in other respects. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019). The FAA reflects a "liberal federal policy favoring arbitration agreements" and declares that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The FAA permits parties to seek an order directing that arbitration "proceed in the manner provided for in such agreement," 9 U.S.C. § 4, and any "doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 25. The FAA also requires that courts "'rigorously' [] 'enforce arbitration agreements according to their terms[.]'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (ordering arbitration). Courts must compel arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).

## II.     THE STANDARD FOR COMPELLING ARBITRATION

Determining whether a dispute is subject to arbitration involves considering whether (1) there is a valid arbitration agreement, and (2) the particular dispute falls within the scope of that agreement. *See id.* at 649. The FAA "leaves no place for the exercise of discretion" if there is a valid, applicable agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217–18 (1985); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1145–46 (10th Cir. 2014). Any doubt regarding whether claims are arbitrable must be resolved in favor of arbitration, particularly where the arbitration provision is broad in scope. *See P&P Indus, Inc. v. Sutter Corp*, 179 F.3d 861, 866 (10th Cir. 1999); *Owner-Operator Independent Drivers Ass'n*

*v. C.R. England, Inc.*, 325 F.Supp.2d 1252, 1257 (D. Utah 2004). Questions regarding who may enforce an arbitration provision are governed by state law relating to contracts in general. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009) (whether a non-signatory can be bound by or compel arbitration under an arbitration agreement is governed by state law). Therefore, the Court must apply the law of the jurisdiction where the land is located (Ohio or Florida) to determine who may enforce the arbitration provisions of the PSAs and the Policies. *See e.g.,* Ex. 27 ¶ 18 (PSA applying Ohio law); Ex. 25 ¶ 18 (PSA applying Florida law); Ex. 46 ¶ 17 (Policy stating law where the land is located governs).

### A.    The FA Defendants Can Compel Arbitration under the PSAs

The PSAs' arbitration clause encompasses "[a]ny dispute between the parties." *E.g.,* Ex. 27 ¶ 9. This includes the FA Defendants because a "party" is ordinarily defined as "someone who takes part in a transaction," Black's Law Dictionary (11th ed. 2019), and the PSAs contemplated that the FA Defendants would participate in the transactions in specified roles delegated solely and expressly to First American, on the one hand by acting as the escrow agent (*e.g.,* Ex. 27 ¶ 2.2) and on the other hand by issuing individual endorsements, paid for by Rockwell, and insuring each Plaintiff in the amount of their respective purchase price. *E.g.,* *id.* ¶ 4. Alternatively, the FA Defendants, who are alleged to have been integral to completing the transactions that the PSAs contemplated, can compel arbitration under the PSAs through principles of estoppel, third-party beneficiary, and agency.

The FA Defendants are entitled to enforce the PSA arbitration clause under Ohio and Florida's equitable estoppel principles. Ohio and Florida both allow non-signatories to compel arbitration based on a contractual arbitration provision. *See Riggs v. Patriot Energy Partners, LLC*, 2014-Ohio-558 ¶ 41 at 13 (Ohio Ct. App. 2014) ("non-signatories to an arbitration agreement can compel arbitration against a signatory pursuant to an 'alternative estoppel theory'"); *Kolsky*, 28 So. 3d at 969 (Fla. Dist. Ct. App. 2010) ("a non-signatory may compel a signatory to arbitration based on the doctrine of equitable estoppel").

6

Under both Ohio and Florida law, principles of estoppel allows a non-signatory to compel arbitration when the signatory alleges substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract containing the arbitration clause, and where the claims against the non-signatory are intertwined with the agreement's underlying obligations. *Kolsky*, 28 So. 3d at 969 (interdependent conduct); *Discovery Res., Inc.*, 62 N.E.3d at 720 (same); *Peabody Landscape Constr., Inc. v. Welty Bldg. Co., Ltd.*, 198 N.E.3d 589, 598 (Ohio Ct. App. 2022) ("[A]rbitration may be compelled due to…the fact that claims were intimately founded in and intertwined with the underlying obligations"); *AP Atl., Inc. v. Silver Creek St. Augustine, LLLP*, 266 So. 3d 865, 866 (Fla. Dist. Ct. App. 2019) ("[A] non-signatory may enforce an arbitration provision when a signatory makes a claim against the non-signatory that arises out of the contract"); *Kratos Investments LLC v. ABS Healthcare Services, LLC*, 319 So. 3d 97, 101 (Fla. Dist. Ct. App. 2021) (same).

