# EXHIBIT 1

D001-0000042_0639

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

**PURCHASE AND SALE AGREEMENT**
[Construction TIC Transaction]

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into as of the **4**th day of **December, 2017**, by and between Rockwell Dublin, LLC a Utah limited liability company (hereinafter referred to as "Seller"), and Carl A. Lillmars Jr., (hereinafter referred to as "Buyer").                    **& Donna M. Lillmars**

> *Buyer understands and acknowledges that any sales professionals involved in this transaction do not have authority to make representations on behalf of or to bind Seller. Buyer further acknowledges that Buyer is not entering into this Agreement in reliance on any representations made by any sales professionals, and that Buyer has had sufficient opportunity to investigate, to Buyer's satisfaction, the nature, character and quality of the Property (as such term is defined below).*

Buyer's Initials: [ CAL ] [ DML ]

**1. Purchase and Sale.** The Seller is the owner and/or holder of a an undivided **6.75** percent interest (the "Property Interest") in the real property described herein below, together with the improvements to be and/or being constructed thereon, which real property is commonly known as the **Noah's** located at **6760 Shier Rings Road** in the City of **Dublin**, State of **Ohio** ("Property") **43016**, which is more particularly described on <u>Exhibit A</u> attached hereto and incorporated herein by this reference. The Property is subject to the lease agreement, which is more particularly described on <u>Exhibit B</u> attached hereto and incorporated herein by this reference the 'Description of Lease'. The Seller agrees to sell to the Buyer, and the Buyer agrees to purchase from the Seller, the Property Interest upon the terms and conditions set forth in this Agreement. In addition, Seller shall assign an undivided **6.75** percent interest in Seller's rights and interest in and to the Lease to Buyer (the "Lease Interest"), and Buyer hereby agrees to fully assume all of Seller's obligations associated with the Lease Interest at Closing, subject to the terms and conditions set forth in this Agreement.

**2. Purchase Price.** The purchase price shall be (**$400,000.00**), payable as follows:

    **2.1**    ($__N/A__) as non-refundable earnest money, to be wired within 48 hours from the execution of this Agreement, to Seller or a title company of Seller's choosing. Buyer understands and acknowledges that this earnest money obligation is effective upon the mutual execution of this Agreement, and failure to make the required earnest money deposit shall constitute an event of default pursuant to the terms and conditions set forth herein.

    **2.2**    The balance of the purchase price shall be wired, or otherwise transferred, to First American Title Company within twenty-four hours of closing.

1

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

**3. 1031 Exchange.** This Section shall only apply in the event the Buyer desires to have all or a portion of the transactions contemplated by this Agreement qualify for nonrecognition treatment under Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code" with the transaction being referred to herein as a "1031 Exchange"). For purposes of this Agreement, any portion of the Purchase Price that is to be paid with funds Buyer desires to qualify as a 1031 Exchange shall be referred to as "1031 Funds."

    **3.1**    The Seller agrees to reasonably cooperate in a 1031 Exchange transaction, which will provide that all or a portion of the purchase price for the Property will be paid with funds that Buyer desires to qualify for nonrecognition treatment (the "1031 Funds") by **Asset Preservation, Inc.** (the "Accommodator" which term shall include all requirements pursuant to the regulations under Section 1031 of the Code and guidance issued by the Internal Revenue Service relating to "qualified exchange accommodation arrangements" and "exchange accommodation titleholders"); provided, that the Seller shall (1) have a reasonable time to review any documents to be signed, (2) not incur any costs associated therewith (the Buyer will pay any costs that are incurred by Seller) and (3) not waive or relinquish any rights under the Agreement. Buyer hereby indemnifies and holds the Seller free and harmless from any liability (including, but not limited to the tax ramifications to the Buyer of such tax-free exchange) arising by reason of performing the acts required hereby to effectuate such 1031 Exchange, except insofar as such liability is attributable to the failure of Seller to perform as required hereunder.

    **3.2**    Buyer hereby acknowledges and agrees that Accommodator shall periodically transfer the 1031 Funds to First American Title Company, in one or more installments, which funds shall be applied toward either (i) the purchase of an undivided interest in the Property or (ii) the construction of the improvements on the Property on a reimbursement basis (i.e., the 1031 Funds will be used to reimburse Seller for costs it has incurred in constructing the improvements on the Property). Seller shall periodically provide statements to First American Title Company detailing the construction costs that Seller has incurred and seeking reimbursement of such costs via transfer(s) of 1031 Funds.

    **3.3**    Seller shall pay to Accommodator interest on the 1031 Funds at a simple annual rate of **7.00** percent. Such interest shall begin to accrue on the date the 1031 Funds are transferred to Accommodator and shall continue to accrue until Closing. All interest payments shall be made by Seller to Accommodator, which Buyer agrees shall, for purposes of its agreement with Accommodator, be treated as additional interest on the 1031 Funds.

    **3.4**    Closing shall occur once all of the 1031 Funds have been transferred by the Accommodator to First American Title Company pursuant to Section 3.2; provided, however, that in the event all of the 1031 Funds have not been transferred by the date that is 180 days after Buyer relinquished the property to be part of the 1031 Exchange (the "1031 Deadline"), all remaining funds shall be transferred and Closing shall occur no later than the 1031 Deadline.

    **3.5**    Buyer hereby assigns to Accommodator all of its rights under this Agreement and hereby instructs Accommodator to transfer 1031 Funds to First American Title Company as described in Section 3.2 above.

2

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

*The Buyer acknowledges that it has been advised to obtain independent tax and legal advice regarding the transaction described herein and acknowledges and agrees that it has not relied upon any advice, statements or representations made by the Seller or any of the Seller's agents, employees, members, consultants, or attorneys. The Buyer acknowledges the unique risks associated with a construction 1031 Exchange, including but not limited to the risks of delays in construction that may result in all or a portion of the improvements not being completed prior to the 1031 Deadline. The Buyer acknowledges and agrees that the Buyer assumes full responsibility for ensuring that its relationship with Accommodator satisfies the requirements for a 1031 Exchange and that it will consult tax and legal professionals regarding the 1031 Exchange and hereby waives any and all claims against the Seller, the Seller's agents, employees, members, consultants, or attorneys related to the 1031 Exchange.*

Buyer's Initials: ___CAW___ ___DML___

**3.6** Notwithstanding anything to the contrary set forth in this Section, the Closing is not contingent or conditioned upon the Buyer being able to successfully complete a 1031 Exchange and the Closing Date shall not be extended to accommodate a 1031 Exchange.

**4. Title Insurance.** At Settlement, Seller agrees to pay for an endorsement to the standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price. In addition, any supplementary title insurance coverage shall be at Buyer's expense.

**5. "As Is" Condition.** Buyer acknowledges that it is buying Seller's interest in the Property, together with the improvements to be and/or being constructed thereon, "as is" and the physical condition of the Property, together with the improvements to be and/or being constructed thereon, is deemed to be satisfactory to the Buyer. Buyer is not relying and will not rely upon any representations and warranties of Seller or anyone acting or claiming to act by, through, or under Seller, or on Seller's behalf concerning the Property, including the improvements to be and/or being constructed thereon, the Lease, or any documents, studies, plans and/or any other materials delivered to Buyer by Seller. Buyer shall purchase the Seller's interest in the Property and the Lease without recourse to the Seller or any employee, agent, officer, director, member or trustee of Seller, it being the intent of the parties that no liability of any kind or character shall ever attach to or be asserted against Seller or any employee, agent, officer, director or member of Seller for any reason or cause whatsoever, other than liability arising from Seller's fraud. Accordingly, except in the case of fraud, no law suit or cause of action shall ever be commenced, filed or prosecuted by Buyer against Seller or any employee, agent, officer, director or member of Seller, no judgment shall ever be taken, rendered or entered against any of them based upon the transactions contemplated in this Agreement. Buyer does hereby and shall defend, release, indemnify and hold harmless Seller from and against any and all claims, expenses, including reasonable attorney's fees, and liabilities arising under or in connection with the Property and the

3

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

Lease from and after the Closing Date, other than liability arising from Seller's fraud.

**6. Closing.** Closing shall be on or before **December 22, 2017** 5:00 p.m. M.S.T., or sooner at Seller's discretion (the "Closing Date"). Subject to tender or payment at Closing as required herein and compliance by the Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and sufficient statutory warranty deed to Buyer at Closing, conveying Seller's interest in the Property and the Lease free and clear of all liens and encumbrances, except liens and encumbrances of record. In addition, at Closing the parties shall execute the following documents:

     **6.1**    Final Settlement Statement

     **6.2**    Tenancy in Common Agreement

     **6.3**    Property Management Agreement

**7. Closing Costs.** It is agreed that the escrow fees and other customary closing costs shall be paid by the Seller.

**8. Proration of Certain Items.**

     **8.1**    Except as expressly set forth in this Agreement, each party shall bear its own costs (including attorneys' fees) in connection with its negotiation, due diligence investigation and conduct of the Purchase and Sale Transaction. Seller shall pay the cost of any prior survey initially delivered by Seller. Seller shall pay the cost of the Survey, the premium for the standard coverage portion of the Title Policy, but not the cost of any extended coverage and endorsements obtained by Buyer as part of the Title Policy, and the recording fees.

     **8.2**    All real property taxes and assessments accrued for the current year shall be prorated between the parties as of the Closing.

     **8.3**    All transfer, proceeds or other taxes (not including general state and federal income taxes of Seller, if any) imposed upon this transaction by any state or local entity shall be paid by Seller.

**9. Arbitration.** Any dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association, but need not be filed with that organization. Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in Ohio, before a single arbitrator. The parties will be entitled to conduct discovery in accordance with the Federal Rules of Civil Procedure as in effect when arbitration occurs, limited to document production and depositions and subject to further limitation by the arbitrator to secure just and efficient resolution of the dispute. If the amount in controversy exceeds $25,000, the arbitrator's decision will include a statement specifying in reasonable detail the basis for and computation of the award, if any. Judgment upon the award may be entered in any court having jurisdiction.

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

**10. Severability.** If any provision of this Agreement or any portion of any provision of this Agreement shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not alter the remaining portion of such provision, or any other provision hereof, as each provision of this Agreement shall be deemed severable from all other provisions hereof so long as removing the severed portion does not materially alter the overall intent of this Agreement.

**11. Time is of the Essence.** Time is of the essence hereof.

**12. Representation.** Buyer acknowledges that Seller has advised Buyer to seek competent legal advice and counsel from other professionals to evaluate the Property, Lease, tenant, due diligence items, and the terms and provisions of this Agreement. REAL ESTATE TRANSACTIONS ARE COMPLEX; THE SELLER DOES NOT REPRESENT YOU AND CANNOT GIVE YOU LEGAL ACCOUNTING OR REAL ESTATE ADVICE. PLEASE REVIEW ALL DUE DILIGENCE MATERIALS WITH ANY ATTORNEY OR ADVISOR OF YOUR OWN CHOOSING AT YOUR EXPENSE PRIOR TO EXECUTING THIS CONTRACT.

**13. Attorneys' Fees.** If there is any litigation between Seller and Buyer to enforce or interpret any provisions or rights under this Agreement, the unsuccessful party in such litigation, as determined by the court, shall pay to the successful party, as determined by the court, all costs and expenses, including but not limited to reasonable attorneys' fees, incurred by the successful party, such fees to be determined by the court sitting without a jury.

**14. Entire Agreement; Binding Effect.** This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and any prior agreements pertaining hereto, whether oral or written, have been merged and integrated to this Agreement and have been superseded by this Agreement. This Agreement shall be binding upon and shall inure to the benefit of the parties hereof and their respective successor, legatees, heirs, legal representatives and permitted assigns. No subsequent modifications of any of the terms of this Agreement shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**15. Counterparts and Facsimile Documents.** This Agreement may be signed in counterparts, and each counterpart bearing an original signature shall be considered one document with all others bearing original signatures. Also, facsimile transmission or other electronic transmission of any signed original document shall be the same as delivery of an original.

