Scott D. Sweeney, (Utah Bar #15070)
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
1225 17th Street, Suite 2750
Denver, CO 80202
Tel: 303.572.5300/Fax: 303.572.5301
Scott.Sweeney@wilsonelser.com
*Attorneys for Defendants Edmund & Wheeler,*
*John D. Hamrick, Chris Brown, TM 1031 Exchange,*
*Tim Marshall, O'Toole Enterprises, and Mary O'Toole*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Christopher C. Fucci, an individual; *et al.*,<br><br>*Plaintiffs*<br><br>vs.<br><br>William Bowser, an individual; *et al.*,<br><br>*Defendants* | **DEFENDANTS EDMUND & WHEELER, INC., JOHN D. HAMRICK, CHRIS BROWN, TM 1031 EXCHANGE, TIM MARSHALL, O'TOOLE ENTERPRISES AND MARY O'TOOLE'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 41(B) AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**<br><br>Case No. 2:20-CV-00004-DBB-DAO<br><br>District Judge David Barlow<br>Magistrate Judge Daphne A. Oberg<br><br>**ORAL ARGUMENT REQUESTED** |

DEFENDANTS EDMUND & WHEELER, INC. ("E&W"), JOHN D. HAMRICK, and CHRIS BROWN (together, the "EWI Defendants"), DEFENDANTS TM 1031 EXCHANGE and TIM MARSHALL (together, the "TM Defendants"), and DEFENDANTS O'TOOLE ENTERPRISES, LLC and MARY O'TOOLE (together the "O'Toole Defendants") (the E&W

Defendants, the TM Defendants and the O'Toole Defendants are jointly referred to herein as "the Defendants") by and through their attorneys, respectfully submit this Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 122, hereafter "AC") pursuant to Fed. R. Civ. P. 41(b) and, in the alternative, for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

## PRELIMINARY STATEMENT

The AC asserted claims against twenty-seven (27) named defendants for alleged violations of federal securities laws and various state law claims, based on Plaintiffs' purchases of Tenant-in-Common interests (hereafter "TIC interests") in real property located in Florida or Ohio. The EWI Defendants and TM Defendants moved to dismiss the original complaint (Dkt. 2) but along with the O'Toole Defendants answered the AC (Dkt. 136).

The Court entered a scheduling order (Dkt. 164, hereafter the "Scheduling Order") that set a schedule for discovery, dispositive motions, and trial of Plaintiffs' claims against the Defendants and certain other defendants. Aside from making perfunctory initial disclosures, Plaintiffs ignored the Scheduling Order and did nothing to pursue their claims against the Defendants for what is now approaching four years. During that time, the Defendants made multiple attempts to settle Plaintiffs' claims against them (and did settle similar claims brought in other cases about Rockwell TIC interests), but Plaintiffs ignored the Defendants' attempts to settle this case.

Plaintiffs did not tell the Court that they had chosen to ignore the Scheduling Order with respect to the Defendants. Not while Plaintiffs were doing so, not after the deadlines therein had passed, not while Plaintiffs were responding to questions from the Court about other Defendants, and Plaintiffs still have not presented the full picture to the Court.

Plaintiffs have clearly abandoned and/or failed to prosecute their claims against the Defendants, which is sufficient for dismissal under Fed. R. Civ. P. 41(b). In addition, the Defendants are entitled to dismissal under Fed. R. Civ. P. 12(c) because the AC fails to state federal claims against them. Once the Court dismisses the federal law claims, there will be no federal claims left in this case, and the Court must thus dismiss the state law claims pursuant to 28 U.S.C. § 1367.[1]

## FACTUAL BACKGROUND

Plaintiffs allege that they purchased TIC interests in real estate in Ohio or Florida from Rockwell Debt Free Properties, Inc. (or a Rockwell "affiliated company"), which real estate was leased to Noah Corporation ("Noah"). AC ¶ 1. Plaintiffs allege that the TIC interests they purchased were securities under federal law and, on that basis, assert federal securities law claims against the Defendants. *See id.* ¶¶ 138(a), 437-457. The sole allegation Plaintiffs make in support of these claims, the only federal law claims asserted in the AC, is that "[i]nvestment in the Noah TIC Properties was a security as defined in 15 U.S.C. § 77b (a)(1) in that it involved investment in a common enterprise with the success of the venture dependent primarily upon the efforts of others, namely, Noah." *Id.* ¶ 438.

