UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| CHRISTOPHER C. FUCCI, et al.,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM BOWSER, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [ECF NO. 283] DEFENDANTS' EDMUND & WHEELER, INC., JOHN D. HAMRICK, CHRIS BROWN, TM 1031 EXCHANGE, TIM MARSHALL, O'TOOLE ENTERPRISES AND MARY O'TOOLE'S MOTION TO DISMISS AMENDEND COMPLAINT PURSUANT TO FED. R. CIV. P. 41(B) AND MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**<br><br>Case No. 2:20-cv-00004-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Defendants Edmund & Wheeler, Inc., John D. Hamrick, Chris Brown, TM 1031 Exchange, Tim Marshall, O'Toole Enterprises, and Mary O'Toole's (collectively, the "Hamrick Defendants") Motion to Dismiss and Motion for Judgment on the Pleadings,[1] Plaintiffs' response brief,[2] and the Hamrick Defendants' reply.[3] Plaintiffs' Amended Complaint[4]

---

[1] Defs. Edmund & Wheeler, Inc., John D. Hamrick, Chris Brown, TM 1031 Exchange, Tim Marshall, O'Toole Enterprises and Mary O'Toole's Mot. to Dismiss Am. Compl. Pursuant to Fed. R. Civ. P. 41(b) and Mot. for J. on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) ("MTD and MJP"), ECF No. 283, filed November 3, 2025.
[2] Pls.' Memo. in Opp'n to Defs. Edmund & Wheeler, Inc., John D. Hamrick, Chris Brown, TM 1031 Exchange, Tim Marshall, O'Toole Enterprises and Mary O'Toole's Mot. to Dismiss Am. Compl. Pursuant to Fed. R. Civ. P. 41(b) and Mot. for J. on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) ("Opp."), ECF No. 290, filed December 1, 2025.
[3] Reply Memo. of Defs. Edmund & Wheeler, Inc., John D. Hamrick, Chris Brown, TM 1031 Exchange, Tim Marshall, O'Toole Enterprises and Mary O'Toole in Further Supp. of Their Mot. to Dismiss Am. Compl. Pursuant to Fed. R. Civ. P. 41(b) and Mot. for J. on the Pleadings Pursuant to Fed. R. Civ. P. 12(c). ("Reply"), ECF No. 296, filed December 17, 2025.
[4] Am. Compl., ECF No. 122, filed August 17, 2021.

1

asserts claims against the Defendants for violation of federal securities law and various state laws based on Plaintiffs' purchase of interests in event venues. The Hamrick Defendants first argue that the case should be dismissed against them pursuant to Federal Rule of Civil Procedure 41(b) for abandonment, failure to prosecute, and violation of the Scheduling Order. Second, the Hamrick Defendants argue that Plaintiffs fail to state a claim for relief for their federal law claims. Third, the Hamrick Defendants argue that if the court dismisses Plaintiffs' federal law claims, then the court no longer has subject-matter jurisdiction and should dismiss the entire case. Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[5]

## BACKGROUND

### I. Factual Background[6]

This case is about an alleged Ponzi Scheme. Plaintiffs purchased tenant-in-common ("TIC") interests in real estate from Rockwell Debt Free Properties.[7] As part of the purchase agreements, Noah Corporation leased the property.[8] Noah then managed the properties as event venues and paid Plaintiffs rent tied to a specified return on the TIC investment.[9]

For the four real estate properties at issue here, Rockwell and Noah sold the properties to the Plaintiffs as part of their "Construction TIC" program.[10] Under this program, the investment was supposed to fund the construction of new event venues at those locations.[11] The funds were

---

[5] *See* DUCivR 7-1(g).
[6] Because the court is deciding a motion for judgment on the pleadings, the following factual allegations taken from Plaintiffs' Amended Complaint are treated as true.
[7] Am. Compl. ¶ 1.
[8] *Id.*
[9] *Id.* ¶¶ 2, 6.
[10] *Id.* ¶ 3.
[11] *Id.*

