David W. Tufts (8736)
J. Tayler Fox (12092)
Ian M. Kinghorn (17717)
**DENTONS DURHAM JONES PINEGAR, P.C.**
111 South Main, Suite 2400
Salt Lake City, Utah 84111
 (801) 415-3000
david.tufts@dentons.com
tayler.fox@dentons.com

Douglas W. Henkin (*Pro Hac Vice*)
**DENTONS US LLP**
1221 Avenue of the Americas
New York, New York 10020-1089
 (212) 768-6832
douglas.henkin@dentons.com

Attorneys for Defendants First American Title Insurance Company and Kirsten Parkin

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHRISTOPHER C. FUCCI, et al., | Case No. 2:20-cv-00004-DBB-DAO |
| Plaintiffs, | |
| vs. | **FA DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| WILLIAM BOWSER, et al., | |
| Defendants. | Judge David Barlow |
| | Magistrate Judge Daphne A. Oberg |

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and DUCivR 7-1, Defendants First American Title Insurance Company ("First  American") and Kirsten Parkin ("Parkin," and together with First American, the "FA Defendants"), move the Court to dismiss all claims asserted against the FA Defendants in the Amended Complaint (the "AC") with prejudice.

SL_8849973.5

**INTRODUCTION**

Plaintiffs purchased tenant-in-common ("TIC") interests in real estate from Rockwell Debt Free Properties, Inc. or one of its affiliated companies (collectively "Rockwell"). The AC generally alleges that various upstream parties (the "Upstream Parties") steered Plaintiffs toward Rockwell, which then sold Plaintiffs fractional interests in real estate developments that were or would be occupied by Noah Corporation ("Noah"). Noah operated event venues across the country before filing for bankruptcy in 2019. Plaintiffs allege that Noah was operating a Ponzi scheme and using Plaintiffs' funds to pay off other investors, rather than putting those funds towards constructing facilities on the properties. Plaintiffs allege that Rockwell and the Upstream Parties marketed the TIC investments notwithstanding that knowledge. Plaintiffs contend that the TIC interests were securities and that the sales of the TIC interests amounted to securities fraud.

Plaintiffs do not allege that the FA Defendants were involved in any aspect of the sale of the supposed securities. Plaintiffs concede that the FA Defendants merely acted as the escrow agent and title insurer of the TIC transactions. Nevertheless, Plaintiffs attempt to bring various claims against the FA Defendants on the spurious basis that they somehow breached duties to follow escrow instructions or otherwise aided and abetted the supposed securities fraud perpetrated by Noah, Rockwell, and the Upstream Parties. The AC lacks factual allegations necessary to support Plaintiffs' claims. Plaintiffs' factual allegations do no more than allege that First American provided ordinary escrow and insurance services. Tacitly conceding as much, Plaintiffs filed the AC in an effort to beef up their factual allegations. But they failed to accomplish that goal: The AC merely dropped in a few conclusory allegations which are a nullity.

Plaintiffs' claim for breach of fiduciary duty against the FA Defendants fails because the allegations and claims are contrary to the Purchase and Sale Agreements ("PSAs") upon which

2

Plaintiffs rely. An escrow agent is a limited fiduciary with the duty to "follow the escrow instructions." *Pyper v. Reil*, 2018 UT App 200, ¶ 23, 437 P.3d 493. Plaintiffs concede that the PSAs were those instructions, and the PSAs expressly authorized the FA Defendants to disburse the funds as Plaintiffs plead they did. Because this claim ignores and is contradicted by what the PSAs actually say, it fails. Plaintiffs also assert claims whereby they attempt to hold the FA Defendants liable for torts allegedly committed by other defendants. Plaintiffs' suggestion that the FA Defendants participated in any type of scheme with other defendants is belied by the fact that the only conduct Plaintiffs allege is that the FA Defendants did what the escrow instructions in the PSAs the Plaintiffs reviewed and signed permitted. Plaintiffs thus ask the Court to infer that the FA Defendants were a knowing and active participant in a Ponzi scheme they did not profit from because Plaintiffs *think* the FA Defendants knew that Noah was having financial struggles. That is not how aiding and abetting or any other theory of secondary liability works.

### FACTS

Plaintiffs purport to allege a securities scheme involving three groups of defendants: the Noah Affiliates, the Rockwell Parties, and the Upstream Parties. (AC ¶¶ 9-11 & Claims for Relief 1-3; 8-12.) Over the course of several years, the Rockwell Parties and the Upstream Parties allegedly solicited and sold TIC interests in Rockwell-owned developments that would be leased to Noah for use as event venues. (*Id* ¶¶ 1-13.) The Rockwell Parties and the Upstream Parties allegedly represented to the Plaintiffs that their TIC investments would be used, in part, to construct facilities on the respective properties. (*Id.* ¶¶ 5-6.) However, Plaintiffs allege that Noah was operating a Ponzi scheme and the funds it received from Rockwell were funnelled into the Ponzi scheme. (*Id.* ¶ 4.) The Rockwell Parties and the Upstream Parties allegedly knew of the Ponzi scheme but agreed to conceal this information from investors while continuing to

3

aggressively promote and sell the Noah TIC Program.  (*Id.* ¶¶ 10-11, 387(a)-(c), 433(a), 444.)  Plaintiffs allege that the Noah Affiliates, Rockwell Parties, and Upstream Parties collectively made approximately $24 million dollars.  (*Id.* ¶ 484.)