These estoppel principles require arbitration of Plaintiffs' claims under the PSAs: Each claim is firmly rooted in the terms of the PSAs[4] and alleges substantially interdependent conduct between the FA Defendants and Rockwell.[5] Plaintiffs' interweaving of their claims against the FA Defendants (who they

---

[4]     *Compare* Ex. 27 ¶ 3.2 *with* Amended Complaint ¶ 409 ("First American and Parkin owed a fiduciary duty to Plaintiffs … according to the agreements and instructions of the parties."); ¶ 433(b) ("Facts manifesting the Defendants' agreement [to participate in a conspiracy] include…First American and Parkin agreed to receive escrow funds in connection with each Construction TIC transaction, but to disburse those funds to Rockwell without Plaintiffs' consent and contrary to the terms of the Purchase Agreements."); ¶ 475 ("First American and Parkin also knew or were in possession of sufficient facts that they must have known that Rockwell was not following its own purchase agreement with Plaintiffs or its own Construction TIC program, and that Plaintiffs' 1031 Exchanges were likely invalid.").

[5]     *See, e.g.*, Amended Complaint ¶ 127 ("First American and Parkin participated in Rockwell's acquisition of approximately 40 properties and hundreds of sales of TIC interests to investors. Through its long and close relationship with Rockwell and Noah … ."); ¶ 412 (FA Defendants "breached their fiduciary duty by … Disbursing funds from the escrow at the request of Rockwell, without ensuring that the funds would be used in connection with the intended TIC Property"); ¶ 427(a) ("First American and Parkin participated and substantially assisted in the tortious conduct by conducting closings, providing title insurance, acting as escrow agent with respect to the TIC Investments, and by disbursing the Plaintiffs' TIC Investments to Rockwell and otherwise carrying

describe as a unit throughout the Amended Complaint) with (i) the terms of the PSAs, including those specifying the FA Defendants' roles under the PSAs and (ii) Rockwell's alleged conduct dictates that the FA Defendants can compel arbitration under the PSAs.

The FA Defendants may also compel arbitration under the PSAs as third-party beneficiaries of the agreements. Ohio and Florida law recognize that non-signatories may enforce arbitration agreements in contracts if the contract expresses an intent to benefit. *Knight v. Altercare Post-Acute Rehab. Ctr., Inc.*, 94 N.E.3d 957, 964 (Ohio Ct. App. 2017); *Fla. Power & Light Co. v. Rd. Rock, Inc.*, 920 So. 2d 201, 203 (Fla. 4th DCA 2006). Here, the intent to benefit the FA Defendants is clear by each PSA's inclusion of and remuneration to First American as the escrow agent (*e.g., id* ¶ 2.2) and issuer of the title policies (*e.g., id.* ¶ 4).

Plaintiffs also allege an agency relationship existed between the FA Defendants and Rockwell, which forms another basis for compelling arbitration under Ohio and Florida law. *See Genaw v. Lieb*, 2005 WL 435211 at \*4 (Ohio Ct. App. 2005) (non-signatory agent may "enforce an arbitration agreement between a plaintiff and the agent's principal when … the alleged misconduct arose out of the agency relationship"); *Koechli v. BIP Intern., Inc.,* 870 So. 2d 940, 944 (Fla. 1st DCA 2004) (non-signatory alleged to be an agent could compel arbitration). Plaintiffs' allegations admit the FA Defendants had a limited agency relationship with Rockwell.[6] As agents of Rockwell expressly identified in the PSAs, the FA Defendants may compel arbitration of Plaintiffs' claims even if this Court finds they are not third-party beneficiaries. *See e.g.*, *Koechli*, at 944 (agent of signatory was still a "party" to the agreement despite not

---

out instructions from Rockwell or Noah with respect to the transactions which are the subject of this Complaint.").