**16. Default.** If Buyer defaults in the performance of its obligations under this Agreement, Seller's sole and exclusive remedies shall be to (a) retain the earnest money as and for its liquidated damages if the earnest money has been received by Seller, or (b) to sue Buyer for the earnest money if Buyer has failed to make the required earnest money deposit as of the date of default. All parties agree that because of the impracticability and extreme difficulty of fixing and ascertaining actual damages that Seller would in such event sustain by reason of such default of Buyer, and the amount of earnest money is agreed to be equivalent to the damages that Seller would sustain for a breach by Buyer. Upon the occurrence of default by Buyer, the Seller's remedies hereunder shall be immediately exercisable without the requirement of further written authorization from or notice to Buyer. If Seller defaults in the performance of its obligations under this Agreement or otherwise breaches the provisions herein, the earnest money shall be immediately delivered to Buyer as Buyer's sole and exclusive remedy.

5

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

**17. Release of Information.** Buyer authorizes and instructs the title company to release any and all information pertaining to the Buyer's closing, as requested by Seller.

**18. Governing Law.** This Agreement will be subject to, and governed by the laws of the state of Ohio.

**19. Waiver.** The waiver by any party hereto of any right granted to it hereunder shall not be deemed to be a waiver of any other right granted hereunder, nor shall the same be deemed to be a waiver of a subsequent right obtained by reason of the continuation of any matter previously waived.

**20. Buyer Acknowledgements.** The Property may already be constructed or in some stage of development. Buyer approves and acknowledges that this transaction may involve a simultaneous closing. Simultaneous Closing is defined herein as the Seller acquiring the property and selling it to the Buyer all on the same day.

**21. Further Assurances.** Each party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as any other party may reasonably request, in order to carry out the intent and accomplish the purposes of this Agreement, including but not limited to signing any amendment to this Agreement if subsequent to the execution of this Agreement it is discovered that this Agreement must be modified to conform to Ohio real estate laws.

Signature page to follow

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

IN WITNESS WHEREOF, the parties have set their hands and seals effective the day and year first above written.

**SELLER:**    Rockwell Dublin, LLC a Utah limited liability company

By: _Christopher J. Ashby_

Name: _Christopher J. Ashby_

Title: _Manager_

**BUYER:**    Carl A. Lillmars Jr. & Donna M. Lillmars

By: _Carl A. Lillmars Jr._

Name: Carl A. Lillmars Jr.

By: _Donna M. Lillmars_

Name: Donna M. Lillmars

7

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

## EXHIBIT A
### Property Description

Situated in the City of Dublin, County of Franklin, State of Ohio, described as follows:

Situated in the State of Ohio, County of Franklin, City of Dublin, being all that remains of that original 4.868 acre tract as described in a deed to Hearthstone Management Company, of record in Official Record Volume 14789, Page C02, all references herein being to the records of the Recorder's Office, Franklin County, Ohio, and being more particularly described as follows:

Beginning for reference at Franklin County Geodetic Survey Monument No. 7752 at the centerline intersection of Eiterman Road and Shier Rings Road; thence North 04°17'52" West, along the centerline of Eiterman Road, a distance of 484.32 feet to a PK nail found at the southwesterly corner of that 5.002 acre tract as described in a deed to Eiterman/Post Limited Liability Company, of record in Instrument No. 199802230039207; thence North 73°39'53" East, along the southerly line of said 5.002 acre tract, a distance of 35.78 feet to an iron pin set in the easterly right-of way line of Eiterman Road established by deed of record in Instrument No. 200106220140840, said iron pin being at the True Place of Beginning;

Thence North 73°39'43" East, continuing along said southerly line, a distance of 376.70 feet to an iron pin found (capped "PK Moore #5883) at the northwesterly corner of that 5.117 acre tract as described in a deed to Fellowship Baptist Church of Dublin, of record in Official Record Volume 18349, Page B18;

Thence South 04°18'14" East, along the westerly line of said 5.117 acre tract, a distance of 535.32 feet to an iron pin set in the northerly right-of-way line of Shier Rings Road, 35.00 feet north of centerline;

Thence South 85°41'57" West, along said right-of-way line, a distance of 333.47 feet to an iron pin set at an angle point;

Thence North 49°17'57" West, continuing along said right-of-way line, a distance of 49.50 feet to a 5/8" rebar found (no cap) in the easterly right-of-way line of Eiterman Road, 35.00 feet east of centerline;

Thence North 04°17'52" West, along said right-of-way line, a distance of 421.77 feet to the True Place of Beginning and containing 4.182 acres of land.

Bearings herein are based on the Ohio State Plane Coordinate System, South Zone, North 04°17'52" West for Eiterman Road.

Iron pins set consist of a 1" (O.D.) pipe, 30" long with a plastic cap inscribed "M-E COMPANIES/S-6872".

8

DocuSign Envelope ID: 834658D9-9740-4933-9A08-4DCC964E6C03

**EXHIBIT B**
**Description of Lease**

LEASE GUARANTOR Noah Corporation
LEASE TERM 20-year initial term
RENT INCREASES 2% annual escalations
RENEWAL OPTIONS Two 10-year options

# EXHIBIT 2

D001-0000042_0648

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

## PURCHASE AND SALE AGREEMENT
### [Construction TIC Transaction]

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into as of the 5th day of **December, 2017**, by and between Rockwell Dublin, LLC a Utah limited liability company (hereinafter referred to as "Seller"), and EC9 Holdings, LLC, (hereinafter referred to as "Buyer").

> *Buyer understands and acknowledges that any sales professionals involved in this transaction do not have authority to make representations on behalf of or to bind Seller. Buyer further acknowledges that Buyer is not entering into this Agreement in reliance on any representations made by any sales professionals, and that Buyer has had sufficient opportunity to investigate, to Buyer's satisfaction, the nature, character and quality of the Property (as such term is defined below).*

Buyer's Initials: [GW] [MS]

**1. Purchase and Sale.** The Seller is the owner and/or holder of a an undivided **2.99** percent interest (the "Property Interest") in the real property described herein below, together with the improvements to be and/or being constructed thereon, which real property is commonly known as the **Noah's** located at **6760 Shier Rings Road** in the City of **Dublin**, State of **Ohio** ("Property") **43016**, which is more particularly described on Exhibit A attached hereto and incorporated herein by this reference. The Property is subject to the lease agreement, which is more particularly described on Exhibit B attached hereto and incorporated herein by this reference the 'Description of Lease'. The Seller agrees to sell to the Buyer, and the Buyer agrees to purchase from the Seller, the Property Interest upon the terms and conditions set forth in this Agreement. In addition, Seller shall assign an undivided **2.99** percent interest in Seller's rights and interest in and to the Lease to Buyer (the "Lease Interest"), and Buyer hereby agrees to fully assume all of Seller's obligations associated with the Lease Interest at Closing, subject to the terms and conditions set forth in this Agreement.

**2. Purchase Price.** The purchase price shall be (**$177,265.16**), payable as follows:

    **2.1**    (**$ N/A** ) as non-refundable earnest money, to be wired within 48 hours from the execution of this Agreement, to Seller or a title company of Seller's choosing. Buyer understands and acknowledges that this earnest money obligation is effective upon the mutual execution of this Agreement, and failure to make the required earnest money deposit shall constitute an event of default pursuant to the terms and conditions set forth herein.

    **2.2**    The balance of the purchase price shall be wired, or otherwise transferred, to First American Title Company within twenty-four hours of closing.

1

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

**3. 1031 Exchange.** This Section shall only apply in the event the Buyer desires to have all or a portion of the transactions contemplated by this Agreement qualify for nonrecognition treatment under Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code" with the transaction being referred to herein as a "1031 Exchange"). For purposes of this Agreement, any portion of the Purchase Price that is to be paid with funds Buyer desires to qualify as a 1031 Exchange shall be referred to as "1031 Funds."

**3.1** The Seller agrees to reasonably cooperate in a 1031 Exchange transaction, which will provide that all or a portion of the purchase price for the Property will be paid with funds that Buyer desires to qualify for nonrecognition treatment (the "1031 Funds") by **Eastern 1031 Starker Exchange** (the "Accommodator" which term shall include all requirements pursuant to the regulations under Section 1031 of the Code and guidance issued by the Internal Revenue Service relating to "qualified exchange accommodation arrangements" and "exchange accommodation titleholders"); provided, that the Seller shall (1) have a reasonable time to review any documents to be signed, (2) not incur any costs associated therewith (the Buyer will pay any costs that are incurred by Seller) and (3) not waive or relinquish any rights under the Agreement. Buyer hereby indemnifies and holds the Seller free and harmless from any liability (including, but not limited to the tax ramifications to the Buyer of such tax-free exchange) arising by reason of performing the acts required hereby to effectuate such 1031 Exchange, except insofar as such liability is attributable to the failure of Seller to perform as required hereunder.

**3.2** Buyer hereby acknowledges and agrees that Accommodator shall periodically transfer the 1031 Funds to First American Title Company, in one or more installments, which funds shall be applied toward either (i) the purchase of an undivided interest in the Property or (ii) the construction of the improvements on the Property on a reimbursement basis (i.e., the 1031 Funds will be used to reimburse Seller for costs it has incurred in constructing the improvements on the Property). Seller shall periodically provide statements to First American Title Company detailing the construction costs that Seller has incurred and seeking reimbursement of such costs via transfer(s) of 1031 Funds.

**3.3** Seller shall pay to Accommodator interest on the 1031 Funds at a simple annual rate of **7.00** percent. Such interest shall begin to accrue on the date the 1031 Funds are transferred to Accommodator and shall continue to accrue until Closing. All interest payments shall be made by Seller to Accommodator, which Buyer agrees shall, for purposes of its agreement with Accommodator, be treated as additional interest on the 1031 Funds.

**3.4** Closing shall occur once all of the 1031 Funds have been transferred by the Accommodator to First American Title Company pursuant to Section 3.2; provided, however, that in the event all of the 1031 Funds have not been transferred by the date that is 180 days after Buyer relinquished the property to be part of the 1031 Exchange (the "1031 Deadline"), all remaining funds shall be transferred and Closing shall occur no later than the 1031 Deadline.

**3.5** Buyer hereby assigns to Accommodator all of its rights under this Agreement and hereby instructs Accommodator to transfer 1031 Funds to First American Title Company as described in Section 3.2 above.

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

*The Buyer acknowledges that it has been advised to obtain independent tax and legal advice regarding the transaction described herein and acknowledges and agrees that it has not relied upon any advice, statements or representations made by the Seller or any of the Seller's agents, employees, members, consultants, or attorneys. The Buyer acknowledges the unique risks associated with a construction 1031 Exchange, including but not limited to the risks of delays in construction that may result in all or a portion of the improvements not being completed prior to the 1031 Deadline. The Buyer acknowledges and agrees that the Buyer assumes full responsibility for ensuring that its relationship with Accommodator satisfies the requirements for a 1031 Exchange and that it will consult tax and legal professionals regarding the 1031 Exchange and hereby waives any and all claims against the Seller, the Seller's agents, employees, members, consultants, or attorneys related to the 1031 Exchange.*

Buyer's Initials: ⸢GW⸣ ⸢MS⸣

**3.6** Notwithstanding anything to the contrary set forth in this Section, the Closing is not contingent or conditioned upon the Buyer being able to successfully complete a 1031 Exchange and the Closing Date shall not be extended to accommodate a 1031 Exchange.

**4. Title Insurance.** At Settlement, Seller agrees to pay for an endorsement to the standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price. In addition, any supplementary title insurance coverage shall be at Buyer's expense.