Plaintiffs include the Defendants with what they call the "Upstream Parties" in the AC. Plaintiffs affirmatively allege that Rockwell, not the Defendants, was the seller of the TIC interests here at issue and that the TIC interests were akin to slices of pizza (i.e., each Plaintiff bought a slice of pizza rather than a whole pizza). *Id.* ¶ 108. Plaintiffs received the rent payments they

---

[1] To the extent necessary, the Defendants preserved all defenses asserted herein in their Answer, *see* Dkt. 136 at 12-13. The EWI Defendants and the TM Defendants also reserve the right to renew their argument that the Court lacks personal jurisdiction over them, *see* Dkt. 79 at 6-10.

3

expected from the times of their TIC interest purchases until March or April of 2019. *Id.* ¶ 378. Plaintiffs have settled with or dismissed their claims against all "Upstream Parties" other than the Defendants; although only upon the prompting of the Defendants, Plaintiffs engaged in limited settlement discussions with the Defendants until October 2022.

## ARGUMENT

### I. THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR ABANDONMENT, FAILURE TO PROSECUTE, AND VIOLATION OF THE SCHEDULING ORDER

The Scheduling Order was entered by the Court on February 8, 2022 (Dkt. 164). Plaintiffs unilaterally chose to do nothing other than settle with or otherwise dismiss other Defendants, thereafter, including all of the "Upstream Parties" other than the Defendants. In particular, (a) Plaintiffs took no discovery from and provided no discovery to the Defendants following entry of the Scheduling Order[2] and (b) Plaintiffs and the Defendants engaged in minimal settlement discussions. On October 18, 2022, after the last day to serve discovery requests, Plaintiff's counsel emailed counsel for the Defendants stating, eight months after the Scheduling Order was entered by the Court, that *Plaintiffs* believed it would be "imprudent and problematic" to proceed with discovery against the Defendants without Defendant First American Title Insurance ("FA"), which had moved to compel arbitration and against which the case was stayed by the Court, "available to participate," and noted that "we are now at the end of the scheduling order, so we need to proceed or extend the scheduling Order." *See* Dkt. 281, Attachment B.[3] Undersigned counsel responded

---

[2] Plaintiffs provided perfunctory initial disclosures, but never produced any documents promised to be produced therein. It also appears that Plaintiffs did not engage in discovery with any other Defendants.

[3] It is unclear what Plaintiffs' counsel meant by "proceed" given that the time set for serving discovery requests had run, and thus no discovery could be taken without modifying the Scheduling Order. Did Plaintiffs' counsel mean "proceed" with discovery despite being "at the end of the scheduling order?" Did he mean brief dispositive motions without having done any discovery? Did he mean proceed to trial without having done any discovery? The

4

that he would agree to extend the Scheduling Order and asked whether Plaintiffs' counsel would be interested in reopening their prior settlement discussions. *See id.*

Plaintiffs' counsel neither responded nor filed a request to extend the Scheduling Order in October 2022, or indeed in 2022 at all. Instead, nearly four months later, on February 6, 2023, Plaintiffs' counsel filed Dkt. 211, a Notice and Motion, which provided the Court with a copy of the Tenth Circuit's *DiTucci* decision and (apparently for the first time) informed the Court that "[d]ue to the stay imposed by the Court as to the FA Defendants, *Plaintiffs* have deferred discovery as to certain other remaining parties who have consented to entry of a scheduling order upon lifting of the stay." (emphasis added). To the extent the record is unclear, Plaintiffs' counsel did not communicate with counsel for the Defendants prior to filing Dkt. 211. The Court denied the status conference requested in Dkt. 211. *See* Dkt. 213.

In the meantime, the Court ordered Plaintiffs to state their intentions with respect to certain other identified Defendants, set a schedule for the briefing of the renewed motion to compel arbitration by FA and individual defendant Kirsten Parkin (an FA employee), and stayed the case solely as against FA and Parkin pending resolution of their renewed motion to compel arbitration. *See* Dkts. 214–233. On May 25, 2023, Judge Barlow *sua sponte* entered orders vacating a scheduling conference that the Scheduling Order had set for June 1, 2023 if the parties to which the Scheduling Order applied had not filed dispositive motions after discovery, stating that "[t]rial scheduling will be addressed after the magistrate judge rules on the pending Motion to Compel Arbitration, when it is more clear who the remaining defendants are for purposes of setting a trial

---

Defendants have no way to know, because Plaintiffs' counsel did not communicate with the Defendants' counsel after this email exchange.