2

placed into escrow with First American Title Insurance Company, with Kirsten Parkin as the escrow agent (collectively, "FA"), who were supposed to disburse funds only to pay or reimburse land acquisition and construction costs.[12]

Plaintiffs allege that none of the parties did what they were supposed to do with the investment funds. Instead, FA disbursed the funds to Rockwell almost immediately after closing.[13] Rockwell then took a 20-25% cut and passed the remaining funds onto Noah.[14] And Noah, instead of using the funds to construct the new event venues, used them to pay the returns of previous investors and for their own expenses.[15] The four event venues at issue here were never constructed.[16]

After Noah filed for bankruptcy in 2019,[17] Plaintiffs filed this case seeking to recover their losses from those who actively participated with Noah and Rockwell in the alleged Ponzi Scheme, including the "Upstream Defendants."[18] The Upstream Defendants are the network of investment advisors who referred Plaintiffs to Rockwell based on a significant on-going business relationship with Rockwell and in exchange for substantial consideration.[19] These Defendants sold the TIC investments to Plaintiffs based on misleading and incomplete information.[20]

---

[12] *Id.*
[13] *Id.* ¶ 7.
[14] *Id.*
[15] *Id.* ¶¶ 8–9.
[16] *Id.* ¶ 12.
[17] *Id.*
[18] *Id.* ¶¶ 13, 123, 125.
[19] *Id.* ¶¶ 123, 125.
[20] *Id.* ¶ 13.

The Hamrick Defendants are part of the Upstream Defendants.[21] John Hamrick and Chris Brown are the principles and control persons of Edmund & Wheeler, Inc.[22] Mary O'Toole is a principle of Edmund & Wheeler, Inc. and O'Toole Enterprises.[23] Tim Marshall is the principle and control person of TM 1031 exchange.[24]

The Hamrick Defendants received commissions for selling TIC interests totaling over $5 million dollars.[25] To facilitate the sales, the Hamrick Defendants distributed Rockwell's and Noah's marketing materials—materials that conveyed false statements to Plaintiffs.[26] The Hamrick Defendants also made many personal misstatements to Plaintiffs while encouraging and advising them to invest in the Noah TIC program.[27] These primarily included telling Plaintiffs that the investments were safe and sound and that Noah was a dependable and growing company that never missed a payment.[28] To a few Plaintiffs, the Hamrick Defendants represented that they had reviewed Noah's financial statements and knew that Noah's financial position was healthy.[29]

## II.    Procedural Background

Plaintiffs filed this case in January 2020.[30] Plaintiffs filed the operative Amended Complaint on August 17, 2021, and the Hamrick Defendants filed their Answer on October 21,

---

[21] *Id.* ¶ 125.
[22] *Id.* ¶¶ 83–84.
[23] *Id.* ¶ 85.
[24] *Id.* ¶ 90.
[25] *Id.* ¶ 126(a), (b).
[26] *Id.* ¶¶ 137–42.
[27] *Id.* ¶¶ 144–53, 156–59, 161–164, 174–75, 181–84, 190–92, 195–98, 201, 223–27, 266–70, 278, 279–81, 297–302, 342–43, 345–52.
[28] *Id.*
[29] *Id.*
[30] Compl., ECF No. 2, filed January 3, 2020.

2021.[31] FA, instead of answering the complaint, filed a Motion to Compel Arbitration.[32] The court denied the motion without prejudice, granting FA leave to refile the motion once a related appeal was completed.[33]

On February 8, 2022, the Magistrate Judge entered a scheduling order incorporating the terms agreed to by all the parties except for FA.[34] The Scheduling Order set the close of fact discovery on December 16, 2022.[35]

On February 22, 2022, FA filed a motion to stay the case as to FA.[36] In June 2022, the court granted the stay as to FA only.[37]

Between June and October 2022, Plaintiffs' attorney and the Hamrick Defendants' attorney spoke on the phone—discussing settlement and agreeing to defer discovery until the court lifted the stay on FA or decided the Motion to Compel Arbitration.[38] The attorneys believed that many witnesses would be the same for FA and the Hamrick Defendants and so "it did not make sense to conduct two depositions where one would do."[39] On October 18, 2022, Plaintiffs' attorney emailed the Hamrick Defendants' attorney proposing to extend the scheduling order pending resolution of the FA Defendants' status in the case.[40] The Hamrick