The AC contains scant allegations regarding the FA Defendants.  It was not until *after* the alleged investments were solicited by Rockwell, and *after* Plaintiffs had signed PSAs with Rockwell, that Rockwell added Plaintiffs as additional insureds and closed escrow through First American.  (*See id.* ¶¶ 127-132.)  Plaintiffs concede that First American's involvement was limited to those two roles.  (*Id.* ¶¶ 128-29.)  Plaintiffs also concede that the PSAs set forth and are the sole source of the relevant escrow instructions.  (*Id*. ¶¶ 365, 367, 408.)  Plaintiffs further concede that Section 3.2 of the PSAs states the following instruction regarding 1031 exchanges:

> Buyer hereby acknowledges and agrees that Accommodator shall periodically transfer the 1031 Funds to First American Title Company, in one or more installments, which funds shall be applied toward ***either (i) the purchase of an undivided interest in the Property or (ii) the construction of the improvements on the Property on a reimbursement basis*** (i.e., the 1031 Funds will be used to reimburse Seller for costs it has incurred in constructing the improvements on the Property).  Seller shall periodically provide statements to First American Title Company detailing the construction costs that Seller has incurred and seeking reimbursement of such costs via transfer(s) of 1031 Funds.

(*Id* ¶ 408(a)) (emphasis added).  Plaintiffs allege that the FA Defendants disbursed the funds from escrow upon the closing of each TIC transaction (*e.g.*, as permitted by PSA Section 3.2(i)), rather than on a reimbursement basis (as permitted by PSA Section 3.2(ii)).  (*Id*. ¶¶ 366-37.).  Based on this allegation, Plaintiffs seek to hold the FA Defendants liable for breach of fiduciary duty and for torts allegedly committed by Noah, Rockwell, and the Upstream Parties.  (*E.g. id*. ¶ 412.)

Plaintiffs' attempt to allege that the FA Defendants were somehow knowing conspirators in the fraud allegedly perpetrated by Noah, Rockwell, and the Upstream Parties strains reason and

4

is not supported by factual allegations.  Of the $24 million allegedly misappropriated through the scheme, Plaintiffs do not allege that *any* money was misappropriated by the FA Defendants.  Rather, Plaintiffs concede that all of the money they invested went to Rockwell (*id.* ¶ 369) and the other defendants (*id.* ¶¶ 370-77).  The only payments received by First American were paid by Rockwell pursuant to the PSAs:  Rockwell paid First American $150 to add each Plaintiff to the existing title policy by endorsement (PSA § 4) and $150 for closing costs (PSA § 7), a total of $300 per Plaintiff.  *See, e.g.,* Attachment A.  Plaintiffs' attempt to turn the FA Defendants into active co-conspirators in the alleged scheme is thus (a) supported by nothing more than bare conclusions and conjecture and (b) economically nonsensical.  Essentially, Plaintiffs' theory is predicated on the idea that the FA Defendants should have known there was a scheme because they acted as escrow agent for other sales of TIC interests involving Rockwell as the seller (none of which are alleged to be fraudulent) and they supposedly "knew that Noah had failed to meet obligation to pay property taxes" on other properties.  (*See* AC ¶ 127.)  Plaintiffs then include conclusory allegations that the FA Defendants knew that the TIC funds were "intended to be used to complete the venue project" and that when the FA Defendants disbursed the funds at closing (as specifically permitted by the PSAs) they knew the venue was not completed.  (*Id.* ¶ 131.)  Even if these conclusory allegations could be accepted as true (they cannot), they are insufficient to support Plaintiffs' claims against the FA Defendants.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Salt Lake City Corp. v. ERM-West, Inc.*, 984 F. Supp. 2d 1156, 1159 (D. Utah 2013).  "A claim has facial

5

SL_8849973.5

plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But "[l]abels, conclusions, formulaic recitations of elements, and naked assertions will not suffice." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Id.* Conclusory allegations must be disregarded, *see id.*, as must allegations contradicted by documents properly before the court on a motion to dismiss, *see Farrell-Cooper Min. Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013).

## ARGUMENT

### I.    PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS.

Plaintiffs' Fourth Claim alleges that the FA Defendants breached their fiduciary duties as escrow agents. Utah follows the general rule that "[t]he core of an escrow agent's duty is to follow its escrow instructions." *See Pyper v. Reil*, 2018 UT App 200, ¶ 23, 437 P.3d 493. An escrow agent cannot breach their duties if they follow the escrow instructions because "it would be illogical if following the instructions of the one to whom you owe a fiduciary duty could constitute a breach of that same duty." *See Posner v. Equity Title Ins. Agency*, Inc., 2009 UT App 347, ¶ 19, 222 P.3d 775, 782, *abrogated on other grounds by Coroles v. State*, 2015 UT 48, ¶ 19, 349 P.3d 739.

Plaintiffs' breach of fiduciary duty claim fails because Plaintiffs' own allegations demonstrate that the FA Defendants followed the escrow instructions. Plaintiffs concede that the escrow instructions were set forth entirely in the PSAs and allege that the FA Defendants violated those instructions by "[f]ailing to follow the express requirements of the [PSAs]" and "specifically, paragraph 3.2." (AC ¶ 412(d).) The sole basis for this claim is the allegation that the FA

6

Defendants "released the purchase funds to Rockwell almost immediately after closing, without regard to the state of the construction." (AC ¶¶ 367, 412.)  However, Section 3.2 states that "funds shall be applied toward "*either* (i) the purchase of an undivided interest in the Property *or* (ii) the construction of improvements."  AC ¶ 408(a) (emphasis added).  The use of "or" in the PSAs confirms that First American acted in accordance with the escrow instructions by transmitting 1031 investor money for the purchase of a TIC interest and thus could not have violated any fiduciary duty by so acting.