[6]    *See e.g.*, Amended Complaint ¶ 127 ("Rockwell selected and used First American and its agent, Parkin, to close the purchase and sale of TIC interests in Noah TIC Properties"); ¶ 129 ("First American and Parkin also served as escrow agent for each sale of TIC interest"); ¶ 361 ("By Rockwell's choosing First American acted as the title insurer, closing agent, and escrow agent in connection with all of Plaintiffs' TIC Investments").

being a third-party beneficiary, where the agreement compelled arbitration of "any disputes between the parties").

**B.      The Ohio Plaintiffs Agreed to Individual Arbitrations Under the Policies If Their Amount of Insurance is Below $2,000,000**

Plaintiffs concede that they entered into endorsements of the Policies, Amended Complaint ¶ 128, and are bound by these judicial admissions, *see Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) (allegation in complaint is conclusively binding admission); *Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*, No. CIVIL 2:02-CV-562, 2008 WL 2673925, at *12 (D. Utah July 7, 2008) (plaintiffs' judicial admission of being party to agreement with arbitration clause is binding and "[a]s a result of their judicial admission, Plaintiffs cannot now avoid the 'conditions, covenants and obligations' of the [agreement] including its arbitration provision").

Each PSA required Rockwell "to pay for an endorsement to the standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price." *E.g.,* Ex. 27 ¶ 4.  Each Plaintiff thus agreed in its PSA to be added to a Policy and be subject to an endorsement amending and incorporating that Policy, and all Policies contain a broad agreement to arbitrate disputes.  Judge Campbell, addressing exactly this issue, held that "each endorsement specifically refers to the amount of property interest the Plaintiff purchased" such that "the [Policy's] endorsement decreases the Amount of Insurance to the amount of the insured's financial interest in the property." *DiTucci v. Ashby*, No. 2:19-CV-277-TC-JCB, 2021 WL 778579 at *9 (D. Utah Mar. 1, 2021).[7]  Although the Florida Policy requires mutual consent to arbitration, the Ohio Policies do not.  Except for Oak Hill Management, because each Plaintiff's PSA lists a "share[]" less than $2 million, [] First American may compel [the remaining Ohio Plaintiffs] to arbitrate." *Id.*

_____

[7]      On January 25, 2023, the United States Court of Appeals for the Tenth Circuit affirmed Judge Campbell's decisions in *DiTucci* with respect to arguments not related to the issues in this case. *See DiTucci v. First Am. Title Ins.*, No. 21-4120, 2023 WL 382923 (10th Cir. Jan. 25, 2023).

C.      **Ms. Parkin Can Compel Arbitration Under the Policies**

Because Ms. Parkin is a First American employee, all of Plaintiffs' claims against her concern her work for First American in connection with each Plaintiff's TIC transaction, and those claims are inextricably intertwined with the claims against First American, First American can compel arbitration of the claims against Ms. Parkin.  *Riggs*, 2014-Ohio-558 ¶ 41 at 13 (non-signatories may compel arbitration by estoppel).  To the extent that Ms. Parkin needs to move to compel arbitration separately, she hereby does so under the same estoppel theories applying to allegations of concerted misconduct and intertwined claims discussed in Section II(A) *supra*, and because she was the agent of First American who issued the policies and endorsements in each transaction as First American's employee.

Plaintiffs repeatedly group alleged misconduct by Ms. Parkin and First American together throughout the Amended Complaint.  For example, Plaintiffs allege that "[a]t all relevant times, Parkin acted as the escrow agent for First American and in that capacity, had full and complete control of the escrowed funds," that "Parkin and First American knew that disbursing the escrow funds before the completion of construction would not comply with applicable rules for 1031 Exchanges and would subject Plaintiffs to risk that their funds would be misappropriated, diverted, or converted," and that "First American and Parkin knowingly aided and abetted … tortious conduct."  Amended Complaint ¶¶ 407, 408(d).  These allegations relate solely to alleged conduct of Ms. Parkin as a First American employee and thus permit Ms. Parkin to compel arbitration.