**5. "As Is" Condition.** Buyer acknowledges that it is buying Seller's interest in the Property, together with the improvements to be and/or being constructed thereon, "as is" and the physical condition of the Property, together with the improvements to be and/or being constructed thereon, is deemed to be satisfactory to the Buyer. Buyer is not relying and will not rely upon any representations and warranties of Seller or anyone acting or claiming to act by, through, or under Seller, or on Seller's behalf concerning the Property, including the improvements to be and/or being constructed thereon, the Lease, or any documents, studies, plans and/or any other materials delivered to Buyer by Seller. Buyer shall purchase the Seller's interest in the Property and the Lease without recourse to the Seller or any employee, agent, officer, director, member or trustee of Seller, it being the intent of the parties that no liability of any kind or character shall ever attach to or be asserted against Seller or any employee, agent, officer, director or member of Seller for any reason or cause whatsoever, other than liability arising from Seller's fraud. Accordingly, except in the case of fraud, no law suit or cause of action shall ever be commenced, filed or prosecuted by Buyer against Seller or any employee, agent, officer, director or member of Seller, no judgment shall ever be taken, rendered or entered against any of them based upon the transactions contemplated in this Agreement. Buyer does hereby and shall defend, release, indemnify and hold harmless Seller from and against any and all claims, expenses, including reasonable attorney's fees, and liabilities arising under or in connection with the Property and the

3

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

Lease from and after the Closing Date, other than liability arising from Seller's fraud.

**6. Closing.** Closing shall be on or before **December 22, 2017** 5:00 p.m. M.S.T., or sooner at Seller's discretion (the "Closing Date"). Subject to tender or payment at Closing as required herein and compliance by the Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and sufficient statutory warranty deed to Buyer at Closing, conveying Seller's interest in the Property and the Lease free and clear of all liens and encumbrances, except liens and encumbrances of record. In addition, at Closing the parties shall execute the following documents:

    **6.1**    Final Settlement Statement

    **6.2**    Tenancy in Common Agreement

    **6.3**    Property Management Agreement

**7. Closing Costs.** It is agreed that the escrow fees and other customary closing costs shall be paid by the Seller.

**8. Proration of Certain Items.**

    **8.1**    Except as expressly set forth in this Agreement, each party shall bear its own costs (including attorneys' fees) in connection with its negotiation, due diligence investigation and conduct of the Purchase and Sale Transaction. Seller shall pay the cost of any prior survey initially delivered by Seller. Seller shall pay the cost of the Survey, the premium for the standard coverage portion of the Title Policy, but not the cost of any extended coverage and endorsements obtained by Buyer as part of the Title Policy, and the recording fees.

    **8.2**    All real property taxes and assessments accrued for the current year shall be prorated between the parties as of the Closing.

    **8.3**    All transfer, proceeds or other taxes (not including general state and federal income taxes of Seller, if any) imposed upon this transaction by any state or local entity shall be paid by Seller.

**9. Arbitration.** Any dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association, but need not be filed with that organization. Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in Ohio, before a single arbitrator. The parties will be entitled to conduct discovery in accordance with the Federal Rules of Civil Procedure as in effect when arbitration occurs, limited to document production and depositions and subject to further limitation by the arbitrator to secure just and efficient resolution of the dispute. If the amount in controversy exceeds $25,000, the arbitrator's decision will include a statement specifying in reasonable detail the basis for and computation of the award, if any. Judgment upon the award may be entered in any court having jurisdiction.

4

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

**10. Severability.** If any provision of this Agreement or any portion of any provision of this Agreement shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not alter the remaining portion of such provision, or any other provision hereof, as each provision of this Agreement shall be deemed severable from all other provisions hereof so long as removing the severed portion does not materially alter the overall intent of this Agreement.

**11. Time is of the Essence.** Time is of the essence hereof.

**12. Representation.** Buyer acknowledges that Seller has advised Buyer to seek competent legal advice and counsel from other professionals to evaluate the Property, Lease, tenant, due diligence items, and the terms and provisions of this Agreement. REAL ESTATE TRANSACTIONS ARE COMPLEX; THE SELLER DOES NOT REPRESENT YOU AND CANNOT GIVE YOU LEGAL ACCOUNTING OR REAL ESTATE ADVICE. PLEASE REVIEW ALL DUE DILIGENCE MATERIALS WITH ANY ATTORNEY OR ADVISOR OF YOUR OWN CHOOSING AT YOUR EXPENSE PRIOR TO EXECUTING THIS CONTRACT.

**13. Attorneys' Fees.** If there is any litigation between Seller and Buyer to enforce or interpret any provisions or rights under this Agreement, the unsuccessful party in such litigation, as determined by the court, shall pay to the successful party, as determined by the court, all costs and expenses, including but not limited to reasonable attorneys' fees, incurred by the successful party, such fees to be determined by the court sitting without a jury.

**14. Entire Agreement; Binding Effect.** This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and any prior agreements pertaining hereto, whether oral or written, have been merged and integrated to this Agreement and have been superseded by this Agreement. This Agreement shall be binding upon and shall inure to the benefit of the parties hereof and their respective successor, legatees, heirs, legal representatives and permitted assigns. No subsequent modifications of any of the terms of this Agreement shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**15. Counterparts and Facsimile Documents.** This Agreement may be signed in counterparts, and each counterpart bearing an original signature shall be considered one document with all others bearing original signatures. Also, facsimile transmission or other electronic transmission of any signed original document shall be the same as delivery of an original.

**16. Default.** If Buyer defaults in the performance of its obligations under this Agreement, Seller's sole and exclusive remedies shall be to (a) retain the earnest money as and for its liquidated damages if the earnest money has been received by Seller, or (b) to sue Buyer for the earnest money if Buyer has failed to make the required earnest money deposit as of the date of default. All parties agree that because of the impracticability and extreme difficulty of fixing and ascertaining actual damages that Seller would in such event sustain by reason of such default of Buyer, and the amount of earnest money is agreed to be equivalent to the damages that Seller would sustain for a breach by Buyer. Upon the occurrence of default by Buyer, the Seller's remedies hereunder shall be immediately exercisable without the requirement of further written authorization from or notice to Buyer. If Seller defaults in the performance of its obligations

5

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

under this Agreement or otherwise breaches the provisions herein, the earnest money shall be immediately delivered to Buyer as Buyer's sole and exclusive remedy.

**17. Release of Information.** Buyer authorizes and instructs the title company to release any and all information pertaining to the Buyer's closing, as requested by Seller.

**18. Governing Law.** This Agreement will be subject to, and governed by the laws of the state of Ohio.

**19. Waiver.** The waiver by any party hereto of any right granted to it hereunder shall not be deemed to be a waiver of any other right granted hereunder, nor shall the same be deemed to be a waiver of a subsequent right obtained by reason of the continuation of any matter previously waived.

**20. Buyer Acknowledgements.** The Property may already be constructed or in some stage of development. Buyer approves and acknowledges that this transaction may involve a simultaneous closing. Simultaneous Closing is defined herein as the Seller acquiring the property and selling it to the Buyer all on the same day.

**21. Further Assurances.** Each party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as any other party may reasonably request, in order to carry out the intent and accomplish the purposes of this Agreement, including but not limited to signing any amendment to this Agreement if subsequent to the execution of this Agreement it is discovered that this Agreement must be modified to conform to Ohio real estate laws.

Signature page to follow

6

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

IN WITNESS WHEREOF, the parties have set their hands and seals effective the day and year first above written.

**SELLER:**     Rockwell Dublin, LLC a Utah limited liability company

By: _Christopher J. Ashby_

Name: _Christopher J. Ashby_

Title: _Manager_

**BUYER:**     EC9 Holdings, LLC

By: _Grace Weis_

Name: Grace Weis

By: _Michael Strobel_

Name: Michael Strobel

7

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

## EXHIBIT A
## Property Description

Situated in the City of Dublin, County of Franklin, State of Ohio, described as follows:

Situated in the State of Ohio, County of Franklin, City of Dublin, being all that remains of that original 4.868 acre tract as described in a deed to Hearthstone Management Company, of record in Official Record Volume 14789, Page C02, all references herein being to the records of the Recorder's Office, Franklin County, Ohio, and being more particularly described as follows:

Beginning for reference at Franklin County Geodetic Survey Monument No. 7752 at the centerline intersection of Eiterman Road and Shier Rings Road; thence North 04°17'52" West, along the centerline of Eiterman Road, a distance of 484.32 feet to a PK nail found at the southwesterly corner of that 5.002 acre tract as described in a deed to Eiterman/Post Limited Liability Company, of record in Instrument No. 199802230039207; thence North 73°39'53" East, along the southerly line of said 5.002 acre tract, a distance of 35.78 feet to an iron pin set in the easterly right-of-way line of Eiterman Road established by deed of record in Instrument No. 200106220140840, said iron pin being at the True Place of Beginning;

Thence North 73°39'43" East, continuing along said southerly line, a distance of 376.70 feet to an iron pin found (capped "PK Moore #5883) at the northwesterly corner of that 5.117 acre tract as described in a deed to Fellowship Baptist Church of Dublin, of record in Official Record Volume 18349, Page B18;

Thence South 04°18'14" East, along the westerly line of said 5.117 acre tract, a distance of 535.32 feet to an iron pin set in the northerly right-of-way line of Shier Rings Road, 35.00 feet north of centerline;

Thence South 85°41'57" West, along said right-of-way line, a distance of 333.47 feet to an iron pin set at an angle point;

Thence North 49°17'57" West, continuing along said right-of-way line, a distance of 49.50 feet to a 5/8" rebar found (no cap) in the easterly right-of-way line of Eiterman Road, 35.00 feet east of centerline;

Thence North 04°17'52" West, along said right-of-way line, a distance of 421.77 feet to the True Place of Beginning and containing 4.182 acres of land.

Bearings herein are based on the Ohio State Plane Coordinate System, South Zone, North 04°17'52" West for Eiterman Road.

Iron pins set consist of a 1" (O.D.) pipe, 30" long with a plastic cap inscribed "M-E COMPANIES/S-6872".

8

DocuSign Envelope ID: 34697265-7DD4-4A7F-B3EB-D050A0FA5A7D

**EXHIBIT B**
**Description of Lease**

LEASE GUARANTOR Noah Corporation
LEASE TERM 20-year initial term
RENT INCREASES 2% annual escalations
RENEWAL OPTIONS Two 10-year options

9

# EXHIBIT 3

D001-0000042_0657

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

# PURCHASE AND SALE AGREEMENT
## [Construction TIC Transaction]

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into as of the 13th day of **October, 2017**, by and between Rockwell Dublin, LLC a Utah limited liability company (hereinafter referred to as "Seller"), and Thomas E. Funk as Trustee of the Stephen W. Funk T/U/A dated March 18, 2005 F/B/O Thomas E. Funk, (hereinafter referred to as "Buyer").

> *Buyer understands and acknowledges that any sales professionals involved in this transaction do not have authority to make representations on behalf of or to bind Seller. Buyer further acknowledges that Buyer is not entering into this Agreement in reliance on any representations made by any sales professionals, and that Buyer has had sufficient opportunity to investigate, to Buyer's satisfaction, the nature, character and quality of the Property (as such term is defined below).*

Buyer's Initials: ⌈ TEF ⌉

**1. Purchase and Sale.** The Seller is the owner and/or holder of a an undivided **2.53** percent interest (the "Property Interest") in the real property described herein below, together with the improvements to be and/or being constructed thereon, which real property is commonly known as the **Noah's** located at **6760 Shier Rings Road** in the City of **Dublin**, State of **Ohio** ("Property") **43016**, which is more particularly described on Exhibit A attached hereto and incorporated herein by this reference. The Property is subject to the lease agreement, which is more particularly described on Exhibit B attached hereto and incorporated herein by this reference the 'Description of Lease'. The Seller agrees to sell to the Buyer, and the Buyer agrees to purchase from the Seller, the Property Interest upon the terms and conditions set forth in this Agreement. In addition, Seller shall assign an undivided **2.53** percent interest in Seller's rights and interest in and to the Lease to Buyer (the "Lease Interest"), and Buyer hereby agrees to fully assume all of Seller's obligations associated with the Lease Interest at Closing, subject to the terms and conditions set forth in this Agreement.