5

and after those parties have determined whether an amended scheduling order is warranted." *See* Dkts. 234-235.  It is not clear whether Judge Barlow knew that the reason no dispositive motions had been filed as contemplated by the Scheduling Order was that Plaintiffs had made the unilateral decision to do nothing despite the schedule set in the Scheduling Order.  It is undisputed that Plaintiffs chose to ignore the Scheduling Order with respect to the Defendants, never informed the Court that they were doing so, engaged in minimal settlement discussions with counsel for the Defendants, that the Defendants continued to express their desire to settle this case until October 2022, and that Plaintiffs essentially "ghosted" the Defendants from October 2022 forward (more than three years).

This record makes clear that Plaintiffs unilaterally took the view that they would rather proceed with their claims against the Defendants with FA and Parkin in the case than without them in the case.  On the one hand, that view is odd, because the claims against the Defendants have little or nothing in common with the claims against FA and Parkin.  More important, Plaintiffs never told the Court that this was their view of the case, or asked the Court to stay the case in its entirety until the positions of FA and Parkin were resolved, although they had multiple opportunities to do so.  Plaintiffs could have said something to the Court about this issue when the Court was working on what became the Scheduling Order, or while the Court was considering FA and Parkin's motion to stay the case as to them, or after the Court granted that motion solely with respect to FA and Parkin, or at multiple times while FA and Parkin's motion to compel was being litigated, or while it was on appeal.  However, Plaintiffs took *none* of those opportunities to tell the Court what they were actually doing with respect to the claims against the Defendants, Nothing.

6

Moreover, Plaintiffs knew that the Defendants wanted to settle the claims in this case but ignored that fact, and to this day have not responded to the Defendants' last inquiry about settlement.

Fed. R. Civ. P. 41(b) allows defendants to seek involuntary dismissal of an action "[i]f the plaintiff fails to prosecute or to comply with ... a court order." Indeed, District Courts may dismiss actions *sua sponte* for failure to prosecute. *See Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) (although the rule requires defendants to file motions to dismiss, it has long been construed to allow courts to act *sua sponte*); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962) (courts have inherent authority to clear "calendar[ ] of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief"); *Bills v. United States*, 857 F.2d 1404, 1405 (10th Cir. 1988) (dismissal for failure to prosecute is "standard" way to clear "deadwood from the courts' calendars" when there is prolonged and unexcused delay by plaintiff).

Plaintiffs' conduct with respect to the claims against the Defendants fall precisely within the ambit of Fed. R. Civ. P. 41(b). Plaintiffs knowingly sat on their hands with respect to their claims against the Defendants, the only federal claims left in this case, for nearly four years. That is more than enough for dismissal pursuant to Rule 41(b). Indeed, in *Johnson v. Magnus Hotel Mgmt., LLC*, Case No. 2:24-CV-0025-TS-DBP, 2025 WL 2530782, at *2, 2025 U.S. Dist. LEXIS 172523 (D. Utah Sep. 3, 2025) (Stewart, J.). Judge Stewart dismissed a case with prejudice simply because the plaintiff had failed to make her initial disclosures as contemplated by a scheduling order. Plaintiffs' actions here are far more willful and substantial examples of failure to prosecute and disobedience of a scheduling order. *See generally Smash Tech., LLC v. Smash Solutions, LLC*, Case No. 2:19-CV-00105-TC-MJB, 2021 WL 3007692, at *4-7, 2021 U.S. Dist. LEXIS 133090 (D. Utah May 7, 2021) (Bennett, M.J.) ("Plaintiffs are entirely at fault for the current state of

7

litigation. Plaintiffs have failed to adequately respond to Defendants' discovery requests, comply with multiple court orders, and be in touch with the court for long stretches. Plaintiffs have not communicated that their non-compliance with the Federal Rules, discovery deadlines, or orders of the court was inadvertent due to an inability to comply."); *Burgi v. Awolf Fitness*, Case No. 2:19-CV-00151-CMR, 2021 WL 734948, at *6, 2021 U.S. Dist. LEXIS 35993 (D. Utah Feb. 25, 2021) (dismissing case with prejudice because of plaintiff's failure to comply with scheduling order requirements). Indeed, Plaintiffs have twice admitted in writing that they *chose* not to comply with the Scheduling Order, not that they were unable to comply with the Scheduling Order, making this case worse even than *Smash Technology*. See Dkt. 281, Attachment B; Dkt. 211. This Court should reach the same conclusions reached in *Johnson*, *Smash Technology*, and *Burgi* and dismiss the claims against the Defendants with prejudice.