---

[31] Am. Compl., ECF No. 122, filed August 17, 2021; Answer, ECF No. 136, filed October 21, 2021.
[32] Mot. to Compel Arbitration, ECF No. 126, filed September 16, 2021.
[33] Docket Text Order, ECF No. 149, filed December 9, 2021.
[34] Scheduling Order, ECF No. 164, filed February 8, 2022.
[35] *Id.*
[36] Mot. to Confirm Stay of Case as to FA Defendants or, in the Alternative, for Final Decision at this Time on Mot. to Compel Arbitration, ECF No. 175, filed February 22, 2022.
[37] Memo. Decision and Order Granting Mot. to Stay, ECF No. 203, filed June 1, 2022.
[38] Declaration of Reid W. Lambert ("Lambert Dec.") ¶ 9, ECF No. 291, filed December 1, 2025. The court notes Mr. Lambert's duty of honesty to this court. Since Defendants have not submitted any contradicting declarations or evidence, the court accepts the facts as laid out in Mr. Lambert's declaration for the purposes of this motion.
[39] *Id.*
[40] *Id.* ¶ 10; Ex. 2.

Defendants' attorney agreed.[41] But no party ever filed a motion to amend the scheduling order with the court.

On February 6, 2023, Plaintiffs filed a notice with the court that the pending appeal affecting FA was resolved.[42] The notice also stated: "[d]ue to the stay imposed by the Court as to the FA Defendants, Plaintiffs have deferred discovery as to certain other remaining parties who have consented to entry of an amended scheduling order upon lifting of the stay."[43]

On March 1, 2023, FA filed a renewed Motion to Compel Arbitration and a motion to stay the case pending resolution of the motion to compel.[44] The next day, on March 2, the court granted the motion to stay as to FA.[45]

On or around March 10, 2023, Plaintiffs' attorney and the Hamrick Defendants' attorney spoke on the phone again.[46] The attorneys discussed FA's motion to compel and the likelihood of an appeal.[47] Plaintiffs' attorney specifically recalls stating that the delay could be more than a year.[48] The attorneys discussed going forward without FA but agreed that it did not make sense to depose a lot of the same witnesses twice.[49]

---

[41] *Id.*
[42] Notice of Decision and Request for Status Conference, ECF No. 211, filed February 6, 2023.
[43] *Id.* 1–2.
[44] Mot. to Compel Arbitration, ECF No. 219, filed March 1, 2023; Motion to Stay Litigation as to the FA Defendants Pending Arbitration, ECF No. 221, filed March 1, 2023.
[45] Docket Text Order, ECF No. 222, filed March 2, 2023.
[46] Lambert Dec. ¶ 14.
[47] *Id.*
[48] *Id.*
[49] *Id.*

The Magistrate Judge decided the Motion to Compel Arbitration on October 2, 2023.[50] FA objected to the Magistrate Judge's decision, but the court overruled FA's objections and upheld the Magistrate Judge's decision to deny the Motion to Compel Arbitration in May 2024.[51]

In April 2024, while the objection was still pending, Plaintiffs' attorney and the Hamrick Defendants' attorney had another phone call where they discussed the status of the arbitration motions and whether the case would resume after the motion was decided or if there would be an appeal.[52]

On May 15, 2024, FA appealed this court's decision on the Motion to Compel Arbitration.[53] The Tenth Circuit affirmed and returned jurisdiction to this court on October 2, 2025.[54]

On October 17, 2025, Plaintiffs filed a status report that the court construed as a motion for entry of an amended scheduling order.[55] On November 3, 2025, the Hamrick Defendants filed the motion to dismiss and motion for judgment on the pleadings at issue in this opinion.[56]

## DISCUSSION

### I. Dismissal Under Rule 41(b).

Under Federal Rule of Civil Procedure 41(b), the court can dismiss an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order . . . ."[57] "A district court