Moreover, Plaintiffs' theory of liability would vitiate the well-settled principle that an "an escrow agent owes a fiduciary duty to *both* parties of a transaction" and the scope of that duty is defined by the escrow instructions.  *Pyper*, 437 P.3d at 499 (emphasis added).  Section 3.2(i) allowed Rockwell to request funds from First American if Rockwell sought to apply them toward a TIC interest or construction costs, and the FA Defendants were required to and did comply with Rockwell's requests predicated on the former.  These were the instructions Plaintiffs agreed to. Indeed, not only did Plaintiffs sign the PSAs, but they specifically initialed several places indicating their understanding and agreement that the PSAs controlled, that the Plaintiffs had done their due diligence, and that they were not relying on any representations not contained in the PSAs. (*E.g.* Dkt. No. 36-1 at 1-3.)  Plaintiffs agreed to Section 3.2 and specifically plead it as the basis for the AC, and this claim thus depends on it.  Because Plaintiffs' own allegations establish that the FA Defendants followed the instructions in the PSAs (specifically Section 3.2), this claim must be dismissed.

## II.    ALL OF PLAINTIFFS' SECONDARY LIABILITY CLAIMS FAIL.

Plaintiffs assert various claims for aiding and abetting and conspiracy against the FA Defendants.  Although all of those claims fail when analyzed individually, they all fail for one

7

SL_8849973.5

overarching reason.  All aiding and abetting and conspiracy claims have a *mens rea* or specific intent requirement—the plaintiff must prove that the defendant knew about and specifically intended to assist or join in the alleged misconduct.  *Hussein v. UBS Bank USA*, 2019 UT App 100, ¶ 46, 446 P.3d 96 (aiding and abetting requires the alleged participant to "knowingly join [the primary tortfeasor] in fraudulent acts"); *Real Est. Sch. of Nevada v. Kapp*, No. 2:15-CV-00043-DN, 2015 WL 4729132, at *3 (D. Utah Aug. 10, 2015) (explaining that "[t]he gravamen of the [aiding and abetting] claim is the defendant's knowing participation" in the underlying tort, which requires the secondary tortfeassor to have "intentionally" participated in the wrongful conduct); *Catalyst Campus for Tech. & Innovation, Inc. v. Brown*, No. 1:24-CV-00059-AMA-DAO, 2025 WL 2781561, at *12 (D. Utah Sept. 30, 2025) ("[K]nowing, intentional acts are required to form the foundation of a conspiracy." (citing *Jedrziewski v. Smith*, 2005 UT 85, ¶ 9, 128 P.3d 1146)); *Applied Predictive Techs., Inc. v. MarketDial, Inc.*, 598 F. Supp. 3d 1264, 1284 (D. Utah 2022) (meeting of the minds requires "knowing and intentional participation" in the underlying wrong, and dismissing conspiracy claim on motion to dismiss); *Fid. Nat. Title Ins. Co. v. Worthington*, 2015 UT App 19, ¶ 18, 344 P.3d 156 (dismissing conspiracy claim because the plaintiff failed to plead that the alleged conspirator "agreed on a course of fraudulent behavior" with the principal tortfeasor).

This is analogous to a scienter requirement, and it is therefore subject to the same analysis used for scienter:  Courts assume that defendants act in their informed economic self-interest, and if allegations make no economic sense they must be disregarded when considering a motion to dismiss.  *Oppenheimer v. Novell, Inc.*, 851 F. Supp. 412, 418 (D. Utah 1994) ("Courts have looked with skepticism at allegations of wrongdoing in cases where there was no apparent motive for it. ...  Since the Complaint fails to allege a reasonable basis for inferring that fraud has occurred,

8

especially in light of the fact that the Complaint does not indicate any reasonable motive for fraud under the facts alleged, defendants' Motion to Dismiss is granted."); *In re Sun Healthcare Grp., Inc. Sec. Litig.,* 181 F. Supp. 2d 1283, 1297 (D.N.M. 2002) (dismissing fraud claims for lack of motive because "lack of motive is an element of the totality of the pleadings which the Court must consider" and that "in looking for a sufficient allegation of motive, the court assumes that the defendant is acting in his or her informed economic self-interest" (cleaned up)); *Burns v. Delaware Charter Guarantee & Tr. Co.*, 805 F. Supp. 2d 12, 30 (S.D.N.Y. 2011) (dismissing secondary liability claim where the alleged participant only received routine "administrative fees" for hosting accounts, and would thus "gain nothing" while also putting "itself at great risk" by "inducing investment in a known Ponzi scheme").

Because First American was paid only by Rockwell for routine administrative fees (PSA §§ 4, 7), a total of $300 per Plaintiff, Plaintiffs' secondary liability claims make no sense. *Iqbal* and *Twombly* require the Court to determine whether it is plausible that a major insurer like First American would have chosen to assist the more than 20 defendants it is accused of assisting in a fraudulent scheme to earn a nominal $300 in administrative fees per Plaintiff. *See generally Burns* 805 F. Supp. 2d at 30; *16630 Southfield Ltd. v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 505 (6th Cir. 2013) (plausibility requires consideration of "common sense and the strength of competing explanations for the defendant's conduct," and facts that are "merely consistent with liability" are not enough). Because the answer to that is unquestionably no, all of these claims fail.