A substantial portion of the allegations in the Amended Complaint are predicated on the issuance of the title policies, which was done by First American and Ms. Parkin (as its employee).  *See, e.g.,* Amended Complaint ¶¶ 131 ("First American and Parkin were familiar with all of the documents involved in the purchase and sale of the TIC interests in the Unbuilt Properties"), 427(a) ("First American and Parkin participated and substantially assisted in the tortious conduct by … providing title insurance").  Because

10

Plaintiffs' claims rely on the Policies Ms. Parkin issued on behalf of First American, the claims against her are intertwined with those Policies, and she may compel arbitration under the Policies' terms as well.

Finally, Ms. Parkin can compel arbitration under Ohio law as the agent who assisted in executing the underlying transactions and Policies for First American. *Genaw*, 2005 WL 435211 at *4 (non-signatory agent may "enforce an arbitration agreement between a plaintiff and the agent's principal when … the alleged misconduct arose out of the agency relationship"); *Duff v. Christopher*, 2023 WL 1773531 at *3 (Ohio Ct. App. 2023) ("a nonsignatory agent may enforce an arbitration agreement between a plaintiff and the agent's principal when ordinary principles of contract and agency law require"); *Rivera v. Rent A Center*, 2015 WL 5455882 at *4-5 (Ohio Ct. App. 2015) (same, collecting cases). Allowing Plaintiffs to avoid their obligation to arbitrate while proceeding in litigation against Ms. Parkin would "contradict[] the strong federal and Ohio policies in favor of arbitration." *Genaw*, at *4.

## III.    PLAINTIFFS' CLAIMS ARE ARBITRABLE

### A.    The Arbitration Agreements Encompass Plaintiffs' Claims

There is a presumption of arbitrability, and any "doubts should be resolved in favor of coverage." *AT & T Techs.*, 475 U.S. at 650; *P&P Indus, Inc.*, 179 F.3d 861 at 866 (10th Cir. 1999). In determining whether a dispute falls within the scope of an arbitration provision, a court must first classify the particular arbitration provision as broad or narrow.

The PSA arbitration provisions are broad, stating "[a]ny dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association." *E.g.,* Ex. 27 ¶ 9. The presumption of arbitrability applies to the broad arbitration provision in the PSAs. *Sanchez*, 762 F.3d at 1146. The Court should thus compel Plaintiffs to arbitrate their claims under the PSAs.

If the Court does not compel arbitration under the PSAs, then it should compel arbitration under the Policies. The Policies' arbitration provisions are also broad. They require arbitration of "any

controversy or claim between the Company and Insured arising out of or relating to this policy … or to any controversy or claim arising out of this transaction[.]"  *E.g.,* Ex. 46 ¶ 14.  This broad language means what it says.  *See P & P Indus.*, 179 F.3d at 871; *Sanchez*, 762 F.3d at 1146–47 (collecting cases).

When an arbitration provision is broad (and here, both provisions are), "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."  *Sanchez*, 762 F.3d at 1146. That presumption applies here and mandates that the Court compel Plaintiffs to arbitrate their claims against the FA Defendants under the PSAs or the Policies.

### B.    <u>The Specific Claims Alleged Against the FA Defendants Are Arbitrable</u>

Plaintiffs have alleged a number of claims against the FA Defendants that arise under or relate to their TIC transactions and the Policies, including breach of fiduciary duty (Claim Four), aiding and abetting tortious conduct (Claim Six), conspiracy (Claim Seven), aiding state-law securities fraud (Claim Thirteen), unjust enrichment (Claim Fourteen), and abuse of vulnerable adults (Count Fifteen).  Courts routinely find these and similar claims are within the scope of broad arbitration provisions like the ones in the PSAs and the Policies.  *See, e.g.*, *Seaborn v. Larry H. Miller Mercedes Benz*, No. 2:19-CV-941, 2020 WL 1550789 at *4 (D. Utah Apr. 1, 2020) (unjust enrichment, conversion, fraudulent misrepresentation claims subject to "broad" arbitration clause); *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195, 1202 (10th Cir. 2016) (broad arbitration provision encompassed antitrust claim "even though it arises out of events that predated the agreement"); *Strong v. Geringer*, No. 2:15-CV-00837, 2016 WL 4926175 (D. Utah Sep. 15, 2016) (compelling arbitration of, *inter alia*, civil conspiracy, state securities fraud, breach of fiduciary duty, fraud, and negligent misrepresentation claims).  Because Plaintiffs' claims against the FA Defendants all "relate to" or "arise from" their TIC transactions and the Policies, the claims must be arbitrated.