**2. Purchase Price.** The purchase price shall be (**$150,000.00**), payable as follows:

**2.1** ($__N/A__) as non-refundable earnest money, to be wired within 48 hours from the execution of this Agreement, to Seller or a title company of Seller's choosing. Buyer understands and acknowledges that this earnest money obligation is effective upon the mutual execution of this Agreement, and failure to make the required earnest money deposit shall constitute an event of default pursuant to the terms and conditions set forth herein.

**2.2** The balance of the purchase price shall be wired, or otherwise transferred, to First American Title Company within twenty-four hours of closing.

1

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

**3. 1031 Exchange.** This Section shall only apply in the event the Buyer desires to have all or a portion of the transactions contemplated by this Agreement qualify for nonrecognition treatment under Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code" with the transaction being referred to herein as a "1031 Exchange"). For purposes of this Agreement, any portion of the Purchase Price that is to be paid with funds Buyer desires to qualify as a 1031 Exchange shall be referred to as "1031 Funds."

**3.1**    The Seller agrees to reasonably cooperate in a 1031 Exchange transaction, which will provide that all or a portion of the purchase price for the Property will be paid with funds that Buyer desires to qualify for nonrecognition treatment (the "1031 Funds") by __N/A__ (the "Accommodator" which term shall include all requirements pursuant to the regulations under Section 1031 of the Code and guidance issued by the Internal Revenue Service relating to "qualified exchange accommodation arrangements" and "exchange accommodation titleholders"); provided, that the Seller shall (1) have a reasonable time to review any documents to be signed, (2) not incur any costs associated therewith (the Buyer will pay any costs that are incurred by Seller) and (3) not waive or relinquish any rights under the Agreement. Buyer hereby indemnifies and holds the Seller free and harmless from any liability (including, but not limited to the tax ramifications to the Buyer of such tax-free exchange) arising by reason of performing the acts required hereby to effectuate such 1031 Exchange, except insofar as such liability is attributable to the failure of Seller to perform as required hereunder.

**3.2**    Buyer hereby acknowledges and agrees that Accommodator shall periodically transfer the 1031 Funds to First American Title Company, in one or more installments, which funds shall be applied toward either (i) the purchase of an undivided interest in the Property or (ii) the construction of the improvements on the Property on a reimbursement basis (i.e., the 1031 Funds will be used to reimburse Seller for costs it has incurred in constructing the improvements on the Property). Seller shall periodically provide statements to First American Title Company detailing the construction costs that Seller has incurred and seeking reimbursement of such costs via transfer(s) of 1031 Funds.

**3.3**    Seller shall pay to Accommodator interest on the 1031 Funds at a simple annual rate of **7.00** percent. Such interest shall begin to accrue on the date the 1031 Funds are transferred to Accommodator and shall continue to accrue until Closing. All interest payments shall be made by Seller to Accommodator, which Buyer agrees shall, for purposes of its agreement with Accommodator, be treated as additional interest on the 1031 Funds.

**3.4**    Closing shall occur once all of the 1031 Funds have been transferred by the Accommodator to First American Title Company pursuant to Section 3.2; provided, however, that in the event all of the 1031 Funds have not been transferred by the date that is 180 days after Buyer relinquished the property to be part of the 1031 Exchange (the "1031 Deadline"), all remaining funds shall be transferred and Closing shall occur no later than the 1031 Deadline.

**3.5**    Buyer hereby assigns to Accommodator all of its rights under this Agreement and hereby instructs Accommodator to transfer 1031 Funds to First American Title Company as described in Section 3.2 above.

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

*The Buyer acknowledges that it has been advised to obtain independent tax and legal advice regarding the transaction described herein and acknowledges and agrees that it has not relied upon any advice, statements or representations made by the Seller or any of the Seller's agents, employees, members, consultants, or attorneys. The Buyer acknowledges the unique risks associated with a construction 1031 Exchange, including but not limited to the risks of delays in construction that may result in all or a portion of the improvements not being completed prior to the 1031 Deadline. The Buyer acknowledges and agrees that the Buyer assumes full responsibility for ensuring that its relationship with Accommodator satisfies the requirements for a 1031 Exchange and that it will consult tax and legal professionals regarding the 1031 Exchange and hereby waives any and all claims against the Seller, the Seller's agents, employees, members, consultants, or attorneys related to the 1031 Exchange.*

Buyer's Initials: _TEF_____

**3.6**      Notwithstanding anything to the contrary set forth in this Section, the Closing is not contingent or conditioned upon the Buyer being able to successfully complete a 1031 Exchange and the Closing Date shall not be extended to accommodate a 1031 Exchange.

**4. Title Insurance.** At Settlement, Seller agrees to pay for an endorsement to the standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price. In addition, any supplementary title insurance coverage shall be at Buyer's expense.

**5. "As Is" Condition.** Buyer acknowledges that it is buying Seller's interest in the Property, together with the improvements to be and/or being constructed thereon, "as is" and the physical condition of the Property, together with the improvements to be and/or being constructed thereon, is deemed to be satisfactory to the Buyer. Buyer is not relying and will not rely upon any representations and warranties of Seller or anyone acting or claiming to act by, through, or under Seller, or on Seller's behalf concerning the Property, including the improvements to be and/or being constructed thereon, the Lease, or any documents, studies, plans and/or any other materials delivered to Buyer by Seller. Buyer shall purchase the Seller's interest in the Property and the Lease without recourse to the Seller or any employee, agent, officer, director, member or trustee of Seller, it being the intent of the parties that no liability of any kind or character shall ever attach to or be asserted against Seller or any employee, agent, officer, director or member of Seller for any reason or cause whatsoever, other than liability arising from Seller's fraud. Accordingly, except in the case of fraud, no law suit or cause of action shall ever be commenced, filed or prosecuted by Buyer against Seller or any employee, agent, officer, director or member of Seller, no judgment shall ever be taken, rendered or entered against any of them based upon the transactions contemplated in this Agreement. Buyer does hereby and shall defend, release, indemnify and hold harmless Seller from and against any and all claims, expenses, including reasonable attorney's fees, and liabilities arising under or in connection with the Property and the

3

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

Lease from and after the Closing Date, other than liability arising from Seller's fraud.

**6. Closing.** Closing shall be on or before **October 18, 2017** 5:00 p.m. M.S.T., or sooner at Seller's discretion (the "Closing Date"). Subject to tender or payment at Closing as required herein and compliance by the Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and sufficient statutory warranty deed to Buyer at Closing, conveying Seller's interest in the Property and the Lease free and clear of all liens and encumbrances, except liens and encumbrances of record. In addition, at Closing the parties shall execute the following documents:

    **6.1**    Final Settlement Statement

    **6.2**    Tenancy in Common Agreement

    **6.3**    Property Management Agreement

**7. Closing Costs.** It is agreed that the escrow fees and other customary closing costs shall be paid by the Seller.

**8. Proration of Certain Items.**

    **8.1**    Except as expressly set forth in this Agreement, each party shall bear its own costs (including attorneys' fees) in connection with its negotiation, due diligence investigation and conduct of the Purchase and Sale Transaction. Seller shall pay the cost of any prior survey initially delivered by Seller. Seller shall pay the cost of the Survey, the premium for the standard coverage portion of the Title Policy, but not the cost of any extended coverage and endorsements obtained by Buyer as part of the Title Policy, and the recording fees.

    **8.2**    All real property taxes and assessments accrued for the current year shall be prorated between the parties as of the Closing.

    **8.3**    All transfer, proceeds or other taxes (not including general state and federal income taxes of Seller, if any) imposed upon this transaction by any state or local entity shall be paid by Seller.

**9. Arbitration.** Any dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association, but need not be filed with that organization. Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in Ohio, before a single arbitrator. The parties will be entitled to conduct discovery in accordance with the Federal Rules of Civil Procedure as in effect when arbitration occurs, limited to document production and depositions and subject to further limitation by the arbitrator to secure just and efficient resolution of the dispute. If the amount in controversy exceeds $25,000, the arbitrator's decision will include a statement specifying in reasonable detail the basis for and computation of the award, if any. Judgment upon the award may be entered in any court having jurisdiction.

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

**10. Severability.** If any provision of this Agreement or any portion of any provision of this Agreement shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not alter the remaining portion of such provision, or any other provision hereof, as each provision of this Agreement shall be deemed severable from all other provisions hereof so long as removing the severed portion does not materially alter the overall intent of this Agreement.

**11. Time is of the Essence.** Time is of the essence hereof.

**12. Representation.** Buyer acknowledges that Seller has advised Buyer to seek competent legal advice and counsel from other professionals to evaluate the Property, Lease, tenant, due diligence items, and the terms and provisions of this Agreement. REAL ESTATE TRANSACTIONS ARE COMPLEX; THE SELLER DOES NOT REPRESENT YOU AND CANNOT GIVE YOU LEGAL ACCOUNTING OR REAL ESTATE ADVICE. PLEASE REVIEW ALL DUE DILIGENCE MATERIALS WITH ANY ATTORNEY OR ADVISOR OF YOUR OWN CHOOSING AT YOUR EXPENSE PRIOR TO EXECUTING THIS CONTRACT.

**13. Attorneys' Fees.** If there is any litigation between Seller and Buyer to enforce or interpret any provisions or rights under this Agreement, the unsuccessful party in such litigation, as determined by the court, shall pay to the successful party, as determined by the court, all costs and expenses, including but not limited to reasonable attorneys' fees, incurred by the successful party, such fees to be determined by the court sitting without a jury.

**14. Entire Agreement; Binding Effect.** This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and any prior agreements pertaining hereto, whether oral or written, have been merged and integrated to this Agreement and have been superseded by this Agreement. This Agreement shall be binding upon and shall inure to the benefit of the parties hereof and their respective successor, legatees, heirs, legal representatives and permitted assigns. No subsequent modifications of any of the terms of this Agreement shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**15. Counterparts and Facsimile Documents.** This Agreement may be signed in counterparts, and each counterpart bearing an original signature shall be considered one document with all others bearing original signatures. Also, facsimile transmission or other electronic transmission of any signed original document shall be the same as delivery of an original.

**16. Default.** If Buyer defaults in the performance of its obligations under this Agreement, Seller's sole and exclusive remedies shall be to (a) retain the earnest money as and for its liquidated damages if the earnest money has been received by Seller, or (b) to sue Buyer for the earnest money if Buyer has failed to make the required earnest money deposit as of the date of default. All parties agree that because of the impracticability and extreme difficulty of fixing and ascertaining actual damages that Seller would in such event sustain by reason of such default of Buyer, and the amount of earnest money is agreed to be equivalent to the damages that Seller would sustain for a breach by Buyer. Upon the occurrence of default by Buyer, the Seller's remedies hereunder shall be immediately exercisable without the requirement of further written authorization from or notice to Buyer. If Seller defaults in the performance of its obligations

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

under this Agreement or otherwise breaches the provisions herein, the earnest money shall be immediately delivered to Buyer as Buyer's sole and exclusive remedy.

**17. Release of Information.** Buyer authorizes and instructs the title company to release any and all information pertaining to the Buyer's closing, as requested by Seller.

**18. Governing Law.** This Agreement will be subject to, and governed by the laws of the state of Ohio.

**19. Waiver.** The waiver by any party hereto of any right granted to it hereunder shall not be deemed to be a waiver of any other right granted hereunder, nor shall the same be deemed to be a waiver of a subsequent right obtained by reason of the continuation of any matter previously waived.

**20. Buyer Acknowledgements.** The Property may already be constructed or in some stage of development. Buyer approves and acknowledges that this transaction may involve a simultaneous closing. Simultaneous Closing is defined herein as the Seller acquiring the property and selling it to the Buyer all on the same day.

**21. Further Assurances.** Each party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as any other party may reasonably request, in order to carry out the intent and accomplish the purposes of this Agreement, including but not limited to signing any amendment to this Agreement if subsequent to the execution of this Agreement it is discovered that this Agreement must be modified to conform to Ohio real estate laws.

Signature page to follow

6

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

IN WITNESS WHEREOF, the parties have set their hands and seals effective the day and year first above written.