## II. THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS DISMISSING PLAINTIFFS' FEDERAL SECURITIES CLAIMS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) on the basis of failure to state a claim is analyzed in precisely the same way a motion under Fed. R. Civ. P. 12(b)(6) is analyzed. *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528–29 (10th Cir. 1992). When reviewing a Rule 12(b)(6) motion, the Court accepts as true Plaintiffs' *well-pleaded factual* allegations (here, in the AC) but does not accept as true "legal conclusions." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The AC must contain sufficient factual matter that is accepted as true to state a claim for relief that is plausible on its face, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Here Plaintiffs have created another problem for themselves: Plaintiffs had the opportunity to conduct discovery as against all current and former defendants (other than FA and Parkin) under the Scheduling Order but chose not only not to do so, but also not to tell the Court that they were sitting on their hands. Plaintiffs have thus waived the right to seek to introduce evidence outside the AC by failing to follow the Scheduling Order, which means that Plaintiffs are limited to the well-pled *factual* allegations in the AC. This is a significant problem for Plaintiffs, because there are no such allegations.

### A. The TIC Interests Were Not Securities Under Federal Law

Plaintiffs' sole allegation on this issue is that "[i]nvestment in the Noah TIC Properties was a security as defined in 15 U.S.C. § 77b (a)(1) in that it involved investment in a common enterprise with the success of the venture dependent primarily upon the efforts of others, namely, Noah." AC ¶ 438. But that is precisely the sort of legal conclusion or threadbare recital of an element of a claim that *Iqbal* directs courts not to accept as true. *See Iqbal*, 556 U.S. at 678.

Whether or not something is a security for the purposes of federal law is determined by whether it meets the "investment contract" test set forth in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). *Howey* involved a transaction that included (a) the sale of a land in an orange grove *plus* (b) the *seller*'s contractual promise to cultivate that land and give a share of profits created by the *seller's* cultivation to the purchaser; the Supreme Court held that that *combined transaction* was an "investment contract" and thus a security. *See* 328 U.S. at 295–96, 299. But the fact that an asset is part of a transaction that is an investment contract does not make the asset a security. Indeed, the Supreme Court explained that had the orange groves in *Howey* been sold on their own, without the associated cultivation and profit rights, they would *not* have been securities. *See id.*

Indeed, in *Howey* it is arguable that the purchasers did not really own the orange groves, because the companion cultivation contracts re-sold that land to a Howey company affiliate and contained provisions allowing that affiliate to foreclose on the land if the "purchasers" failed to pay that company for its cultivation services. Later cases confirm that the "package deal" aspect of Howey is what makes something a security.[4] Worse still for Plaintiffs, this line of cases depends on value being generated by the work of the seller or an affiliate of the seller, but Plaintiffs allege that TIC interest value would come from Noah (AC ¶ 438), not Rockwell. Likewise, what something is called is not determinative: In *United Hous. Found., Inc. v. Forman,* 421 U.S. 837, 851–52 (1975), the Supreme Court held that an instrument labeled "stock" was not a security. That Plaintiffs purchased TIC "interests" thus has no significance.

Although some TIC transactions can be securities transactions, some can just be real estate transactions. *See San Francisco Residence Club, Inc. v. Amado*, No. C 09–2054 RS, 2010 WL 2300987, at *4-5, 2010 U.S. Dist. LEXIS 55134 (N.D. Cal. Jun. 4, 2010). Indeed, a 1031 exchange is, at its core, a form of property exchange transaction designed for specific *tax* purposes, and it need not even involve real estate. *See* The IRS Media Relations Office Fact Sheet, *Like-Kind Exchanges Under IRC Section 1031*, Feb. 2008 at 2, https://www.irs.gov/pub/irs-news/fs-08-