---

[50] Memo. Decision and Order Denying Renewed Mot. to Compel Arbitration, ECF No. 258, filed October 2, 2023.
[51] Memo. Decision and Order Overruling Objection to Magistrate Judge's Memo. and Order Denying Renewed Mot. to Compel Arbitration, ECF No. 269, filed May 9, 2024.
[52] Lambert Dec. ¶ 19.
[53] Notice of Appeal, ECF No. 271, filed May 15, 2024.
[54] Mandate of the USCA, ECF No. 278, filed October 2, 2025.
[55] Status Report, ECF No. 281, filed October 17, 2025; Docket Text Order, ECF No. 282, filed October 20, 2025.
[56] MTD and MJP.
[57] Fed. R. Civ. P. 41(b).

7

may dismiss an action under Rule 41(b) after finding that certain enumerated criteria support a dismissal. These criteria include '(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.'"[58] "[D]ismissal is warranted when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits."[59] But "[t]he sanction of dismissal with prejudice for failure to prosecute is a 'severe sanction,' a measure of last resort."[60]

First, the Hamrick Defendants cannot claim prejudice when they agreed to delay discovery until after the FA Defendants' status was resolved. The Hamrick Defendants concede that they agreed to delaying discovery in 2022[61] and do not contest the Lambert Declaration's statements that the parties discussed delaying discovery multiple times in the intervening time without an objection from the Hamrick Defendants.[62] And even if they could argue prejudice, the Hamrick Defendants do not identify any substantial prejudice. The Hamrick Defendants argue that four Plaintiffs have passed away and are no longer available for discovery but fail to identify

---

[58] *Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003) (quoting *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). As the Hamrick Defendants correctly point out, these five factors were first used to consider whether to dismiss a case under Federal Rule of Civil Procedure 37(b)(2)(C). *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992). But the Tenth Circuit in *Mobley v. McCormick* adopted these same five factors for considering dismissal under Rule 41(b). *Mobley*, 40 F.3d at 340–341 (concluding "that Rule 41(b) involuntary dismissals should be determined by reference to the *Ehrenhaus* criteria.").
[59] *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007) (internal quotation marks omitted).
[60] *Id.* (quoting *Jones v. Thompson,* 996 F.2d 261, 265 (10th Cir. 1993)).
[61] MTD and MJP 4–5.
[62] Lambert Declaration ¶¶ 9, 10, 11, 14, 15, 17, 19.

why those Plaintiffs would be key witnesses in the case or otherwise cause prejudice.[63] The Hamrick Defendants also generally assert that "[e]vidence may no longer be available from Rockwell and Noah sources" but do not identify what evidence would no longer be available, why it could be important to their defense, or why they could not get the evidence from available sources.[64]

Second, there has not been any significant interference with the judicial process when the delay has not caused any waste of judicial resources and Plaintiffs have generally responded to court orders. Nor is the court significantly hampered from deciding the case on its merits.[65] While Plaintiffs should have filed a motion to amend the scheduling order, the mistake has not significantly interfered with the judicial process in this case.

Third, while Plaintiffs are culpable for failing to file a motion to amend the scheduling order, there is no evidence of willfulness or bad faith in that mistake.[66] Plaintiffs communicated to the Hamrick Defendants their intention to delay discovery while the dispute over arbitration with FA continued and the Hamrick Defendants agreed.

Fourth, the court has not issued a warning in this case that non-compliance may result in dismissal of the case. While notice is not strictly necessary prior to dismissing a case under Rule 41(b), the Tenth Circuit has generally preferred there be at least some constructive notice such as

---

[63] *Compare Ecclesiastes 9:10-11-12*, 497 F.3d at 1144–45 (Finding prejudice where a no-longer-available witness "was the only person with information relevant to certain subjects" and was "essential" to the defense.).
[64] Reply 2.
[65] *See DeBardeleben v. Quinlan*, 937 F.2d 502, 504–05 (10th Cir. 1991) ("Similarly, any interference with the judicial process from the return of the minute order was not great. It did not prevent the court from ruling on the pending motions. . . . Any inconvenience the court may have suffered in this case did not warrant dismissal with prejudice.").
[66] *See DeBardeleben*, 937 F.2d at 505 ("although we do not excuse plaintiff's failure to notify the court clerk of his change of address, there is no evidence of intentional delay or bad faith by plaintiff. . . . His failure to comply with Rule 111 appears to be a single, unintentional incident.").