### A.    PLAINTIFFS' "AIDING AND ABETTING TORTIOUS CONDUCT" CLAIM FAILS.

Plaintiff's Sixth Claim alleges that the FA Defendants aided and abetted allegedly tortious conduct by more than twenty (20) other defendants across four categories of alleged torts—fraud/negligent misrepresentation (Claim 1), breach of fiduciary duty (Claims 2 and 4),

9

constructive fraud (Claim 3), and conversion/fraudulent misappropriation (Claim 5).  (*See* AC ¶ 424.)  However, this scattershot claim is belied by Plaintiffs own allegations, or lack thereof.

This claim fails as a matter of law for at least three reasons.  *First*, the AC only alleges that the FA Defendants dealt with Rockwell, not the other more than 20 defendants identified in this claim.  On its own that is fatal to the claim under *Iqbal* and *Twombly*.  *Second*, aiding and abetting any tort requires "knowing participation" in that specific tort.  *Hussein v. UBS Bank USA*, 446 P.3d 96, 108 (Ut. Ct. App. 2019).  The defendant must have had actual knowledge of the precise tortious conduct that they are alleged to have aided and abetted—it is insufficient to allege or demonstrate that defendant was aware that the tortfeasor was generally engaged in wrongdoing.  *Hurtado Lucero v. IRA Servs., Inc.,* 2020 WL 553941, at *5 (N.D. Cal. Feb. 3, 2020); *Real Est. Sch. of Nevada v. Kapp*, 2015 WL 4729132, at *4 (D. Utah Aug. 10, 2015); *Medved v. DeAtley*, 2013 WL 4873054, at *9 (D. Colo. Sept. 11, 2013).

The AC fails to allege that the FA Defendants had actual knowledge of any of the torts pled in the first five causes of action; the FA Defendants are not even mentioned in those claims and Plaintiffs allege no dealings between the FA Defendants and any defendant other than Rockwell.  Thus, Plaintiffs do not properly allege that the FA Defendants had "actual knowledge" of torts by any other defendants.  And with respect to Rockwell, there are no factual allegations in the AC that the FA Defendants had actual knowledge of alleged misrepresentations by Rockwell to any Plaintiff, or of any other "tortious conduct" to which Plaintiffs haphazardly refer.  (AC ¶ 427.)  Instead, Plaintiffs allege that the FA Defendants were "aware" of things such as "Noah's financial weakness" and that "Rockwell was not following rules applicable to 1031 Exchanges."  (AC ¶ 427.b.)  These allegations do not show actual knowledge of any specific tort.  Plaintiffs' aiding and abetting claim fail for this reason alone.

10

SL_8849973.5

*Third*, Plaintiffs' aiding and abetting claim fails because Plaintiffs allege no conduct by the FA Defendants that satisfies the substantial assistance requirement. *DBLKM Inc. v. Resolution Trust Corp.*, 969 F.2d 905, 909 (10th Cir. 1992). Here, nothing about First American's alleged conduct could be considered "substantial assistance," especially given that First American did not deal with the Plaintiffs until *after* they executed PSAs with Rockwell. *Fidelity Nat. Title Ins. Co. v. Worthington*, 344 P.3d 156, 161–162 (Ut. Ct. App. 2015) (rejecting aiding and abetting claim where complaint only alleged defendant "actively participated" in tort). Worse still, Plaintiffs merely allege that the FA Defendants' "substantial assistance" was in providing routine professional services, specifically "conducting closings, providing title insurance, [and] acting as escrow agent." (AC ¶ 427.a). But "'[s]ubstantial assistance' means something more than the provision of routine professional services." *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 720 (8th Cir. 2019) (quotation simplified); *In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) ("The caselaw is clear that opening accounts and approving transfers, even where there is a suspicion of fraudulent activity, does not amount to substantial assistance.").

In sum, Plaintiffs fail to allege any of the required elements of an aiding and abetting claim against the FA Defendants. *See generally Burnett v. Mortgage Electronic Registration Systems., Inc.,* 766 F.3d 1231, 1240 (10th Cir. 2013) (upholding dismissal where appellate court could not tell "which defendant is alleged to have done what," and the allegations included "a litany of diverse and vague alleged acts."). Plaintiffs' claim for Aiding and Abetting Tortious Conduct must therefore be dismissed as to the FA Defendants. In addition, as explained below, the claim fails as to each specific tort to which it purports to apply.

11

### 1.   Negligent Misrepresentation and Fraud Fail.

"Utah courts have not yet recognized a claim for aiding and abetting fraud." *Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1252 n.1 (D. Utah 2017).  Plaintiffs' claim fails as a matter of law for that reason alone.  In addition, the AC's factual allegations do not satisfy Rule 9(b)'s pleading requirements for fraud.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Ci*v*. P. 9(b).  Where an allegation of fraud or misrepresentation is a predicate to an aiding and abetting claim, Rule 9(b) also applies.  *Coroles v. Sabey*, 79 P.3d 974, 983 (Ut. Ct. App. 2003) (dismissal of aiding and abetting fraud and negligent misrepresentation was justified where complaint failed to satisfy Rule 9(b) pleading requirements).