**C.      Plaintiffs' Claims Must Be Individually Arbitrated Under the Policies**

The arbitration provision in the Policies expressly requires each Plaintiff to arbitrate their claims individually.  *E.g.,* Ex. 46 ¶ 14.  That language must be enforced as written.  *See In re Cox*, 835 F.3d at 1202; *Baker v. Comcast Corporation*, No. 2:19-cv-00652, 2020 WL 3895411 at *3 (D. Utah Jul. 10, 2020). In compelling arbitration under the Ohio Policies, the Court must therefore order those Plaintiffs to arbitrate individually and not as a group.

**IV.      PLAINTIFFS' CLAIMS SHOULD BE DISMISSED IN FAVOR OF ARBITRATION**

When all claims are subject to arbitration, the court lacks subject matter jurisdiction and must dismiss the complaint in accord with Rule 12(b)(1).  *See e.g.*, *Roddy v. Rosewood Res., Inc.*, No. 13-CV-00871-RBJ, 2013 WL 3713915, at *5 (D. Colo. July 16, 2013) (referral of all claims to arbitration deprives a court of subject matter jurisdiction); *Am. Fam. Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016) ("Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when all claims are arbitrable and the movant specifically requests dismissal rather than a stay").  When all claims against defendants are subject to arbitration, courts usually dismiss them in favor of that remedy.  *See, e.g., National American Ins. Co.*, 362 F. 3d 1288, 1292 (10th Cir. 2004); *Armiio v. Prudential Insurance Co. v. America*, 72 F. 3d 793, 796-97 (10th Cir. 1995). The only exception is when some claims might not be arbitrable, and thus there might be something for the Court to address after arbitration has occurred.  *Chelsea Family Pharmacy v. Medco Health*, 567 F.3d 1191, 1200 (10th Cir. 2009).  But that is not the case if the Court compels arbitration under the PSAs:  Because none of Plaintiffs' claims against the FA Defendants conceivably fall outside the PSAs' arbitration provisions, there would be nothing for the Court to do after arbitration is complete, and so Plaintiffs' claims should be dismissed and Plaintiffs should be compelled to arbitrate them.

**V.   IN THE ALTERNATIVE, THE FLORIDA PLAINTIFFS' AND OAK HILL MANAGEMENT'S CLAIMS SHOULD BE STAYED PENDING ARBITRATION OF THE REMAINING OHIO PLAINTIFFS' CLAIMS**

Even if the Court does not compel arbitration under the PSAs, it must still compel arbitration for the Ohio Plaintiffs under the Ohio Policies, with the sole exception of Oak Hill Management.  In that case, the Court should stay the claims by the Florida Plaintiffs and Oak Hill Management while arbitration proceeds with the remaining Ohio Plaintiffs (other than the sole exception, Oak Hill Management).  Ohio and Florida both mandate a stay of proceedings in the event only certain issues or parties in a dispute are referred to arbitration.  *See Scott Fetzer Co. v. Miley*, 2019 WL 5853409 at *9 (Ohio Ct. App. 2019) ("Once a court determines that an issue in a proceeding is subject to arbitration … even claims involving non-signatories to the arbitration agreement are properly stayed"); *Shader v. ABS Healthcare Servs., LLC*, 337 So. 3d 1259, 1262 (Fla. Dist. Ct. App. 2022) ("[I]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration").

## CONCLUSION

For all the foregoing reasons, the FA Defendants respectfully ask this Court to enter an order granting their motion to compel Plaintiffs to arbitrate their claims against the FA Defendants under the PSAs, or the Policies, and dismissing those claims in favor of arbitration.

Respectfully submitted this 1st day of March, 2023.

/s/ *David W. Tufts*

**DENTONS DURHAM JONES PINEGAR, PC**
David W. Tufts
J. Tayler Fox

**Dentons US LLP**
Douglas W. Henkin

*Counsel for Defendants First American Title Insurance Company and Kirsten Parkin*

14

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 1, 2023, I caused a copy of the foregoing to be filed and served on counsel of record via the Court's electronic filing system.

*/s/ Kristin Hughes*