**SELLER:**     Rockwell Dublin, LLC a Utah limited liability company

By: _Christopher J. Ashby_

Name: _Christopher J. Ashby_

Title: _____ Manager _____


**BUYER:**     Thomas E. Funk as Trustee of the Stephen W. Funk T/U/A dated March 18, 2005 F/B/O Thomas E. Funk

By: _Thomas E. Funk_

Name: Thomas E. Funk

By: _____

Name: _____

7

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

## EXHIBIT A
## Property Description

Situated in the City of Dublin, County of Franklin, State of Ohio, described as follows:

Situated in the State of Ohio, County of Franklin, City of Dublin, being all that remains of that original 4.868 acre tract as described in a deed to Hearthstone Management Company, of record in Official Record Volume 14789, Page C02, all references herein being to the records of the Recorder's Office, Franklin County, Ohio, and being more particularly described as follows:

Beginning for reference at Franklin County Geodetic Survey Monument No. 7752 at the centerline intersection of Eiterman Road and Shier Rings Road; thence North 04°17'52" West, along the centerline of Eiterman Road, a distance of 484.32 feet to a PK nail found at the southwesterly corner of that 5.002 acre tract as described in a deed to Eiterman/Post Limited Liability Company, of record in Instrument No. 199802230039207; thence North 73°39'53" East, along the southerly line of said 5.002 acre tract, a distance of 35.78 feet to an iron pin set in the easterly right-of way line of Eiterman Road established by deed of record in Instrument No. 200106220140840, said iron pin being at the True Place of Beginning;

Thence North 73°39'43" East, continuing along said southerly line, a distance of 376.70 feet to an iron pin found (capped "PK Moore #5883) at the northwesterly corner of that 5.117 acre tract as described in a deed to Fellowship Baptist Church of Dublin, of record in Official Record Volume 18349, Page B18;

Thence South 04°18'14" East, along the westerly line of said 5.117 acre tract, a distance of 535.32 feet to an iron pin set in the northerly right-of-way line of Shier Rings Road, 35.00 feet north of centerline;

Thence South 85°41'57" West, along said right-of-way line, a distance of 333.47 feet to an iron pin set at an angle point;

Thence North 49°17'57" West, continuing along said right-of-way line, a distance of 49.50 feet to a 5/8" rebar found (no cap) in the easterly right-of-way line of Eiterman Road, 35.00 feet east of centerline;

Thence North 04°17'52" West, along said right-of-way line, a distance of 421.77 feet to the True Place of Beginning and containing 4.182 acres of land.

Bearings herein are based on the Ohio State Plane Coordinate System, South Zone, North 04°17'52" West for Eiterman Road.

Iron pins set consist of a 1" (O.D.) pipe, 30" long with a plastic cap inscribed "M-E COMPANIES/S-6872".

8

DocuSign Envelope ID: 9D735D09-4FF7-443C-86CE-A3C158A61692

**EXHIBIT B**
**Description of Lease**

LEASE GUARANTOR Noah Corporation
LEASE TERM 20-year initial term
RENT INCREASES 2% annual escalations
RENEWAL OPTIONS Two 10-year options

# EXHIBIT 4

D001-0000042_0666

## PURCHASE AND SALE AGREEMENT
[Construction TIC Transaction]

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into as of the 30th day of **October, 2017**, by and between Rockwell Dublin, LLC a Utah limited liability company (hereinafter referred to as "Seller"), and The Hendrix Family Living Trust U/A, dated March 15, 2017, Terry G. Hendrix & Judith A. Hendrix, trustees, (hereinafter referred to as "Buyer").

*Buyer understands and acknowledges that any sales professionals involved in this transaction do not have authority to make representations on behalf of or to bind Seller. Buyer further acknowledges that Buyer is not entering into this Agreement in reliance on any representations made by any sales professionals, and that Buyer has had sufficient opportunity to investigate, to Buyer's satisfaction, the nature, character and quality of the Property (as such term is defined below).*

Buyer's Initials:

**1. Purchase and Sale.** The Seller is the owner and/or holder of a an undivided **1.69** percent interest (the "Property Interest") in the real property described herein below, together with the improvements to be and/or being constructed thereon, which real property is commonly known as the **Noah's** located at **6760 Shier Rings Road** in the City of **Dublin**, State of Ohio ("Property") **43016**, which is more particularly described on Exhibit A attached hereto and incorporated herein by this reference. The Property is subject to the lease agreement, which is more particularly described on Exhibit B attached hereto and incorporated herein by this reference the 'Description of Lease'. The Seller agrees to sell to the Buyer, and the Buyer agrees to purchase from the Seller, the Property Interest upon the terms and conditions set forth in this Agreement. In addition, Seller shall assign an undivided **1.69** percent interest in Seller's rights and interest in and to the Lease to Buyer (the "Lease Interest"), and Buyer hereby agrees to fully assume all of Seller's obligations associated with the Lease Interest at Closing, subject to the terms and conditions set forth in this Agreement.

**2. Purchase Price.** The purchase price shall be (**$100,000.00**), payable as follows:

2.1    (**$__N/A__**) as non-refundable earnest money, to be wired within 48 hours from the execution of this Agreement, to Seller or a title company of Seller's choosing. Buyer understands and acknowledges that this earnest money obligation is effective upon the mutual execution of this Agreement, and failure to make the required earnest money deposit shall constitute an event of default pursuant to the terms and conditions set forth herein.

2.2    The balance of the purchase price shall be wired, or otherwise transferred, to First American Title Company within twenty-four hours of closing.

1

17607675976          chamber                                          12:35:56    10-30-2017          5 /33 elson

**3. 1031 Exchange.** This Section shall only apply in the event the Buyer desires to have all or a portion of the transactions contemplated by this Agreement qualify for nonrecognition treatment under Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code" with the transaction being referred to herein as a "1031 Exchange"). For purposes of this Agreement, any portion of the Purchase Price that is to be paid with funds Buyer desires to qualify as a 1031 Exchange shall be referred to as "1031 Funds."

   **3.1**   The Seller agrees to reasonably cooperate in a 1031 Exchange transaction, which will provide that all or a portion of the purchase price for the Property will be paid with funds that Buyer desires to qualify for nonrecognition treatment (the "1031 Funds") by **Exeter 1031 Exchange Services LLC** (the "Accommodator" which term shall include all requirements pursuant to the regulations under Section 1031 of the Code and guidance issued by the Internal Revenue Service relating to "qualified exchange accommodation arrangements" and "exchange accommodation titleholders"); provided, that the Seller shall (1) have a reasonable time to review any documents to be signed, (2) not incur any costs associated therewith (the Buyer will pay any costs that are incurred by Seller) and (3) not waive or relinquish any rights under the Agreement. Buyer hereby indemnifies and holds the Seller free and harmless from any liability (including, but not limited to the tax ramifications to the Buyer of such tax-free exchange) arising by reason of performing the acts required hereby to effectuate such 1031 Exchange, except insofar as such liability is attributable to the failure of Seller to perform as required hereunder.

   **3.2**   Buyer hereby acknowledges and agrees that Accommodator shall periodically transfer the 1031 Funds to First American Title Company, in one or more installments, which funds shall be applied toward either (i) the purchase of an undivided interest in the Property or (ii) the construction of the improvements on the Property on a reimbursement basis (i.e., the 1031 Funds will be used to reimburse Seller for costs it has incurred in constructing the improvements on the Property). Seller shall periodically provide statements to First American Title Company detailing the construction costs that Seller has incurred and seeking reimbursement of such costs via transfer(s) of 1031 Funds.

   **3.3**   Seller shall pay to Accommodator interest on the 1031 Funds at a simple annual rate of **7.00** percent. Such interest shall begin to accrue on the date the 1031 Funds are transferred to Accommodator and shall continue to accrue until Closing. All interest payments shall be made by Seller to Accommodator, which Buyer agrees shall, for purposes of its agreement with Accommodator, be treated as additional interest on the 1031 Funds.

   **3.4**   Closing shall occur once all of the 1031 Funds have been transferred by the Accommodator to First American Title Company pursuant to Section 3.2; provided, however, that in the event all of the 1031 Funds have not been transferred by the date that is 180 days after Buyer relinquished the property to be part of the 1031 Exchange (the "1031 Deadline"), all remaining funds shall be transferred and Closing shall occur no later than the 1031 Deadline.

   **3.5**   Buyer hereby assigns to Accommodator all of its rights under this Agreement and hereby instructs Accommodator to transfer 1031 Funds to First American Title Company as described in Section 3.2 above.

2

*The Buyer acknowledges that it has been advised to obtain independent tax and legal advice regarding the transaction described herein and acknowledges and agrees that it has not relied upon any advice, statements or representations made by the Seller or any of the Seller's agents, employees, members, consultants, or attorneys. The Buyer acknowledges the unique risks associated with a construction 1031 Exchange, including but not limited to the risks of delays in construction that may result in all or a portion of the improvements not being completed prior to the 1031 Deadline. The Buyer acknowledges and agrees that the Buyer assumes full responsibility for ensuring that its relationship with Accommodator satisfies the requirements for a 1031 Exchange and that it will consult tax and legal professionals regarding the 1031 Exchange and hereby waives any and all claims against the Seller, the Seller's agents, employees, members, consultants, or attorneys related to the 1031 Exchange.*

Buyer's Initials:

3.6     Notwithstanding anything to the contrary set forth in this Section, the Closing is not contingent or conditioned upon the Buyer being able to successfully complete a 1031 Exchange and the Closing Date shall not be extended to accommodate a 1031 Exchange.

**4. Title Insurance.** At Settlement, Seller agrees to pay for an endorsement to the standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price. In addition, any supplementary title insurance coverage shall be at Buyer's expense.

**5. "As Is" Condition.** Buyer acknowledges that it is buying Seller's interest in the Property, together with the improvements to be and/or being constructed thereon, "as is" and the physical condition of the Property, together with the improvements to be and/or being constructed thereon, is deemed to be satisfactory to the Buyer. Buyer is not relying and will not rely upon any representations and warranties of Seller or anyone acting or claiming to act by, through, or under Seller, or on Seller's behalf concerning the Property, including the improvements to be and/or being constructed thereon, the Lease, or any documents, studies, plans and/or any other materials delivered to Buyer by Seller. Buyer shall purchase the Seller's interest in the Property and the Lease without recourse to the Seller or any employee, agent, officer, director, member or trustee of Seller, it being the intent of the parties that no liability of any kind or character shall ever attach to or be asserted against Seller or any employee, agent, officer, director or member of Seller for any reason or cause whatsoever, other than liability arising from Seller's fraud. Accordingly, except in the case of fraud, no law suit or cause of action shall ever be commenced, filed or prosecuted by Buyer against Seller or any employee, agent, officer, director or member of Seller, no judgment shall ever be taken, rendered or entered against any of them based upon the transactions contemplated in this Agreement. Buyer does hereby and shall defend, release, indemnify and hold harmless Seller from and against any and all claims, expenses, including reasonable attorney's fees, and liabilities arising under or in connection with the Property and the

3

Lease from and after the Closing Date, other than liability arising from Seller's fraud.

**6. Closing.** Closing shall be on or before **November 10, 2017** 5:00 p.m. M.S.T., or sooner at Seller's discretion (the "Closing Date"). Subject to tender or payment at Closing as required herein and compliance by the Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and sufficient statutory warranty deed to Buyer at Closing, conveying Seller's interest in the Property and the Lease free and clear of all liens and encumbrances, except liens and encumbrances of record. In addition, at Closing the parties shall execute the following documents:

> **6.1**    Final Settlement Statement
>
> **6.2**    Tenancy in Common Agreement
>
> **6.3**    Property Management Agreement

**7. Closing Costs.** It is agreed that the escrow fees and other customary closing costs shall be paid by the Seller.

**8. Proration of Certain Items.**

> **8.1**    Except as expressly set forth in this Agreement, each party shall bear its own costs (including attorneys' fees) in connection with its negotiation, due diligence investigation and conduct of the Purchase and Sale Transaction. Seller shall pay the cost of any prior survey initially delivered by Seller. Seller shall pay the cost of the Survey, the premium for the standard coverage portion of the Title Policy, but not the cost of any extended coverage and endorsements obtained by Buyer as part of the Title Policy, and the recording fees.
>
> **8.2**    All real property taxes and assessments accrued for the current year shall be prorated between the parties as of the Closing.
>
> **8.3**    All transfer, proceeds or other taxes (not including general state and federal income taxes of Seller, if any) imposed upon this transaction by any state or local entity shall be paid by Seller.