---

[4]. *See SEC v. Aqua-Sonic Products Corp.*, 687 F.2d 577, 578 (2d Cir. 1982) ("license and security agreement and notes payable," a written "Offer to Act as Sales Agent," and other written agreements" for dentist office products), *cert. denied,* 459 U.S. 1086 (1982); *Glen-Arden Commodities, Inc. v. Costantino*, 493 F.2d 1027, 1032 (2d Cir. 1974) ("Scotch whisky warehouse receipts" combined with agreements to "provid[e] … cooperage and insurance and … assistance in the liquidation of [the whiskey] investments"); *Bailey v. J.W.K. Properties, Inc.*, 904 F.2d 918, 919 (4th Cir. 1990) (investors were simultaneously offered separate purchase and management agreements for bull embryos and the care of the resulting herds by defendants); *Hocking v. Dubois*, 885 F.2d 1449, 1457 (9th Cir. 1989) (en banc) (condominium sale agreement and a rental pool agreement were presented as a package); *Cont'l Mktg. Corp. v. SEC*, 387 F.2d 466, 469–70 (10th Cir. 1967) (purchasers of live beavers encouraged to and did enter into separate purchase and maintenance contracts for the animals).

18.pdf. ("Real property and personal property can both qualify as exchange properties under Section 1031 … .").

Here, Plaintiffs' allegation is not sufficient to make the TIC interests at issue securities. The PSAs make clear that they involved sales of undivided interests in land and a lease. *See* PSA § 1 ("The Seller is the owner and/or holder of a an undivided [] percent interest (the 'Property Interest') in the real estate property described herein below … . … The Seller agrees to sell to the Buyer, and the Buyer agrees to purchase from the Seller, the Property Interest upon the terms and conditions set forth in this Agreement. In addition, Seller shall assign an undivided [] percent interest in Seller's rights and interest in and to the Lease to Buyer (the 'Lease Interest'), and Buyer hereby agrees to fully assume all of Seller's obligations associated with the Lease Interest at Closing, subject to the terms and conditions set forth in this Agreement.") (Dkt. 220-1). There is nothing like the cultivation agreement in *Howey*, with the features described above, in the PSAs; they are just the sale of parts of a "Property Interest" and a "Lease Interest." Plaintiffs' bare pleading that those real estate transactions were securities transactions does not satisfy *Iqbal*, especially when combined with their judicial admission that their purchases were similar to buying property (one slice of pizza instead of a whole pizza, *see* AC ¶ 108), and thus all of the federal securities claims against the Defendants must be dismissed because they all depend on the allegation that the TIC interests were securities.

      **B.**      **Even If They Were Securities, The TIC Interests Were Exempt From Registration and the Defendants Were Not Statutory Sellers**

Even if the TIC interests in this case could fit the federal law definition of a security, the sales here would be exempt from registration. *First*, the TIC transactions here at issue were exempt from registration under Section 4(a)(2) of the Securities Act of 1933 because those sales did not

involve a public offering. *See* 15 U.S.C. § 77d(a)(2). The transactions were also exempt under Rule 506(b) of Regulation D, because they were offerings to accredited investors and up to 35 non-accredited investors, and Plaintiffs do not plead that there was a general solicitation. *See* 17 C.F.R. § 230.506(b). Both exemptions are fatal to Plaintiffs' claim for the sale of unregistered securities.

Plaintiffs allege that Rockwell, not the Defendants, was the seller of the TIC interests here at issue. AC ¶ 108. But because Section 12(a)(1) claims can be brought only against sellers, Plaintiffs pleaded themselves out of a Section 12(a)(1) claim against the Defendants by alleging that Rockwell was the sole seller.

### C. The AC Alleges Non-Actionable Aiding-and-Abetting Claims

As demonstrated above, Rockwell sold the TIC interests to Plaintiffs. AC ¶ 108. Thus, Plaintiffs' federal securities law claims against the Defendants are just claims that Rockwell sold TIC interests to Plaintiffs and that the Defendants somehow assisted in some of those sales. On its face that is an aiding-and-abetting claim, as further proven by the fact that Plaintiffs actually allege aiding-and-abetting claims with their state law securities claims (AC ¶¶ 472-477). But civil plaintiffs cannot bring aiding-and-abetting claims under the federal securities laws. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 177–180 (1994). This requires dismissal of Plaintiffs' Section 12(a)(1) and Section 10(b) claims as against the Defendants.