9

an earlier show-cause order.[67] Here, there is not actual notice nor any court action that could be construed as constructive notice. Having said that, Plaintiffs are warned that further failures to abide the court's scheduling orders will result in sanctions, which could include dismissal of claims.

Fifth, the court need not consider whether lesser sanctions would be effective since no other factor supports granting dismissal.

In sum, Plaintiffs made a mistake in not filing a motion to amend the scheduling order. On this record, that error is not so severe to warrant dismissing the action, especially where Plaintiffs did not act in bad faith and the Hamrick Defendants agreed to Plaintiffs' plan to delay discovery until FA's status was resolved.[68]

## II. Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[69] The court evaluates a motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim.[70] The court "accept[s] all facts pleaded by the non-moving party as true and grant[s] all reasonable inferences from the pleadings in favor of the same."[71] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

---

[67] *Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1152 (10th Cir. 2007).
[68] This denial of the Rule 41(b) motion does not take into account or have any bearing on Plaintiffs' motion to amend the scheduling order, which is pending before the Magistrate Judge.
[69] Fed. R. Civ. P. 12(c).
[70] *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006) (abrogated on other grounds)).
[71] *Id.* (quoting *Park Univ. Enters., Inc.*, 442 F.3d at 1244).

sufficient to state a claim for which relief may be granted."[72] Thus, to survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[73] A claim 'has facial plausibility' if the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[74] But "[t]he court does not accept as true legal conclusions that are couched as factual allegations,"[75] as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[76]

Plaintiffs' complaint asserts three different claims for relief under federal securities laws: (1) sale of unregistered securities under Section 12(a)(1) of the Securities Act;[77] (2) federal securities fraud under Section 10(b) of the Securities Exchange Act and SEC Rule 10b–5;[78] and (3) control person liability under the Securities Exchange Act.[79] The court considers the Hamrick Defendants' challenge to each of these claims in turn.

   A.  **Sale of Unregistered Securities**

The Hamrick Defendants make three separate arguments challenging Plaintiffs' claim for the sale of unregistered securities: first, that the TIC interests at issue here were not securities under the statute; second, that even if the interests were securities, the interests are exempt from

---

[72] *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).
[73] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[74] *VDARE Found. v. Colorado Springs*, 11 F.4th 1151, 1158–59 (10th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678).
[75] *Murphey v. Mid-Century Ins. Co.*, No. 13-2598, 2014 WL 2619073, at *7 (D. Kan. June 12, 2014) (citing *Ashcroft*, 556 U.S. at 678).
[76] *Ashcroft*, 556 U.S. at 678.
[77] Am. Compl. 96.
[78] *Id.* 97.
[79] *Id.* 102.

11

registration; and third, that the Hamrick Defendants were not the statutory sellers and thus cannot be liable.

### 1. Unregistered Security

The Hamrick Defendants first challenge whether Plaintiffs' TIC interests are securities under federal law. Securities include investment contracts, defined as "(1) an investment, (2) in a common enterprise, (3) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others."[80] "In determining the meaning and scope of the word security, form should be disregarded for substance and the emphasis should be on economic reality."[81] "[D]etermining whether a particular contract is an investment contract within the meaning of federal securities laws is a question of fact that is rarely appropriate for a motion to dismiss."[82]

Here, Plaintiffs allege a passive investment arrangement. Plaintiffs allege that they paid money in exchange for their TIC interests.[83] The TIC interests were purchased in common with all other investors in the same property.[84] And Plaintiffs allege that they expected returns via the payment of rent as Noah developed, managed, and profited from the real estate without any work