Here, Plaintiffs' allegations are anything but particular and fail to plead that the FA Defendants' aided or abetted any alleged fraud or negligent misrepresentation.  For example, the aiding and abetting claim incorporates all the preceding paragraphs, and those paragraphs simply list the elements of the torts the FA Defendants supposedly aided and abetted.  That violates Utah law: The court in *Coroles* determined that this exact style of pleading aiding and abetting fraud was "unacceptable" precisely because such broadside allegations do "not identify the relevant surrounding facts … with sufficient particularity to show what facts are claimed to constitute the charges."  *Coroles*, 79 P.3d at 985.  Plaintiffs' aiding and abetting fraud and negligent misrepresentation claim thus fails under *Coroles*.

Moreover, there is not a single factual allegation in the AC demonstrating that the FA Defendants knew of any alleged "misrepresentations" or "omissions" made by any of the other defendants to the Plaintiffs.  Those alleged misrepresentations or omissions all apparently relate to things that were said (or not said) to the Plaintiffs by Rockwell or others to convince them to

12

purchase TIC interests.  (*See* AC ¶ 384 (incorporating hundreds of allegations of conversations between Plaintiffs and other defendants).)  But Plaintiffs do not allege that the FA Defendants had any involvement in any such communications.  For example, in a meeting in Dallas at which only Fucci, Hamrick, and Bowser were in attendance, Hamrick and Bowser allegedly represented that "an investment in a Noah TIC would be a safe investment that would provide a good return, that Noah had never missed a payment, and that Noah provided a corporate guarantee of at least 7% return on the investment."  (AC ¶ 145.)  There is no allegation in the AC that the FA Defendants knew about this or any other alleged misrepresentations.  The FA Defendants cannot have "aided and abetted" representations they did not know about and were not involved in.

Nor could the FA Defendants have substantially assisted any of the alleged misrepresentations or omissions.  The FA Defendants provided escrow services and issued title policies to which Plaintiffs were added by endorsement *after* they purchased TIC interests.  Thus, at the time the FA Defendants were involved in the TIC transactions, the Plaintiffs had already purchased their TIC interests based on the alleged misrepresentations and omissions at issue.  Aiding and abetting cannot be retroactive.  *El Camino Res., LTD. v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 910 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013) (applying the Restatement test for aiding and abetting and explaining that substantial assistance requires a plaintiff to show that the secondary party proximately *caused the violation*." (emphasis added)).

### 2.    Breach of Fiduciary Duty Fails.

To allege aiding and abetting a breach of fiduciary duty, Plaintiffs must allege that the FA Defendants knowingly participated in a fiduciary's breach of its duty to Plaintiffs and that damages resulted.  *Mower*, 278 P.3d at 1087–88.  Plaintiffs must allege not "only knowledge of a

13

relationship and interactions, but also *actual* knowledge of actions related to the underlying breach of the duty." *Real Estate School of Nevada v. Kapp*, 2015 WL 4729132 at * 4 (D. Utah Aug. 10, 2015) (emphasis added) (dismissing claim for failure to allege knowing participation). Plaintiffs must also allege substantial assistance or active collusion by the FA Defendants, and ordinary business services are not substantial assistance. *Cattani v. Drake*, 424 P.3d 1131 (Ut. Ct. App. 2018) (providing legal advice to trustee did not constitute substantial assistance).

Plaintiffs do not allege that the FA Defendants had actual knowledge of the basis for the supposed fiduciary duties owed by the Rockwell Parties and Upstream Parties. Rather, Plaintiffs allege that the Rockwell Parties and Upstream Parties owed Plaintiffs fiduciary duties because of specific relationships between the former and the latter. Plaintiffs thus variously allege that fiduciary duties were owed because the Rockwell Parties and Upstream Parties "held themselves out as having superior skill, knowledge, training, and experience," and "acted in the capacity of licensed securities agents." (AC ¶ 395.) But there are no allegations that the FA Defendants were aware of what the Rockwell Parties, or anyone else, told any Plaintiffs or how they otherwise interacted with any Plaintiffs. That requires dismissal of this claim.

Plaintiffs also fail to demonstrate actual knowledge or substantial assistance of any tortious conduct. Plaintiffs again largely refer to communications between the Rockwell and Upstream Parties and the Plaintiffs, but do not allege that the FA Defendants had actual knowledge of or substantially assisted those communications. For example, Plaintiffs claim that Rockwell and/or the Upstream Parties "[c]harg[ed] excessive commissions," "[s]teer[ed] Plaintiffs" toward unsuitable investments, and "[f]ail[ed] to conduct sufficient and reasonable due diligence." (*See* AC ¶¶ 396.) But Plaintiffs do not allege that the FA Defendants were involved in any such

14

activities or explain how the FA Defendants could have "substantially assisted" them through providing *post hoc* escrow services.