**9. Arbitration.** Any dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association, but need not be filed with that organization. Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in Ohio, before a single arbitrator. The parties will be entitled to conduct discovery in accordance with the Federal Rules of Civil Procedure as in effect when arbitration occurs, limited to document production and depositions and subject to further limitation by the arbitrator to secure just and efficient resolution of the dispute. If the amount in controversy exceeds $25,000, the arbitrator's decision will include a statement specifying in reasonable detail the basis for and computation of the award, if any. Judgment upon the award may be entered in any court having jurisdiction.

4

**10. Severability.** If any provision of this Agreement or any portion of any provision of this Agreement shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not alter the remaining portion of such provision, or any other provision hereof, as each provision of this Agreement shall be deemed severable from all other provisions hereof so long as removing the severed portion does not materially alter the overall intent of this Agreement.

**11. Time is of the Essence.** Time is of the essence hereof.

**12. Representation.** Buyer acknowledges that Seller has advised Buyer to seek competent legal advice and counsel from other professionals to evaluate the Property, Lease, tenant, due diligence items, and the terms and provisions of this Agreement. REAL ESTATE TRANSACTIONS ARE COMPLEX; THE SELLER DOES NOT REPRESENT YOU AND CANNOT GIVE YOU LEGAL ACCOUNTING OR REAL ESTATE ADVICE. PLEASE REVIEW ALL DUE DILIGENCE MATERIALS WITH ANY ATTORNEY OR ADVISOR OF YOUR OWN CHOOSING AT YOUR EXPENSE PRIOR TO EXECUTING THIS CONTRACT.

**13. Attorneys' Fees.** If there is any litigation between Seller and Buyer to enforce or interpret any provisions or rights under this Agreement, the unsuccessful party in such litigation, as determined by the court, shall pay to the successful party, as determined by the court, all costs and expenses, including but not limited to reasonable attorneys' fees, incurred by the successful party, such fees to be determined by the court sitting without a jury.

**14. Entire Agreement; Binding Effect.** This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and any prior agreements pertaining hereto, whether oral or written, have been merged and integrated to this Agreement and have been superseded by this Agreement. This Agreement shall be binding upon and shall inure to the benefit of the parties hereof and their respective successor, legatees, heirs, legal representatives and permitted assigns. No subsequent modifications of any of the terms of this Agreement shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**15. Counterparts and Facsimile Documents.** This Agreement may be signed in counterparts, and each counterpart bearing an original signature shall be considered one document with all others bearing original signatures. Also, facsimile transmission or other electronic transmission of any signed original document shall be the same as delivery of an original.

**16. Default.** If Buyer defaults in the performance of its obligations under this Agreement, Seller's sole and exclusive remedies shall be to (a) retain the earnest money as and for its liquidated damages if the earnest money has been received by Seller, or (b) to sue Buyer for the earnest money if Buyer has failed to make the required earnest money deposit as of the date of default. All parties agree that because of the impracticability and extreme difficulty of fixing and ascertaining actual damages that Seller would in such event sustain by reason of such default of Buyer, and the amount of earnest money is agreed to be equivalent to the damages that Seller would sustain for a breach by Buyer. Upon the occurrence of default by Buyer, the Seller's remedies hereunder shall be immediately exercisable without the requirement of further written authorization from or notice to Buyer. If Seller defaults in the performance of its obligations under this Agreement or otherwise breaches the provisions herein, the earnest money shall be immediately delivered to Buyer as Buyer's sole and exclusive remedy.

5

**17. Release of Information.** Buyer authorizes and instructs the title company to release any and all information pertaining to the Buyer's closing, as requested by Seller.

**18. Governing Law.** This Agreement will be subject to, and governed by the laws of the state of Ohio.

**19. Waiver.** The waiver by any party hereto of any right granted to it hereunder shall not be deemed to be a waiver of any other right granted hereunder, nor shall the same be deemed to be a waiver of a subsequent right obtained by reason of the continuation of any matter previously waived.

**20. Buyer Acknowledgements.** The Property may already be constructed or in some stage of development. Buyer approves and acknowledges that this transaction may involve a simultaneous closing. Simultaneous Closing is defined herein as the Seller acquiring the property and selling it to the Buyer all on the same day.

**21. Further Assurances.** Each party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as any other party may reasonably request, in order to carry out the intent and accomplish the purposes of this Agreement, including but not limited to signing any amendment to this Agreement if subsequent to the execution of this Agreement it is discovered that this Agreement must be modified to conform to Ohio real estate laws.

Signature page to follow

6

IN WITNESS WHEREOF, the parties have set their hands and seals effective the day and year first above written.

|  |  |
|---|---|
| **SELLER:** | Rockwell  Dublin  , LLC a Utah limited liability company |
|  | By: _____ |
|  | Name:  ___Christopher J. Ashby___ |
|  | Title:  _____Manager_____ |

|  |  |
|---|---|
| **BUYER:** | The Hendrix Family Living Trust U/A, dated March 15, 2017, Terry G. Hendrix & Judith A. Hendrix, trustees |
|  | By: _____ |
|  | Name: Terry G. Hendrix, Trustee |
|  | By: _____ |
|  | Name: Judith A. Hendrix, Trustee |

7

**EXHIBIT A**
**Property Description**

Situated in the City of Dublin, County of Franklin, State of Ohio, described as follows:

Situated in the State of Ohio, County of Franklin, City of Dublin, being all that remains of that original 4.868 acre tract as described in a deed to Hearthstone Management Company, of record in Official Record Volume 14789, Page C02, all references herein being to the records of the Recorder's Office, Franklin County, Ohio, and being more particularly described as follows:

Beginning for reference at Franklin County Geodetic Survey Monument No. 7752 at the centerline intersection of Eiterman Road and Shier Rings Road; thence North 04°17'52" West, along the centerline of Eiterman Road, a distance of 484.32 feet to a PK nail found at the southwesterly corner of that 5.002 acre tract as described in a deed to Eiterman/Post Limited Liability Company, of record in Instrument No. 199802230039207; thence North 73°39'53" East, along the southerly line of said 5.002 acre tract, a distance of 35.78 feet to an iron pin set in the easterly right-of way line of Eiterman Road established by deed of record in Instrument No. 200106220140840, said iron pin being at the True Place of Beginning;

Thence North 73°39'43" East, continuing along said southerly line, a distance of 376.70 feet to an iron pin found (capped "PK Moore #5883) at the northwesterly corner of that 5.117 acre tract as described in a deed to Fellowship Baptist Church of Dublin, of record in Official Record Volume 18349, Page B18;

Thence South 04°18'14" East, along the westerly line of said 5.117 acre tract, a distance of 535.32 feet to an iron pin set in the northerly right-of-way line of Shier Rings Road, 35.00 feet north of centerline;

Thence South 85°41'57" West, along said right-of-way line, a distance of 333.47 feet to an iron pin set at an angle point;

Thence North 49°17'57" West, continuing along said right-of-way line, a distance of 49.50 feet to a 5/8" rebar found (no cap) in the easterly right-of-way line of Eiterman Road, 35.00 feet east of centerline;

Thence North 04°17'52" West, along said right-of-way line, a distance of 421.77 feet to the True Place of Beginning and containing 4.182 acres of land.

Bearings herein are based on the Ohio State Plane Coordinate System, South Zone, North 04°17'52" West for Eiterman Road.

Iron pins set consist of a 1" (O.D.) pipe, 30" long with a plastic cap inscribed "M-E COMPANIES/S-6872".

**EXHIBIT B**
**Description of Lease**

LEASE GUARANTOR Noah Corporation
LEASE TERM 20-year initial term
RENT INCREASES 2% annual escalations
RENEWAL OPTIONS Two 10-year options

# EXHIBIT 5

D001-0000042_0675

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

## PURCHASE AND SALE AGREEMENT
[Construction TIC Transaction]

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into as of the 16th day of **February**, **2017**, by and between Rockwell Dublin, LLC a Utah limited liability company (hereinafter referred to as "Seller"), and HENRY NOAHS DUBLIN LLC, an Ohio limited liability company, (hereinafter referred to as "Buyer").

> *Buyer understands and acknowledges that any sales professionals involved in this transaction do not have authority to make representations on behalf of or to bind Seller. Buyer further acknowledges that Buyer is not entering into this Agreement in reliance on any representations made by any sales professionals, and that Buyer has had sufficient opportunity to investigate, to Buyer's satisfaction, the nature, character and quality of the Property (as such term is defined below).*

Buyer's Initials: 

**1. Purchase and Sale.** The Seller is the owner and/or holder of a an undivided **12.31** percent interest (the "Property Interest") in the real property described herein below, together with the improvements to be and/or being constructed thereon, which real property is commonly known as the **Noah's** located at **6760 Shier Rings Road** in the City of **Dublin**, State of **Ohio** ("Property") **43016**, which is more particularly described on Exhibit A attached hereto and incorporated herein by this reference. The Property is subject to the lease agreement, which is more particularly described on Exhibit B attached hereto and incorporated herein by this reference the 'Description of Lease'. The Seller agrees to sell to the Buyer, and the Buyer agrees to purchase from the Seller, the Property Interest upon the terms and conditions set forth in this Agreement. In addition, Seller shall assign an undivided **12.31** percent interest in Seller's rights and interest in and to the Lease to Buyer (the "Lease Interest"), and Buyer hereby agrees to fully assume all of Seller's obligations associated with the Lease Interest at Closing, subject to the terms and conditions set forth in this Agreement.

**2. Purchase Price.** The purchase price shall be (**$730,000.00**), payable as follows:

**2.1**    ($__N/A__) as non-refundable earnest money, to be wired within 48 hours from the execution of this Agreement, to Seller or a title company of Seller's choosing. Buyer understands and acknowledges that this earnest money obligation is effective upon the mutual execution of this Agreement, and failure to make the required earnest money deposit shall constitute an event of default pursuant to the terms and conditions set forth herein.

**2.2**    The balance of the purchase price shall be wired, or otherwise transferred, to First American Title Company within twenty-four hours of closing.

1

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

**3. 1031 Exchange.** This Section shall only apply in the event the Buyer desires to have all or a portion of the transactions contemplated by this Agreement qualify for nonrecognition treatment under Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code" with the transaction being referred to herein as a "1031 Exchange"). For purposes of this Agreement, any portion of the Purchase Price that is to be paid with funds Buyer desires to qualify as a 1031 Exchange shall be referred to as "1031 Funds."

**3.1**     The Seller agrees to reasonably cooperate in a 1031 Exchange transaction, which will provide that all or a portion of the purchase price for the Property will be paid with funds that Buyer desires to qualify for nonrecognition treatment (the "1031 Funds") by **City National Bank** (the "Accommodator" which term shall include all requirements pursuant to the regulations under Section 1031 of the Code and guidance issued by the Internal Revenue Service relating to "qualified exchange accommodation arrangements" and "exchange accommodation titleholders"); provided, that the Seller shall (1) have a reasonable time to review any documents to be signed, (2) not incur any costs associated therewith (the Buyer will pay any costs that are incurred by Seller) and (3) not waive or relinquish any rights under the Agreement. Buyer hereby indemnifies and holds the Seller free and harmless from any liability (including, but not limited to the tax ramifications to the Buyer of such tax-free exchange) arising by reason of performing the acts required hereby to effectuate such 1031 Exchange, except insofar as such liability is attributable to the failure of Seller to perform as required hereunder.