### D. The AC Does Not State a Claim for Control-Person Liability Against the Defendants

To allege control person liability, a plaintiff must establish "(1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *City*

*of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1270 (10th Cir. 2001). Because Plaintiffs' Section 12(a)(1) and Section 10(b) claims can only relate to Rockwell (which Plaintiffs plead was the sole seller of the TIC interests at issue, AC ¶ 108), the control person analysis must look to Rockwell.

That analysis fails on the existence of a primary violation, because Plaintiffs' violations of the Scheduling Order preclude them from proving violations by Rockwell. Moreover, those violations preclude Plaintiffs from seeking to evade the non-reliance and waiver provisions of the PSAs, which independently preclude Plaintiffs from establishing any claims against Rockwell, including federal securities claims. *See* PSA at 3 (waiver of all claims against Rockwell) (Dkt. 220-1). Without the ability to prove a primary violation by Rockwell, the control person allegations never get out of the gate.

In any event, the AC contains no allegations that even try to establish that Mr. Hamrick, Mr. Brown, Mr. Marshall, or Ms. O'Toole (the only defendants against whom control person claims are brought) exercised or could have exercised control over *Rockwell* (as opposed to their own companies). On its own, that also requires dismissal of the control person claims.

### III. AFTER DISMISSING THE REMAINING FEDERAL CLAIMS, THE COURT MUST DISMISS THE STATE LAW CLAIMS AGAINST THE DEFENDANTS

When all federal claims in a case have been dismissed or otherwise disposed of, federal courts decline to exercise supplemental jurisdiction and dismiss. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025). This case is the classic scenario for declining supplemental jurisdiction: As demonstrated above, Plaintiffs did nothing to pursue any of their claims against the Defendants for more than three years (in violation of the Scheduling Order), and so necessarily the Court has done no substantive work with respect to Plaintiffs' state law claims. That is precisely when *Royal Canin* mandates dismissal of Plaintiffs' state law claims.

## IV. THE COURT MUST MAKE THE MANDATORY RULE 11 DETERMINATION REQUIRED BY THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995

When Congress enacted the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), it included mandatory sanctions review provisions for both the Securities Act and the Securities Exchange Act of 1934. Specifically, 15 U.S.C. § 78u-4(c) requires that in any private action brought under the Exchange Act the Court make findings as to whether each party asserting or against which federal securities claims are asserted complied with Rule 11; if the Court finds non-compliance it must award sanctions, which are presumed to be the non-violating party's full attorneys' fees. 15 U.S.C. § 77z-1(c) is the parallel provision for Securities Act claims (such as Section 12(a)(1) claims). That is, the PSLRA eliminates the normally discretionary aspects of Rule 11 inquiries (and changes the process from one initiated by the parties to one mandated for the Court to undertake) in the context of federal securities claims.

Particularly in light of Plaintiffs' admittedly willful violations of the Scheduling Order, the Defendants request that the Court make the mandatory Rule 11 determinations required by the PSLRA, find that Plaintiffs and their counsel violated Rule 11, and award the Defendants their full attorneys' fees for defending this case.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Edmund & Wheeler, Inc., John D. Hamrick, Chris Brown, TM 1031 Exchange, Tim Marshall, O'Toole Enterprises, and Mary O'Toole respectfully request that this motion be GRANTED and that they be DISMISSED as Defendants from this action with prejudice, and that the Court make the mandatory Rule 11 findings required by the PSLRA and award movants their full attorneys' fees.

Respectfully submitted this 3rd day of November, 2025.

                    WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                     */s/ Scott D. Sweeney*
                    Scott D. Sweeney, #15070
                    *Attorney for Defendants Edmond & Wheeler, Inc.*
                    *John D. Hamrick, Chris Brown, TM 1031 Exchange,*
                    *Tim Marshall, O'Toole Enterprises, and Mary O'Toole*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 3rd day of November, 2025, a true and correct copy of the foregoing DEFENDANTS EDMUND & WHEELER, INC., JOHN D. HAMRICK, CHRIS BROWN, TM 1031 EXCHANGE, TIM MARSHALL, O'TOOLE ENTERPRISES AND MARY O'TOOLE'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 41(B) AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C) was filed with the Court and served electronically via CM/ECF to all parties of record.

                          */s/ Scott D. Sweeney*
                          Scott D. Sweeney