---

[80] *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1090 (10th Cir. 2020) (quoting *SEC v. Scoville*, 913 F.3d 1204, 1220 (10th Cir. 2019)). The Hamrick Defendants' arguments that this construction of the meaning of an investment contract is not valid because it stems from dicta in *SEC v. W.J. Howey Co.* and is based on statutory interpretation methods no longer accepted by the Supreme Court is easily rejected. *See* Reply at 6–8; *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). The Supreme Court and the Tenth Circuit have continued to adopt this interpretation even though the methods of statutory interpretation have changed. *Foxfield Villa Assocs., LLC,* 967 F.3d at 1090; *S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004). We are bound by that precedent.
[81] *Crowley v. Montgomery Ward & Co.*, 570 F.2d 875, 876 (10th Cir. 1975) (cleaned up).
[82] *Demarco v. LaPay*, No. 2:09-cv-190, 2009 WL 3855704 at *4 (D. Utah Nov. 17, 2009) (citing *Berrios–Bones v. Nexidis, LLC,* 2007 WL 3231549, at *5 (D. Utah October 30, 2007); *Crowley v. Montgomery Ward & Co.,* 570 F.2d 875, 877 (10th Cir. 1975); *Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1040 (10th Cir. 1980)); *see also Campbell v. Castle Stone Homes, Inc.*, No. 2:09-cv-250, 2011 WL 902637 at *4 (D. Utah Mar. 15, 2011).
[83] Am. Compl. ¶¶ 1, 12, 126.
[84] *Id.* ¶¶ 108; 110(c); 438.

required from Plaintiffs.[85] At this stage, the court cannot conclude as a matter of law that Plaintiffs' TIC interests are not securities under federal law.[86]

### 2. Registration Exceptions

Next, the Hamrick Defendants assert that they fit under two exemptions to registering as a security: the private offering exemption and the Regulation D exemption. These exemptions are affirmative defenses where "the 'burden of proof is clearly upon' those litigants 'claiming [the exemption's] benefit, as public policy strongly supports registration.'"[87] And here, the Hamrick Defendants have not met their burden to prove these exceptions apply.

First, under 15 U.S.C. § 77d(a)(2), registration requirements "shall not apply to . . . transactions by an issuer not involving any public offering."[88] "An offering is considered private only if limited to investors who have no need for the protection provided by registration."[89] "An offering to those who are shown to be able to fend for themselves is a transaction not involving any public offering."[90] "In assessing whether an offering is 'sufficiently limited[,] courts focus on such factors as: (1) the number of offerees; (2) the sophistication of the offerees, including their access to the type of information that would be contained in a registration statement; and (3) the manner of the offering.'"[91] But the Hamrick Defendants' motion merely states in

---

[85] *Id*. ¶¶ 153, 190, 229, 239, 244, 249, 277, 299, 342, 345.
[86] *See Demarco*, 2009 WL 3855704 at *4 (D. Utah Nov. 17, 2009) ("[D]etermining whether a particular contract is an investment contract within the meaning of federal securities laws is a question of fact that is rarely appropriate for a motion to dismiss.").
[87] *Sec. & Exch. Comm'n v. GenAudio Inc.*, 32 F.4th 902, 940 (10th Cir. 2022) (quoting *Quinn & Co. v. S.E.C.*, 452 F.2d 943, 945–46 (10th Cir. 1971)).
[88] 15 U.S.C. § 77d(a)(2).
[89] *GenAudio Inc.*, 32 F.4th at 940 (quoting *United States v. Arutunoff*, 1 F.3d 1112, 1118 (10th Cir. 1993)).
[90] *Sec. & Exch. Comm'n v. Ralston Purina Co.*, 346 U.S. 119 (1953) (cleaned up).
[91] *GenAudio Inc.*, 32 F.4th at 940 (quoting *Arutunoff*, 1 F.3d at 1118).

13

conclusionary fashion that the sales did not "involve a public offering."[92] While they attempt to remedy this deficiency in their reply, the Hamrick Defendants only point to representations in the purchase agreement made by each Plaintiff that they had sufficient opportunity to investigate and evaluate the property, the lease, and the terms of the contract.[93] These bare assertions are insufficient for the court to evaluate the factors laid out by the Tenth Circuit or whether Plaintiffs did not need the protection of registration.