Plaintiffs seem to suggest that this alleged breach stems from the mishandling and eventual theft of Plaintiffs' funds. (*See* AC ¶¶ 396(b).) But Plaintiffs do not allege that the FA Defendants knew that, when the FA Defendants' disbursed the purchase funds, those funds would be misappropriated. By way of example, the AC contains no factual allegations demonstrating that the FA Defendants knew that Noah was operating as a Ponzi scheme. All Plaintiffs do is conclusorily allege that the FA Defendants "knew" that Noah "had failed to meet obligation to pay property taxes" on some other properties. (AC ¶ 127.) This is insufficient to allege that the FA Defendants knew that Plaintiffs' purchase funds would be misappropriated upon disbursement to Rockwell. At most, it could permit the inference that the FA Defendants were aware that Noah experienced financial issues on unspecified occasions. But that does not permit an inference that the FA Defendants had actual knowledge that *Plaintiffs'* funds would be stolen. *Heinert v. Bank of Am. N.A., 835 F. App'x 627, 630–31 (2d Cir. 2020) ("While Plaintiffs-Appellants have alleged that Cunningham had actual k*nowledge of Parris and Santillo's misrepresentations to American Express, these allegations do not suffice to show that either Cunningham or the Banks had actual knowledge of the Individual Defendants' Ponzi scheme, the fraud on which the aiding-and-abetting claim relies."); *Isaiah v. JPMorgan Chase Bank, N.A.*, No. 16-CIV-21771, 2017 WL 5514370, at *4 (S.D. Fla. Nov. 15, 2017*), aff'd sub nom.*, 960 F.3d 1296 (11th Cir. 2020) ("However, even if JPMC detected suspicious activity on the accounts as alleged, this only demonstrates knowledge of the symptoms of the Ponzi scheme, not JPMC's actual knowledge of the scheme itself.").

15

### 3.    Conversion Fails.

Utah has not recognized a claim for aiding and abetting conversion, and thus Plaintiffs' claim fails for that reason alone. *Albright v. Attorney's Title Ins. Fund*, 2008 WL 2952260 at *12 (D. Utah Jul. 26, 2008). Even if such a claim were cognizable, the AC fails to allege facts demonstrating the FA Defendants aided and abetted such a tort. Specifically, Plaintiffs fail to allege that the FA Defendants knew of, much less participated in, a scheme to convert Plaintiffs' funds. Moreover, the conversion claim is pled specifically against William Bowser. There are no allegations in the AC suggesting that the FA Defendants were aware of Bowser's existence or interacted with him, much less that they knew he was stealing Plaintiffs' funds and sought to help him.

### B.    PLAINTIFFS' CONSPIRACY CLAIM FAILS.

The Complaint's Seventh Claim for Relief alleges that the FA Defendants engaged in a civil conspiracy to commit tortious conduct. "To establish a claim of civil conspiracy, five elements must be shown: (1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Estrada v. Mendoza* 275 P.3d 1024, 1029 (Ut. Ct. App. 2012).

This claim fails because Plaintiffs allege only a meeting of the minds between "First American and Parkin."[1] (AC ¶ 433.b.) "[T]he Utah Court of Appeals has acknowledged the principle that an entity and its agents can't conspire with one another." *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 21-4035, 2022 WL 2452379, at *5 (10th Cir. July 6, 2022). "[A]s a general

---

[1] This is in contrast to Plaintiffs' other conspiracy allegations, which do allege agreements between parties such as Rockwell and the Upstream Parties. (*See* AC ¶ 433(a)).

16

rule, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, because they do not constitute two separate persons." *Id.* Thus, a corporation and employees "do not constitute the requisite two or more persons" if the employee is acting in the scope of his or her employment. *Kerstien v. McGraw-Hill Companies, Inc.*, 7 F. App'x 868, 875 (10th Cir. 2001); *see also Titan Mfg. Sols., Inc. v. Nat'l Cost, Inc.,* No. 19-CV-1749-WJM-SKC, 2020 WL 996880, at *2 (D. Colo. Mar. 2, 2020) (dismissing civil conspiracy claim that pled in conclusory fashion that the employee took actions "for their own individual advantage" for lack of supporting factual allegations).  This is sufficient to require dismissal of the conspiracy claim.

Plaintiffs also fail to provide any allegations of a "meeting of the minds" between anyone for an improper purpose.  Plaintiffs' core meeting of the minds allegation concerns disbursing Plaintiffs' funds "contrary to the terms of the [PSAs]."  (AC ¶ 433.b.)  But the AC contains no factual allegations to support this assertion, which as demonstrated above is contradicted by the text of the PSAs and thus cannot be relied on to oppose this motion.  *Harvey v. Ute Indian Tribe of Uintah and Ouray Reserv.*, 416 P.3d 401, 425 (Utah 2017) (dismissing claim where plaintiff failed to "plead some kind of meeting of the minds between [defendant] and the tribal officials to harm [plaintiff] in an unlawful manner" and merely following a direction does not establish agreement).  Consequently, Plaintiffs fail to allege that the FA Defendants took "any specific, overt act" in furtherance of any conspiracy, requiring dismissal of this claim.

### C. PLAINTIFFS AIDING AND ABETTING SECURITIES FRAUD CLAIM FAILS.

In their Thirteenth claim for relief, Plaintiffs allege that all Defendants collectively acted to aid and abet state law securities fraud violations in "at least" 16 different states.  (*See* AC ¶¶ 475 and 476 n.4.)  This claim fails for several reasons.

*First*, it does not even satisfy Rule 8 because it makes no attempt to allege who actually did what.  Alleging that 28 named and an unspecified number of unnamed defendants got together to violate the securities laws of at least 16 states requires more than three run-on conclusory paragraphs that never even cite the specific state laws Plaintiffs claim were violated.