**3.2**     Buyer hereby acknowledges and agrees that Accommodator shall periodically transfer the 1031 Funds to First American Title Company, in one or more installments, which funds shall be applied toward either (i) the purchase of an undivided interest in the Property or (ii) the construction of the improvements on the Property on a reimbursement basis (i.e., the 1031 Funds will be used to reimburse Seller for costs it has incurred in constructing the improvements on the Property). Seller shall periodically provide statements to First American Title Company detailing the construction costs that Seller has incurred and seeking reimbursement of such costs via transfer(s) of 1031 Funds.

**3.3**     Seller shall pay to Accommodator interest on the 1031 Funds at a simple annual rate of **7.00** percent. Such interest shall begin to accrue on the date the 1031 Funds are transferred to Accommodator and shall continue to accrue until Closing. All interest payments shall be made by Seller to Accommodator, which Buyer agrees shall, for purposes of its agreement with Accommodator, be treated as additional interest on the 1031 Funds.

**3.4**     Closing shall occur once all of the 1031 Funds have been transferred by the Accommodator to First American Title Company pursuant to Section 3.2; provided, however, that in the event all of the 1031 Funds have not been transferred by the date that is 180 days after Buyer relinquished the property to be part of the 1031 Exchange (the "1031 Deadline"), all remaining funds shall be transferred and Closing shall occur no later than the 1031 Deadline.

**3.5**     Buyer hereby assigns to Accommodator all of its rights under this Agreement and hereby instructs Accommodator to transfer 1031 Funds to First American Title Company as described in Section 3.2 above.

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

*The Buyer acknowledges that it has been advised to obtain independent tax and legal advice regarding the transaction described herein and acknowledges and agrees that it has not relied upon any advice, statements or representations made by the Seller or any of the Seller's agents, employees, members, consultants, or attorneys. The Buyer acknowledges the unique risks associated with a construction 1031 Exchange, including but not limited to the risks of delays in construction that may result in all or a portion of the improvements not being completed prior to the 1031 Deadline. The Buyer acknowledges and agrees that the Buyer assumes full responsibility for ensuring that its relationship with Accommodator satisfies the requirements for a 1031 Exchange and that it will consult tax and legal professionals regarding the 1031 Exchange and hereby waives any and all claims against the Seller, the Seller's agents, employees, members, consultants, or attorneys related to the 1031 Exchange.*

Buyer's Initials: _____

**3.6**  Notwithstanding anything to the contrary set forth in this Section, the Closing is not contingent or conditioned upon the Buyer being able to successfully complete a 1031 Exchange and the Closing Date shall not be extended to accommodate a 1031 Exchange.

**4. Title Insurance.**  At Settlement, Seller agrees to pay for an endorsement to the standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price. In addition, any supplementary title insurance coverage shall be at Buyer's expense.

**5. "As Is" Condition.** Buyer acknowledges that it is buying Seller's interest in the Property, together with the improvements to be and/or being constructed thereon, "as is" and the physical condition of the Property, together with the improvements to be and/or being constructed thereon, is deemed to be satisfactory to the Buyer. Buyer is not relying and will not rely upon any representations and warranties of Seller or anyone acting or claiming to act by, through, or under Seller, or on Seller's behalf concerning the Property, including the improvements to be and/or being constructed thereon, the Lease, or any documents, studies, plans and/or any other materials delivered to Buyer by Seller. Buyer shall purchase the Seller's interest in the Property and the Lease without recourse to the Seller or any employee, agent, officer, director, member or trustee of Seller, it being the intent of the parties that no liability of any kind or character shall ever attach to or be asserted against Seller or any employee, agent, officer, director or member of Seller for any reason or cause whatsoever, other than liability arising from Seller's fraud. Accordingly, except in the case of fraud, no law suit or cause of action shall ever be commenced, filed or prosecuted by Buyer against Seller or any employee, agent, officer, director or member of Seller, no judgment shall ever be taken, rendered or entered against any of them based upon the transactions contemplated in this Agreement. Buyer does hereby and shall defend, release, indemnify and hold harmless Seller from and against any and all claims, expenses, including reasonable attorney's fees, and liabilities arising under or in connection with the Property and the

3

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

Lease from and after the Closing Date, other than liability arising from Seller's fraud.

**6. Closing.** Closing shall be on or before **March 2, 2018** 5:00 p.m. M.S.T., or sooner at Seller's discretion (the "Closing Date"). Subject to tender or payment at Closing as required herein and compliance by the Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and sufficient statutory warranty deed to Buyer at Closing, conveying Seller's interest in the Property and the Lease free and clear of all liens and encumbrances, except liens and encumbrances of record. In addition, at Closing the parties shall execute the following documents:

      **6.1**     Final Settlement Statement

      **6.2**     Tenancy in Common Agreement

      **6.3**     Property Management Agreement

**7. Closing Costs.** It is agreed that the escrow fees and other customary closing costs shall be paid by the Seller.

**8. Proration of Certain Items.**

      **8.1**     Except as expressly set forth in this Agreement, each party shall bear its own costs (including attorneys' fees) in connection with its negotiation, due diligence investigation and conduct of the Purchase and Sale Transaction. Seller shall pay the cost of any prior survey initially delivered by Seller. Seller shall pay the cost of the Survey, the premium for the standard coverage portion of the Title Policy, but not the cost of any extended coverage and endorsements obtained by Buyer as part of the Title Policy, and the recording fees.

      **8.2**     All real property taxes and assessments accrued for the current year shall be prorated between the parties as of the Closing.

      **8.3**     All transfer, proceeds or other taxes (not including general state and federal income taxes of Seller, if any) imposed upon this transaction by any state or local entity shall be paid by Seller.

**9. Arbitration.** Any dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association, but need not be filed with that organization. Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in Ohio, before a single arbitrator. The parties will be entitled to conduct discovery in accordance with the Federal Rules of Civil Procedure as in effect when arbitration occurs, limited to document production and depositions and subject to further limitation by the arbitrator to secure just and efficient resolution of the dispute. If the amount in controversy exceeds $25,000, the arbitrator's decision will include a statement specifying in reasonable detail the basis for and computation of the award, if any. Judgment upon the award may be entered in any court having jurisdiction.

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

**10. Severability.** If any provision of this Agreement or any portion of any provision of this Agreement shall be deemed to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not alter the remaining portion of such provision, or any other provision hereof, as each provision of this Agreement shall be deemed severable from all other provisions hereof so long as removing the severed portion does not materially alter the overall intent of this Agreement.

**11. Time is of the Essence.** Time is of the essence hereof.

**12. Representation.** Buyer acknowledges that Seller has advised Buyer to seek competent legal advice and counsel from other professionals to evaluate the Property, Lease, tenant, due diligence items, and the terms and provisions of this Agreement. REAL ESTATE TRANSACTIONS ARE COMPLEX; THE SELLER DOES NOT REPRESENT YOU AND CANNOT GIVE YOU LEGAL ACCOUNTING OR REAL ESTATE ADVICE. PLEASE REVIEW ALL DUE DILIGENCE MATERIALS WITH ANY ATTORNEY OR ADVISOR OF YOUR OWN CHOOSING AT YOUR EXPENSE PRIOR TO EXECUTING THIS CONTRACT.

**13. Attorneys' Fees.** If there is any litigation between Seller and Buyer to enforce or interpret any provisions or rights under this Agreement, the unsuccessful party in such litigation, as determined by the court, shall pay to the successful party, as determined by the court, all costs and expenses, including but not limited to reasonable attorneys' fees, incurred by the successful party, such fees to be determined by the court sitting without a jury.

**14. Entire Agreement; Binding Effect.** This Agreement constitutes the entire agreement between the parties relating to the subject matter hereof, and any prior agreements pertaining hereto, whether oral or written, have been merged and integrated to this Agreement and have been superseded by this Agreement. This Agreement shall be binding upon and shall inure to the benefit of the parties hereof and their respective successor, legatees, heirs, legal representatives and permitted assigns. No subsequent modifications of any of the terms of this Agreement shall be valid, binding upon the parties, or enforceable unless made in writing and signed by the parties.

**15. Counterparts and Facsimile Documents.** This Agreement may be signed in counterparts, and each counterpart bearing an original signature shall be considered one document with all others bearing original signatures. Also, facsimile transmission or other electronic transmission of any signed original document shall be the same as delivery of an original.

**16. Default.** If Buyer defaults in the performance of its obligations under this Agreement, Seller's sole and exclusive remedies shall be to (a) retain the earnest money as and for its liquidated damages if the earnest money has been received by Seller, or (b) to sue Buyer for the earnest money if Buyer has failed to make the required earnest money deposit as of the date of default. All parties agree that because of the impracticability and extreme difficulty of fixing and ascertaining actual damages that Seller would in such event sustain by reason of such default of Buyer, and the amount of earnest money is agreed to be equivalent to the damages that Seller would sustain for a breach by Buyer. Upon the occurrence of default by Buyer, the Seller's remedies hereunder shall be immediately exercisable without the requirement of further written authorization from or notice to Buyer. If Seller defaults in the performance of its obligations under this Agreement or otherwise breaches the provisions herein, the earnest money shall be immediately delivered to Buyer as Buyer's sole and exclusive remedy.

5

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

**17. Release of Information.** Buyer authorizes and instructs the title company to release any and all information pertaining to the Buyer's closing, as requested by Seller.

**18. Governing Law.** This Agreement will be subject to, and governed by the laws of the state of Ohio.

**19. Waiver.** The waiver by any party hereto of any right granted to it hereunder shall not be deemed to be a waiver of any other right granted hereunder, nor shall the same be deemed to be a waiver of a subsequent right obtained by reason of the continuation of any matter previously waived.

**20. Buyer Acknowledgements.** The Property may already be constructed or in some stage of development. Buyer approves and acknowledges that this transaction may involve a simultaneous closing. Simultaneous Closing is defined herein as the Seller acquiring the property and selling it to the Buyer all on the same day.

**21. Further Assurances.** Each party agrees (a) to execute and deliver such other documents and (b) to do and perform such other acts and things, as any other party may reasonably request, in order to carry out the intent and accomplish the purposes of this Agreement, including but not limited to signing any amendment to this Agreement if subsequent to the execution of this Agreement it is discovered that this Agreement must be modified to conform to Ohio real estate laws.

Signature page to follow

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

IN WITNESS WHEREOF, the parties have set their hands and seals effective the day and year first above written.

**SELLER:**          Rockwell Dublin, LLC a Utah limited liability company

By: _____
Name: ____Christopher J. Ashby____
Title: _____Manager_____

**BUYER:**          HENRY NOAHS DUBLIN LLC, an Ohio limited liability company

By: _____
Name: Richard Abraham

By: _____
Name:

7

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

# EXHIBIT A
## Property Description

Situated in the City of Dublin, County of Franklin, State of Ohio, described as follows:

Situated in the State of Ohio, County of Franklin, City of Dublin, being all that remains of that original 4.868 acre tract as described in a deed to Hearthstone Management Company, of record in Official Record Volume 14789, Page C02, all references herein being to the records of the Recorder's Office, Franklin County, Ohio, and being more particularly described as follows:

Beginning for reference at Franklin County Geodetic Survey Monument No. 7752 at the centerline intersection of Eiterman Road and Shier Rings Road; thence North 04°17'52" West, along the centerline of Eiterman Road, a distance of 484.32 feet to a PK nail found at the southwesterly corner of that 5.002 acre tract as described in a deed to Eiterman/Post Limited Liability Company, of record in Instrument No. 199802230039207; thence North 73°39'53" East, along the southerly line of said 5.002 acre tract, a distance of 35.78 feet to an iron pin set in the easterly right-of way line of Eiterman Road established by deed of record in Instrument No. 200106220140840, said iron pin being at the True Place of Beginning;

Thence North 73°39'43" East, continuing along said southerly line, a distance of 376.70 feet to an iron pin found (capped "PK Moore #5883" at the northwesterly corner of that 5.117 acre tract as described in a deed to Fellowship Baptist Church of Dublin, of record in Official Record Volume 18349, Page B18;

Thence South 04°18'14" East, along the westerly line of said 5.117 acre tract, a distance of 535.32 feet to an iron pin set in the northerly right-of-way line of Shier Rings Road, 35.00 feet north of centerline;

Thence South 85°41'57" West, along said right-of-way line, a distance of 333.47 feet to an iron pin set at an angle point;

Thence North 49°17'57" West, continuing along said right-of-way line, a distance of 49.50 feet to a 5/8" rebar found (no cap) in the easterly right-of-way line of Eiterman Road, 35.00 feet east of centerline;

Thence North 04°17'52" West, along said right-of-way line, a distance of 421.77 feet to the True Place of Beginning and containing 4.182 acres of land.