Second, the Hamrick Defendants claim that, under Rule 506(b) of Regulation D, there was not a general solicitation because the investment was only offered "to accredited investors and up to 35 non-accredited investors."[94] However, the Hamrick Defendants fail to point to any evidence or even allegations in the complaint that support the Hamrick Defendants' factual assertion.[95] Accordingly, the Hamrick Defendants failed to meet their burden to prove either exception applies.

### 3. Statutory Seller

The Hamrick Defendants next argue that they were not the statutory seller of these securities and thus cannot be liable. Under the Securities Act, "'[a]ny person who . . . *offers or sells* a security' in violation of the registration requirement of the Securities Act 'shall be liable to the person purchasing such security from him.'"[96] This liability extends not only to the person who transfers title, but also "to the person who successfully solicits the purchase, motivated at

---

[92] MTD and MJP 11–12.
[93] Reply 8–9.
[94] MTD and MJP 12; *see* 17 C.F.R § 230.506(b).
[95] *Id.*
[96] *Pinter v. Dahl*, 486 U.S. 622, 642 (1988) (quoting 15 U.S.C. § 77l) (emphasis added).

14

least in part by a desire to serve his own financial interests or those of the securities owner."[97] Plaintiffs' alleged that the Hamrick Defendants solicited the purchases and received significant commissions on the sales.[98] Thus, Plaintiffs provide sufficient factual allegations for the Hamrick Defendants to plausibly be included among the statutory sellers.

    **B.   Securities Fraud**

Securities and Exchange Commission Rule 10b–5 makes it unlawful "(a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact . . ., or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit . . . in connection with the purchase or sale of any security."[99] Plaintiffs' complaint brings a claim for relief under "Rule 10b–5."[100] The Hamrick Defendants, inexplicably, only argue that they have not violated subsection (b).[101] The Hamrick Defendants did not address Plaintiffs' arguments that the Hamrick Defendants violated subsections (a) and (c).[102] The court will not make the Hamrick Defendants arguments for them.[103] Accordingly, the court will not dismiss Plaintiffs' security fraud claims.

---

[97] *Id.* at 647.
[98] Am. Compl. ¶¶ 126, 145, 153, 164, 269, 277, 299, 342, 345, 346, 348–349.
[99] 17 C.F.R. § 240.10b–5.
[100] Am. Compl. 97.
[101] MTD and MJP 12; Reply 9.
[102] *Id.*; *see* Opp. 21–22.
[103] *See United States v. Vontress*, No. 22-3119, 2024 WL 5074634, at *4 (10th Cir. 2024) ("[Plaintiff's] cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing needed for us to address his arguments. We decline to make his arguments for him.") (internal citations omitted); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000); *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("[T]he court should not assume the role of advocate.").

15

### C. Control Person Liability

Plaintiffs' tenth claim for relief alleges control person liability against Mr. Hamrick, Mr. Brown, Ms. O'Toole, and Mr. Marshall.[104] Plaintiffs allege that these Defendants control "Liable Persons" that includes Edmund & Wheeler, Inc., O'Toole Enterprises, and TM 1031 Exchange.[105] Control person liability requires "(1) a primary violation of the securities laws and (2) control over the primary violator by the alleged controlling person."[106] Defendants argue that they have established that there is no primary violation. However, the court has rejected Defendants' arguments seeking to dismiss the other claims in this case. Accordingly, the court will not dismiss the control person liability claims either.

### III. Subject Matter Jurisdiction and Sanctions

Since the court is not dismissing Plaintiffs' federal law claims, the court need not address the subject matter jurisdiction and sanctions arguments.

### ORDER

The Hamrick Defendants' Motion to Dismiss[107] is DENIED.

Signed January 23, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[104] *See* Am. Compl. 102.
[105] *See* Am. Compl. ¶¶ 453; 447(d), (f).
[106] *Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1270 (10th Cir. 2001) (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)).
[107] ECF No. 283.