*Second*, Plaintiffs' allegations are conclusory and contradictory.  Plaintiffs essentially recast their breach of fiduciary duty claim, alleging that the FA Defendants "must have known that Rockwell was not following its own purchase agreement" and that they "knew that the money paid into escrow was needed for construction of the venues but disbursed the money to Rockwell without Plaintiffs' consent and contrary to the terms of the purchase agreement between the parties." (AC ¶ 475.)  Wrong.  The FA Defendants disbursed the funds *with* Plaintiffs' consent as set forth in the PSAs, which Plaintiffs concede were the entirety of the escrow instructions at issue.

*Third*, Plaintiffs assert aiding and abetting securities liability in states where such claims do not exist.  *See, e.g., Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 249 (2007) (noting that § 25403 (the section of California's Corporate Securities Law cited by Plaintiffs) does not create private claims).

*Fourth*, in each of the jurisdictions mentioned in the AC that do allow these claims, Plaintiffs fail to allege core elements required to support the claims.  For example:

- Plaintiffs fail to allege that the FA Defendants were aware of any underlying securities violation, a required element under Texas law. *Willis v. Marshall*, 401 S.W.3d 689, 704 (Tex. Ct. App. 2013) (no aiding and abetting Texas securities violation where plaintiff failed to show defendant was aware of underlying securities violation).

- Plaintiffs also fail to allege that the FA Defendants' services "materially aided or participated" in the sale of a security, which also dooms this claim. *Curry v. TD Ameritrade, Inc.*, 662 Fed. Appx. 769 (11th Cir. 2016) (affirming dismissal of aiding and abetting claim under Georgia law where defendant did not "materially aid or participate" in the sale of securities and only acted according to its contractual obligations as a broker-dealer custodian, i.e., in the ordinary course of its business).

18

- Plaintiffs fail to allege how the FA Defendants acted as more than "mere participa[nts]" in the underlying transaction, which is required to state a claim of aiding and abetting under Ohio law. *Boyd v. Kingdom Trust Company*, 113 N.E.3d 470, 473 (Ohio 2018) (bank acting as depository intermediary was a mere participant in the transaction and did not aid in the sale of securities); *Boomershine v. Lifetime Capital, Inc.*, 2008 WL 54803, at *2 (Ct. App. Ohio Jan. 4, 2008) (bank acting as escrow agent did not aid in sale of securities).

*Fifth*, Plaintiffs do not plead an underlying securities fraud claim with the particularity required by each state, as required by Fed. R. Civ. P. 9(b). Plaintiffs cannot state a claim that the FA Defendants aided and abetted state law securities fraud in 16 different jurisdictions without identifying a single location where anyone knowingly engaged in state law securities fraud (to say nothing of omitting any mention of a nexus between conduct by the FA Defendants and whatever that state securities law violation might be). Plaintiffs' claims must be dismissed for this reason as well. *See, e.g.*, *In re Enron Corp. Securities Litigation*, 540 F. Supp. 2d 759, 797 (S.D. Tex. 2007) (plaintiffs failed to state a claim for state securities fraud in Texas where they did not allege "which statements, identity of speaker(s), when and where the statements were made, why the statements are fraudulent, what material facts were omitted and where, and why these omissions made the representations misleading.").

## III. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.

In their Fourteenth Claim for Relief, Plaintiffs purport to bring claims for unjust enrichment against "all Defendants." (*See* AC at 108.) "Under Utah law, unjust enrichment requires (1) a benefit conferred; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention of the benefit by the conferee under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Stern v. Acad. Mortg. Corp.*, No. 2:24-CV-00015-DBB-DAO, 2025 WL 2852171, at *8 (D. Utah Oct. 8, 2025) (quotation simplified). "A defendant is liable under the unjust enrichment prong of quantum

19

meruit only if he or she received a direct benefit from the plaintiff." *Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 65, 355 P.3d 1000.

Plaintiffs fail to allege any benefit that they conferred on the FA Defendants. This claim is predicated on the benefit Plaintiffs supposedly conferred upon "Defendants" through their "investment in the Noah TIC Properties." (AC ¶ 479.) Unlike the other parties named in this Cause of Action, the FA Defendants received no such benefit. Plaintiffs do not allege that they compensated the FA Defendants at all, let alone allege how the FA Defendants were enriched to the tune of $24 million (the FA Defendants were paid $300 in administrative fees per TIC transaction *by Rockwell*, *see* PSA §§ 4, 7). Because Plaintiffs fail to identify any benefit they conferred upon the FA Defendants, they have necessarily failed to allege how the FA Defendants appreciated any such benefit or "inequitably" retained any such benefit. This claim thus fails.

## IV.    PLAINTIFFS' CLAIM FOR "ABUSE OF VULNERABLE ADULTS" FAILS.

Plaintiffs' Fifteenth Claim attempts to allege a claim for abuse of vulnerable adults. (AC ¶ 487. Although Plaintiffs seek to rely on "*prima facie* tort or negligence *per se*," (AC ¶ 490), these common law theories are displaced by an existing Utah statute, Utah State Code Section 62A-3-314. Where a statute comprehensively addresses the subject matter of a claim, common law claims are preempted. *See Daniels v. Gamma West Brachytherapy, LLC*, 221 P.3d 256, 270 (Utah 2009). Section 62A-3-314 incorporates and thereby addresses the entirety of the claim Plaintiffs seek to bring. That statute requires Plaintiffs to allege the elements specified by the related Utah criminal statute to state a claim, which Plaintiffs have not done. This claim must therefore be dismissed.