Bearings herein are based on the Ohio State Plane Coordinate System, South Zone, North 04°17'52" West for Eiterman Road.

Iron pins set consist of a 1" (O.D.) pipe, 30" long with a plastic cap inscribed "M-E COMPANIES/S-6872".

DocuSign Envelope ID: 388DA612-6EE0-48EB-A1C4-FF8ABFF84078

**EXHIBIT B**
**Description of Lease**

LEASE GUARANTOR Noah Corporation
LEASE TERM 20-year initial term
RENT INCREASES 2% annual escalations
RENEWAL OPTIONS Two 10-year options

# EXHIBIT 6

D001-0000042_0684

DocuSign Envelope ID: CBFC9B86-F84B-4396-B876-F2F73A342453

## PURCHASE AND SALE AGREEMENT
### [Construction TIC Transaction]

THIS PURCHASE AND SALE AGREEMENT (this "Agreement") is made and entered into as of the **25**th day of **October, 2017**, by and between Rockwell Dublin, LLC a Utah limited liability company (hereinafter referred to as "Seller"), and Henryk Sarat, (hereinafter referred to as "Buyer").

> *Buyer understands and acknowledges that any sales professionals involved in this transaction do not have authority to make representations on behalf of or to bind Seller. Buyer further acknowledges that Buyer is not entering into this Agreement in reliance on any representations made by any sales professionals, and that Buyer has had sufficient opportunity to investigate, to Buyer's satisfaction, the nature, character and quality of the Property (as such term is defined below).*

Buyer's Initials: _____

**1. Purchase and Sale.** The Seller is the owner and/or holder of a an undivided **5.13** percent interest (the "Property Interest") in the real property described herein below, together with the improvements to be and/or being constructed thereon, which real property is commonly known as the **Noah's** located at **6760 Shier Rings Road** in the City of **Dublin**, State of Ohio ("Property") **43016**, which is more particularly described on Exhibit A attached hereto and incorporated herein by this reference. The Property is subject to the lease agreement, which is more particularly described on Exhibit B attached hereto and incorporated herein by this reference the 'Description of Lease'. The Seller agrees to sell to the Buyer, and the Buyer agrees to purchase from the Seller, the Property Interest upon the terms and conditions set forth in this Agreement. In addition, Seller shall assign an undivided **5.13** percent interest in Seller's rights and interest in and to the Lease to Buyer (the "Lease Interest"), and Buyer hereby agrees to fully assume all of Seller's obligations associated with the Lease Interest at Closing, subject to the terms and conditions set forth in this Agreement.

**2. Purchase Price.** The purchase price shall be (**$304,473.94**), payable as follows:

    **2.1** (\$__N/A__) as non-refundable earnest money, to be wired within 48 hours from the execution of this Agreement, to Seller or a title company of Seller's choosing. Buyer understands and acknowledges that this earnest money obligation is effective upon the mutual execution of this Agreement, and failure to make the required earnest money deposit shall constitute an event of default pursuant to the terms and conditions set forth herein.

    **2.2** The balance of the purchase price shall be wired, or otherwise transferred, to First American Title Company within twenty-four hours of closing.

1

DocuSign Envelope ID: CBFC9B86-F84B-4396-B876-F2F73A342453

**3. 1031 Exchange.** This Section shall only apply in the event the Buyer desires to have all or a portion of the transactions contemplated by this Agreement qualify for nonrecognition treatment under Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code" with the transaction being referred to herein as a "1031 Exchange"). For purposes of this Agreement, any portion of the Purchase Price that is to be paid with funds Buyer desires to qualify as a 1031 Exchange shall be referred to as "1031 Funds."

    **3.1**    The Seller agrees to reasonably cooperate in a 1031 Exchange transaction, which will provide that all or a portion of the purchase price for the Property will be paid with funds that Buyer desires to qualify for nonrecognition treatment (the "1031 Funds") by **Xchange Solutions, Inc.** (the "Accommodator" which term shall include all requirements pursuant to the regulations under Section 1031 of the Code and guidance issued by the Internal Revenue Service relating to "qualified exchange accommodation arrangements" and "exchange accommodation titleholders"); provided, that the Seller shall (1) have a reasonable time to review any documents to be signed, (2) not incur any costs associated therewith (the Buyer will pay any costs that are incurred by Seller) and (3) not waive or relinquish any rights under the Agreement. Buyer hereby indemnifies and holds the Seller free and harmless from any liability (including, but not limited to the tax ramifications to the Buyer of such tax-free exchange) arising by reason of performing the acts required hereby to effectuate such 1031 Exchange, except insofar as such liability is attributable to the failure of Seller to perform as required hereunder.

    **3.2**    Buyer hereby acknowledges and agrees that Accommodator shall periodically transfer the 1031 Funds to First American Title Company, in one or more installments, which funds shall be applied toward either (i) the purchase of an undivided interest in the Property or (ii) the construction of the improvements on the Property on a reimbursement basis (i.e., the 1031 Funds will be used to reimburse Seller for costs it has incurred in constructing the improvements on the Property). Seller shall periodically provide statements to First American Title Company detailing the construction costs that Seller has incurred and seeking reimbursement of such costs via transfer(s) of 1031 Funds.

    **3.3**    Seller shall pay to Accommodator interest on the 1031 Funds at a simple annual rate of **7.00** percent. Such interest shall begin to accrue on the date the 1031 Funds are transferred to Accommodator and shall continue to accrue until Closing. All interest payments shall be made by Seller to Accommodator, which Buyer agrees shall, for purposes of its agreement with Accommodator, be treated as additional interest on the 1031 Funds.

    **3.4**    Closing shall occur once all of the 1031 Funds have been transferred by the Accommodator to First American Title Company pursuant to Section 3.2; provided, however, that in the event all of the 1031 Funds have not been transferred by the date that is 180 days after Buyer relinquished the property to be part of the 1031 Exchange (the "1031 Deadline"), all remaining funds shall be transferred and Closing shall occur no later than the 1031 Deadline.

    **3.5**    Buyer hereby assigns to Accommodator all of its rights under this Agreement and hereby instructs Accommodator to transfer 1031 Funds to First American Title Company as described in Section 3.2 above.

DocuSign Envelope ID: CBFC9B86-F84B-4396-B876-F2F73A342453

*The Buyer acknowledges that it has been advised to obtain independent tax and legal advice regarding the transaction described herein and acknowledges and agrees that it has not relied upon any advice, statements or representations made by the Seller or any of the Seller's agents, employees, members, consultants, or attorneys. The Buyer acknowledges the unique risks associated with a construction 1031 Exchange, including but not limited to the risks of delays in construction that may result in all or a portion of the improvements not being completed prior to the 1031 Deadline. The Buyer acknowledges and agrees that the Buyer assumes full responsibility for ensuring that its relationship with Accommodator satisfies the requirements for a 1031 Exchange and that it will consult tax and legal professionals regarding the 1031 Exchange and hereby waives any and all claims against the Seller, the Seller's agents, employees, members, consultants, or attorneys related to the 1031 Exchange.*

Buyer's Initials: ___HS___

**3.6**    Notwithstanding anything to the contrary set forth in this Section, the Closing is not contingent or conditioned upon the Buyer being able to successfully complete a 1031 Exchange and the Closing Date shall not be extended to accommodate a 1031 Exchange.

**4. Title Insurance.**  At Settlement, Seller agrees to pay for an endorsement to the standard-coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price.  In addition, any supplementary title insurance coverage shall be at Buyer's expense.

**5. "As Is" Condition.** Buyer acknowledges that it is buying Seller's interest in the Property, together with the improvements to be and/or being constructed thereon, "as is" and the physical condition of the Property, together with the improvements to be and/or being constructed thereon, is deemed to be satisfactory to the Buyer. Buyer is not relying and will not rely upon any representations and warranties of Seller or anyone acting or claiming to act by, through, or under Seller, or on Seller's behalf concerning the Property, including the improvements to be and/or being constructed thereon, the Lease, or any documents, studies, plans and/or any other materials delivered to Buyer by Seller. Buyer shall purchase the Seller's interest in the Property and the Lease without recourse to the Seller or any employee, agent, officer, director, member or trustee of Seller, it being the intent of the parties that no liability of any kind or character shall ever attach to or be asserted against Seller or any employee, agent, officer, director or member of Seller for any reason or cause whatsoever, other than liability arising from Seller's fraud. Accordingly, except in the case of fraud, no law suit or cause of action shall ever be commenced, filed or prosecuted by Buyer against Seller or any employee, agent, officer, director or member of Seller, no judgment shall ever be taken, rendered or entered against any of them based upon the transactions contemplated in this Agreement. Buyer does hereby and shall defend, release, indemnify and hold harmless Seller from and against any and all claims, expenses, including reasonable attorney's fees, and liabilities arising under or in connection with the Property and the

3

DocuSign Envelope ID: CBFC9B86-F84B-4396-B876-F2F73A342453

Lease from and after the Closing Date, other than liability arising from Seller's fraud.

**6. Closing.** Closing shall be on or before **November 10, 2017** 5:00 p.m. M.S.T., or sooner at Seller's discretion (the "Closing Date"). Subject to tender or payment at Closing as required herein and compliance by the Buyer with the other terms and provisions hereof, Seller shall execute and deliver a good and sufficient statutory warranty deed to Buyer at Closing, conveying Seller's interest in the Property and the Lease free and clear of all liens and encumbrances, except liens and encumbrances of record. In addition, at Closing the parties shall execute the following documents:

> **6.1**    Final Settlement Statement
>
> **6.2**    Tenancy in Common Agreement
>
> **6.3**    Property Management Agreement

**7. Closing Costs.** It is agreed that the escrow fees and other customary closing costs shall be paid by the Seller.

**8. Proration of Certain Items.**

> **8.1**    Except as expressly set forth in this Agreement, each party shall bear its own costs (including attorneys' fees) in connection with its negotiation, due diligence investigation and conduct of the Purchase and Sale Transaction.  Seller shall pay the cost of any prior survey initially delivered by Seller.  Seller shall pay the cost of the Survey, the premium for the standard coverage portion of the Title Policy, but not the cost of any extended coverage and endorsements obtained by Buyer as part of the Title Policy, and the recording fees.
>
> **8.2**    All real property taxes and assessments accrued for the current year shall be prorated between the parties as of the Closing.
>
> **8.3**    All transfer, proceeds or other taxes (not including general state and federal income taxes of Seller, if any) imposed upon this transaction by any state or local entity shall be paid by Seller.

**9. Arbitration.** Any dispute between the parties will be submitted to binding arbitration according to the Commercial Rules of the American Arbitration Association, but need not be filed with that organization. Except for actions relating to the payment of money for services rendered, an action under this Agreement must be filed within 90 days of the date of closing pursuant to this Agreement. Arbitration will be conducted in Ohio, before a single arbitrator. The parties will be entitled to conduct discovery in accordance with the Federal Rules of Civil Procedure as in effect when arbitration occurs, limited to document production and depositions and subject to further limitation by the arbitrator to secure just and efficient resolution of the dispute. If the amount in controversy exceeds $25,000, the arbitrator's decision will include a statement specifying in reasonable detail the basis for and computation of the award, if any. Judgment upon the award may be entered in any court having jurisdiction.

4