But even if Plaintiffs could proceed with this claim, the AC fails to state a claim against the FA Defendants. The only thing the AC's allegations show is that the FA Defendants provided

SL_8849973.5

basic escrow services in the manner each Plaintiff specifically agreed to in the PSAs and, as also required by the PSAs, added each Plaintiff as a named insured to the relevant title policy. Performing the requirements of a contract each Plaintiff signed with advice from external advisors cannot be "elder abuse." Moreover, Plaintiffs nowhere reference First American or Ms. Parkin in connection with this claim: Plaintiffs allege that *all* Defendants "abused [their] position of trust and confidence" and were "motivated by purposes other than the well-being of the Plaintiffs." (AC ¶¶ 488-49.) That is insufficient to state a claim. *See* Utah Code Ann. § 62A-3-314 (listing required allegations as including, *inter alia*, knowledge of the offense and intent to deprive defendant of property or assets). Because Plaintiffs fail even to try to plead facts meeting the requisite statutory criteria, this claim must be dismissed for this reason as well.

Plaintiffs also fail to allege that they qualify as "vulnerable adults" based upon their own proffered definition of the same. The AC asserts that various Plaintiffs were "were considered 'vulnerable adults' at the time of their purchase of the interest in a Noah TIC Property because they were at least 65 years of age *or* because they had a mental or physical impairment that substantially altered their ability to provide necessities, obtain services." (AC ¶ 487 (emphasis added).) This is a recitation of supposed legal elements, not a factual allegation. And there are no factual allegations in the AC regarding any Plaintiff's age or supposed impairments despite the fact that Utah Code § 76-5-111 specifies that a vulnerable adult must be 65 or older *and* have an impairment which substantially affects their ability to function. Plaintiffs' conclusory allegation is alleged in the disjunctive despite the fact that the relevant Utah statute is conjunctive. This is yet another reason this claim fails.

SL_8849973.5

## **CONCLUSION**

For the reasons set forth above, the FA Defendants respectfully ask this Court to dismiss with prejudice all claims asserted against the FA Defendants in the AC.


DATED: March 13, 2026.

/s/ *David W. Tufts*

**DENTONS DURHAM JONES PINEGAR, PC**
David W. Tufts
J. Tayler Fox
Ian M. Kinghorn

**Dentons US LLP**
Douglas W. Henkin

*Counsel for Defendants First American Title Insurance Company and Kristen Parkin*

SL_8849973.5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2026, I caused a copy of the foregoing to be filed and

served on counsel of record via the Court's electronic filing system.

*/s/ Kristin Hughes*

SL_8849973.5

# ATTACHMENT A



**First American Title Insurance Company**
**National Commercial Services**
215 South State Street, Ste. 380 • Salt Lake City, UT 84111

*Office Phone:*(801)536-3100 *Office Fax:*(866)344-5051

**Settlement Statement**

**File No:** NCS-920709-05-SLC1
**Escrow Officer:** Kirsten Parkin/mca
**Settlement Date:** 08/30/2018
**Disbursement Date:**

**Property:**
180 Beaver Creek Circle, Toledo, OH

**Buyer:**
Oak Hill Management, an Connecticut corporation

**Seller:**
Rockwell Toledo, LLC, a Utah limited liability company
8494 South 700 East, Suite 200, Sandy, UT 84070

**Lender:**

| Buyer Charge | Buyer Credit | Description | Seller Charge | Seller Credit |
|---|---|---|---|---|
| | | **Consideration** | | |
| 3,554,202.60 | | **Total Consideration** | | 3,554,202.60 |
| | | | | |
| | | **Deposits In Escrow** | | |
| | 3,554,202.60 | Receipt No. 7061125634 on 08/30/2018 by Edmund and Wheeler fbo Oak Hill Management, an Connecticut corporation | | |
| | | Receipt No. 7061126302 on 11/27/2018 by Rockwell Toledo, LLC, a Utah limited liability company | | 7,109.71 |
| | | | | |
| | | **Title/Escrow Charges** | | |
| | | Closing-Escrow Fee to First American Title Insurance Company National Commercial Services | 150.00 | |
| | | Endorsement (O) to First American Title Insurance Company National Commercial Services | 150.00 | |
| | | | | |
| | | **Disbursements Paid** | | |
| | | **Miscellaneous Disbursement** | | |
| | | Set Up Fee to Cadence Property Advisors | 350.00 | |
| | | Transfer Tax to Lucas County Auditor | 14,217.70 | |
| | | | | |
| | | **Cash ( From) ( To) Buyer** | | |
| | | **Cash (X To) ( From) Seller** | 3,546,444.61 | |
| | | | | |
| 3,554,202.60 | 3,554,202.60 | **Totals** | 3,561,312.31 | 3,561,312.31 |

PLEASE NOTE:  A modification of money-transfer or disbursement instructions can be a red flag for Online Banking Fraud and could be a trap for the unwary.  Should we knowingly receive such a modification, in the interest of prudence, we may consider it suspect and call a known and trusted phone number to verify its authenticity and accuracy.  Your awareness and cooperation in taking appropriate steps to prevent fraud is greatly appreciated.

Settlement Statement Page 1 of 2
Print Date: 04/05/2023, 8:35 AM

*Settlement Statement*

**Settlement Date:**  08/30/2018                                    **File No:**  NCS-920709-05-SLC1
**Officer:**              Kirsten Parkin/mca